Related Document: Dkt. No. 15
Hearing Date: June 3, 2021 at 10:00 a.m.
Objection Deadline: May 27, 2021 at 5:00 p.m.

**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Telephone: (212) 237-1000
Charles E. Simpson (csimpson@windelsmarx.com)
Edmund B. Troya (etroya@windelsmarx.com)
*Attorneys for Chapter 11 Debtor Ninety-Five Madison Company, L.P.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re | |
|---|---|
| NINETY-FIVE MADISON COMPANY, L.P., | Chapter 11 |
| Debtor. | Case No. 21-10529 (SHL) |

**DEBTOR NINETY FIVE MADISON COMPANY, L.P.'S OPPOSITION TO MOTION OF VITRA, INC. TO DISMISS THE DEBTOR'S BANKRUPTCY CASE OR, IN THE ALTERNATIVE, TO CONVERT THE DEBTOR'S CASE TO A CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE, AND FOR RELATED RELIEF**

**TO:   THE HONORABLE SEAN H. LANE,**
         **UNITED STATES BANKRUPTCY JUDGE**

Ninety-Five Madison Company, L.P., debtor and debtor-in-possession (**"Debtor"**), by its attorneys, Windels Marx Lane & Mittendorf, LLP, respectfully submits this Response in opposition to the Motion by Vitra, Inc. ("***Vitra***") to dismiss Debtor's Chapter 11 case or, alternatively, convert it to a case under Chapter 7 of the Bankruptcy Code, and for related relief (the "***Motion***"). In support of this Opposition, the Debtor respectfully represents the following.

**I.   Preliminary Statement.**

1.   Vitra's motion must be denied. As will be demonstrated below, Vitra has failed to sustain its burden of proof in this case. There is no basis whatsoever to dismiss the Debtor's case. Instead, the Debtor should have an opportunity to propose a plan of reorganization that has

{11926673:2}

a likelihood of being confirmed. The Debtor's decision to file for Chapter 11 protection was carefully weighed, was made in good faith, and was in the best interests of the Debtor's estate and all of its creditors. The Debtor is moving swiftly on its path of reorganization and there is a strong likelihood that the plan the Debtor will propose will be confirmed and creditors will be paid a one hundred (100%) percent distribution.

2.     Vitra's motion makes a series of conclusory allegations without any evidentiary support, including that Debtor has taken this course of action solely to benefit from the protection of the automatic stay with respect to Vitra's claims against the Debtor. This is all the more frustrating given that it is Vitra whose unproductive conduct was the factor that forced the Debtor to seek Chapter 11 protection, as Vitra effected the freezing of the Debtor's bank accounts, cutting off the Debtor's ability to continue to operate its business. Moreover, Vitra has now taken Debtor down the path of delay and needless and expensive litigation with the instant Motion and related discovery requests.

3.     In sum, the Debtor has acted in good faith in its filing of a petition under Chapter 11 of the Bankruptcy Code and in its continuing pursuit of its rights and remedies thereunder, and there is no basis upon which Vitra's motion should be granted.

## II.     Jurisdiction; Venue.

4.     The Court has jurisdiction of this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). Venue of this case and of this motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

### III.    Factual Background.

5.    On March 22, 2021 (the "**Petition Date**"), the Debtor commenced this Chapter 11 case as a Debtor-in-Possession under Bankruptcy Code §§ 1107 and 1108.

6.    RAS Property Management LLC ("**RAS**") is the Debtor's General Partner.

7.    Rita Sklar ("**Ms. Sklar**") is the managing and sole member of RAS.

8.    On its petition, the Debtor identified itself as a "Single Asset Real Estate" business as defined in 11 U.S.C. 101(51B).  (Doc. No. 1, Voluntary Petition at 7.)

9.    The Debtor's Schedules reflect that its assets consist of real property valued "As-Is" in the amount of $56,400.000.00 and other property in the amount of $10,313,577.00.  The Debtor's liabilities total $9,369,506.03.[1]  (Doc. Nos. 10 & 11, Schedules A/B and E/F and Summary of Assets and Liabilities.)

10.    The Debtor's Schedule A/B includes among the non-real property Debtor's $1,338,836.00 claim against Vitra for "Rents."  (Doc. No. 10, Schedule A/B at 75.)

11.    The Debtor's Schedule E/F identifies the NYC Department of Finance as a Priority unsecured creditor and Vitra and all other creditors as general unsecured creditors.

12.    The Debtor also filed a Corporate Disclosure Statement with respect to its Voluntary Petition.  (Doc. No. 1, Corporate Disclosure Statement.)

13.    In conjunction with filing the Voluntary Petition, Ms. Sklar filed an Officer's Certificate of RAS to which is attached a copy of the resolution of the RAS Board of Directors with respect to the decision to seek Chapter 11 relief for the Debtor.  (*See* Doc. No. 1 at Officer's Certificate and Resolutions of RAS Property Management, LLC.)

---

[1] Subsequent to the Debtor's filing of its Petition and Schedules, Vitra filed an Amended Proof of Claim asserting additional claims for "lost profits" in the appropriate amount of $9.5 million.  A baseless claim!

14. The Debtor filed and later amended its List of Creditors with the 20 largest unsecured claims. The Debtor's amended list includes Vitra and 11 other creditors. (*See* Doc. No. 13 at List of Creditors.). As noted in the List of Creditors, all but three of these claims are identified as disputed and will require adjudication before this Court to determine the extent to which each creditor possesses a valid claim.

15. The Debtor, as landlord, is party to a lease with Vitra as tenant (the "***Lease***"). The Lease remains pending with approximately seven (7) years remaining before expiration. Debtor identified the Lease on its list of Executory Contracts and Unexpired Leases. (Doc. No. 10, Schedule G at 2.1.)

16. Upon receipt of a security deposit from Vitra pursuant to the Lease, said deposit was placed into a trust account with Rhinebeck Bank where Debtor maintains security deposits. Those funds have remained in the trust account since their receipt.

17. Vitra's security deposit was included among the security deposits Debtor identified in Part 2, Section 7 of its Schedule A/B, which is clearly distinct from the other banking accounts identified in Part 1, Section 3 of that Schedule. (See, Doc. No. 10, Schedule A/B at 7.3.)

18. In seeking Chapter 11 protection, the Debtor weighed the options available to it and determined that filing a Chapter 11 petition was the best course for it to take, one that was necessary and in the best interests of the Debtor's estate and its creditors.

19. Vitra asserted in its Motion that the Debtor had not submitted a filing pursuant to Local Bankruptcy Rule 1007-2 with its voluntary petition. (Doc. No. 15 at ¶ 13.) However, Debtor filed the Declaration of Ms. Sklar pursuant to Local Bankruptcy Rule 1007-2 on April 6, 2021 (the "*Sklar Declaration*"). (Doc. No. 13.) The Sklar Declaration, *inter alia*, sets forth the

circumstances that led to the Debtor's decision to seek Chapter 11 protection and is accompanied by all of the schedules required under the Local Bankruptcy Rule.

20.  As set forth in the Sklar Declaration, the Debtor is the fee simple and title owner of the commercial building located at 95 Madison Avenue, New York, New York 10016 (the "**Property**").  The Debtor is the sole income generating entity which funds its operations.  Via the Property, Debtor provides full service commercial leases and services and employs six (6) employees.  (*Id.* at ¶¶ 5-7.)

21.  The Sklar Declaration further explains that the Debtor seeks to "streamlin[e] its operations and dramatically reduc[e] [its] operating expenses" and also plans to "secure new financing to continue its operations", and has held "discussions with various financial institutions to refinance its debt obligations and the renovation of the Property's interior space." (*Id.* at ¶¶ 7-8.)

22.  Critical to the Debtor's decision were the developments brought about by Vitra, namely (i) the seizure of the Debtor's bank accounts by the Dutchess County Sheriff's Office for distribution to Vitra and its counsel, and (ii) the freezing of the Debtor's bank accounts.  (*See*, Doc. No. 12, Statement of Financial Affairs at 5.1 & 5.2 and Doc. No. 13 at ¶ 9.)  Vitra points to the net value of the Debtor's assets in comparison to its liabilities in an attempt to assert that a Chapter 11 reorganization was not warranted; however, as reflected in Debtor's Schedule A/B, most of Debtor's assets are illiquid and the assets that are liquid have been frozen.

23.  The Sklar Declaration further explains that the "Debtor is currently facing a systemic problem of a lack of liquidity and debt load from imposition of judgments and defense expenses disproportionate to its ability to service such debt." (Doc. No. 13 at ¶ 9.)  Specifically and "[m]ost importantly, Debtor is burdened with a default by Vitra, Inc., the Debtor's current

{11926673:2}                                    5

major tenant, on its lease obligations and the levies and seizures of the Debtor's cash deposits." (*Id.*)

24. The Sklar Declaration further explains that "Debtor will need to pay and restructure its debt under Chapter 11 in order to carry and fulfill the financial obligations it has incurred in the operation of its business, including judgments and defaulted obligations." (*Id.* at ¶ 10.) The "systemic problem of undercapitalization" and "debt-load disproportionate to its ability to service such debt" (*Id.* at ¶ 11) which Debtor faces brought the Debtor to the position of seeking Chapter 11 relief.

25. In the Vitra Motion, Vitra recited a litany of the history of its state court litigation involving the Debtor and Ms. Sklar, among others, relating to the landlord-tenant relationship between Debtor and Vitra. While that history is relevant to the state court actions that underlie the claims asserted by Vitra in the Debtor's bankruptcy case, they are not applicable to either Debtor's decision to seek Chapter 11 relief or to the path Debtor intends to follow for its rehabilitation and reorganization.

26. Since the Petition Date, the Debtor has worked diligently toward the preparation of a Chapter 11 plan and has advised Vitra's counsel that the plan is expected to pay allowed general unsecured claims, priority claims, and administrative fees in full.

27. To fund payment of the claims, the collect Debtor will collect debts owed to it and borrow against the value of the building, which is estimated to be worth $50 million.

28. The financing will be used for the rehabilitation of the vast majority of the floors of the building, which are unused and generating no income for Debtor. Said rehabilitation will therefore substantially increase the Debtor's cash flows.

29. Net cash flows would also be pooled by the Debtor for the purpose of engaging a management company to oversee the operation of the building and the rehabilitation.

30. While Ms. Sklar is currently the Manager of RAS, which is the general partner of the Debtor, Ms. Sklar has agreed that she will have no role of any kind with respect to the management of the Debtor going forward.

31. The new management company, once chosen will report to Sklar Equities, Inc., the Debtor's management company.

### IV.    The Relief Requested by Vitra Should be Denied in Its Entirety.

32. Quite simply, Vitra has failed to sustain its burden of proof. Section 1112(b) of the Bankruptcy Code ("**Section 1112(b)**") provides, in relevant part, that a Chapter 11 case may be dismissed or converted to a case under Chapter 7 if the movant establishes cause and demonstrates that such dismissal or conversion is in the best interests of creditors and the estate. *See*, 11 U.S.C. § 1112(b).

33. Further, a Section 1112(b) motion to dismiss requires of the movant a showing of cause by a preponderance of the evidence. *In re St. Stephen's 350 East 116th Street*, 313 B.R. 161, 170 (S.D.N.Y. 2004) (citation omitted).

34. A party asserting bad faith as grounds for relief under Section 1112(b) must show both that "[(1)] on the filing date there was no reasonable likelihood that the debtor intended to reorganize and [(2)] no reasonable probability that it would eventually emerge from bankruptcy proceedings." *Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 227 (2d Cir. 1991) (citations omitted); *see also In re General Growth Props., Inc.*, 409 B.R. 43, 56 (Bankr. S.D.N.Y. 2009) ("The standard in this Circuit is that a bankruptcy petition will be dismissed if *both* objective futility of the reorganizing process *and* subjective bad faith in

filing the petition are found.") (citation and internal quotation marks omitted); *In re AAGS Holdings LLC*, 608 B.R. 373, 382 (Bankr. S.D.N.Y. 2019) (same). When moving the court to dismiss a bankruptcy case for bad faith, the "burden is on the movant to prove bad faith, and dismissal for bad faith is to be used sparingly to avoid denying bankruptcy relief to statutorily eligible debtors except in extraordinary circumstances. *In re Century/ML Cable Venture*, 294 B.R. 9, 34 (S.D.N.Y. 2003) (citations omitted); *see also In re Pulp Finish 1 Co.*, No. 12-13774, 2013 WL 5487933, at *1 (Bankr. S.D.N.Y. Oct. 2, 2013). "Dismissal of a Chapter 11 case is a drastic measure and the burden is on the movant to *prove* the relief requested is warranted and *not* premature." *In re Dark Horse Tavern*, 189 B.R. 576 (N.D.N.Y. 1995) (citation omitted). "The harshness of dismissal mandates that dismissal result only upon a strong evidentiary showing." *Id.* at 580.

35. Vitra has failed to meet its burden in seeking dismissal of this case. Vitra has asserted nothing more than bald, unsubstantiated and conclusory statements in support of its Motion. To grant Vitra's motion without Vitra sustaining its burden would be inequitable and substantially prejudicial to the Debtor.

36. The objective futility standard "is designed to ensure that the debtor actually has a potentially viable business in place to protect and rehabilitate." *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 520 (Bankr. S.D.N.Y. 1996) (citation omitted). Moreover, "a court should reach the conclusion that there is no demonstrable ability to reorganize only upon the strongest evidentiary showing." *Id.* (citation omitted).

37. Vitra cannot possibly satisfy the objective futility standard. By asserting that Debtor is solvent and questioning why the Debtor filed a Chapter 11 petition, Vitra actually acknowledges both that the Debtor has substantial equity in the property and that a successful

reorganization is probable. And, as the Debtor has acknowledged, a path for the Debtor to rehabilitate its property and reorganize under Chapter 11, with payment in full of all valid claims and administrative expenses, is very clear. The Debtor's funds have been frozen, and those developments necessitated a Chapter 11 filing. The Debtor is now exploring financing options for both the complete repayment of creditors and thorough renovation of the Property, which will allow many of the floors currently out of use to be rehabilitated and used to generate rental income. The Debtor's plan will also put in place new management and leadership structures to ensure that Debtor's relationships going forward with Vitra and all of its tenants are productive and lucrative.

38. The subjective bad faith standard "is meant to insure that the Debtor actually intends to use Chapter 11 to reorganize and rehabilitate itself and not simply to cause hardship or delay to its creditors by invoking the automatic stay." *Id.* at 522.

39. Vitra grossly mischaracterizes the Debtor's motivations when it asserts that the Chapter 11 filing was "a last ditch effort to exert leverage over Vitra". The Debtor commenced the instant Chapter 11 case to utilize the protections afforded to it under the Bankruptcy Code as it sought to take a new leadership direction with respect to its leadership and management of its business operations, obtain funding to undertake meaningful rehabilitation critical for its future success and to pay all valid claims and administrative expenses in full.

40. Moreover, the automatic stay is a fundamental feature of the Bankruptcy Code. "Indeed, because a major purpose behind our bankruptcy laws is to afford a debtor some breathing room from creditors, it is almost inevitable that creditors will, in some sense, be 'frustrated' when their debtor files a bankruptcy petition." *In re Cohoes Indus. Terminal, Inc.*, 931 F.2d at 228 (citation omitted). As with many provisions of the Bankruptcy Code, a right

granted to one party may, in some sense, impose a burden on another party, but such balancing is within the province of Congress. While matters with respect to Vitra's claims against the Debtor have been stayed, this codified delay cannot fairly be described as unreasonable where it is providing the Debtor the opportunity to reorganize for the benefit of the Debtor's estate and all its creditors.

41.     Vitra's assessment of and reliance upon the factors for a court in this Circuit to consider when making a bad faith determination, which come from the Second Circuit's decision in *C-TC 9th Avenue Partnership v. Norton Co. (In re C-TC 9th Avenue Partnership)*, 113 F.3d 1304 (2d Cir. 1997), is both inaccurate and misplaced. A correct analysis of the *C-TC* factors makes clear that the Debtor did not act in bad faith.

42.     When evaluating the *C-TC* factors, a court will not simply "engage in a mechanical counting exercise" to determine if bad faith existed. *In re Century/ML Cable Venture*, 294 B.R. at 35. A court will look at the totality of the facts in each specific case. *In re R & G Properties, Inc.*, No. 08-10876, 2009 WL 1076703, at *2 (Bankr. D. Vt. Apr. 16, 2009) (citing *In re FMO Assocs. II, LLC*, 402 B.R. 546 (Bankr. E.D.N.Y. 2009); *see also In re Cohoes Indus. Terminal, Inc.*, 931 F.2d at 227 (explaining that the court must consider the totality of the circumstances to determine if there is substantial evidence to indicate that the debtor made a bad faith filing). Simply ticking off a list of factors that may be present does not prove bad faith. *See*, *In re R & G Properties, Inc.*, 2009 WL 1076703 at *3. "A court should not apply the *C-TC* factors mechanically or in isolation, and may choose to consider any one or all in its effort of analyzing the totality of the circumstances." *In re Neilson*, Case No. 17-10631, 2018 WL 6982228, at *3 (Bankr. N.D.N.Y. Aug. 31, 2018) (citing *Pal Family Credit Co. Inc. v. Cty of*

*Albany*, 425 B.R. 1, 5 (N.D.N.Y. 2010) and *In re Loco Realty Corp.*, 2009 Bankr. LEXIS 1724 at **8-9 (Bankr. S.D.N.Y. June 25, 2009)).

43. Here, a proper analysis of the *C-TC* factors makes clear that in the totality of the circumstances, the Debtor's Chapter 11 petition was not filed in bad faith. It is correct that the Property owned by the Debtor is the Debtor's primary asset, but bad faith does not arise merely because a debtor is a single real estate owner. The Bankruptcy Code contains a number of provisions giving express recognition to these types of filings. *See, e.g.*, 11 U.S.C. § 362(d)(3); *see also*, 7 Collier on Bankruptcy ¶ 1112.07 [6][b][ii] (16th ed. 2021) ("The presence of the specific single asset real estate provisions strongly suggest that such cases are not per se filed in bad faith."); *In re Balboa Street Beach Club. Inc.*, 319 B.R. 736, 742 (Bankr. S.D. Fla. 2005) ("[A] single asset real estate [sic] is not per se a bad faith filing, since Congress in the 1994 Amendments to the Bankruptcy Code implicitly allowed single asset real estate cases by assigning a definition to them under 11 U.S.C. § 101(51B)").

44. Moreover, the Debtor has no secured creditors, so the Debtor certainly is not engaged in a two-party dispute or seeking to frustrate or delay "legitimate efforts of the debtor's secured creditors to enforce their rights." *C-TC*, 113 F.3d at 1311. To the extent Vitra maintains that either of these factors is applicable to its circumstances, the Debtor's Schedules make clear that the Debtor has eleven (11) other creditors besides Vitra who have or will likely assert claims that the Debtor disputes. Moreover, the Debtor's Petition became necessary in part due to efforts by Vitra, that continue to date, that led to Debtor's bank accounts being frozen. However, the Debtor has clearly legitimate reasons for seeking Chapter 11 protection, reorganization and reorganizing its operations going forward. The Sklar Declaration also makes clear, contrary to Vitra's baseless assertions, that: notwithstanding the freezing of its accounts, the Debtor has cash

flow from its operation, which will be improved with approval of its plan; while claims against the Debtor include claims for unpaid real estate taxes, the unfreezing of the Debtor's bank accounts and refinancing as part of the Debtor's reorganization will allow the Debtor to satisfy all valid, outstanding claims in full; and the Debtor employs six (6) employees who will remain employed. (*See*, Doc. No. 13 at ¶ 7.)

45. Essentially, the critical issue in determining if there is a bad faith filing is whether there was, on the filing date, a good faith intent to reorganize and a lack of any intent to use the bankruptcy process solely as a means to delay, frustrate, and relitigate state court issues. *In re Sletteland*, 260 B.R. 657, 662 (S.D.N.Y. 2001). Here, the Debtor seeks its full and rightful opportunity to properly reorganize under Chapter 11, under a plan that will pay all valid claims in full and which plan will allow the Debtor to rehabilitate its property and create new revenue streams.

46. Moreover, there is no attempt by the Debtor in seeking chapter 11 relief to "relitigate" state court issues. Rather, the Debtor seeks in this Chapter 11 case to reorganize and move its business forward. Not only is the Debtor not seeking to relitigate the state court litigation, its objective in preparing its proposed plan has been to pay all valid claims in full, including Vitra's which are based on state court judgments and arbitration awards.[2] Reorganization, as will be set forth in the Debtor's proposed plan is intended to resolve all outstanding issues with respect to the Debtor's business and the only delay at this point is by Vitra forcing Debtor to devote substantial attention to these unsupported and inaccurate

---

[2] If any party is said to be attempting to use the Bankruptcy Court to relitigate state court matters then that party is Vitra, who has submitted an amended proof of claim to Debtor that adds amounts for "lost profits", attorney fees and "additional construction costs", none of which Vitra pursued in state court litigation between the parties and none of which was awarded in the judgments in its favor from state court. Debtor will vigorously object to Vitra's assertion of such claims.

{11926673:2}                                    12

allegations, plus substantial document production and delaying the Debtor's ability to get a plan before this Court to be approved and to repay the valid claims of all of its creditors in full.

47. The Second Circuit, in *Cohoes*, stated:

> "Indeed, because a major purpose behind our bankruptcy law is to afford a debtor some breathing room from creditors, it is almost inevitable that creditors will, in some sense, be 'frustrated' when their debtor files a bankruptcy petition…. In reality, there is a considerable gap between delaying creditors… and the concept of abuse of judicial purpose."

931 F.2d at 227 (citations and internal quotation marks omitted). *See also*, *In re AAGS Holdings LLC*, 608 B.R. at 383 (citing *Cohoes* in holding that a motion to dismiss should be denied where, *inter alia*, despite the existence of certain "indicia of bad faith", movant failed to show that Debtor filed the Chapter 11 case without any intention to organize and overall, "the totality of the circumstances show[ed] that the Debtor has not filed its petition in bad faith but instead, has properly invoked a protection provided for in the Bankruptcy Code to pay its creditors and reorganize through ownership of the Property").

48. The Debtor had been in bankruptcy for barely two (2) weeks when Vitra filed the instant Motion, in which it attacked the Debtor's conduct in this case as further evidence that the Debtor should not be trusted in Chapter 11. The Debtor has submitted its Schedules and other filings in accordance with applicable law and will continue to comply with all requirements of the Bankruptcy Code in pursuit of obtaining approval of its plan. Neither dismissal nor conversion of this case is in the best interests of the Debtor's estate or all of its creditors. The Debtor is entitled to the breathing space afforded by the Bankruptcy Code, which includes a full and fair assessment of its financial circumstances and the opportunity to take steps toward its rehabilitation.

## V. Conclusion.

49. For the reasons stated above, Debtor respectfully requests that the Court enter an Order denying the Vitra motion.

**WHEREFORE**, Debtor respectfully requests that the Court enter an Order denying Vitra's Motion and granting such other and further relief as is just.

Dated: New York, New York
      May 26, 2021

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for chapter 11 Debtor Ninety-Five Madison Company, L.P.*

By:   */s/ Charles E. Simpson*
      Charles E. Simpson (csimpson@windelsmarx.com)
      156 West 56th Street
      New York, New York 10019
      Tel: (212) 237-1000 / Facsimile: (212) 262-1215