Hearing Date: September 13, 2021 at 11:00 a.m.

JEFFREY A. BARR
211 Duke Ellington Blvd. Suite 7A
New York, NY 10019
Tel. (212) 227-1834; Fax: 212-964-4360
Attorney Appearing: Jeffrey A. Barr
(jeffreyabarr@gmail.com)

*Attorney for Carol E. Keller and Gail Shields,*
*Executors of the Estate of Lois M. Weinstein*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re                                                    Chapter 11 Case

NINETY-FIVE MADISON COMPANY LP,          No. 21-10529 (SHL)

Debtor.

## ESTATE OF LOIS M. WEINSTEIN'S
## RESPONSE TO OBJECTION TO CLAIM

**To:   THE HONORABLE SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

The Executors of the Estate of Lois M. Weinstein, by Jeffrey A. Barr, do hereby object to

the motion of the Debtor to expunge their claim.

1.   On March 22, 2021, the Debtor commenced this Chapter 11 Proceeding.

2.   In March 2012, real property located at 1625 and 1635 Putnam Avenue, Queens NY jointly

owned by Lois Weinstein and Rita A. Sklar was sold for $9.3 Million (the "Putnam Properties).

3.   As more fully set forth in the proof of claim dated September 10, 2021 and annexed hereto

as Exhibit A, Rita Sklar converted the net proceeds of this sale and paid herself an unlawful real

estate commission and paid $5,849,453.32 of these funds to the Debtor.

4.   Sklar marked one check dated April 11, 2013 for $3,523,242 as loan payment in full.

5.   Sklar marked a subsequent check dated as of November 2015 for $2,326,211.32 as "interest".

6.   Sklar had claimed that funds were repayment of a loan.

7.   A memorandum prepared by Sklar's tax counsel (the same lawyer who is being proposed to this court as the "tie breaker" in the event of a dispute among debtor's proposed new management) in 2014 specifically stated that the proceeds of the Putnam Property sale were needed **to be lent** to Debtor. The 2014 memo was completely silent about any "re-payment" of a loan which, were there actually such a loan, would have been a significant fact not to be ignored.

8.   Sklar has admitted at the creditor's committee meeting that there is no loan documentation and that there is no note or series of notes evidencing any debt, nor any written agreement showing any particular rate of interest that might be owed on such an alleged loan.

9.   Debtor's counsel claims that there is documentation of a series of payments made from Debtor to an entity which Sklar claims is an actual business entity entitled "Kinder Realty Associates". Upon information and belief, the majority of such payments, if actually made as a loan, would be uncollectable due to the passage of the statute of limitations several times over.

10.   There has been significant litigation in the State courts concerning this matter. An amended complaint efiled in the New York State Supreme Court on July 17, 2019 in an action entitled Lois Weinstein v. RAS Property Management LLC; Rita A. Sklar; Kinder Realty Associates and Ninety-Five Madison Company LP, Index No. 15322/2019 is annexed as an exhibit to the proof of claim dated September 10, 2021.

11.   It is respectfully submitted that based on this proof and documentation that there are significant issues of fact as to the validity and even the bona fides of Debtor's objection to the

2

Estate's claim and that it would be improper to expunge the Estate's claim to be repaid for the funds received wrongfully by Debtor without a proper hearing and determination of the facts.

12. I respectfully request that the court extend the Estate's time nunc pro tunc to respond to the objection. The Debtor's counsel mailed the Notice to my old office address and I never received it. I only saw it this morning when I reviewed the case docket sheet to see when the court may have rescheduled hearings on the various matters.

**WHEREFORE**, the undersigned respectfully requests that the Court deny the application of the Debtor to expunge the claim of the Estate of Lois M. Weinstein and grant such other and further relief as to the Court seems just and proper.

Dated:      New York, New York
            September 10, 2021

Respectfully Submitted,

JEFFREY A. BARR

By: /s/ Jeffrey A. Barr
        Jeffrey A. Barr, JB-3504
211 Duke Ellington Blvd., Suite 7A
New York, NY 10025
(212) 227-1834/ Fax: 212 964-4360

# EXHIBIT A

PROOF OF CLAIM dated September 10, 2021

**Fill in this information to identify the case:**

Debtor 1     NINETY-FIVE MADISON COMPANY LP

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  Southern District of New York

Case number  21-10529 (SHL)

---

## Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

---

### Part 1:   Identify the Claim

**1. Who is the current creditor?**

Carol E. Keller and Gail Shields as executors of the Estate of Lois Weinstein

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor  Estate of Lois Weinstein

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Jeffrey A. Barr
Name

211 Duke Ellington Blvd. Suite 7A
Number     Street

New York     NY     10025
City     State     ZIP Code

Contact phone 212-227-1834

Contact email  JeffreyABarr@gmail.com

Where should payments to the creditor be sent? (if different)

Name

Number     Street

City     State     ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
                MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

---

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
| --- | --- |

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  ____  ____  ____  ____

**7. How much is the claim?**   $_____4,500,000.00_. Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Receipt of $5,849,453.32 converted from Creditor's funds:

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                         $_____

Amount of the claim that is secured:    $_____

Amount of the claim that is unsecured:  $_____  (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:   $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.   $_____

**11. Is this claim subject to a right of setoff?**

☐ No

☑ Yes. Identify the property: Debtor asserts that it made an undocumented loan to claimant

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | |
|---|---|---|
| | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   09/10/2021
                    MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | Jeffrey | A. | Barr |
|---|---|---|---|
| | First name | Middle name | Last name |

Title   **Attorney**

Company
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address   **211 Duke Ellington Blvd. Suite 7A**
          Number      Street

**New York**                          **NY**        **10025**
City                                  State       ZIP Code

Contact phone   **212 227-1834**        Email   JeffreyABarr@gmail.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------X
LOIS WEINSTEIN, individually, on behalf :
of Kinder Realty Associates, and on behalf : Index No. 153224/2019
of Ninety-Five Madison Company, LP, :
 : VERIFIED AMENDED
        Plaintiff, : COMPLAINT
 - against - :
 :
 :
RAS PROPERTY MANAGEMENT, LLC, :
RITA A. SKLAR, KINDER REALTY :
ASSOCIATES, and NINETY-FIVE :
MADISON COMPANY, LP, :
       Defendants. :

-----------------------------------------------------------X

   LOIS WEINSTEIN, by her attorney Jeffrey A. Barr, as and for her amended

complaint against defendants, does allege as follows:

  1. Plaintiff Lois Weinstein is a resident of the State of New York and is a resident of

New York County.  She is also a partner in defendant Kinder Realty Associates and to

the extent required by law is bringing this action derivatively on behalf of Kinder and all

the partners of Kinder. She is further a limited partner in defendant Ninety-Five Madison

Company, LP and to the extent required by law is bringing this action derivatively on

behalf of Ninety-Five Madison Company, LP and all the partners of Ninety-Five

Madison Company, LP.

  2. Defendant RAS Property Management, LLC ("RAS") is a limited liability

company organized and existing under the laws of the State of New York.

  3. Defendant Rita A. Sklar ("Sklar") is a resident of the State of New York.

  4. Defendant Kinder Realty Associates, upon information and belief, is a partnership

consisting of two members Sklar and Plaintiff.

5.  Defendant Ninety-Five Madison Company, LP ("NFMC") is a limited partnership organized and existing under the laws of the State of New York.

6.  Defendant RAS is the general partner of defendant NFMC.

7.  Defendant RAS is controlled by defendant Sklar, who, upon information and belief, is its sole member.

8.  Defendant Sklar and Plaintiff are half-sisters. In 1970, their mother Hilda Weinstein died leaving a portfolio of real estate holdings that she had inherited from her father, Louis Shulsky, to her husband and three daughters, Lois, Rita and Arlene.

9.  Sklar fought bitterly to gain control or her mother's estate.

10. Nine months after Hilda Weinstein died, plaintiff's father, Irving Weinstein, died.

11. Plaintiff was 16 years old at the time of her father's death.

12. Under the terms of Hilda Weinstein's will, Sklar and plaintiff's uncle Lawrence Weinstein were named as trustees over plaintiff's inheritance from her mother. Sklar and Lawrence Weinstein were also named as trustees of a testamentary trust for the benefit of Plaintiff established under the will of Irving Weinstein.

13. Plaintiff lived with Sklar for a time after her father's death while Sklar continued to litigate in Surrogate's Court to deny her full sister Arlene any rights to the mother's estate.

14. Upon information and belief, Sklar, as Plaintiff's guardian and trustee, apparently charged plaintiff rent to live in her home.  Thus began a pattern of overreaching and misappropriation of Plaintiff's property by Sklar which continues to this day.

15. The most valuable of the properties inherited by Sklar and Plaintiff was an office building located at 95 Madison Avenue, New York, NY.

2

16. In 1982, Sklar, acting both for herself and as trustee of the testamentary trust for the benefit of Plaintiff established under the will of Irving Weinstein, and Lawrence Weinstein, as trustee of the testamentary trust for the benefit of Plaintiff established under the will of Irving Weinstein, created a partnership to hold 95 Madison Avenue. The partnership was called 95 Madison Avenue Company.

17. In or about 1988, when plaintiff was 34, she was given a 38 percent interest in 95 Madison Avenue Company.

18. In or about 2012, Madison Avenue Company at Sklar's direction, elected to become a Limited Liability Partnership under the New York Limited Partnership law and became NFMC.

19. Under the restated partnership agreement, defendant RAS, a limited Liability Company wholly owned by Sklar, became the general partner of NFMC.

20. According to K-1s filed for NFMC, plaintiff owns a 38% interest in NFMC.

21. The 2015 K-1 for NFMC appears to show that the partnership had operating losses of approximately $2,000,000 that year.

22. Since her mother's death, Sklar has taken autocratic control over 95 Madison Avenue as well as the other properties which she and plaintiff inherited.

23. Sklar has for decades misrepresented to plaintiff that a property in Flatbush Brooklyn which was specifically left to plaintiff in her mother's will, was owned by Plaintiff, when in fact, Sklar continues (to this day) to control (and mismanage) the property by keeping it in the testamentary trust which was to be dissolved and distributed to plaintiff on her 30th birthday.

24. Despite having taken $4,500,000 from plaintiff, Sklar has stopped paying the real estate taxes on the Flatbush property which she refuses to relinquish control over.

25. Upon information and belief, Sklar may suffer from several serious personality disorders. In addition, she is completely incompetent and wasteful as a real estate manager.

26. By example, Sklar has demonstrated she is consistently incapable of renting any of the commercial properties in an economically viable manner. Over the years Sklar has operated all properties she manages and controls at a loss.

27. In or about 1997, Sklar suggested that plaintiff and she set up a bank account at Safra Bank to facilitate the payment of expenses and collect income with respect to the various real estate properties they had inherited.

28. Sklar suggested that they use the name Kinder, which is Yiddish for "Children".

29. Upon information and belief, Kinder was initially set up solely to hold a bank account at the Safra Bank.

30. Sklar has solely controlled the Kinder bank account and has written all checks on that account. Sklar has claimed that Plaintiff is an equal owner of the account and has equal access, but this is not the case.

31. By virtue of the foregoing defendant Sklar owes Plaintiff numerous fiduciary duties arising in multiple contexts including by virtue of her interest as a partner in Kinder, her status as a trustee over the testamentary trust, as the owner of the general partner of NFMC (RAS), and her co-ownership with Plaintiff of several inherited properties.

4

32. Kinder does not hold title to any real property. There is no agreement under which has the right to manage any properties.

33. There is no partnership agreement related to Kinder other than a bank resolution.

34. Upon information and belief, Sklar has always used Kinder as an alter ego to control all of inherited properties jointly held with plaintiff.

35. Sklar has purported to operate Kinder as though it were an actual business.

36. Sklar holds herself out as a licensed broker and has demanded and even paid herself real estate commissions, however, the Secretary of State has no records of any such license being in effect for her or any of her controlled entities.

37. Upon information and belief, Sklar, has a strong aversion to renting out the properties that she controls. When she does have a tenant, her proclivity is to fight with the tenant.

38. Most of the properties which Sklar controls are left mostly vacant.

39. Sklar discourages brokers from finding tenants by refusing to pay them.

40. This tendency has led to several lawsuits with tenants, brokers, and even neighbors and has resulted in millions of dollars in liabilities and losses to Plaintiff.

41. Sklar has sought to hide her deficits as a real estate manager by withholding material information about the operation of the various properties from its limited partners.

42. In 2012, Sklar realized that due to her mismanagement without a significant influx of cash she was in danger of losing 95 Madison Avenue the sole asset of NFMC.

43. In or about 2012, Plaintiff lost her job as a travel agent due to changes in that industry. She found herself in need of funds.

5

44. Sklar advised plaintiff that they should sell properties they jointly owned in Queens -- rental properties located and known as 1625 Putnam Avenue and 1635 Putnam Avenue, Queens NY (the "Putnam Properties").

45. As a result of Sklar's mis-management, the Putnam Properties had not generated meaningful income in recent years, but by virtue of the phenomenal increase in real estate values, a buyer was located who was willing to pay $9,300,000 for the Putnam Properties.

46. In 2012, Sklar represented to plaintiff that were the Putman Properties sold, plaintiff would receive her share of the sale proceeds.

47. On or about March 6, 2012, utilizing a power of attorney dated March 1, 2012, Plaintiff and defendant Sklar sold the Putnam Properties for the sum of $9,300,000.

48. Upon information and belief, no portion of the sales proceeds has been distributed to plaintiff (other than approximately $800,000 paid to the US. Treasury and the New York State Department of Taxation and Finance and several checks totaling approximately $70,000).

49. Upon information and belief, defendant Sklar was seeking to avoid capital gains taxes on the sale of the Putnam Properties, and attempted to do so by seeking to do a "1031 Exchange" whereby the capital gains from the sale of one parcel of investment property through a "Qualified Intermediary" would be rolled into the purchase of another qualifying investment property within a certain time frame.

50. In order for the U.S. Treasury to recognize the transfer, certain rules and procedures have to be followed.

6

51. Upon information and belief, defendant Sklar entered into an exchange agreement with Madison Exchange Company ("Exchange Agreement").

52. In procuring Plaintiff's signature on the Exchange Agreement, defendant Sklar concealed her intentions and did not truthfully advise Plaintiff of the purpose of the 1031 exchange.

53. Plaintiff was not represented by counsel at the time she executed the Exchange Agreement, the contract of sale of the Putnam Properties, or any other documents pertaining to the sale of the Putnam Properties.

54. Upon information and belief, in the months after the sale of Putnam Properties, Madison informed defendant Sklar that they would have to return the sales proceeds to the sellers (Sklar and plaintiff in their individual capacities) because defendant Sklar and Plaintiff had not identified a proper replacement property.

55. It is clear that defendant Sklar never had any intention in finding an actual qualifying replacement property, since her purpose of the sale was to generate cash for defendant NFMC and not to re-invest in a new property (which is what the 1031 Exchange was intended by Congress to be used for).

56. Upon information and belief, defendant Sklar may have represented to Madison that she wished to invest the proceeds of the sale into either defendant Kinder or defendant NFMC.

57. Upon information and belief, because defendant Sklar and Plaintiff already owned an interest in defendant NFMC and defendant Kinder and that such prior ownership violated the 1031 exchange rules, therefore 1031 exchange involving defendant NFMC or defendant Kinder could not be done to avoid capital gains.

58. Because no replacement property was identified within the prescribed time period, Madison advised defendant Sklar that the funds needed to be returned to the sellers.

59. Upon information and belief, on or about April 10, 2013 defendant Sklar arranged to have the approximately $9,000,000 refunded from Madison be wired into an account at the Safra National Bank maintained in the name of defendant Kinder.

60. Defendant Sklar induced Plaintiff to execute a wire transfer instruction to wire the funds being held by Madison to the defendant Kinder bank account at Safra Bank.

61. Defendant Sklar actively concealed her intention of depriving Plaintiff of her share of the refunded proceeds by having them deposited into defendant Kinder's bank account, which defendant Sklar controlled exclusively.

62. There was nothing on the wire instruction that indicated anything other than identifying a recipient of the wired funds was the Kinder Bank account.

63. In various court filings to date, Sklar has claimed that by executing a wire transfer form, Plaintiff explicitly and implicitly gave blanket permission to Sklar to retain such funds and to use them for whatever purpose she chose, free of any fiduciary or other obligation owed to plaintiff individually, as a partner of Kinder, and as a limited partner of NFMC.

64. In reporting the sale of Putnam Properties to New York State Department of Taxation and Finance, defendant Sklar signed and caused to be filed a Partnership Payment Filing Fee Form which falsely and fraudulently claimed that defendant Kinder had actually owned an interest in the Putnam Properties. The form also falsely and

fraudulently stated that the proceeds of the sale of the Putnam Properties represented income of the partnership (rather than to Plaintiff and defendant Sklar as individuals).

65. Upon information and belief, for years defendant Sklar has claimed tax losses on properties that Plaintiff and defendant Sklar owned individually as tax losses for defendant Kinder in spite of the fact that Kinder had no actual or legal ownership interest in the properties in question.

66. Defendant Kinder provided Plaintiff a schedule K-1 form for the tax year 2017, the "2017 Kinder K-1", fraudulently and falsely claiming the partnership had losses related to the Putnam Properties, five years after the properties were sold; Sklar determined that Plaintiff's share of partnership losses was $97,963 (implying total partnership losses related to the Putnam Properties of $195,926) five years after their sale.

67. The 2017 Kinder K-1 also fraudulently and falsely claimed that the partnership had losses related to a property, 4849 Broadway in upper Manhattan, a property that Plaintiff and defendant Sklar own as tenants in common and defendant Kinder has never had an interest in. Sklar has asserted that Plaintiff's share of partnership losses was $90,967 (implying total partnership losses related to that property of $181,934).

68. The 2017 Kinder K-1 claims that the partnership had no income in the 2017 tax year.

69. The 2017 Kinder K-1 fraudulently claims that $20,304 was distributed from defendant Kinder to Plaintiff when Plaintiff did not in fact receive any distribution from defendant Kinder in the 2017 tax year.

9

70. The 2017 Kinder K-1 fraudulently claims this $20,304 distribution was made to Plaintiff in spite of also, fraudulently, claiming Plaintiff's share of partnership losses that year was $188,930 and also claiming, fraudulently, that Plaintiff's capital account in defendant Kinder was $-1,927,348 at the beginning of the tax year.

71. Sklar, in proposing the sale of the Putnam Properties, stated to Plaintiff that plaintiff would receive her share of the proceeds of the sale of the Putnam Properties.

72. On April 10, 2013, when Sklar procured (or forged) Plaintiff's signature on a wire transfer form, Sklar concealed her intention to use the proceeds of the Putnam Sale which was being wired into the Kinder Account, to pay herself an unlawful brokerage commission on the sale of the Putnam Properties and to use the rest of the proceeds to appropriate to herself and to funnel into NFMC.

73. Relying upon defendant Sklar's misrepresentations, Plaintiff agreed to the sale of the Putnam Properties and executed the wire transfer instructions approximately 13 months after the sale of Putnam Properties.

74. Upon information and belief, defendant Sklar, individually and as a partner in defendant Kinder, caused a significant portion of the funds to be paid to herself (approximately $340,000) and to defendant NFMC (approximately $6,000,000).

75. Upon information and belief, at no point did Plaintiff agree to contribute her share of the proceeds of the sale of the Putnam Properties to defendant Kinder nor to distribute it to defendant NFMC or defendant Sklar.

76. Upon information and belief, no document exists to evidence any agreement on Plaintiff's part to allow defendant Kinder to make any disposition that would cause Plaintiff to lose her interest in the proceeds of the sale of the Putnam Properties.

77. After the sale of the Putnam Properties, Sklar refused to distribute any funds directly to Plaintiff, apart from $70,000 which Sklar wanted to be paid by Plaintiff to Sklar's grandchildren.

78. Indeed, Sklar suggested that if Plaintiff needed money she should sell her car.

79. In or about November 2015, Plaintiff demanded an accounting and payment of sums due from the sale.

80. On or about January 27, 2016 defendant Sklar purported to produce an accounting which asserted that of the $9,032,302.75 net proceeds of the sale, the sum of $7,976,531.74 was owed by plaintiff and Sklar, through Kinder, to defendant NFMC (the "Purported Accounting").

81. Defendant Sklar knew that no funds were actually owed to defendant NFMC and that the Purported Accounting was materially false.

82. Sklar submitted a false accounting with the intention of deceiving plaintiff and other entities including accountants, the Internal Revenue Service and judges of the New York State Supreme Court, to rely on the truthfulness of the Purported Accounting.

83. On April 11, 2013, defendant Sklar wrote a check for $3,523,242.00 to defendant NFMC out of the account of defendant Kinder.

84. At some point in time, defendant Sklar wrote in the memo section of the check "Total Repayment".

85. This representation that there was a repayment of a loan, rather than the rendering of a loan was known to defendant Sklar and to defendant Kinder, by Sklar as its agent, to be false and fraudulent at the time that such notation was made and was made with intention of deceiving plaintiff and other entities including accountants, the Internal

11

Revenue Service and judges of the New York State Supreme Court, to rely on the truthfulness of the false marking.

86. Upon information and belief, according to a memo prepared by defendant Sklar's tax counsel Honigman, Schwartz, Miller and Cohn, ("Honigman") in or about 2014, defendant NFMC badly needed a cash infusion.

87. Upon information and belief, at some point in 2014 defendant Sklar had her counsel prepare a memo (the "Honigman Memo") proposing several scenarios whereby defendant NFMC would either buy out Plaintiff's interest in defendant NFMC using Plaintiff's own money or whereby Plaintiff would lend at a very low interest rate, a portion of Plaintiff's share of the sale proceeds from the Putnam Properties.

88. Plaintiff rejected these proposals and demanded her money.

89. The Honigman Memo expressly states that defendant **NFMC needed to borrow the funds from defendant Sklar and Plaintiff from the sale of the Putnam Properties.** It also acknowledges Plaintiff's immediate need for cash due to her loss of employment.

90. Upon information and belief, defendant Sklar actively concealed from the Honigman Firm that she had already transferred more than $3,500,000 of the proceeds of the sale of the Putnam Property to NFMC.

91. After she received Plaintiff's written demand for an accounting and to be paid her portion of the proceeds of the sale, in or about November 2015, defendant Sklar wrote an additional check to defendant NFMC for $2,326,211.32 from the account of defendant Kinder and fraudulently and falsely marked the check "interest payment".

12

92. At the time of writing the $2,326,211.32 check and the marking "interest payment", Sklar knew that no interest was in fact owed to NFMC by Kinder or by Plaintiff and knew that the marking was false and there was no legal basis for Kinder to be paying any funds to NFMC.

93. Sklar wrote the $2,326,211.32 check with the intention of deceiving plaintiff and other entities including accountants, the Internal Revenue Service and judges of the New York State Supreme Court, to rely on the truthfulness of the marking and of the alleged payment to NFMC.

94. Defendant Sklar purports to continue to pay defendant NFMC "interest" from the account of defendant Kinder on unauthorized, undocumented, fictitious, and fraudulent loans purportedly made by defendant NFMC to defendant Kinder, in the amount of at least $227,246 in 2017 and at least $206,766 in 2016.

95. On or about November 11, 2015 defendant Sklar wrote herself a check on the account of defendant Kinder in the amount of $340,137.75 and marked in the memo section, "Part equalization of distribution regarding LMW expenses".

96. Sklar has demanded on several occasions, to be paid a real estate commission of the sale of the Putnam Properties and a significant portion, if not all, of the $340,137.75 as alleged above, constitutes a payment of an unlawful real estate commission which should be returned to Kinder and returned from Kinder to Plaintiff.

97. On March 24, 2019 defendant Kinder was dissolved by Plaintiff when Plaintiff caused to be delivered a letter to defendant Sklar advising that Plaintiff was electing to dissolve the general partnership.

13

**AS AND FOR A FIRST CAUSE OF ACTION (DERIVATIVELY BY KINDER,
DERIVATIVELY BY NFMC and BY PLAINTIFF INDIVIDUALLY) AGAINST
NFMC, KINDER, RAS, and SKLAR FOR MONEY HAD AND
RECEIVED BY VIRTUE OF FRAUD**

98.  Plaintiff repeats and realleges the allegations contained in paragraphs 1 through

97 as if set forth fully herein.

99.  Defendant NFMC, defendant RAS, defendant Kinder, and defendant Sklar

through their fraudulent actions have each received, in installments, since April 11,

2013, Plaintiff's share of the proceeds of the sale of the Putnam Properties, without

cause or justification and cannot in good conscience continue to withhold such proceeds

from Plaintiff.

100.      Upon information and belief, these defendants have derived benefits for

years from the money they have received and the use of such money.

101.      Under the principles of good conscience defendants should not be

allowed to retain Plaintiff's funds from the sale of the Putnam Properties.

102.      By virtue of the foregoing, Plaintiff has been damaged in an amount to be

proven at trial but believed to be not less than $4,500,000.00, plus interest from April 11,

2013.

**AS AND FOR A SECOND CAUSE OF ACTION (DERIVATIVELY BY KINDER,
DERIVATIVELY BY NFMC, and BY PLAINTIFF INDIVIDUALLY) AGAINST RAS
AND SKLAR FOR MONEY HAD AND RECEIVED BY VIRTUE OF
BREACH OF FIDUCIARY DUTY**

103.      Plaintiff repeats and realleges the allegations contained in paragraphs 1

through 102 as if set forth fully herein.

104.     Defendants RAS and Sklar owed Plaintiff fiduciary duties to be truthful and not to deprive her of her funds on false pretenses and not to refuse to return her funds after she demanded the return of the same.

105.     These defendants have each received some portion of Plaintiff's share of the proceeds of the sale of the Putnam Properties, without cause or justification and are without right to continue to withhold such proceeds.

106.     These defendants have derived benefits for years from the money they received and the use of such money.

107.     Under the principles of good conscience defendants should not be allowed to retain Plaintiff's money.

108.     By virtue of the foregoing, Plaintiff has been damaged in an amount to be proven at trial but believed to be not less than $4,500,000.00, plus interest from April 2013.

### AS AND FOR A THIRD CAUSE OF ACTION (DERIVATIVELY BY KINDER, DERIVATIVELY BY NFMC, and BY PLAINTIFF INDIVIDUALLY) AGAINST NFMC AND RAS FOR AN ACCOUNTING BY NFMC WITH REGARDS TO ANY PAYMENTS RECEIVED FROM, LOANS MADE TO, AND/OR LOANS FROM KINDER

109.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 108 as if set forth fully herein.

110.     The Purported Accounting was prepared by Sklar in or about January 2016.

111.     The Purported Accounting shows that funds received by Kinder from the proceeds of the Putnam sale were owed to NFMC as a result of "loans" to Kinder from NFMC.

NYSCEF DOC. NO. 21    21-10529-shl    Doc 77    Filed 09/10/21    Entered 09/10/21 13:47:57    Main Document    RECEIVED NYSCEF: 07/17/2019

Pg 23 of 47

112.    At the time that Sklar made that accounting, she knew that the Purported Accounting was false.

113.    Sklar made and caused her counsel to deliver the Purported Accounting knowing that it was false and with the intention of having Plaintiff and others (such as accountants and the Court) rely on the truthfulness of the Purported Accounting.

114.    Under New York's Limited Partnership Law defendant RAS owes plaintiff a fiduciary duty as general partner of defendant NFMC to produce an accurate accounting to Plaintiff of any funds paid to it by Plaintiff or on her behalf or on behalf of defendant Kinder upon demand.

115.    Upon information and belief, defendant Sklar has derived benefits and profits without consent of Plaintiff from transactions conducted by defendant NFMC and from the use of defendant's property.

116.    Plaintiff has been wrongfully excluded from possession of partnership assets which are rightly hers.

117.    By virtue of the foregoing rendering it just and reasonable, Plaintiff and Kinder are entitled to a formal, accurate, and true account of as to defendant NFMC's affairs, regarding any moneys received from, paid to, owed by or owed to defendant Kinder and/or Plaintiff and Sklar including but not limited to partnership tax returns, partnership agreements and access to the books and records of defendant NFMC.

118.    Plaintiff has no adequate remedy at law.

## AS AND FOR A FOURTH CAUSE OF ACTION (DERIVATIVELY BY KINDER and BY PLAINTIFF INDIVIDUALLY) AGAINST SKLAR and KINDER FOR AN ACCOUNTING OF KINDER OF PAYMENTS TO, <u>PAYMENTS RECEIVED FROM, and LOANS TO OR FROM NFMC</u>

119.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 118 as if set forth fully herein.

120.    To the extent that the Purported Accounting shows that funds distributed to Plaintiff were "loans", such Purported Accounting is false and fraudulent.

121.    Under New York's Partnership Law defendant Sklar owes plaintiff fiduciary duties as a partner of defendant Kinder to produce an accurate accounting to Plaintiff of any funds paid to Plaintiff, paid on her behalf, owed to her, paid on behalf of defendant Kinder, or owed to defendant Kinder.

122.    Upon information and belief, defendant Sklar, defendant NFMC, defendant RAS, and defendant Kinder have derived benefits and profits without consent of Plaintiff from transactions conducted by defendant NFMC and from the use of defendant's property.

123.    Plaintiff has been wrongfully excluded from possession of partnership assets which are rightly hers.

124.    By virtue of the foregoing rendering it just and reasonable, Plaintiff is entitled to a formal, accurate, and true account of as to defendant Kinder's affairs, regarding any moneys received from, paid to, owed by or owed to defendant Kinder and/or Plaintiff and Sklar including but not limited to partnership tax returns, partnership agreements and access to the books and records of defendant KINDER.

125.    Plaintiff has no adequate remedy at law.

NYSCEF DOC. NO. 21    21-10529-shl    Doc 77    Filed 09/10/21    Entered 09/10/21 13:47:57    Main Document    RECEIVED NYSCEF: 07/17/2019

Pg 25 of 47

### AS AND FOR AN FIFTH CAUSE OF ACTION AGAINST RAS, NFMC, KINDER and SKLAR FOR THE IMPOSITION OF A CONSTRUCTIVE TRUST

126.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 125 as if set forth fully herein.

127.    Defendants RAS, Sklar, NFMC, and Kinder have confidential and fiduciary relationships or owe fiduciary duties to Plaintiff, and through such relationships have received the property of Plaintiff.

128.    Defendants RAS, Sklar, NFMC, and Kinder have been unjustly enriched through the receipt of Plaintiff's money and use of the same.

129.    By virtue of the foregoing constructive trusts over defendant RAS's and Sklar's interests in defendant NFMC; and Sklar's interest in Kinder should be declared and imposed in an amount to be proven at trial, but believed to be not less than $4,500,000 plus interest from April 11, 2013.

### AS AND FOR A SIXTH CAUSE OF ACTION (DERIVATIVELY BY KINDER and PLAINTIFF INDIVIDUALLY) FOR REPAYMENT OF A LOAN AGAINST NFMC

130.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 129 as if set forth fully herein.

131.    Upon information and belief, defendant Sklar and defendant Kinder, on Plaintiff's and Kinder's behalf, lent Plaintiff's share of the proceeds of the sale of the Putnam Properties to defendant NFMC.

132.    Upon information and belief, the loan did not provide for a repayment schedule and is thus payable on demand. Plaintiff demanded to be paid her share of the proceeds of the sale of the Putnam Properties on or about November 11, 2015. No portion of the loan has been repaid since that date

133. By virtue of the foregoing, Plaintiff is entitled to repayment immediately of any loans believed to be not less than $ 7,976,531.74 made to NFMC.

### AS AND FOR AN SEVENTH CAUSE OF ACTION (DERIVATIVELY BY KINDER, DERIVATIVELY BY NFMC and PLAINTIFF INDIVIDUALLY) AGAINST SKLAR, KINDER, NFMC, and RAS FOR FRAUD

134. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 133 as if set forth fully herein.

135. Defendant Sklar represented to Plaintiff knowing such statement to be false, that Plaintiff would receive one-half of the proceeds of the sale of the Putnam Property in inducing Plaintiff to sign the power of attorney which defendant Sklar utilized to complete the sale.

136. On April 10, 2013, Defendant Sklar further, and falsely, represented to Plaintiff that Plaintiff would receive one-half of the proceeds of the sale of the Putnam Property in inducing Plaintiff to sign wire instructions directing Madison to send funds to defendant Kinder's bank account at Safra bank.

137. Plaintiff reasonably relied on these representations and, as a result of defendant Sklar's subsequent actions, has been deprived of her share of the proceeds of the sale of the Putnam Properties.

138. Defendant NFMC, through its general partner defendant RAS and its principal Sklar, falsely represented to Plaintiff that it was receiving interest payments on loans made to defendant Kinder, rather than actually having received a loan, or loans, from defendant Kinder.

19

139.     Plaintiff reasonably relied on these representations in completing tax returns which Plaintiff now believes to be fraudulent, exposing Plaintiff to potential tax liabilities and penalties.

140.     Defendant Sklar, defendant Kinder, defendant NFMC, and defendant RAS produced, or caused to be produced, the Purported Accounting which is false and fraudulent and was known to be false by defendant NFMC and defendant RAS.

141.     The Purported Accounting has been used to justify Plaintiff being denied her share of the proceeds of the sale of the Putnam Properties.

142.     By virtue of the foregoing, Plaintiff has been damaged in an amount to be proven at trial but believed to be not less than $4,500,000.00, plus interest from April 11, 2013.

### AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST KINDER FOR A WINDING-UP OF THE PARTNERSHIP'S AFFAIRS

143.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 142 as if set forth fully herein.

144.     Kinder was dissolved on March 24, 2019 by a letter Plaintiff delivered to Sklar.

145.     All assets of Kinder remaining after its liabilities are satisfied must be distributed to the its partners. This would necessarily include, but not limited to, the sale of any partnership property and distribution of any funds held in any of Kinder's accounts.

146.     As Kinder has been dissolved, Plaintiff has a right to a winding-up the partnership's affairs, including obtaining a winding-up by the court.

20

147.      By virtue of the foregoing rendering it just and reasonable, Plaintiff is entitled to a winding-up of defendant Kinder's affairs.

148.      Plaintiff has no adequate remedy at law.

## AS AND FOR AN NINTH CAUSE OF ACTION AGAINST
## KINDER FOR AN ACCOUNTING

149. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 147 as if set forth fully herein.

150. Kinder was dissolved on March 24, 2019 by a letter Plaintiff caused to be delivered to Sklar.

151. In order for the partnership's affairs to be concluded an account of the partnership's business is necessary.

152. Such an accounting is necessary to determine the property and assets of the partnership, any liabilities the partnership has to creditors, the capital contributions of each partner, any profits of the partnership each partner is owed, and any liabilities to partners other than for capital or profits.

153. By virtue of the foregoing rendering it just and reasonable, Plaintiff is entitled to a formal, accurate, and true account of partnership affairs, including but not limited to an accounting of any moneys owed by or owed to defendant NFMC and/or Plaintiff and Sklar including but not limited to partnership tax returns, partnership agreements and access to the books and records of defendant Kinder.

154. Plaintiff has no adequate remedy at law.

## AS AND FOR AN TENTH CAUSE OF ACTION
## (DERIVATIVELY BY KINDER and PLAINTIFF INDIVIDUALLY) AGAINST
## SKLAR FOR REPAYMENT OF A REAL ESTATE COMMISSION

155. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 153 as if set forth fully herein.

156. Upon information and belief, Sklar paid herself a real estate commission of $558,000 on the sale of the Putnam Properties out of the funds contained in the Kinder Bank Account.

157.    Sklar was acting as a principal and not a broker in the sale.

158.    Sklar does not and did not possess a license as a real estate broker in this State or any other state and is prohibited by law from being paid or retaining any such fee.

159. By virtue of the foregoing, any funds paid by Sklar through Kinder for brokerage services performed without a license must be repaid and refunded to Kinder and to Plaintiff.

WHEREFORE, Plaintiff demands judgment:

-- On the First Cause of Action against NFMC, KINDER, RAS, and SKLAR, $4,500,000 plus interest from April 11, 2013; for money had and receive by virtue of fraud;

-- On the Second Cause of Action against RAS and SKLAR, $4,500,000 plus interest from April 11, 2013; for money had and receive by virtue of breach of fiduciary duty;

-- On the Third Cause of Action against NFMC and RAS, a full accounting of the affairs of NFMC as maybe relevant to any sums alleged owed to or by Kinder and any payments made to or received from Kinder;

-- On the Fourth Cause of Action against SKLAR and KINDER, a full accounting of the affairs of Kinder as maybe relevant to any sums alleged owed to or by NFMC and any payments made to or received from NFMC;

-- On the Fifth Cause of Action against SKLAR, RAS, NFMC, and KINDER the imposition of constructive trusts over defendant RAS's and defendant Sklar's interests in defendant NFMC; and defendant Sklar's interest in defendant Kinder and any other property in an amount equal to $4,500,000 plus interest from April 11, 2013;

-- On the Sixth Cause of Action against NFMC, $7,976,531.74 for repayment of a loan plus interest as provided by law;

-- On the Seventh Cause of Action against Kinder, Sklar, NFMC and RAS, $4,500,000 plus interest from April 11, 2013 for fraud;

-- On the Eighth Cause of Action against Kinder, a winding-up of the affairs of Kinder;

-- On the Ninth Cause of Action against Kinder, a full accounting of the affairs of Kinder;

-- On the Tenth Cause of action the refund of all brokerage commissions paid by Sklar through Kinder to herself believed to be $558,000 plus interest from the date of payment;

Plus such other and further relief, including legal fees, court cost, and interest as to the Court seems just and proper.

Dated:       New York, NY
             July 17, 2019

                              Yours, etc.

                              JEFFREY A. BARR
                              By:
                              Attorney for Plaintiff
                              225 Broadway, Suite 3504
                              New York, NY 10007
                              (212) 227-1834

NYSCEF DOC. NO. 21    21.0529-shi    Doc 77    Filed 09/10/21    Entered 09/10/21 13:47:57    Main Document    RECEIVED NYSCEF: 07/17/2019

Pg 31 of 47

## VERIFICATION

STATE OF NEW YORK    )
                           )    ss.:
COUNTY OF NEW YORK  )

     LOIS WEINSTEIN being duly sworn deposes and says:

     I have read the foregoing AMENDED COMPLAINT subscribed to me and know the contents thereof, and the same is true to my own knowledge, except as to the matters therein stated upon information and belief, and as to those matters I believe them to be true.

                          LOIS WEINSTEIN

Sworn to before me this
Day of July, 2019

notary public

JEFFREY A BARR
No. 02BA4798570
Qualifie. I in New York County
Certificate Filed in New York County
My Commission Expires 01/31/2014

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| **PRESENT:** **HON. ANDREW BORROK** | **PART** **IAS MOTION 53EFM** |
| *Justice* | |

-------------------------------------------------------X

LOIS WEINSTEIN,

                      Plaintiff,

               - v -

RAS PROPERTY MANAGEMENT LLC,RITA SKLAR, RITA
SKLAR, STEVEN MERO, NINETY-FIVE MADISON
COMPANY LP

                  Defendant.

-------------------------------------------------------X

**INDEX NO.**     653735/2019

**MOTION DATE**     07/21/2020

**MOTION SEQ. NO.**     007

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 007) 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176

were read on this motion to/for                  DISMISS      .

Upon the foregoing documents, the respondents' motion to dismiss the amended verified petition

pursuant to CPLR §§ 3211(a)(1), (a)(3) and (a)(7) is denied, and the petitioners' cross motion (i)

for summary judgment pursuant to CPLR §§ 405, 2125 and 3211(c), and (ii) to extend the time

to serve the amended petition *nunc pro tunc* pursuant to CPLR § 2004, and (iii) for leave to

further amend the petition and file a proposed Second Amended Verified Petition pursuant to

CPLR § 3026 is granted as set forth below.

## FACTS RELEVANT TO THE INSTANT MOTION

This proceeding was originally commenced on June 26, 2019 by Lois Weinstein, a limited

partner of Ninety-Five Madison Company LP (the **Partnership**), seeking, among other things,

judicial dissolution of the Partnership, the appointment of a receiver, and the sale of the

653735/2019  WEINSTEIN, LOIS vs. RAS PROPERTY MANAGEMENT LLC
Motion No. 007

Page 1 of 13

1 of 13

Partnership's primary asset, a 16-story commercial building located at 95 Madison Avenue, New York, New York (the **Building**). In sum and substance, Ms. Weinstein alleged gross mismanagement and waste by RAS Property Management (**RAS**), the Partnership's general partner, and by Rita Sklar, RAS's manager, in the management of the Building. Ms. Weinstein is defined as the **Limited Partner** in the Partnership Agreement (NYSCEF Doc. No. 151 at 1).

Ms. Weinstein died on November 25, 2019. Indisputably, no stay or dismissal of this proceeding took place prior to Ms. Weinstein's death.[1]

Inasmuch as the original Verified Petition in this action alleged derivative claims and because the Estate may not maintain derivative claims on behalf of the Partnership, the court originally denied the motion to substitute Carol E. Keller and Gail Shields as the preliminary executors of the Estate of Lois Weinstein (the **Estate**) for Ms. Weinstein as the petitioner (*see* NYSCEF Doc. No. 116). The respondents then moved to dismiss the petition and the Estate cross-moved for, *inter alia*, leave to file an amended verified petition (the **AVP**) (Mtn. Seq. No. 006). In a decision and order dated June 15, 2020 (the **Prior Decision**), the court granted the Estate's motion to serve the AVP, ordered service within 20 days of thereof, and permitted the Estate to be substituted in place of Ms. Weinstein as petitioner (NYSCEF Doc. No. 141). The court denied the respondents' motion to dismiss in its entirety (*id.*).

Per the AVP, the petitioners now seek on behalf of the Estate, individually, (i) a declaration that the Partnership was dissolved by operation of law, (ii) the appointment of a Receiver to distribute

---

[1] The action was only stayed, briefly, by operation of law upon Ms. Weinstein's death.

**653735/2019  WEINSTEIN, LOIS vs. RAS PROPERTY MANAGEMENT LLC**                **Page 2 of 13**
**Motion No. 007**

2 of 13

the assets of the Partnership to the partners and the Estate in their proportionate shares, (iii) a

writ of assistance to the Sheriff of the City of New York, to eject RAS and Ms. Sklar from all

portions of the Building and (iv) an order requiring the respondents to turn over to the receiver

all records concerning operation of the Partnership (NYSCEF Doc. No. 148). The respondents,

again, argue that the AVP improperly seeks to assert only derivative claims.

On August 7, 2019, (and also prior to Ms. Weinstein's death), in a separate JAMS arbitration

action (the **JAMS Arbitration**) between Vitra, Inc., one of the Building's primary tenants, and

the Partnership, the arbitrator, the Hon. Stephen Crane (Ret.) appointed a receiver with authority

over "all of the landlord's (RAS Property Management LLC's and Ninety-Five Madison LP's)

obligations, responsibilities and prerogatives" (JAMS No. 1425024190; NYSCEF Doc. No. 165,

¶ 14). The appointment was subsequently confirmed by the court (Scarpulla, J.) on October 30,

2019 in "all respects" (*Vitra, Inc. v Ninety-Five Madison Company, LP*, 650656; NYSCEF Doc.

No. 170). On the record before the court, this receivership appears to continue to this day

(NYSCEF Doc. No. 162, ¶ 43; *see also* NYSCEF Doc. No. 171).

Reference is made to a certain Ninety-Five Madison Company Limited Partnership Agreement

(the **Original Partnership Agreement**; NYSCEF Doc. No. 14), dated June 1, 1982, by and

between Rita A. Sklar as general partner and Rita A. Sklar and Lawrence Weinstein, trustees of a

trust U/W of Irving Weinstein for the benefit of Lois Michelle Weinstein as the limited partner,

as amended by the First Amendment to the Ninety-Five Madison Company Limited Partnership

Agreement dated December 28, 2012 (the **Amendment**; the Original Partnership Agreement,

together with the Amendment, hereinafter, collectively, the **Partnership Agreement**; NYSCEF

653735/2019  WEINSTEIN, LOIS vs. RAS PROPERTY MANAGEMENT LLC                              Page 3 of 13
Motion No. 007

3 of 13

NYSCEF DOC. NO. 169    21-10369-shl   Doc 77   Filed 09/10/21   Entered 09/10/21 13:47:57   Main Document    RECEIVED NYSCEF: 10/23/2020

Pg 35 of 47

Doc. No. 64), by and between Rita A. Sklar, as sole member and manager of RAS Property

Management, LLC as the current general partner and Lois M. Weinstein as the current limited

partner. Capitalized terms used but not defined herein shall have the meaning ascribed thereto in

the Partnership Agreement.

Section 9.1 of the Partnership Agreement provides:

> 9.1 <u>Events Which Cause a Dissolution</u>. The Partnership shall continue in full force and effect until December 31, 2050, except that the Partnership shall be dissolved prior thereto upon the happening of any of the following events:
> ...
>      B. The withdrawal or Bankruptcy of a General Partner if the Partnership is not continued in accordance with Section 8.5 hereof;

(NYSCEF Doc. No. 14, § 9.1)

Section 8.5 of the Partnership Agreement provides:

> <u>Effect of Withdrawal; Election to Continue Business</u>. Upon the withdrawal or Bankruptcy of the General Partner, the General Partner or her legal representatives shall promptly notify the Limited Partner of such event and the Partnership shall be dissolved and terminated unless the Limited Partner elects to continue the business of the partnership, either a new general partner shall be admitted to the Partnership or the Partnership shall be reconstituted as a general partnership. ... The withdrawal of the General Partner shall not be deemed effective until the expiration of 90 days from the day on which such notice has been mailed to the Limited Partner....

(NYSCEF Doc. No. 14, § 8.5).

As discussed further below, the Estate maintains that pursuant to New York's Revised Limited

Partnership Act (**RLPA**), the Partnership was dissolved by operation of law either as of

November 5, 2019, i.e., 90 days after a receiver was appointed in the JAMS Arbitration, or on

October 24, 2019, i.e., 120 days after this proceeding was commenced by Ms. Weinstein because

in either such event the general partner "withdrew" and the Partnership was not continued. The

**653735/2019 WEINSTEIN, LOIS vs. RAS PROPERTY MANAGEMENT LLC**      **Page 4 of 13**
Motion No. 007

4 of 13

respondents do not dispute that RAS never sent notice to the Limited Partner (i.e., Ms.

Weinstein) of any event of dissolution and that no election to continue the Partnership was made.

## DISCUSSION

### I.     The AVP is Deemed Timely Filed

As noted above, the Estate was required to serve the AVP within 20 days of the Prior Decision,

i.e., by July 6, 2020 (*id.*).  Due to a technology issue with counsel for petitioners' computer, the

amended petition was not actually filed until 12:24 A.M. on July 7, 2020, i.e., 24 minutes into

the 21st day (NYSCEF Doc. No. 162, ¶ 7).  Although the respondents fail to articulate any actual

prejudice from the 24 minute delay in filing, the respondents argue, as part of the instant motion,

that the court should "not countenance such a clear and unnecessary flouting" of the court's

order (NYSCEF Doc. No. 156 at 1).

The court will not penalize the Estate for filing the AVP 24 minutes late due to what counsel

attests was an issue with his computer scanning technology (Barr Affirm., NYSCEF Doc. No.

162, ¶ 7) as the respondents can show no prejudice from this delay.  The cross motion to extend

the time to file the petition to July 7, 2020 is accordingly granted, *nunc pro tunc*.

### II.     Failure to State a Cause of Action

On a motion to dismiss a petition, the court must accept the facts alleged therein as true, the

petitioner must be accorded every possible favorable inference and the court must determine if

the facts alleged by the petitioner fit within any cognizable legal theory (*Lawrence v Miller*, 11

NY3d 588, 595 [2008]).

653735/2019   WEINSTEIN, LOIS vs. RAS PROPERTY MANAGEMENT LLC                    Page 5 of 13
Motion No. 007

5 of 13

The respondents argue that the AVP should be dismissed because the Estate is only entitled to share in the profits and losses of the Partnership under the Partnership Agreement, and cannot "bind the Partnership" by seeking to remove its general partner, appoint a receiver, dissolve the Partnership or wind up its affairs (NYSCEF Doc. No. 156 at 2). In its opposition papers, the Estate argues that it is not seeking to remove RAS as general partner, but only seeking a declaration that the Partnership was dissolved by operation of law:

> Respondents misconstrue the [AVP] to seek removal of RAS … [R]emoval is not the relief being sought here. The relief is a declaration that RAS ceased to be the general partner on either October 24, 2019 or November 5, 2019 and that because no election was made within 90 days to continue the partnership, [the Partnership] was dissolved as a matter of law [on] January 22, 2020 or February 3, 2020

(NYSCEF Doc. No. 162, ¶ 22, citing AVP, ¶¶ 23-24).

In other words, the AVP seeks as its remedy, distributions of the Partnership assets and the appointment of a receiver because the Partnership *has already been dissolved* (*id.*, ¶ 23 ["Petitioners seek only the distribution to the Estate of the Estate's share of the assets of the partnership as is their rights under sections 9.2 and 9.4 of the Partnership Agreement and NYRPLA § 121-804"]). Inasmuch as this is not explicitly stated in the AVP, the proposed Second Amended Verified Petition makes this clear (NYSCEF Doc. No. 167, ¶ 33).

The RLPA is a "default statute" imposing rules on a limited partnership if the partnership does not explicitly opt out of certain provisions (*A&F Hamilton Heights Cluster, Inc. v Urban Green Mgmt, Inc.*, 186 AD3d 409, 417 [1st Dept 2020]).

653735/2019   WEINSTEIN, LOIS vs. RAS PROPERTY MANAGEMENT LLC
Motion No. 007

Page 6 of 13

6 of 13

Section 121-801 of the RLPA, titled Nonjudicial Dissolution, provides:

> A limited partnership is dissolved and its affairs shall be wound up upon the happening of the first to occur of the following:
>
> (a) at the time, if any, provided in the certificate of limited partnership;
>
> (b) at the time or upon the happening of events specified in the partnership agreement;
>
> (c) subject to any requirement in the partnership agreement requiring approval by any greater or lesser percentage of limited partners and general partners, upon the written consent (1) of all of the general partners and (2) of a majority in interest of each class of limited partners;
>
> (d) an event of withdrawal of a general partner unless (1) at the time there is at least one other general partner and the partnership agreement permits the business of the limited partnership to be carried on by the remaining general partner and that partner does so, or (2) unless the partnership agreement provides otherwise, if within ninety days after the withdrawal of the last general partner, not less than a majority in interest of the limited partners agree in writing to continue the business of the limited partnership and to the appointment, effective as of the date of withdrawal, of one or more additional general partners if necessary or desired; or
>
> (e) entry of a decree of judicial dissolution under section 121-802 of this article.

(NY RLPA § 121-801 [emphasis added]).

Section 121-402(e)(ii) of RLPA provides that a person or entity ceases to be the general partner of a limited partnership if, within 90 days after a receiver is appointed without the general partner's consent or acquiescence, the appointment is not vacated or stayed, or if within 90 days after the expiration of any stay, the appointment is not vacated (NY RLPA, § 121-402[e][ii]).

The Estate maintains that RAS "withdrew" and ceased being the general partner because a receiver was appointed over the Partnership's assets on August 7, 2019 in the JAMS Arbitration and such receivership was not vacated within 90 days (RPLA § 121-402[e][ii]) and, not only was

653735/2019  WEINSTEIN, LOIS vs. RAS PROPERTY MANAGEMENT LLC        Page 7 of 13
Motion No. 007

7 of 13

approval of the Limited Partner for the continuation of the business of the Partnership never obtained, RAS never even sought it. Therefore, the Estate argues the Partnership was dissolved on November 5, 2019 – i.e., approximately 21 days before the Limited Partner died.

In their opposition papers, the respondents argue dissolution never occurred because Section 8.5 of the Partnership Agreement first required the general partner to send notice to the Limited Partner in order for the Limited Partner to elect to continue the Partnership and such notice was never sent. Thus, the respondents argue, the Partnership was never dissolved. The respondents also argue that the Partnership would have been continued if such notice were made because 81% of the shares of "the Limited Partnership shares" are controlled by Rita Sklar.

The arguments fail. The respondents cannot use their own failure to send the required notice as a shield and otherwise frustrate the requirement that consent of the "Limited Partner" be obtained. The express language of Section 8.5 provides that the right to continue the Partnership was that of "the Limited Partner" – i.e., Ms. Weinstein – and not a majority of the limited partnership interests (NYSCEF Doc. No. 64; NYSCEF Doc. No. 14, § 8.5 ["the Partnership shall be dissolved and terminated *unless the Limited Partner* elects to continue the business of the partnership" [emphasis added]). In any event, on the record before the court, Ms. Sklar was not during the relevant time period, a limited partner. Pursuant to the Partnership Agreement she was originally the general partner, and then she assigned her general partnership interest to RAS.

Under the RLPA, a person or entity also ceases to be a general partner of a limited partnership if, *inter alia*, within 120 days after the commencement of any proceeding against the general

653735/2019   WEINSTEIN, LOIS vs. RAS PROPERTY MANAGEMENT LLC                         Page 8 of 13
Motion No. 007

8 of 13

partner seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any statute, law, or regulation, the proceeding has not been dismissed or stayed, or if, within 90 days after the expiration of any such stay, the proceeding has not been dismissed, unless otherwise provided in the partnership agreement or approved by all partners (NY RPLA § 121-402[e][i]).

Ms. Weinstein commenced this proceeding on June 26, 2019 seeking the judicial dissolution of the Partnership and the appointment of a receiver. There was no stay or dismissal of the action prior to the 120th day following June 26, 2019, which was October 24, 2019. The action was stayed only on November 25, 2019 when Ms. Weinstein died, i.e., via the automatic stay imposed upon the death of any party. Therefore, the petitioners argue that the Partnership was dissolved as a matter of law under both Section 8.5 of the Original Partnership Agreement and RPLA Section 121-801(d).

In their opposition papers, the Respondents argue that Section 121-402(e)(i) of the RLPA only applies to actions brought *against* the general partner, and not to actions against the limited partnership itself, and that it is, therefore, inapplicable. The argument is unavailing. The original verified petition was properly brought by Ms. Weinstein *against RAS* and Ms. Sklar, seeking RAS's removal, i.e., it was "a proceeding against the general partner," the 120th days from the date of commencement occurred prior to Ms. Weinstein's death, and there was no election to continue the business of the Partnership.

653735/2019   WEINSTEIN, LOIS vs. RAS PROPERTY MANAGEMENT LLC                    Page 9 of 13
Motion No. 007

9 of 13

In fact, both dissolution dates, whether triggered by Section 121-402(e)(i) or (e)(ii), occurred prior to Ms. Weinstein's death on November 25, 2019. Accordingly, the Estate may properly maintain the instant action to, among other things, distribute the assets of the Partnership to the limited partners and the Estate in their proportionate shares.

To the extent that the respondents broadly maintain that neither Section 121-402(e)(i) or (e)(ii) is applicable because those provisions only apply "unless otherwise provided in the partnership agreement" (NY RLPA § 121-402[e]), this argument also fails. The Partnership Agreement does not provide an exhaustive list of events which constitute a general partner withdrawal or otherwise explicitly opt-out of Section 121-402(e) (*A&F Hamilton Heights Cluster,* 186 AD3d at 417). In fact, the Partnership Agreement addresses what happens upon the withdrawal of the general partner – i.e., dissolution unless there is an election to continue the business of the partnership by the Limited Partner.

### III.    Summary Judgment

The Estate maintains that summary judgment is appropriate in this case as no issues of fact are actually in dispute. The respondents argue that the Estate's cross motion for summary judgment, brought pursuant to CPLR 3211(c), should be denied as procedurally improper because issue has not been joined (NYSCEF Doc. No. 176 at 14). Although, "[o]rdinarily, a summary judgment motion brought prior to service of an answer should be dismissed as premature, ... the CPLR expressly confers upon *nisi prisi* courts the power to dispense with responses to amended pleadings, in their discretion" (*Stephanie R. Cooper, P.C. v Robert*, 78 AD3d 572 [1st Dept 2010] [summary judgment may be granted prior to filing of answer where defendant had notice of

653735/2019  WEINSTEIN, LOIS vs. RAS PROPERTY MANAGEMENT LLC          Page 10 of 13
Motion No.  007

10 of 13

plaintiff's contentions and ample opportunity to submit proof in opposition]; *see also* CPLR §

3211[c]).

Inasmuch as the respondents suggest that there are issues of fact requiring the denial of summary

judgment as to (i) their good faith belief that the provisions LRPA Section 121-402(e) were

inapplicable, and (ii) the parties' intent to "otherwise provide" for the removal of the general

partner in the Partnership Agreement, these are not factual issues requiring denial of the

summary judgment motion. The fact that the respondents may have believed that RLPA Sections

121-402(e)(i) and (e)(ii) were inapplicable is simply irrelevant if they did not provide otherwise

in their Partnership Agreement (*see A&F Hamilton Heights Cluster,* 186 AD3d at 417).

Furthermore, nothing in the Partnership Agreement provides otherwise.  To the contrary, Section

9.1 of Article IX, Dissolution and Termination of the Partnership, provides:

> 9.1 <u>Events Which Cause a Dissolution</u>.  The Partnership shall continue in full force and effect until December 31, 2050, except that the Partnership shall be dissolved prior thereto upon the happening of any of the following events:
> ...
>> B.  The withdrawal or Bankruptcy of a General Partner if the Partnership is not continued in accordance with Section 8.5 hereof;

(NYSCEF Doc. No. 14, § 9.1)

Because, as discussed above, the general partner did not send out notice seeking to continue the

business of the Partnership and there has been no election by the Limited Partner to continue the

business of the Partnership, the Partnership was dissolved.

For the avoidance of doubt, the respondents' motion for sanctions against the Estate is denied.

653735/2019   WEINSTEIN, LOIS vs. RAS PROPERTY MANAGEMENT LLC                    Page 11 of 13
Motion No. 007

11 of 13

Accordingly, it is

ORDERED that the respondents' motion is denied in its entirety; and it is further

ORDERED that the branch of petitioners' cross motion that seeks leave to extent time to serve the amended verified petition is granted, and such time is extended to 21 days, *nunc pro tunc*, and it is further

ORDERED that the branch of petitioners' cross motion that seeks summary judgment in petitioners' favor on and a declaratory judgment with respect to the subject matter of the instant petition is granted; and it is further

ADJUDGED and DECLARED that Ninety-Five Madison Company LP was dissolved by operation of law; and it is further

ORDERED that the parties are directed to submit proposed orders to the court for the liquidation of the Partnership in accordance with the terms of the Partnership Agreement and the RLPA on notice on or before November 23, 2020; and it is further

ORDERED that the branch of the petitioners' cross motion seeking  leave to amend is denied as moot.

20201023134325ABORROKD9D5056889B4974B9854BFB807FC86B

__10/23/2020__
**DATE**

_____                                    _____
                                              ANDREW BORROK, J.S.C.

653735/2019   WEINSTEIN, LOIS vs. RAS PROPERTY MANAGEMENT LLC                    Page 12 of 13
Motion No. 007

12 of 13

| CHECK ONE: | [X] CASE DISPOSED | | [ ] NON-FINAL DISPOSITION | |
|---|---|---|---|---|
| | [ ] GRANTED | [ ] DENIED | [X] GRANTED IN PART | [ ] OTHER |
| APPLICATION: | [ ] SETTLE ORDER | | [ ] SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | [ ] INCLUDES TRANSFER/REASSIGN | | [ ] FIDUCIARY APPOINTMENT | [ ] REFERENCE |

653735/2019   WEINSTEIN, LOIS vs. RAS PROPERTY MANAGEMENT LLC
Motion No.  007

Page 13 of 13

13 of 13

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X

CAROL E. KELLER and GAIL SHIELDS, as
Preliminary Executors of the Estate of Lois Weinstein,
Individually,

                           Plaintiffs,

       -against-

RAS PROPERTY MANAGEMENT, LLC,
RITA A. SKLAR, RITA SKLAR, STEVEN
MERO AS TRUSTEES, AND NINETY-FIVE
MADISON COMPANY, L.P.

                          Defendants.
------------------------------------------------------------------X

Index No. 653735/2019
Andrew Borrok, J.S.C.
IAS Part 53

**NOTICE OF STAY**

PLEASE TAKE NOTICE that on December 10, 2020, the Appellate Division, First

Department, issued an order granting a stay of the within action pending the determination of the

appeal brought by Defendants RAS Property Management, LLC, Rita A. Sklar and Ninety-Five

Madison Company, L.P. before the Appellate Division, First Department, of this Court's

Decision and Order dated October 23, 2020.  A copy of the order is annexed.

Dated: January 13, 2021

                           VERRILL DANA LLP

                           By:    /s/ Robert Laplaca
                           Robert Laplaca
                           50 Main Street, Suite 1000
                           White Plains, New York 10606
                           P: (203) 222-3110
                           F: (203) 226-8025
                           rlaplaca@verrill-law.com

                           *Attorneys for Defendants RAS Property*
                           *Management, LLC, Rita A. Sklar, Rita Sklar*
                           *and Ninety-Five Madison Company, L.P.*

14576991

21-10529-shl    Doc 77    Filed 09/10/21    Entered 09/10/21 13:47:57    Main Document
Pg 46 of 47

# Supreme Court of the State of New York
## Appellate Division, First Judicial Department

Present – Hon.    Dianne T. Renwick,                                    Justice Presiding,
                  Ellen Gesmer
                  Jeffrey K. Oing
                  Anil C. Singh
                  Manuel J. Mendez,                                     Justices.

---

| | |
|---|---|
| Carol E. Keller and Gail Shields, as Preliminary Executors of the Estate of Lois Weinstein, Individually, | Motion No.  **3533** |
| | Index No.  653735/19 |
| | Case No.  2020-04298 |

Plaintiffs-Respondents,

-against-

RAS Property Management, LLC, Rita A.
Sklar, Rita Sklar, as Trustee, and Ninety-Five
Madison Company, L.P.,
               Defendants-Appellants,

Steven Mero, as Trustee,
               Defendant.

---

An appeal having been taken to this Court from an order of the Supreme Court, New York County, entered on or about October 23, 2020,

And defendants-appellants, RAS Property Management, Rita A. Sklar and Ninety-Five Madison Company, LP, having moved to stay enforcement of the aforesaid order, and all proceedings in the underlying action, pending hearing and determination of the appeal taken therefrom,

Now, upon reading and filing the papers with respect to the motion, and due deliberation having been had thereon,

21-10529-shl   Doc 77   Filed 09/10/21   Entered 09/10/21 13:47:57   Main Document

It is ordered that the motion is granted on condition that the appellants perfect the appeal for the May 2021 Term of this Court.

ENTERED: December 10, 2020

Susanna Molina Rojas
Clerk of the Court