Timothy Karcher
Reuven Klein (admitted *pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Counsel to RAS Property Management, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re*<br><br>**NINETY-FIVE MADISON COMPANY, L.P.,**<br><br>**Debtor.** | Chapter 11<br><br>Case No. 21-10529 (DSJ) |

### OBJECTION TO APPLICATION OF DEBTOR NINETY-FIVE MADISON COMPANY, L.P. FOR AN ORDER AMENDING THE ORDER PURSUANT TO 11 U.S.C §§ 327(a) AND 328(a) AUTHORIZING THE RETENTION AND EMPLOYMENT OF BRANTON REALTY SERVICES LLC AS REAL ESTATE BROKER AND SALES AGENT

To the Honorable David S. Jones, United States Bankruptcy Judge:

RAS Property Management, LLC ("RAS")[2] files this objection to *Application of Debtor Ninety-Five Madison Company, L.P. For An Order Amending the Order Pursuant to 11 U.S.C §§ 327(a) and 328(a) Authorizing the Retention and Employment of Branton Realty Services LLC as Real Estate Broker and Sales Agent Nunc Pro Tunc to August 18, 2022* [ECF No. 234] (the "Supplemental Application") of Ninety-Five Madison Company LP, (the "Debtor"), and respectfully states as follows:

---

[1] The Objection Deadline was extended to May 4 with the consent of the Debtor's counsel.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Supplemental Application (as defined herein).

## **BACKGROUND**

1. RAS is owned by Ms. Rita Sklar. Ms. Sklar has concerns regarding the governance of the Debtor, which she has conveyed to the Court, as well as the other General Partners and Limited Partners of the Debtor. Ms. Sklar is concerned that RAS has not been informed of certain actions by the General Partners and that RAS has been shut out of all decision-making processes, and that corporate formalities are not being followed by the Debtor. By order dated April 12, 2023 [ECF. 225], the Court encouraged Ms. Sklar to retain counsel. In response to that order, RAS recently retained Proskauer to assist in advancing the interests of RAS and Ms. Sklar, and by extension, helping to advance this chapter 11 case.

2. In addition, Ms. Sklar has asked Proskauer Partner, Ronald Sernau, to serve as RAS's Designee, which would allow him to represent the interests of RAS in any partnership matter. Mr. Sernau and Proskauer are in the process of finalizing and effectuating that request. RAS will provide notice of such designation once it is finalized.

## **BRS RETENTION**

3. By order dated August 31, 2022, BRS was retained by the Debtor to provide certain real estate brokerage services pursuant to an agreement between the Debtor and BRS (the "Existing Agreement"). Significantly, the Existing Agreement contains a standard indemnification provision. RAS does not object to the standard indemnification of BRS.

4. However, as set forth in the Supplemental Application, BRS now is seeking expanded and supplemental protections, which are seemingly designed to insulate BRS from claims that may arise because of the Debtor's failure to follow appropriate procedures in accordance with its governing documents.

5. These additional protections and restrictions are set forth in a letter, dated April 18,

2022 (the "Amendment of Listing Agreement"), which was signed by two of the three General Partners of the Debtor, and which RAS was only made aware of when the Supplemental Application was served upon Ms. Sklar.

6.     To RAS's knowledge, no meeting of all the General Partners was held in connection with the determination to enter the Amendment of Listing Agreement, and no prior notice was given to the General Partners. Moreover, to RAS's knowledge, the particulars of the Amendment of Listing Agreement were not provided to all General Partners until *after* it had been executed and filed with the Court. Nevertheless, the Amendment of Listing Agreement contains provisions that seemingly affect substantive rights of all the General Partners, including RAS.

7.     For example, the Amendment of Listing Agreement provides that BRS "may rely upon, and proceed with, any approval direction, instruction or other communication [BRS] receives from any two of the three General Partners" but does not require BRS (or the Debtor) to state that ***all*** the General Partners were involved or participated in the deliberation or decision making. On the contrary, under the terms of the Amendment of Listing Agreement, BRS is protected and indemnified even if two General Partners are acting outside the scope of the Partnership Agreement and shutting out the third General Partner. By the time the third General Partner has become aware of the actions taken (or not taken) by BRS, significant time may have passed, and the rights of the parties (including the Debtor and the limited partners) may have been substantially and adversely affected, potentially depriving the estate and others of significant value.

8.     By this Objection, RAS asks the Court to "Stop, Look, and Listen" before entering an order affecting and altering substantive rights of non-debtors. Indeed, the needs and concerns of RAS would be better served by ensuring the Debtor meaningfully includes ***all its General***

***Partners*** (or their Designees) in discussions regarding the Debtor's path forward and requiring such disclosure to BRS in connection with any proposed transaction. This would alleviate the concerns of RAS and is a far superior and equitable approach to providing BRS a "safety net" against governance failures.[3] As set forth more fully below, involvement of each of the General Partners is clearly required by the Debtor's governing documents. As such, the Supplemental Application is objectionable and should be denied.

## **OBJECTION**

9. Section 4.01 of the Amended and Restated Limited Partnership Agreement of Ninety-Five Madison Company, L.P., dated June 2021 (as amended, the "Partnership Agreement"), annexed hereto as **Exhibit A,** governs the **Exercise of Management** of the Debtor and provides:

> **Exercise of Management**: The Members hereby designate RAS, Michael Sklar and Sharan Sklar, each to serve as a General Partner of the Partnership. Except as otherwise provided herein, RAS, Michael Sklar and Sharan Sklar, shall *jointly manage, conduct and make all decisions regarding the operations and affairs of the Company in accordance with this Agreement*.

Partnership Agreement at 4.01.

10. Moreover, Section 14.09 of the Partnership Agreement, entitled **Further Assurances**, provides

> **Further Assurances**: Each of the parties hereto agrees to execute, acknowledge, deliver, file, record and publish such further certificates, instruments, agreements, and other documents and to take all such further action as may be required by law or *deemed by the General Partner to be necessary or useful in furtherance of the Partnership's purposes and in order to carry out the provisions of this Agreement*.

Partnership Agreement at 14.09 (emphasis supplied).[4]

---

[3] As noted above, Proskauer Partner Ronald Sernau is in the process of being selected as RAS's Designee.

[4] "General Partner" is defined to include RAS.

11.     While a subsequent amendment to the Partnership Agreement, dated June 2022 (the "June 2022 Amendment"), amended the Partnership Agreement to provide that "All decisions made hereafter shall be by the vote of a majority of the General Partners, or their Designee," the June 2022 Amendment did not eliminate the requirements related to the **Exercise of Management** or **Further Assurances**, cited above.  A copy of the June 2022 Amendment is annexed here as **Exhibit B**.   The partnership is still required to conduct its business with the input of each of the General Partners, even though the June 22 Amendment provides that a vote of only a majority is required to ratify a decision.[5]

12.     The Amendment of Listing Agreement seeks to sidestep such governance requirements (such as having all General Partners participate in meetings) and essentially provides BRS with protection against actions that are taken outside the scope of the Partnership Agreement. The requested relief is more than just a routine request for indemnification (which BRS already has).  The relief provides an end-run around the Debtor's corporate formalities.

13.     BRS's perceived need for the protections and restrictions in the Amendment of Listing Agreement is a symptom of larger issues concerning the Debtor's governance and operations.   RAS believes the Debtor's failure to adhere to the requirements of the Partnership Agreement has led to misunderstandings and disagreements regarding the path forward among the General Partners, and that such disagreements and misunderstandings are likely to continue if the General Partners are given authority to gloss over the management requirements of the Partnership Agreement with side-letters.  This will lead to further confusion and continued disputes.

14.     RAS believes that appointment of Mr. Sernau as Designee for RAS may alleviate

---

[5] Counsel to RAS is continuing to review the Partnership Agreement and the June 2022 Amendment and reserves all rights with respect thereto.

many of the concerns regarding governance and help this case move forward. The June 2022 Amendment to the Partnership Agreement provides for the appointment of a Designee to represent the interest "in any partnership matter and that individual will be authorized to make decisions of their behalf." This provision of the June 2022 would be rendered meaningless if the partnership is not required to meet and confer with all of its General Partners or their Designees prior to making decisions.[6]

15. In short, approval of the requested relief, without modification, will only serve to foster confusion, deprive General Partners of their rights under the Partnership Agreement, and will hinder progress in this chapter 11 case.

16. Accordingly, RAS requests that the court deny the Application, without prejudice, and to allow the parties time to confer and determine what progress they can make with Mr. Sernau as RAS's Designee.

WHEREFORE, RAS respectfully requests the court deny the Application and grant other such relief as is just and proper.

Dated: May 4, 2023
     New York, New York

Respectfully submitted,

*/s/ Timothy Karcher*

Timothy Karcher
Reuven Klein (admitted *pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Counsel to RAS Property Management, LLC*

---

[6] Likewise, the June 2022 Amendment provides for the payment of expenses of such Designees. In addition, Designees have been provided indemnification by the partnership, and RAS's Designee is entitled to receive the same benefit.

**EXHIBIT A**

# AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT
## of
## NINETY-FIVE MADISON COMPANY, L.P.

This Amended and Restated Limited Partnership Agreement, dated as of June __, 2021, is made by and between RAS Property Management, LLC ("RAS"), Michael Sklar Management LLC ("Michael Sklar), and Sharan Sklar Management LLC ("Sharan Sklar"), each as a general partner (the "General Partner"), and the partners listed and identified in Schedule A hereto, as limited partners (the "Limited Partners" and together with the General Partner, the "Partners").

WHEREAS, NINETY-FIVE MADISON COMPANY, L.P. (the "Partnership") is a limited partnership under the New York Revised Limited Partnership Act;

WHEREAS, certain of the Partners entered into the Partnership's Limited Partnership Agreement on June 1, 1982, as amended by that certain First Amendment dated as of December 28, 2012 (the "Original Agreement"); and

WHEREAS, prior to the date of this Agreement, Rita A. Sklar, sole surviving trustee of a trust U/W of Irving Weinstein for the benefit of Lois Michelle Weinstein, assigned all of such trust's limited partner interest in the Limited Partnership directly to Lois M. Weinstein and Lois M. Weinstein was admitted as the Limited Partner under the Original Agreement;

WHEREAS, prior to the date of this Agreement, Rita A. Sklar assigned all of the General Partner interest in the Limited Partnership directly to RAS, and RAS was admitted as the General Partner under the Limited Partnership Agreement;

WHEREAS, prior to the date of this Agreement and after giving effect to further assignments: (i) RAS was the General Partner with a General Partner interest of 32.64%; (ii) the Estate of Lois Weinstein was a Limited Partner with a Limited Partner interest of 18.36%; (iii) Issue Trust for the benefit of Hannah Rose (Sklar) Gettinger (Rita Sklar, Trustee) was a Limited Partner with a Limited Partner interest of 15.68%; (iv) Issue Trust for the benefit of Ruby Hilene Sklar and Issue Trust for the benefit of Sadie Pearl Sklar (Rita Sklar, Trustee) was a Limited Partner with an aggregate Limited Partner interest of 15.68%; (v) Issue Trust for the benefit of Hannah Rose (Sklar) Gettinger (Lois Weinstein, Settlor) was a Limited Partner with a Limited Partner interest of 8.82%; and (vi) Issue Trust for the benefit of Ruby Hilene Sklar and Issue Trust for the benefit of Sadie Pearl Sklar (Lois Weinstein, Settlor) was a Limited Partner with an aggregate Limited Partner interest of 8.82%;

WHEREAS, prior to the date of this Agreement, RAS assigned its General Partner interest in the Limited Partnership as follows: (i) to Michael Sklar - 1% General Partner interest; (ii) to Sharan Sklar - 1% General Partner interest; (iii) to Rita A. Sklar – 29.64% Limited Partner interest, and (iv) retained a 1% General Partner interest, and Michael Sklar and Sharan Sklar were each admitted as a General Partner under the Limited Partnership Agreement;

WHEREAS, after giving effect to the above transfers of interests and upon the date hereof, the Partners are as follows: (i) RAS is a General Partner with a General Partner interest of 1%; (ii) Michael Sklar, is a General Partner with a General Partner interest of 1%; (iii) Sharan

Sklar, is a General Partner with a General partner interest of 1%; (iv) the Estate of Lois Weinstein is a Limited Partner with a Limited Partner interest of 18.36%; (v) Rita A. Sklar is a Limited Partner with a Limited Partner interest of 29.64%; (vi) Issue Trust for the benefit of Hannah Rose (Sklar) Gettinger (Rita Sklar, Trustee) is a Limited Partner with a Limited Partner interest of 15.68%; (vii) Issue Trust for the benefit of Ruby Hilene Sklar and Issue Trust for the benefit of Sadie Pearl Sklar (Rita Sklar, Trustee) is a Limited Partner with an aggregate Limited Partner interest of 15.68%; (viii) Issue Trust for the benefit of Hannah Rose (Sklar) Gettinger (Lois Weinstein, Settlor) is a Limited Partner with a Limited Partner interest of 8.82%; and (ix) Issue Trust for the benefit of Ruby Hilene Sklar and Issue Trust for the benefit of Sadie Pearl Sklar (Lois Weinstein, Settlor) is a Limited Partner with an aggregate Limited Partner interest of 8.82%;

**WHEREAS**, the Partners desire to amend and restate the Original Agreement.

**NOW THEREFORE**, in consideration of the mutual covenants and agreements contained herein and other good and valuable consideration, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

1.01  Whenever used in this Agreement , the following terms shall have the meanings respectively assigned to them in this Article I:

"Affiliate" means any person controlling, controlled by or under common control with another person).

"Accountant" means the public accountant regularly servicing the Partnership.

"Agreement" means this Agreement of Limited Partnership, as it may be amended from time to time.

"Assign" or "Assignment" means a valid sale, exchange, transfer or other disposition of all or any portion of an Interest.

"Assignor" means a Partner who makes an Assignment and "Assignee" means a person who receives an Assignment.

"Bankruptcy" means with respect to any Partner (in the capacity in which such person is a partner), such Partner making an assignment for the benefit of creditors, becoming a party to any liquidation or dissolution action or proceeding with respect to such Partner or any bankruptcy, reorganization, insolvency or other proceeding for the relief of financially distressed debtors with respect to such Partner, or a receiver, liquidator, custodian or trustee being appointed for such Partner or a substantial part of such Partner's assets and, if any of the same occur involuntarily, the same is not dismissed, stayed or discharged within 60 days; or the entry of an order for relief against such Partner under Title 11 of the United States Code.

"Capital Account" means, as to each Partner, the amount of such Partner's Capital Contribution, plus the share of profits allocated to such Partner pursuant to Article VII hereof,

less the sum of (a) the share of losses allocated to such Partner pursuant to Article VII hereof and (b) cash distributions made to such Partner pursuant to Articles VII and IX hereof.

"Capital Contribution" means the property contributed to the Partnership by each Partner pursuant to Section 3.01 hereof. Any reference in this Agreement to the Capital Contribution of a Partner shall include the contributions to the capital of the Partnership made by any predecessor in interest of such Partner in respect of such Interest.

"Capital Proceeds" means any net cash proceeds arising out of the sale or disposition of the Property or the Partnership's other real property assets and/or the financing or refinancing of the Property or the Partnership's other real property assets after the establishment of such reserves as the General Partner may in good faith deem advisable.

"Certificate" means the Certificate of Limited Partnership filed with the Clerk of New York County, New York, as it may be amended from time to time.

"Code" means the Internal Revenue Code of 1954, as amended from time to time, or any successor statute.

"Decider" means Jeff Barringer, Esq. or such other person as shall be appointed in accordance with Section 4.06.

"Entity" means any general partnership, limited partnership, corporation, joint venture, estate, trust, business trust, cooperative or association.

"General Partner" means RAS, Michael Sklar LLC and Sharan Sklar LLC, or any person who becomes a Substitute Partner in respect of any portion of the General Partner Interest of the General Partner as provided in Article VIII hereof.

"Interest" means the interest in the Partnership of a Partner.

"Limited Partner" means the partners listed and identified in Schedule A hereto, and any person who becomes a Substitute Partner in respect of any portion of the Limited Partner Interest of the Limited Partner as provided in Article VIII hereof.

"Partner" or "Partners" means either or both of the General Partners and the Limited Partners.

"Partnership" means the limited partnership governed by this Agreement, as such limited partnership may from time to time be reconstituted.

"Percentage Interest" means the percentage interest from time to time of any Partner in profits and losses and cash distributions by the Partnership.

"Person" means any individual or entity, and the heirs, executors, administrators, legal representatives, successors and assigns of such person as the context may require.

"Prime Rate" means the rate of interest announced from time to time by Citibank, N.A. as its "prime rate" or its equivalent.

"Profits and Losses" means the annual net income or net loss of the Partnership for the fiscal year as determined by the General Partner with the advice of the Accountant in determining income, gains, expenses, deductions or losses, as the case may be, reported by the Partnership for Federal income tax purposes.

"Property" means the land located at 95 Madison Avenue, New York, New York, and the improvements constructed thereon.

"Substitute Partner" means any person who is admitted to the Partnership as a Substitute Partner under the provisions of Section 8.03 hereof.

"Uniform Act" means the New York Uniform Limited Partnership Act as adopted and amended from time to time by the State, or any successor statute governing the operation of limited partnerships. Each definition herein shall be deemed to refer to the singular, plural, masculine, feminine or neuter as the context requires.

"Unanimous Decision" shall have the meaning specified in Section 4.02.

## ARTICLE II
### GENERAL

2.01    Formation. The Partners have previously formed the Partnership pursuant to the Uniform Act of the State of New York. This Agreement shall become effective upon the signing by the Partners.

2.02    Name and Principal Place of Business. The name of the Partnership shall be NINETY-FIVE MADISON COMPANY, L.P., and the location of its principal place of business shall be 95 Madison Avenue, Suite 609, New York, New York 10016 or such other place as the General Partners deem desirable from time to time and designated by notice to the other Partners.

2.03    General and Limited Partners. The General Partners shall be RAS, Michael Sklar and Sharan Sklar. The Limited Partners shall be the partners listed on Schedule A hereto. Except as otherwise provided herein, the General Partners shall have the sole authority to act for and to bind the Partnership.

2.04    Purpose. The specific business and purpose of the Partnership is investment in real property either through direct ownership or through the acquisition of interest in an Entity. In connection therewith, the Partnership shall have the power to (A) make and perform contracts and other undertakings and engage in any and all activities and transactions as may be necessary, incidental or advisable in furtherance of such business and purpose, including, but not limited to, the purchase, sale, transfer, other disposition, mortgage, pledge and exercise of all rights, powers, privileges and other incidence of ownership with respect to the Property or interest in an Entity, (B) liquidate or dissolve the Partnership, (C) borrow or raise money and issue evidences of indebtedness without limitation as to amount or manner and (D) carry on any and all activities related to any of the foregoing.

2.05  Execution and Delivery of Certificates and other Instruments. The Partners shall execute, acknowledge, and deliver and the General Partners shall file and record, or cause to be filed and recorded, all such certificates, notices, statements, or other instruments, to the extent and as the same may be required by law for the continuation of a limited partnership under the laws of the State of New York and for the qualification or authorization of the Partnership to do business as a limited partnership in any other jurisdiction where the Partnership's activities may require it to be so qualified or authorized.

2.06  Duration. The Partnership shall continue in full force and effect until the dissolution and termination of the Partnership pursuant to Article IX hereof.

2.07  Fiscal Year.  The fiscal year of the Partnership shall be the calendar year.

# ARTICLE III
## CAPITAL CONTRIBUTIONS

3.01  Contributions. The Partners acknowledge that their respective capital contributions to the Partnership as of the date hereof are reflected within the Partnership's books and records.

3.02  Treatment of Other Advances. If any Partner shall advance funds to the Partnership other than the amount of such Partner's Capital Contribution, the amount of such advance shall not be considered a contribution to the capital of the Partnership, but shall be deemed a loan to the Partnership repayable upon such commercially reasonable terms as may be agreed upon by the General Partners and the Partner making such advance. Notice of any such loan and the terms thereof shall be given to all Partners.

3.03  No Additional Contributions to Capital. The Partners shall not be required to make any further contributions to the Partnership capital and are not subject to any further assessments in respect to their Partnership interests.

3.04  Interest on Capital Contributed. No Partner shall receive any interest on such Partner's capital contribution.

3.05  Capital Accounts: No Interest; Withdrawal.

(a)  The capital of the Partnership shall be the aggregate amount of cash or property contributed by the Partners as set forth in Section 3.01 hereof. No interest shall be paid on any Capital Contribution.

(b)  No Partner shall have the right to demand a return of such Partner's Capital Contribution, except as otherwise provided in this Agreement. Moreover, the General Partners shall not be personally liable for the return of the Capital Contribution of any Partner, or any portion thereof, it being expressly understood that any such return shall be made solely from assets of the Partnership. Further, the Limited Partners shall not be required to pay to the Partnership any deficit in its Capital Account upon dissolution or otherwise, except as provided by law, with respect to third-party creditors of the

Partnership. No Partner shall have the right to demand or receive property other than cash for such Partner's interest. Each of the Partners does hereby agree to, and does hereby, waive any right such Partner may otherwise have to cause any asset of the Partnership to be partitioned or to file a complaint or institute any proceeding at law or in equity seeking to have any such asset partitioned

3.06   Liability of Limited Partners. Except as provided in Section 5.03(c) hereof, the Limited Partners shall not be liable for any debts, liabilities, contracts or obligations of the Partnership, except as provided by law.

## ARTICLE IV
## MANAGMENT

4.01   Exercise of Management. The Members hereby designate RAS, Michael Sklar and Sharan Sklar, each to serve as a General Partner of the Partnership. Except as otherwise provided herein, RAS, Michael Sklar and Sharan Sklar, shall jointly manage, conduct and make all decisions regarding the operations and affairs of the Company in accordance with this Agreement.

4.02   Unanimous Decisions. All Unanimous Decisions (defined below) shall require the prior unanimous approval of all of the General Partners. Each General Partner shall have the right to propose a Unanimous Decision. No General Partner shall have any right or power to make any commitment or engage in any undertaking on behalf of the Partnership in respect of a Unanimous Decision, unless or until the same has been approved in accordance with the preceding sentence.   In the event that either: (i) one General Partner rejects a proposed Unanimous Decision and the other two General Partners approve such Unanimous Decision; or (ii) one or more General Partners refuse to provide an affirmative response to a Unanimous Decision within ten (10) days (or such earlier or later time set forth in Section 4.03) following its proposal by a General Partner, then such proposed Unanimous Decision shall be deemed to have been deadlocked ("Unanimous Decision Deadlock"). Upon the occurrence of a Unanimous Decision Deadlock, the General Partners shall submit the Unanimous Decision Deadlock to the Decider and the Decider shall either approve or disapprove of the Partnership taking the action which is the subject of such Unanimous Decision. The Unanimous Decision Deadlock may be referred or delivered by email or facsimile to the Decider by notice thereof (the "Deadlock Notice") and any of the General Partners may send a Deadlock Notice. The Deadlock Notice shall: (i) describe the proposed Unanimous Decision being addressed, (ii) the positions and/or proposed answer of each of the General Partners, (iii) the date the Unanimous Decision was raised for consideration; and (iv) the deadline for which Unanimous Decision Deadlock must be resolved. The Decider shall make a decision with respect to the Unanimous Decision Deadlock on or before the earlier of: (A) the deadline proscribed in Section 4.03; or (B) the deadline proscribed in the Deadlock. Each decision of the Decider shall be final and binding on the General Partners and the Partnership, unless otherwise agreed to by the unanimous consent of the General Partners. The Decider shall have the authority to issue decisions respecting the interpretation of the Agreement and to determine questions of process where there is no unanimous agreement of the General Partners.

4.03   The term "Unanimous Decision" as used in this Agreement means any decision with respect to the following matters:

(a)      causing or binding the Partnership to expend an amount in excess of $50,000 per instance for such amounts in excess of $50,000, there shall be a 24 hour deadline on the General Partners deciding whether to give or withhold approval and, if the General Partners fail to agree within such time period, the Decider shall resolve such Unanimous Decision Deadlock within 24 hours of receipt of such Unanimous Decision Deadlock Notices;

(b)      selecting and retaining the managing agent for the Property shall be decided within two (2) weeks from the issue being first raised by Michael Sklar, a General Partner, and if the General Partners fail to agree within such time period, the Decider shall resolve such Unanimous Decision Deadlock within 48 hours of receipt of notice of such Unanimous Decision Deadlock;

(c)      selecting and retaining the leasing agent for the Property shall be decided within two (2) weeks from the issue being first raised by Sharon Sklar, a General Partner, and if the General Partners fail to agree within such time period, the Decider shall resolve such Unanimous Decision Deadlock within 48 hours of receipt of notice of such Unanimous Decision Deadlock;

(d)      selecting and retaining an architect in connection with the Property shall be decided within two (2) weeks from the issue being first raised by Michael Sklar, a General Partner, and if the General Partners fail to agree within such time period, the Decider shall resolve such Unanimous Decision Deadlock within 48 hours of receipt of notice of such Unanimous Decision Deadlock;

(e)      approval of the terms and conditions of any Property financing or any amendment, modification or refinancing thereof and selecting a lender in connection therewith shall be decided within four (4) weeks from the issue being first raised by a General Partner and if the General Partners fail to agree within such time period, the Decider shall resolve such Unanimous Decision Deadlock within 48 hours of receipt of notice of such Unanimous Decision Deadlock;

(f)      agreeing and accepting lease terms for individual lessees in connection with the Property shall be decided within two (2) days from the issue being first raised by Sharon Sklar, a General Partner, and if the General Partners fail to agree within such time period, the Decider shall resolve such Unanimous Decision Deadlock within 48 hours of receipt of notice of such Unanimous Decision Deadlock;

(g)      agreeing design proposals/scope of work in connection with the Property shall be decided within three (3) days from the issue being first raised by Michael Sklar, a General Partner, and if the General Partners fail to agree within such time period, the Decider shall resolve such Unanimous Decision Deadlock within 24 hours of receipt of notice of such Unanimous Decision Deadlock;

(h)      agreeing on project budgets in connection with the Property shall be decided within five (5) days from the issue being first raised by a General Partner and if the General Partners fail to agree within such time period, the Decider shall resolve such

Unanimous Decision Deadlock within 48 hours of receipt of notice of such Unanimous Decision Deadlock;

(i)     agreeing on a marketing plan for the leasing agent in connection with the Property shall be decided within four (4) days from the issue being first raised by, Sharan Sklar, a General Partner, and if the General Partners fail to agree within such time period, the Decider shall resolve such Unanimous Decision Deadlock within 24 hours of receipt of notice of such Unanimous Decision Deadlock;

(j)     (1) issuance or sale of additional interests in the Partnership or (2) admission of a new Partner in the Partnership;

(k)     commencing or threatening any legal proceeding or litigation on behalf of the Partnership or settling, compromising or taking any other action with respect to any litigation or legal proceeding by, against or involving the Partnership;

(l)     making any distributions of cash or assets by the Partnership other than as set forth herein;

(m)     formation by the Partnership of any corporation, partnership, limited liability company or other legal entity;

(n)     creation of any material lien, charge, encumbrance or mortgage on the Property;

(o)     approval of the sale or disposition of all or substantially all of the assets of the Partnership, the merger or consolidation of the Partnership with any other entity or the liquidation or dissolution of the Partnership;

(p)     approval of any contract or agreement between the Partnership and a Partner or any Affiliate thereof;

(q)     filing or commencement of any Bankruptcy by or on behalf of the Partnership;

(r)     taking any action that is not in the ordinary course of business of the Partnership; and

(s)     all tax matters, including regarding all tax elections, treatments and characterizations.

4.04     Efforts and Reimbursement.

(a)     Each General Partner shall devote so much of such General Partner's time and efforts as shall be necessary or desirable to carry out the duties of the general partner of the Partnership.

(b)     The General Partners may receive reasonable salary or other compensation for such General Partner's time and efforts expended in carrying out the duties of the general partner and supervising the business of the Partnership.

(c)     Each Partner shall be entitled to reimbursement for such Partner's actual, reasonable and necessary direct out-of-pocket expenses incurred in the course of the Partnership business. Such expenses shall be repaid to him on the presentation of supporting vouchers

4.05   Dealing with Affiliated Persons. Subject to the restrictions contained in this Agreement, a General Partner may, for, in the name and on behalf of, the Partnership enter into agreements or contracts for performance of services for the Partnership as an independent contractor with a Partner or an Affiliate (upon approval of the General Partners) and the General Partners may obligate the Partnership to pay compensation for and on account of any such services; provided, however, that such compensation and services shall be on terms not less favorable to the Partnership than if such compensation and services were paid to and/or performed by a person who was not a Partner or an Affiliate.

## ARTICLE V
## OTHER ACTIVITIES AND INDEMNITIES

5.01   Activities of Partners. Any Partner may engage in and have an interest in other business ventures of every nature and description, independently or with others, including, but not limited to, the ownership, financing, leasing, operating, construction, rehabilitation, renovation, improvement'· management and development of real property whether or not such real property is directly or indirectly in competition with the Property. Neither the Partnership nor the other Partners shall have any rights by virtue of this Agreement in and to such independent ventures or the income or profits derived therefrom, regardless of the location of such real property and whether or not such venture was presented to such Partner as a direct or indirect result of such Partner's connection with the Partnership or the Property.

5.02   Indemnification of the General Partner. The Partnership will indemnify, defend and hold harmless the General Partners and each such General Partner's successors and assigns from any claim, loss, expense, liability, suit, action or damage resulting from any act or omission performed or omitted by such General Partner pursuant to this Agreement, including, without limitation, reasonable costs and expenses of litigation and appeal (and the reasonable costs and expenses of attorneys engaged by the General Partners in defense of such act or omission), but the General Partners shall not be entitled to be indemnified or held harmless for any act or omission arising from such General Partner's unauthorized act, fraud, bad faith, gross negligence, willful violation of such General Partner's fiduciary duties to the Limited Partners, failure to comply with any condition or agreement contained in this Agreement or the breach of a representation or warranty made by such General Partner. Any indemnity under this Section 5.02 shall be provided out of and to the extent of Partnership assets only, and no Partner shall have any personal liability on account thereof.

5.03   Liability of the Partners.

(a)     The General Partners shall have no liability or obligation to the Limited Partners or the Partnership for any decision made or action taken in connection with the discharge of such General Partner's duties hereunder, if such decision or action is made or taken in good faith. Notwithstanding the foregoing, each General Partner shall indemnify and save

harmless the Partnership and the Limited Partner from and against any claim, loss, expense, liability, suit, action or damage, including, without limitation, reasonable costs and expenses of litigation and appeal (and the reasonable costs and expenses of counsel) arising out of such General Partner's unauthorized act, fraud, bad faith, gross negligence, willful violation of fiduciary duties to the Limited Partners or failure to comply with any condition or agreement contained in this Agreement

(b)     The Limited Partners shall not have any right by virtue of this Agreement to require the General Partners to make any loan, advance or payment for or on behalf of the Partnership.

(c)     All representations and warranties herein shall survive the execution of this Agreement, and each Partner agrees to indemnify the other Partners and the Partnership for any damages caused as a consequence of the breach of any representation or warranty made by him herein.

## ARTICLE VI
## ACCOUNTING, REPORTS, BOOKS, BANK ACCOUNTS AND FISCAL YEAR

6.01     Bank Accounts. The bank accounts of the Partnership shall be maintained in such banking institutions authorized to do business in New York or such other states as the General Partners shall determine, and subject to the terms of Section 4.03(a) withdrawals shall be made on the signature of Michael Sklar, a General Partner, or of a person designated by the General Partners. The Partnership's funds shall not be commingled with the funds of any other person and shall not be used except for the business of the Partnership. All deposits, including funds not needed in the operation of the Partnership's business, shall be deposited in interest bearing accounts with, or certificates of deposit issued by, any bank or trust company incorporated under the laws of the United States or of any state thereof and having a combined capital and surplus in excess of $50,000,000 or invested in other comparable high grade obligations.

6.02     Books of Account. Complete and accurate books of account, in which shall be entered, fully and accurately, each and every transaction of the Partnership, shall be kept or caused to be kept by the General Partners. The books shall be kept on an accrual basis of accounting, and the fiscal year of the Partnership shall be the calendar year. All the Partnership's books of account, together with an executed copy of this Agreement and copies of such other instruments as the General Partners may execute hereunder, including amendments thereto, shall at all times be kept at the principal office of the Partnership and shall be available during normal business hours for inspection by any Partner or such Partner's duly authorized representative or, at the expense of any Partner, for audit by such Partner's duly authorized representative.

6.03     Financial Reports. The General Partners shall cause the books of the Partnership to be examined and reviewed annually as of the end of each fiscal year by the Accountants. The General Partners shall cause a balance sheet and a report of the receipts, disbursements, net profits and losses and cash available for distribution, and the share of the net profits and losses and cash available for distribution of each of the Partners to be determined and prepared for each fiscal year and shall cause copies thereof to be transmitted to each of the Partners for each fiscal year.

6.04    Tax Returns and Tax Treatment. The General Partners shall, with the advice of the Accountant or other qualified professional, for each fiscal year, file on behalf of the Partnership a United States Partnership Return of Income within the time prescribed by law for such filing including any extension of such time. The General Partners shall also file on behalf of the Partnership such other tax returns and other documents from time to time as may be required by the State of New York any other state or any subdivision thereof. The General Partners shall send a copy of each such tax return and a copy of Schedule K-1 or any successor or replacement form thereof to each Partner prior to filing the United States Partnership Return of Income for each fiscal year. The good faith determination by the General Partners, subject to Section 4.03(t) with respect to the treatment of any item or its allocation for Federal, state or local tax purposes shall be binding for such purposes.

6.05    Partnership Representative. As the Partnership is subject to the New Partnership Audit Rules, the Partnership will, with respect to any "final partnership adjustment" (as such term is defined for purposes of Section 6226(a) of the Code (as revised to reflect the New Partnership Audit Rules) or any successor provision, timely make the election provided for in Section 6226(a) of the Code (as revised to reflect the New Partnership Audit Rules) or any successor provision, unless otherwise determined by the General Partners. As the Partnership is subject to the New Partnership Audit Rules, the Partnership's Partnership Representative for purposes of the New Partnership Audit Rules will be Sharan Sklar, or, upon Sharan Sklar's withdrawal as the Partnership Representative, an eligible person selected by the General Partners, and timely elections of such status under Section 6223(a) of the Code (as revised to reflect the New Partnership Audit Rules) shall be made.  This Section 6.05 shall survive any termination of this Agreement.


## ARTICLE VII
### PROFITS AND LOSSES; DISTRIBUTIONS

7.01    Allocations of Profits and Losses.

(a)     Profits and losses shall be allocated to each Partner based on such Partner's Percentage Interest.

(b)     Where a distribution of an asset is made in the manner described in Section 734(a) of the Code, or where a transfer of an Interest permitted by this Agreement is made in the manner described in Section 74l(a) of the Code, the General Partners, in such General Partners' discretion may file on behalf of the Partnership, upon the request of any Partner affected thereby, an election under Section 754 of the Code in accordance with the procedures set forth in the applicable Income Tax Regulations.

(c)     Except as provided in Section 7.01(d) hereof, whenever the profits and losses of the Partnership allocable under this Section 7.01 consist of items of different character for tax purposes (e.g. ordinary income, long-term capital gain, interest expense, etc.), the profits and losses of the Partnership allocable to each Partner shall be deemed to include such Partner's pro rata share of each such item, in accordance with his share of the profits and losses from the transaction in which such profits and losses were realized

(d)     Notwithstanding Section 7.01(c) hereof, if the Partnership realizes depreciation recapture taxable as ordinary income under Section 1245 or 1250 (or other comparable Sections) of the Code, the income allocable under Section 7.01(a) hereof to any Partner shall be deemed to include that portion of such depreciation recapture as the total amount of deductions for depreciation or amortization of the Partnership's assets previously allocated to such Partner reduced by any depreciation recapture previously allocated to such Partner (or to any predecessor in interest of such Partner) with respect to such assets bears to the total amount of deductions for depreciation or amortization of such assets previously allocated to both Partners similarly reduced by all depreciation recapture previously allocated to both Partners with respect to such assets, and the balance of any profits and losses realized by that Partner shall be deemed to consist of a pro-rata share of each of the other income items realized by the Partnership as provided in Section 7.01(c) hereof.

7.02    Distribution and Application of Cash.

(a)     Except as otherwise provide by this Agreement or required by law, cash distributions (other than Capital Proceeds) shall be made pro rata to the Partners on the following bases at such time and in such amounts as the General Partners in such General Partners' sole discretion shall determine after giving effect to the following considerations:

(i)     the cash requirements of the business of the Partnership including the reinvestment of the assets of the Partnership;

(ii)    the Federal, state and local income tax liability of each of the Partners which tax liability is attributable to each Partner's Interest in the Partnership; and

(iii)   the general income needs of each of the Partners.

(b)     Cash distributions (other than Capital Proceeds) shall be applied in the following order of priority:

(i)     To repay any loan payable to a Partner in proportion to the respective amounts of any such loans; and

(ii)    The balance, if any, to each Partner based on such Partner's Percentage Interest.

(c)     Except as otherwise agreed upon by the Partners, Capital Proceeds shall be distributed pro rata to the Partners and applied in the following order of priority:

(i)     To repay any loan payable to a Partner in proportion to the respective amounts of any such loans;

(ii)    To each Partner in an amount not to exceed such Partner's initial Capital Account;

(iii)    The balance, if any, to each Partners based on such Partner's Percentage Interest.

7.03    Certain Additional Allocations.

(a)    Upon liquidation of the Partnership pursuant to Article IX hereof, profits and losses realized upon such liquidation shall be allocated pursuant to Section 7.01(a) hereof and any asset shall be distributed in cash or in kind in accordance with the provisions of Section 9.04 hereof. With respect to assets distributed in kind to the Partners, (i) any unrealized appreciation or unrealized depreciation in the values of such assets shall be deemed to be profits and losses realized by the Partnership immediately prior to the liquidation (for the purposes of this Section 7.03(a), "unrealized appreciation" or "unrealized depreciation" shall mean the difference between the appraised fair market value of such assets (as determined pursuant to Section 9.04 hereof) and the Partnership's basis for such assets), (ii) such profits and losses shall be allocated to the Partner or Partners who received such assets in the same proportions as their interests in such assets after such distribution and (iii) any property so distributed shall be treated as a distribution to the Partners pursuant to Section 7.02(c) hereof to the extent of the aforesaid appraised fair market value less the amount of any liability related thereto. Nothing contained in this Section 7.03(a) or elsewhere in this Agreement is intended to treat or cause such distributions to be treated as sales for value.

(b)    For income tax purposes, if the Partnership in any year realizes income or is allowed a deduction (including additional depreciation or amortization as a result of adding an item to its basis) as a result of the transfer of an interest in property to or from a Partner, the difference between the amount taken into account for tax purposes and the amount otherwise taken into account under this Agreement shall be allocated solely to such Partner.

(c)    The Percentage Interest of each Partner shall be as follows:

(i)    RAS is a General Partner with a General Partner interest of 1%;

(ii)    Michael Sklar, is a General Partner with a General Partner interest of 1%;

(iii)    Sharan Sklar, is a General Partner with a General partner interest of 1%;

(iv)    the Estate of Lois Weinstein is a Limited Partner with a Limited Partner interest of 18.36%;

(v)    Rita A. Sklar is a Limited Partner with a Limited Partner interest of 29.64%;

(vi)    Issue Trust for the benefit of Hannah Rose (Sklar) Gettinger (Rita Sklar, Trustee) is a Limited Partner with a Limited Partner interest of 15.68%;

(vii)    Issue Trust for the benefit of Ruby Hilene Sklar and Issue Trust for the benefit of Sadie Pearl Sklar (Rita Sklar, Trustee) is a Limited Partner with an aggregate Limited Partner interest of 15.68%;

(viii)  Issue Trust for the benefit of Hannah Rose (Sklar) Gettinger (Lois Weinstein, Settlor) is a Limited Partner with a Limited Partner interest of 8.82%; and

(ix)  Issue Trust for the benefit of Ruby Hilene Sklar and Issue Trust for the benefit of Sadie Pearl Sklar (Lois Weinstein, Settlor) is a Limited Partner with an aggregate Limited Partner interest of 8.82%.

(d)  All profits and losses allocated to the Partners and all cash distributions made to the Partners shall be credited or charged, as the case may be, to their Capital Accounts.

## ARTICLE VIII
## TRANSFER OF INTERESTS; WITHDRAWAL

8.01  Transfers. A Partner may sell, assign, give or otherwise transfer all or any part of such Partner's interest in the Partnership, or pledge, hypothecate or otherwise encumber any such interest, only upon the prior written consent of all General Partners; and any successor to any such interest by operation of law shall have no right by virtue thereof to be admitted as a Partner except upon such consent and shall hold such interest subject to all the terms of this Agreement.

8.02  Death or Disability of the Limited Partner.

(a)  The death, insanity, incompetency or Bankruptcy of a Limited Partner shall not terminate or dissolve the Partnership.

(b)  Upon the occurrence of such event with respect to any Limited Partner, the executor, administrator, guardian, committee, trustee or other legal representative or successor in interest of such Limited Partner shall have the rights of such Limited Partner subject to the provisions of this Agreement. Such successor in interest shall not become a Substitute Partner except upon compliance with the provisions of Sections 8.03 and 8.04 hereof.

8.03  Substitute Partner; Admission. No Partner shall have any right to substitute an Assignee as a Partner in such Partner's place without the prior written permission of each General Partner. Any purported substitution of an Assignee as a Partner without such consent shall be void ab initio and shall not bind the Partnership. The consent of the General Partners to an Assignment under Section 8.01 hereof shall not, in and of itself, constitute permission under this Section 8.03. Any Assignee shall not be admitted as a Substitute Partner unless (A) the Assignor shall have indicated such intention of substitution in the instrument effecting the Assignment and the Assignee expressly agrees to be bound, to the same extent as the other Partners, by the provisions of this Agreement and any other documents required in connection therewith and to assume the obligations of the Assignor hereunder, (B) the Assignor and the Assignee shall have executed or delivered such other instruments as the General Partners may deem necessary or desirable to effectuate such admission and (C) the Assignee shall have agreed to pay, as the General Partners shall determine, all reasonable expenses and legal fees relating to the Assignment and such Assignee's admission as a Substitute Partner, including, but not limited to, the cost of any amendment to the Certificate necessary to effect such admission.

8.04   Assignees.

(a)     Any person who acquires in any manner whatsoever any Interest, irrespective of whether such person has accepted and adopted in writing the terms and provisions of this Agreement, shall be deemed by the acceptance of the benefit of the acquisition thereof to have agreed to be subject to and bound by all the obligations of this Agreement that any predecessor in interest of such person was subject to or bound by. A person acquiring an Interest, including the personal representatives and heirs of a deceased Partner, shall have only such rights, and shall be subject to all the obligations, as are set forth in this Agreement; and, without limiting the generality of the foregoing, such person shall not have any right to have the value of his or her Interest ascertained or receive the value of such Interest or, in lieu thereof, profits attributable to any right in the Partnership, except as herein set forth.

(b)     Any Assignee of an Interest pursuant to an Assignment satisfying the conditions of this Article VIII who does not become a Substitute Partner in accordance with Section 8.03 hereof shall have the right to receive the same share of the profits and losses and distributions of the Partnership to which the Assignor would have been entitled. If such Assignee desires to make an Assignment of such Assignee's Interest, such Assignee shall be subject to all the provisions of this Article VIII to the same extent and in the same manner as any Partner desiring to make an assignment.

(c)     Any Partner who shall Assign all of such Partner's Interest shall cease to be a Partner and shall no longer have any rights or privileges of a Partner except that, unless and until such Partner's Assignee is admitted to the Partnership as a Substitute Partner in accordance with Section 8.03 hereof, such Assignor shall retain all rights and be subject to all obligations under the Uniform Act.

(d)     In the event that an Assignment shall be made, there shall be filed with the Partnership a duly executed and acknowledged counterpart of the instrument making such Assignment. Such instrument must evidence the written acceptance of the Assignee to all the terms and provisions of this Agreement. Except as provided in Section 8.04(b), if such an instrument is not so filed, the Partnership need not recognize any such purported Assignment for any purpose.

8.05   Effect of Withdrawal, Death or Incompetency; Election to continue Business. Upon the withdrawal, Bankruptcy, death or incompetency of all of the General Partners, the last General Partner to withdraw, declare Bankruptcy, die or be determined incompetent or such General Partner's legal representative shall promptly notify the Limited Partners of such event, the Partnership shall be dissolved and terminated unless the Limited Partners elect to continue the business of the Partnership, in which case the Partnership shall not dissolve or terminate. If the Limited Partners elect to continue the business of the partnership, either a new general partner shall be admitted to the Partnership or the Partnership shall be reconstituted as a general partnership. After such event shall occur, such General Partner or such General Partner's legal representative shall take no part in the management of the Partnership, but shall retain such General Partner's Percentage Interest in the profits and losses and cash distributions. The withdrawal of such General Partner shall not be deemed to be effective until the expiration of 90

days from the day on which such notice has been mailed to the Limited Partner. The General Partners shall remain liable for obligations incurred by such General Partners under this Agreement through the effective date of such General Partners' withdrawal, whether such withdrawal shall be voluntary or involuntary or whether in compliance with or in violation of this Agreement.

8.06 Amendment of Certificate. Upon the admission of a Substitute Partner or an additional partner or the withdrawal of a Partner, an amendment to the Certificate reflecting such admission or withdrawal shall be filed as required by the Uniform Act.

8.07 Survival of Liabilities. It is expressly understood that no Assignment, pledge or encumbrance of a Partner's Interest, even if it results in the substitution of the Assignee as a Partner, shall release the Partner from any liability to the Partnership which shall survive such Assignment, pledge or encumbrance, including those set forth in the Uniform Act.

## ARTICLE IX
## DISSOLUTION AND TERMINATION OF THE PARTNERSHIP

9.01 Dissolution and Liquidation. The Partnership shall be dissolved and shall liquidate upon the occurrence of any of the following:

(a) The withdrawal, death, incompetency or Bankruptcy of each of the General Partners if the Partnership is not continued in accordance with Section 8.05 hereof.

(b) Any event which shall make it unlawful for the existence of the Partnership to be continued;

(c) The sale or other disposition of the Property or of all or substantially all of the real property assets of the Partnership; or

(d) The unanimous determination of the General Partners to dissolve and liquidate the Partnership.

The dissolution shall be effective on the last day of the month in which the event causing the dissolution occurs, but the Partnership shall not terminate until all of the assets have been distributed in accordance with this Article.

9.02 Actions of Liquidating Agent Upon Dissolution. Upon the dissolution of the Partnership, the Partnership shall be liquidated in accordance with this Article IX and the Uniform Act. The liquidation shall be conducted and supervised by the General Partners or, if there be no General Partner, by a person who shall be designated for such purpose by the owners of at least 51% of the Partner interests (the General Partners or such person so designated being hereinafter referred to as the "Liquidating Agent"). The Liquidating Agent shall have all of the rights in connection with the liquidation and termination of the Partnership that a general partner would have with respect to the assets and liabilities of the Partnership during the term of the Partnership, and the Liquidating Agent is hereby expressly authorized and empowered to

effectuate the liquidation and termination of the Partnership and the transfer of any assets and liabilities of the Partnership. The Liquidating Agent shall have the right from time to time, by revocable powers of attorney, to delegate to one or more persons any or all of such rights and powers and the authority and power to execute documents in connection therewith, and to fix the reasonable compensation of each such person, which compensation shall be charged as an expense of liquidation. The Liquidating Agent is also expressly authorized to distribute the Partnership's property to the Partners subject to liens.

9.03    Statements on Termination. Each Partner shall be furnished with a statement prepared by the Liquidating Agent which shall set forth the assets and liabilities of the Partnership as at the date of complete liquidation, and each Partner's share thereof. Upon compliance with the distribution plan set forth in Section 9.04 hereof, the Partners shall cease to be such, and the Liquidating Agent shall execute, acknowledge and cause to be filed a certificate of termination of the Partnership.

9.04    Priority on Liquidation; Distribution of Non Liquid Assets.

(a)    The Liquidating Agent shall, to the extent feasible, liquidate the assets of the Partnership as promptly as shall be practicable. To the extent the proceeds are sufficient therefor, as the Liquidating Agent shall deem appropriate, the proceeds of such liquidation shall be applied to pay any debts or liabilities of the Partnership other than to Partners and then in accordance with the provisions of Section 7.02(c) hereof.

(b)    If, in the sole discretion of the Liquidating Agent, he shall determine that it is not feasible to liquidate all or part of the assets of the Partnership or that an immediate sale of all or part of such assets would cause an undue loss to the Partners, the Liquidating Agent shall cause the fair market value of the assets not so liquidated to be determined by independent appraisal. Such assets, as so appraised, shall be retained or distributed by the Liquidating Agent as follows:

(i)    The Liquidating Agent shall retain assets having a value (which value shall be equal to the fair market value of such assets less the amount of any liability related thereto) equal to the amount by which the net proceeds of the liquidated assets are insufficient to satisfy the requirements of subparagraph (i) of Section 7.02(c) hereof; and

(ii)    The remaining assets shall be distributed to the Partners pursuant to subparagraphs (ii) and (iii) of Section 7.02(c) hereof.

Any distribution of assets in kind shall be distributed on the basis of the fair market value thereof and any Partner entitled to any interest in such assets shall receive such interest therein as a tenant-in-common with all other Partners so entitled. If the Liquidating Agent, in his or her sole discretion, deems it not feasible to distribute to each Partner an aliquot share of each asset, the Liquidating Agent may allocate and distribute specific assets to one or more Partners as tenants-in-common as the Liquidating Agent shall determine to be fair and equitable.

9.05    Orderly Liquidation. A reasonable time shall be allowed for the orderly liquidation of the assets of the Partnership and the discharge of liabilities so as to minimize the

losses normally attendant upon a liquidation.

9.06 _No Goodwill value._   At no time during continuation of the Partnership shall any value ever be placed on the Partnership name, or the right to its use, or to the goodwill appertaining to the Partnership or its business, either as among the Partners or for the purpose of determining the value of any Interest, nor shall the legal representatives of any Partner have any right to claim any such value. In the event of a termination and dissolution of the Partnership as provided in this Agreement, neither the Partnership name, nor the right to its use, nor the same goodwill, if any, shall be considered as an asset of the Partnership, and no valuation shall be put thereon for the purpose of liquidation or distribution, or for any other purpose whatsoever; nor shall any value ever be placed thereon as between the remaining or surviving Partners and the legal representatives of the estate of any deceased, insane, incompetent or bankrupt Partner.

## ARTICLE X
### AMENDMENT

10.01 _Amendment._ The General Partners (upon the unanimous consent of all of the General Partners) may, without the consent of the other Partners, amend this Agreement for any purpose; provided, however, that the written consent of all the Partners shall be required for any amendment which would:

(a)     increase the amount required to be contributed to the capital of the Partnership by any Partner;

(b)     alter or otherwise affect this Article X;

(c)     change the character of the business of the Partnership as set forth in Article II; or

(d)     alter or otherwise affect any Partner's interest in the profits and losses of, and distributions from, the Partnership (except to the extent provided in Article IV)

10.02 The General Partners shall not amend Article IV without the unanimous consent of all of the General Partners.

## ARTICLE XI
### ACCOUNTING RECORDS

11.01 _Method and Period._   Until changed by the Partnership, the books and records of the Partnership shall be kept on an accrual basis and on a fiscal year ending December 31.

11.02 _Financial Statements._ The books shall be closed at the end of each fiscal year and statements prepared concerning the financial condition of the Partnership and its results from operations. Copies of these statements shall be given to all Partners.

11.03 _Tax Returns._   The General Partners shall arrange for the preparation and filing of all necessary tax returns and reports of any other kind for the Partnership. The General Partners shall timely furnish to the other Partners the tax information required by them for federal or state and local tax purposes.

11.04 <u>Examination of Records</u>. All books, records and accounts of the Partnership shall be kept at its office, and shall be open to inspection by all the Partners at reasonable times.

11.05 <u>Tax Elections</u>. In the event of any permitted transfer by any Partner of such Partner's interest in the Partnership, or upon the death of any Partner, the Partnership may, but shall not be required to, elect to cause the basis of the Partnership's assets to be adjusted for federal income tax purposes pursuant to Section 734, 743 and 754 of the Code. Each Partner agrees to supply to the General Partners any necessary information to give effect to any such election. Any additional costs incurred by the Partnership in making such adjustments shall be charged to the Partners whose acquisition of an interest in the Partnership or receipt of a distribution results in such adjustments.

## ARTICLE XII
## POWER OF ATTORNEY

12.01 <u>Appointment of General Partner</u>. Each Limited Partner hereby appoints each General Partner as such Limited Partner's attorney-in-fact to make, execute and file with respect to the Partnership any documents required pursuant to Article VIII and any amendments to the Partnership Agreement which are permitted by Article X, so long as such amendments are required by law or are authorized under this Partnership Agreement, and any other documents which the General Partners may deem necessary or desirable to carry out fully the provisions of this Partnership Agreement, including the following:

(a)     any certificates or other instruments which may be required to be filed by the Partnership under the laws of the State of New York or other applicable law;

(b)     a certificate of cancellation of the Partnership and such other instruments or documents as may be deemed necessary or desirable by the General Partners to reflect or to effectuate the dissolution and termination of the Partnership pursuant to the terms of this Agreement; and

(c)     any and all amendments or modifications of the instruments described in the preceding subsections (a) or (b).

12.02 <u>Irrevocable</u>. The foregoing Power of Attorney shall be deemed coupled with an interest and shall be irrevocable and shall survive the subsequent merger, dissolution, or termination of the General Partners.

12.03 <u>Appointment By General Partner</u>. Except as set forth herein, the General Partners shall have the right from time to time to constitute and appoint any single Partner or Partners as their true and lawful attorney, with full power and authority in the name, place and stead of the General Partners to make, execute, sign, acknowledge, deliver, receive, file, and publish on the behalf as General Partners, any and all instruments and documents affecting or relating to the Partnership.

## ARTICLE XIII
## RESTRAINING ORDERS

13.01  <u>Restraining Orders</u>.  In the event that a Partner shall at any time make a pledge, mortgage, assignment, transfer, sale or other disposition of such Partner's interest as a Partner of the Partnership in violation of the provisions hereof, the other Partners shall, in addition to all other rights and remedies which they may have at law or in equity, be entitled to a decree or order restraining and enjoining such pledge, mortgage, assignment, transfer, sale or other disposition, and the offending Partner shall not plead in defense thereto that there would be an adequate remedy at law, it being recognized and agreed that the injury and damage resulting from such a breach would be impossible to measure monetarily.

## ARTICLE XIV
## MISCELLANEOUS

14.01  <u>Governing Law</u>. This Agreement and the rights of parties hereunder shall be governed by and construed in accordance with the laws of the State of New York without reference to its conflicts of laws rules.

14.02  <u>Notices</u>. All notices or other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be considered as duly given on (a) the date of delivery, if delivered in person, or (b) on the date of mailing if mailed from within the continental United States by registered or certified mail, return receipt requested, to the party entitled to receive the same, by email or facsimile and if to any General Partner, to it at the address of the Partnership set forth in Article II above, and if to the other Partners or Decider, at the addresses set forth in Schedule B to this Partnership Agreement. Any Partner may change such Partner's address by giving notice in writing to the General Partner stating such Partner's new address. Commencing on the day after the receipt by the General Partner of such notice, such newly-designated address shall be such Partner's address for the purpose of all notices or other communications required or permitted to be given pursuant to this Agreement.

14.03  <u>Non-Waiver</u>. No consent or waiver, express or implied, by a Partner to or of any breach or default by any other Partner in the performance by such other Partner of such other Partner's obligations hereunder shall be deemed or construed to be a consent or waiver to or of any other Partner hereunder. Failure on the part of any Partner to complain of any act of the other Partner(s) or to declare such other Partner(s) in default, irrespective of how long such failure continues, shall not constitute a waiver by such Partner of such Partner's rights hereunder.

14.04  <u>Entire Agreement</u>. This Agreement constitutes the entire agreement among the parties and supersedes any prior agreement or understanding among them, and it may not be modified or amended in any manner other than as provided herein. A waiver of any breach or condition of this Agreement shall not be deemed to be a waiver of any subsequent breach or condition of a like or different nature.

14.05  <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of the parties hereto, their successors, and their permitted assigns with the same force and effect as if they were parties hereto subject to the terms, covenants and conditions herein set forth, and,

except as otherwise specifically provided herein, reference to a Partner herein shall include the Partner's successors and permitted assigns.

14.06    Successors. No assignment of any right or interest under this Agreement shall be valid unless made in accordance with the terms of this Agreement.

14.07    Captions. Captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit or extend the scope or intent of this Agreement or any provision hereof.

14.08    Severability. If any provision of this Agreement shall be held invalid or unenforceable, such invalidity or unenforceability shall attach only to such provision and shall not in any manner affect or render invalid or unenforceable any other severable provision of this Agreement, and this Agreement shall be carried out as if any such invalid or unenforceable provision were not contained herein.

14.09    Further Assurances.    Each of the parties hereto agrees to execute, acknowledge, deliver, file, record and publish such further certificates, instruments, agreements and other documents and to take all such further action as may be required by law or deemed by the General Partner to be necessary or useful in furtherance of the Partnership's purposes and in order to carry out the provisions of this Agreement.

14.10    Pronouns. All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the context shall require.

14.11    Counterparts. This Agreement may be executed in several counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

14.12    Creditors. None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Partnership.

*[Remainder of page intentionally left blank. Signature page to follow.]*

IN WITNESS WHEREOF, the Partners have executed this Agreement as of the date first above written.

GENERAL PARTNER:

RAS Property Management, LLC

By: _Rita Sklar_

Name: Rita Sklar
Title: Manager


Michael Sklar Management L.L.C.

By: _____

Michael Sklar


Sharan Sklar Management L.L.C.

JOSHUA GOLDSTEIN

By: _____

Sharan Sklar by JOSHUA GOLDSTEIN, Authorized Signatory


LIMITED PARTNERS:

The Estate of Lois Weinstein


By: _____


_Rita Sklar_

Rita Sklar, Individually

Issue Trust for the benefit of Hannah Rose (Sklar) Gettinger (Rita Sklar, Trustee).

By: _Rita Sklar_____
Rita Sklar, Trustee


Issue Trust for the benefit of Ruby Hilene Sklar and Issue Trust for the benefit of Sadie Pearl Sklar (Rita Sklar, Trustee).

By: _Rita Sklar_____
Rita Sklar, Trustee


Issue Trust for the benefit of Hannah Rose (Sklar) Gettinger (Lois Weinstein, Settlor).

By: _Rita Sklar_____
Rita Sklar, Trustee


Issue Trust for the benefit of Ruby Hilene Sklar and Issue Trust for the benefit of Sadie Pearl Sklar (Lois Weinstein, Settlor)).

By: _Rita Sklar_____
Rita Sklar, Trustee

## SCHEDULE B

(i)      RAS is a General Partner with a General Partner interest of 1%;

(ii)     Michael Sklar, is a General Partner with a General Partner interest of 1%;

(iii)    Sharan Sklar, is a General Partner with a General partner interest of 1%;

(iv)     the Estate of Lois Weinstein is a Limited Partner with a Limited Partner interest of 18%;

(v)      Rita A. Sklar is a Limited Partner with a Limited Partner interest of 31%;

(vi)     Issue Trust for the benefit of Hannah Rose (Sklar) Gettinger (Rita Sklar, Trustee) is a Limited Partner with a Limited Partner interest of 12%;

(vii)    Issue Trust for the benefit of Ruby Hilene Sklar and Issue Trust for the benefit of Sadie Pearl Sklar (Rita Sklar, Trustee) is a Limited Partner with a Limited Partner interest of 12%;

(viii)   Issue Trust for the benefit of Hannah Rose (Sklar) Gettinger (Lois Weinstein, Settlor) is a Limited Partner with a Limited Partner interest of 12%; and

(ix)     Issue Trust for the benefit of Ruby Hilene Sklar and Issue Trust for the benefit of Sadie Pearl Sklar (Lois Weinstein, Settlor) is a Limited Partner with a Limited Partner interest of 12%.

**EXHIBIT B**

**AMENDMENT TO AMENDED AND RESTATED PARTNERSHIP
AGREEMENT OF NINETY-FIVE MADISON COMPANY, L.P.**

THIS AMENDMENT TO THE AMENDED AND RESTATED AGREEMENT OF
LIMITED PARTNERSHIP (this "Amendment"') of Ninety-Five Madison Company, L.P., a
New York limited partnership (the "Limited Partnership"), is made and effective as of June __,
2022 (the "Effective Date") by and between RAS Property Management, LLC ("RAS"), Michael
Sklar Management LLC ("Michael Sklar), and Sharan Sklar Management LLC ("Sharan Sklar"),
each as a general partner (the "General Partners").

### RECITALS

WHEREAS, the General Partners desire to amend the Amended and Restated Partnership
Agreement; and

WHEREAS, the General Partners reserved the right to amend the Amended and Restated
Partnership Agreement in Section 10.01 thereof by unanimous consent of the General Partners;
and

NOW, THEREFORE, in consideration of the premises and mutual promises contained
herein, and for other good and valuable consideration, the receipt and sufficiency of which is
hereby acknowledged, the General Partners agree as follows:

1.  Capitalized terms shall have the meanings ascribed to them in the Amended and Restated
    Partnership Agreement.

2.  All decisions made hereafter shall be by the vote of a majority of the General Partners, or
    their Designee. The provisions of the Amended and Restated Partnership Agreement
    requiring a Unanimous Decision are hereby deleted.

3.  All provisions in the Amended and Restated Partnership Agreement appointing the
    Decider or delegating any responsibilities or decisions to the Decider are hereby deleted.
    Jeffrey Barringer is hereby removed as Decider.

4.  The General Partners further agree:

    a.  Each General Partner shall have the right to, but shall not be obligated to, select a
        third party "advisor/surrogate" ("Designee") to represent their interest in any
        partnership matter and that individual will be authorized to make any decisions on
        their behalf.  A Designee shall be authorized to act once written notice is provided to
        the General Partners of the Designee, which notice may be revoked at any time.

    b.  A budget of $150,000 per year per partner until a Disposition has closed will be
        available to cover the cost of each Designee and the expense will be paid by the
        Limited Partnership.

    c.  Any partner shall be permitted to expend personal funds for amounts in excess of the
        budget limit so stated.

6313288-2

d. General partners may elect to represent themselves, however, they will not be paid for their time so spent.

e. In light of the financial status of the Limited Partnership, no further fees or salaries will be paid to Rita Sklar, Michael Sklar or Sharan Sklar absent the consent of all general partners.



6313288-2

GENERAL PARTNERS:

RAS Property Management, LLC

By: _____

    Name:   Rita Sklar

    Title:    Manager

Michael Sklar Management LLC

By: _____

    Name:   Michael Sklar

    Title:    Manager

Sharan Sklar Management LLC

By: _____

    Name:   Sharan Sklar

    Title:    Manager

3