Andrew K. Glenn
Shai Schmidt
Richard C. Ramirez
Naznen Rahman
**GLENN AGRE BERGMAN & FUENTES LLP**
1125 Avenue of the Americas
22nd Floor
New York, New York 10036
Telephone: (212) 970-1600

*Counsel to the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 21-10529 (DSJ) |
| NINETY-FIVE MADISON COMPANY, L.P., | ) |
| | ) |
| | ) |
| Debtor. | ) |
| | ) |

**NOTICE OF FILING OF AMENDED COMBINED CHAPTER 11 PLAN OF**
**REORGANIZATION AND DISCLOSURE STATEMENT FOR**
**DEBTOR NINETY-FIVE MADISON COMPANY, L.P.**

    **PLEASE TAKE NOTICE** that on March 22, 2021, Ninety-Five Madison Company, L.P.

(the "Debtor") filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

    **PLEASE TAKE FURTHER NOTICE** that on September 27, 2023, the Debtor filed the

*Combined Chapter 11 Plan of Reorganization and Disclosure Statement for Debtor Ninety-Five*

*Madison Company, L.P.*

    **PLEASE TAKE FURTHER NOTICE** that on December 15, 2023, the Debtor filed the

*Amended Combined Chapter 11 Plan of Reorganization and Disclosure Statement for Debtor*

*Ninety-Five Madison Company, L.P.* (the "Plan").

**PLEASE TAKE FURTHER NOTICE** that the Debtor hereby encloses a revised version of the Plan, attached hereto as **<u>Exhibit A</u>**.

**PLEASE TAKE FURTHER NOTICE** that a comparison redline of the Plan is attached hereto as **<u>Exhibit B</u>**.

**PLEASE TAKE FURTHER NOTICE** that copies of the Plan, and all other pleadings, have been filed electronically with the Clerk of the Court, and may be reviewed by all registered users of the Court's website at: http://www.nysb.uscourts.gov.

*[Signature Page Follows]*

Dated: December 15, 2023
New York, New York

**NINETY-FIVE MADISON COMPANY, L.P.**,
Debtor and Debtor-in-Possession

By: /s/ *Andrew K. Glenn*
Andrew K. Glenn
Shai Schmidt
Richard C. Ramirez
Naznen Rahman
**GLENN AGRE BERGMAN & FUENTES LLP**
1185 Avenue of the Americas
22nd Floor
New York, New York 10036
Telephone: (212) 970-1600
E-mail: aglenn@glennagre.com
          sschmidt@glennagre.com
          rramirez@glennagre.com
          nrahman@glennagre.com

*Counsel to the Debtor*

# **EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| NINETY-FIVE MADISON COMPANY, L.P., | ) Case No. 21-10529 (DSJ) |
| | ) |
| Debtor. | ) |
| | ) |

**AMENDED COMBINED CHAPTER 11 PLAN OF REORGANIZATION**
**AND DISCLOSURE STATEMENT FOR DEBTOR**
**<u>NINETY-FIVE MADISON COMPANY, L.P.</u>**

Andrew K. Glenn
Shai Schmidt
Richard C. Ramirez
Naznen Rahman
**GLENN AGRE BERGMAN &**
**FUENTES LLP**
1185 Avenue of the Americas
22nd Floor
New York, New York 10036
Telephone: (212) 970-1600

*Counsel to Debtor Ninety-Five Madison*
*Company, L.P.*

Dated: December 15, 2023

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY ...................................................................................5

DEFINITIONS..................................................................................................................5

PART ONE: DISCLOSURE STATEMENT..........................................................................12

I.       BACKGROUND. ...............................................................................................13

    A.    The Debtor, the Property, and Events Precipitating the Chapter 11 Filing....13

    B.    The Chapter 11 Case.......................................................................................14

        1.    The Vitra Dispute. ..............................................................................14

        2.    The First Chapter 11 Plan...................................................................14

        3.    The DIP Facility. ................................................................................15

    C.    Marketing and Sale of the Property. ...............................................................16

II.      SUMMARY OF THE AMENDED COMBINED PLAN...........................................16

    A.    The Contemplated Restructuring Transaction..................................................16

    B.    Plan Treatment of Claims................................................................................17

    C.    Alternatives to the Plan...................................................................................17

III.    RISK FACTORS TO BE CONSIDERED. ............................................................17

    A.    Bankruptcy Law Considerations.....................................................................17

        1.    The Conditions Precedent to the Effective Date of the Plan May Not Occur. .................................................................................................17

        2.    Risks Related to Possible Objections to the Plan. ..............................17

        3.    Conversion to a Chapter 7 Case. ........................................................18

    B.    Other Risks. ....................................................................................................18

        1.    The Debtor Will Be Subject to the Risks and Uncertainties Associated with the Chapter 11 Case. ..................................................................18

        2.    The Reorganized Debtor May Be Adversely Affected by Potential Litigation, Including Litigation Arising Out of the Chapter 11 Case. ...............18

IV.    CERTAIN FEDERAL UNITED STATES INCOME TAX CONSEQUENCES OF THE PLAN. 18

V.      EFFECT OF CONFIRMATION OF THE AMENDED COMBINED PLAN. ..............19

    A.    Binding Effect of the Plan. .............................................................................19

    B.    Injunction, Exculpation, and Release Provisions of the Plan...........................19

    C.    Confirmation of the Plan. ................................................................................19

    D.    Post-Confirmation Asset Sale(s) .....................................................................20

VI.    NO DISTRIBUTIONS PENDING ALLOWANCE. ..............................................20

VII.   BEST INTERESTS OF CREDITORS/LIQUIDATION ANALYSIS..........................20

VIII.  CONCLUSION...................................................................................................21

PART TWO: PLAN OF REORGANIZATION ......................................................................21

Article I.    RULES OF INTERPRETATION AND COMPUTATION OF TIME...........................21

    A.    Rules of Interpretation. ...................................................................................21

    B.    Computation of Time.......................................................................................22

    C.    Reference to Monetary Figures. ......................................................................22

    D.    Controlling Document. ...................................................................................22

Article II. ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY TAX CLAIMS AND STATUTORY FEES .....................................................................................22

    A.    Allowed Administrative Expense Claims........................................................22

    B.    DIP Claims. .....................................................................................................22

    C.    Professional Fee Claims...................................................................................23

        1.    Final Fee Applications.........................................................................23

        2.    Post-Effective Date Fees and Expenses...............................................23

D.  Priority Tax Claims.................................................................................23
E.  Statutory Fees Payable Pursuant to 28 U.S.C. § 1930. ......................................23
Article III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS...................................24
A.  Summary of Classification...........................................................................24
B.  Treatment of Claims and Interests. ................................................................24
    1.  Class 1 – Other Priority Claims................................................................24
    2.  Class 2 – Secured Claims .....................................................................24
    3.  Class 3 – General Unsecured Claims.........................................................25
    4.  Class 4 – Equity Interests in the Debtor ....................................................25
Article IV. MEANS FOR IMPLEMENTATION OF THE PLAN...........................................................25
A.  Effectuating Plan Transactions; Approvals.......................................................25
B.  Sources of Consideration for Plan Distributions.................................................26
C.  Tax Matters.............................................................................................27
D.  Effectuating Documents. ............................................................................27
E.  Post-Confirmation Management....................................................................27
F.  Post-Confirmation Asset Sale(s)...................................................................27
G.  Exemption From Transfer Taxes, Mortgage Recording Taxes, or Similar Taxes. ..........28
H.  Retention of Professionals. .........................................................................28
I.  Preservation of Rights of Action....................................................................28
Article V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .........................28
A.  General Treatment. ...................................................................................28
B.  Rejection Damages of Claims. .....................................................................29
C.  Insurance Policies and Agreements. ..............................................................29
D.  Reservation of Rights with Regards to Assumption of Executory Contracts and
    Unexpired Leases.....................................................................................29
Article VI. PROVISIONS GOVERNING DISTRIBUTIONS .............................................................30
A.  Distribution Agents...................................................................................30
B.  Powers of the Distribution Agent. .................................................................30
C.  Date of Distributions..................................................................................30
D.  De Minimis Distributions. ...........................................................................31
E.  Delivery of Distributions. ...........................................................................31
F.  Compliance Matters...................................................................................31
G.  No Post-Petition Interest on Claims................................................................32
H.  Manner of Payment. ..................................................................................32
I.  Setoffs and Recoupment. ...........................................................................32
J.  Distributions Free and Clear. .......................................................................32
Article VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED
CLAIMS ..........................................................................................................32
A.  Allowance of Claims. ................................................................................32
B.  Estimation of Claims. ................................................................................33
C.  Amendments to Proofs of Claim. ..................................................................33
D.  No Distributions Pending Allowance. .............................................................33
E.  Distributions After Allowance.......................................................................33
Article VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS .........................33
A.  Compromise and Settlement of Claims, Interests, and Controversies. ....................33
B.  Discharge of Claims and Termination of Interests. .............................................34
C.  Releases by the Debtor. .............................................................................34
D.  Exculpation. ...........................................................................................36
E.  Injunction. .............................................................................................36
Article IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN...................................37
A.  Conditions Precedent to the Effective Date. .....................................................37
B.  Waiver of Conditions. ................................................................................37
Article X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN .....................................38
A.  Plan Modification and Amendments. ..............................................................38

B.     Revocation or Withdrawal of the Plan. ..............................................................38

Article XI. RETENTION OF JURISDICTION ..............................................................38

Article XII. MISCELLANEOUS PROVISIONS ..............................................................40

     A.     Immediate Binding Effect. ..............................................................40

     B.     Additional Documents. ..............................................................40

     C.     Reservation of Rights. ..............................................................40

     D.     Exhibits/Schedules. ..............................................................40

     E.     Substantial Consummation. ..............................................................40

     F.     Governing Law. ..............................................................40

     G.     Successors and Assigns. ..............................................................41

     H.     Service of Documents. ..............................................................41

     I.     Entire Agreement. ..............................................................41

     J.     Expedited Tax Determination. ..............................................................42

# INTRODUCTION AND SUMMARY

Debtor Ninety-Five Madison Company, L.P. hereby proposes the following Amended Combined Plan and Disclosure Statement pursuant to Chapter 11 of the Bankruptcy Code. Capitalized terms used but not otherwise defined have the meanings ascribed to them in the section titled "DEFINITIONS" of this Amended Combined Plan and Disclosure Statement. For ease of reading, this Amended Combined Plan and Disclosure Statement may be referred to as the "Plan" as that term is defined herein.

The Plan contemplates, among other things, the payment of all Allowed Claims in full through the DIP Facility and the consummation of the Exit Facility as provided in the DIP Documents. However, due to the significant value of the Property, which is the Debtor's primary asset, the Debtor anticipates that, after paying its creditors in full through the DIP Facility, the Reorganized Debtor will continue to pursue its ongoing marketing process of the Property in earnest under the supervision of the Bankruptcy Court for the benefit of all stakeholders and to satisfy any Disputed Claims that may later become Allowed Claims.

**Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code, Rule 3019 of the Bankruptcy Rules, and Article X of this Amended Combined Plan and Disclosure Statement, the Debtor reserves the right to alter, amend, modify, supplement, revoke, or withdraw this Amended Combined Plan and Disclosure Statement prior to its consummation.**

# DEFINITIONS

Except as otherwise provided herein, each capitalized term used in this Amended Combined Plan and Disclosure Statement shall have the meaning set forth below:

1. ***"Administrative Expense Claim"*** means any right to payment constituting a cost or expense of administration of the Chapter 11 Case under Sections 330, 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Estate, (b) any actual and necessary costs and expenses of operating the Debtor's business, (c) any indebtedness or obligations incurred or assumed by the Debtor during the Chapter 11 Case, (d) DIP Claims, and (e) any Bankruptcy Court-approved compensation for professional services rendered and reimbursement of expenses incurred in connection therewith.

2. ***"Affiliate"*** has the meaning set forth in Section 101(2) of the Bankruptcy Code.

3. ***"Allowed"*** means, with respect to any Claim, (i) a Claim against the Debtor that has been listed on the Schedules, as such Schedules may be amended from time to time pursuant to Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed, unless the Debtor or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order, (ii) any Claim for which a Proof of Claim was properly and timely filed in accordance with any order of the Bankruptcy Court (including the Bar Date Order), the Plan, the Bankruptcy Code, and the Bankruptcy Rules, as to which no objection to allowance has been interposed by a party in interest, or (iii) any Claim expressly allowed by a Final Order or

pursuant to this Plan. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been timely filed, is not considered Allowed and shall be expunged on the Effective Date without further action by the Debtor and without any further notice to or action, order or approval of the Bankruptcy Court.

4. **"*Asset Sale(s)*"** means a sale or disposition transaction, in one or more transactions, of the Property, whether to effectuate a Sale Transaction or other transaction contemplated herein.

5. **"*Asset Sale Proceeds*"** means any Cash proceeds of the Asset Sale(s).

6. **"*Avoidance Actions*"** means any and all potential claims or causes of action to avoid a transfer of property or an obligation incurred by the Debtor pursuant to Sections 542 through 553 of the Bankruptcy Code.

7. **"*Bankruptcy Code*"** means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*.

8. **"*Bankruptcy Court*"** means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over this Chapter 11 Case.

9. **"*Bankruptcy Rules*"** means the Federal Rules of Bankruptcy Procedure and any local rules of the Bankruptcy Court applicable to the Chapter 11 Case.

10. **"*Bar Date Order*"** means the order entered in the Chapter 11 Case establishing a bar date for filing proofs of claim, as filed on the docket in the Chapter 11 Case at Dkt. No. 90.

11. **"*Business Day*"** means any day of the calendar week, except Saturday, Sunday, and a "legal holiday," as defined in Bankruptcy Rule 9006(a), or any day on which commercial banks are authorized or required by law to close.

12. **"*Case Closing Date*"** means the date on which the Bankruptcy Court enters an order closing the Chapter 11 Case after the full administration of the Estate and in accordance with the Bankruptcy Code and Bankruptcy Rules.

13. **"*Cash*"** or **"*$*"** means lawful currency of the United States, including, but not limited to, bank deposits, checks, and other similar items.

14. **"*Cause of Action*"** means any action, claim, cause of action, controversy, proceeding, reimbursement claim, affirmative defense, demand, right, Lien, indemnity, guaranty, suit, obligation, liability, loss, damage, remedy, judgment, account, defense, offset (including setoff or recoupment rights), power, privilege, license and franchise of any kind or character whatsoever, known or unknown, foreseen or unforeseen, Contingent or non-Contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, and assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law. For the avoidance of doubt, Cause of Action includes: (i) any right of setoff, counterclaim or

recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (ii) the right to object to or otherwise contest Claims or Interests, (iii) any claim pursuant to Section 362 or Chapter 5 of the Bankruptcy Code, (iv) any Avoidance Action, (v) any claim or defense, including fraud, mistake, duress and usury, and any other defenses set forth in Section 558 of the Bankruptcy Code, and (vi) any claim under any state or foreign law, including any fraudulent transfer or similar claim.

15. ***"Chapter 11 Case"*** means the case commenced by the Debtor styled as "In re Ninety-Five Madison Company, L.P." and being administered in the Bankruptcy Court under Case No. 21-10529 (DSJ) under Chapter 11 of the Bankruptcy Code.

16. ***"Claim"*** means any "claim," as that term is defined in Section 101(5) of the Bankruptcy Code.

17. ***"Class"*** means any group of Claims or Interests classified in Article III of this Plan pursuant to Section 1122 of the Bankruptcy Code.

18. ***"Collateral"*** means any property or interest in property of the Estate subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not avoided or otherwise invalid under the Bankruptcy Code or applicable state law.

19. ***"Combined Plan and Disclosure Statement"*** means this combined disclosure statement and plan of reorganization under Chapter 11 of the Bankruptcy Code, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in their present form or as they may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof.

20. ***"Confirmation"*** means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Case.

21. ***"Confirmation Date"*** means the date on which the Bankruptcy Court enters the Confirmation Order.

22. ***"Confirmation Hearing"*** means the hearing conducted by the Bankruptcy Court pursuant to Section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

23. ***"Confirmation Order"*** means the order or orders of the Bankruptcy Court confirming the Plan in form and substance reasonably satisfactory to the DIP Lender.

24. ***"Contingent"*** means, when used in reference to a Claim, any Claim the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event, which event has not yet occurred, happened or been triggered as of the date on which such Claim is sought to be estimated or an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the holder of such Claim and whether or not a relationship between the holder of such Claim and the Debtor now or hereafter exists or previously existed.

25.     ***"Debtor"*** means Ninety-Five Madison Company, L.P., in its capacity as debtor and debtor in possession in the Chapter 11 Case pursuant to Sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

26.     ***"Debtor Release"*** means the releases set forth in Article VIII.C of the Plan.

27.     ***"DIP Claim"*** means any and all Claims arising under, derived from, or based upon the DIP Documents, including claims for principal amounts outstanding, interest, fees, expenses, costs and other charges of the DIP Lender arising under or related to the DIP Facility.

28.     ***"DIP Credit Agreement"*** means that certain Secured, Super-Priority Debtor-in-Possession Loan and Security Agreement, dated November 4, 2023, by and among the Debtor and the DIP Lender.

29.     ***"DIP Documents"*** means the DIP Credit Agreement and any other documentation governing the DIP Facility, including the DIP Order, whether or not specifically mentioned herein or therein, as the same may be modified, amended, restated, supplemented or replaced from time to time.

30.     ***"DIP Facility"*** means the credit facility provided for under the DIP Credit Agreement.

31.     ***"DIP Lender"*** means Madison Avenue Servicing LLC.

32.     ***"DIP Order"*** means the order entered in the Chapter 11 Case approving the DIP Facility, as filed on the docket in the Chapter 11 Case at Dkt. No. 197.

33.     ***"Disputed"*** means, with respect to any Claim or Interest, a Claim or Interest or any portion thereof that is not Allowed but that has not been disallowed by a Final Order.

34.     ***"Distribution Agent"*** means any Person or Entity designated or retained by the Debtor (prior to the Effective Date) or the Reorganized Debtor (after the Effective Date), without the need for any further order of the Bankruptcy Court, to serve as distribution agent under the Plan.

35.     ***"Distribution"*** means Cash, property, interests in property, or other value distributed to Holders of Allowed Claims and Allowed Interests or their designated agents, under this Plan.

36.     ***"Distribution Date"*** means, except as otherwise set forth herein, the date or dates determined by the Debtor, on or after the Effective Date, with the first such date occurring on or as soon as is reasonably practicable after the Effective Date, upon which the Distribution Agent shall make distributions to Holders of Allowed Claims entitled to receive distributions under the Plan.

37.     ***"Effective Date"*** means the first Business Day after the Confirmation Date as set forth in the Effective Date Notice on which the conditions precedent specified in Article IX

hereof have been either satisfied or waived. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

38. **"Effective Date Notice"** means a notice, to be filed with the Bankruptcy Court by the Debtor on the Effective Date, setting forth the Effective Date.

39. **"Entity"** means an entity as defined in Section 101(15) of the Bankruptcy Code.

40. **"Estate"** means the estate created in the Chapter 11 Case containing all property and other interests of the Debtor pursuant to Section 541 of the Bankruptcy Code.

41. **"Exculpated Parties"** means, collectively, and in each case in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; and (c) with respect to each of the Entities in the foregoing clauses (a) and (b), each Entity's Related Parties.

42. **"Executory Contract"** means a contract to which the Debtor is a party and that is subject to assumption or rejection pursuant to Section 365 of the Bankruptcy Code.

43. **"Exit Facility"** means the facility provided for in the DIP Documents to be entered into by the Reorganized Debtor before or on the Effective Date.

44. **"Exit Facility Documents"** means, and in addition to the Security Instrument, collectively, each agreement, security agreement, pledge agreement, collateral assignments, mortgages, control agreements, guarantee, certificate, document or instrument executed and/or delivered in connection with any of the foregoing, whether or not specifically mentioned herein or therein, as the same may be modified, amended, restated, supplemented or replaced from time to time that shall govern the Exit Facility.

45. **"Final Order"** means an order or judgment of the Bankruptcy Court in the Chapter 11 Case, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024, may be filed relating to such order shall not cause such order not to be a Final Order.

46. **"General Partners"** means (i) RAS Property Management, LLC; (ii) Sharan Sklar Management LLC; and (iii) Michael Sklar Management, LLC.

47. **"General Unsecured Claim"** means any Claim asserted against the Debtor that is not included within the other specifically defined Classes under this Plan or that is otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

48.     **"*Holder*"** means the legal or beneficial holder of a Claim or Interest.

49.     **"*Impaired*"** means, with respect to a Claim or Interest, that such Class of Claims or Interests is impaired within the meaning of Section 1124 of the Bankruptcy Code.

50.     **"*Interest*"** means the interest of any Holder of an equity security of the Debtor, within the meaning of Section 101(16) of the Bankruptcy Code, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including a partnership, limited liability company or similar interest in the Debtor.

51.     **"*Lien*"** means a lien as defined in Section 101(37) of the Bankruptcy Code.

52.     **"*Other Priority Claim*"** means any Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim, Professional Fee Claim, or Priority Tax Claim.

53.     **"*Outside Date*"** means December 31, 2024.

54.     **"*Person*"** has the meaning set forth in Section 101(41) of the Bankruptcy Code.

55.     **"*Petition Date*"** means March 22, 2021, the date on which the Debtor's Chapter 11 bankruptcy petition was filed with the Bankruptcy Court.

56.     **"*Plan*"** means this Combined Plan and Disclosure Statement, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof, as the case may be, and any exhibits and schedules hereto.

57.     **"*Plan Transactions*"** shall have the meaning ascribed to it in Article IV hereof.

58.     **"*Priority Tax Claim*"** means any Allowed Claim of a governmental unit pursuant to Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

59.     **"*Professional*"** means any professional firm or professional Person retained by the Debtor in connection with this Chapter 11 Case pursuant to a Final Order in accordance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

60.     **"*Professional Fee Claim*"** means a Claim of any Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

61.     **"*Proof of Claim*"** means a written statement conforming substantially to the appropriate official form and Bankruptcy Rule 3001 describing the basis and amount of a Claim, together with supporting documentation evidencing such Claim or Interest, which complies with

applicable provisions of the Plan, the Bankruptcy Code, Bankruptcy Rules, and any orders of the Bankruptcy Court.

62. **"Property"** means that certain real property known as and located at 89-95 Madison Avenue, New York, New York.

63. **"Purchase and Sale Agreement"** means the definitive purchase agreement for an Asset Sale(s), including all exhibits and schedules thereto, and as may be amended, modified, or supplemented in accordance with the terms thereof.

64. **"Purchaser"** means the purchaser(s) of the Property pursuant to any Purchase and Sale Agreement, together with any successors to and permitted assigns of such purchaser(s).

65. **"Rejection Damages Claim"** means any Claim arising from, or relating to, the rejection of an Executory Contract or Unexpired Lease pursuant to Section 365(a) of the Bankruptcy Code by the Debtor, as limited by any applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

66. **"Related Parties"** means each of, and in each case in its capacity as such: current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, brokers, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees. For the avoidance of doubt, each of the General Partners and the Debtor's Professionals are Related Parties of the Debtor.

67. **"Released Parties"** means, collectively, and in each case in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; and (c) the DIP Lender.

68. **"Reorganized Debtor"** means the Debtor as reorganized pursuant to and under the Plan on or after the Effective Date.

69. **"Restructuring Transaction"** means (i) the vesting of the Debtor's assets in the Reorganized Debtor in accordance with the Plan; (ii) entry into the Exit Facility Documents; and (iii) any other transaction(s) that the Debtor reasonably determines necessary or appropriate to implement the foregoing in accordance with the Plan.

70. **"Sale Transaction"** means an Asset Sale(s) to be effectuated pursuant to the Purchase and Sale Agreement and consummated by or before the Outside Date.

71. **"Schedules"** means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs filed by the Debtor pursuant to Section 521 of the Bankruptcy Code, as such schedules may be or may have been amended, modified, or supplemented from time to time.

72.     **"Secured Claim"** means a Claim (i) secured by a valid and perfected Lien on Collateral that is enforceable pursuant to applicable law, the amount of which is equal to or less than the value of such Collateral (a) as set forth in this Plan, (b) as agreed to by the Holder of such Claim and the Debtor, or (c) as determined by a Final Order, or (ii) secured by the amount of any rights of setoff of the Holder thereof under Section 553 of the Bankruptcy Code.

73.     **"Security Instrument"** means that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, by and among the Debtor and the DIP Lender, substantially in the form annexed as "Exhibit B" to the DIP Credit Agreement.

74.     **"Unexpired Lease"** means a lease to which the Debtor is a party and that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

75.     **"Unimpaired"** means, with respect to a Claim or Interest, a Class of Claims or Interests that is not Impaired within the meaning of Section 1124 of the Bankruptcy Code.

76.     **"Weinstein Estate"** means the Estate of Lois Weinstein, including, for the avoidance of doubt, Carol E. Keller and Gail Shields, as preliminary Executors of the Estate of Lois Weinstein.

## PART ONE: DISCLOSURE STATEMENT

The information provided herein discloses information regarding this Amended Combined Plan and Disclosure Statement for which the Debtor will seek confirmation by the Bankruptcy Court.  The Debtor is providing the information herein to certain Holders of Claims.

**THE DEBTOR'S GENERAL PARTNERS HAVE APPROVED THE TRANSACTIONS CONTEMPLATED HEREIN AND BELIEVE THAT THE TRANSACTIONS CONTEMPLATED UNDER THE PLAN ARE FAIR AND EQUITABLE, MAXIMIZE THE VALUE OF THE DEBTOR'S ESTATES, AND REPRESENT THE BEST ALTERNATIVE FOR ACCOMPLISHING THE DEBTOR'S OVERALL RESTRUCTURING OBJECTIVES.**

The consummation and effectiveness of this Amended Combined Plan and Disclosure Statement are subject to certain material conditions precedent described herein and set forth in Article IX.  There is no assurance that the Bankruptcy Court will confirm this Amended Combined Plan and Disclosure Statement or, if the Bankruptcy Court does confirm the Amended Combined Plan and Disclosure Statement, that the conditions necessary for it to become effective will be satisfied or, in the alternative, waived.  The Debtor urges each Holder of a Claim or Interest to consult with its own advisors with respect to any legal, financial, securities, tax, or business advice in reviewing this Amended Combined Plan and Disclosure Statement and each proposed transaction contemplated herein.

This Amended Combined Plan and Disclosure Statement has been prepared in accordance with Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3016(b) and is not necessarily prepared in accordance with federal or state securities laws or other similar laws. This Amended Combined Plan and Disclosure Statement has not been approved or disapproved by the United States Securities and Exchange Commission (the "SEC") or any similar federal, state, local, or foreign regulatory agency, nor has the SEC or any other agency passed upon the

accuracy or adequacy of the statements contained in this Amended Combined Plan and Disclosure Statement. The Debtor has sought to ensure the accuracy of the financial information provided in this Amended Combined Plan and Disclosure Statement.

## I. BACKGROUND.

The Debtor provides the following background information concerning its history and primary asset; the events leading up to and occurring during the Chapter 11 Case; and various matters transpiring during the Chapter 11 Case. The information herein is abbreviated due to the Debtor's creditors' existing familiarity with most of its background and the Plan's provision for payment in full of all Allowed Claims and unimpairment of Allowed Interests.

### A. *The Debtor, the Property, and Events Precipitating the Chapter 11 Filing.*

The Debtor is a New York limited partnership that was formed on June 1, 1982 pursuant to a limited partnership agreement (as may be amended, the ***"Partnership Agreement"***). The Debtor's current general partners are: (i) RAS Property Management, LLC ("***RAS***"), an entity owned by Rita Sklar and various trusts formed by her; (ii) Sharan Sklar Management LLC ***("Sharan Sklar Management")***, an entity managed by Sharan Sklar; and (iii) Michael Sklar Management, LLC ***("Michael Sklar Management")***, an entity managed by Michael Sklar.

The Debtor is the fee simple and title owner of the Property. The Debtor and its predecessors have operated the Property since June 1, 1982. From 1982 to 2021, Rita Sklar, through RAS, managed the Property and the day-to-day affairs of the Debtor.

In June 2021, the Partnership Agreement was amended to add Sharan Sklar Management and Michael Sklar Management as General Partners. Sharan Sklar and Michael Sklar subsequently replaced Rita Sklar in managing the day-to-day affairs of the Debtor and the Property. The amended Partnership Agreement provided that decisions as to key matters, including the terms and conditions of any financing or refinancing and approving a sale of the Property, required the unanimous approval of all General Partners.

In June 2022, the General Partners negotiated and entered into a second amendment to the Partnership Agreement, which eliminates the unanimous consent provision and requires all decisions to be made by a "vote of a majority" of the General Partners.

The Property provides full service commercial leases. The Debtor has two major tenants: (i) Lee and Low Books, which leases half of the twelfth floor of the Property; and (ii) Douglas Lister Architect, which leases an office on the twelfth floor of the Property.

The Property is encumbered by (i) an alleged judgment claim filed by Vitra, Inc. (***"Vitra"***) in an amount of $1,286,725.22; and (ii) the DIP Facility.

The Debtor commenced the Chapter 11 Case because it was facing liquidity challenges, legal judgments, and litigation expenses caused by years of prepetition litigation with Vitra. As of the date hereof, fourteen proofs of claim have been filed against the Debtor, and the total amount claimed is $21,850,450.91. The Debtor has also scheduled twelve creditors. See *Schedule E/F: Creditors Who have Unsecured Claims* [Dkt. No. 10-3].

**B.** *The Chapter 11 Case.*

**1.** **The Vitra Dispute.**

As of the Petition Date, the Debtor was engaged in several ongoing disputes with Vitra, which was a tenant and the Debtor's largest creditor. On April 1, 2021, shortly after the Petition Date, Vitra filed its first motion to convert the Chapter 11 Case to a Chapter 7 liquidation (the "***First Motion to Convert***") [Dkt. No. 15]. The First Motion to Convert was denied without prejudice [Dkt. No. 91]. On June 2, 2021, Vitra filed a proof of claim in the Chapter 11 Case, asserting a claim against the Debtor in the total amount of $13,758,246.78. On December 2, 2021, the Debtor moved to assume its lease with Vitra [Dkt. No. 128] based, in part, on the potential costs of its rejection and finding a substitute tenant. On July 12, 2022, Vitra filed a second motion to convert the Chapter 11 Case to a Chapter 7 liquidation (the "***Second Motion to Convert***") [Dkt. No. 162].

Following extensive negotiations, Vitra and the Debtor reached a global settlement of all ongoing disputes (the "***Vitra Settlement***"),[1] including allowing Vitra's proof of claim in a compromised amount, resolving the Second Motion to Convert, and the disposition of Vitra's lease. The Bankruptcy Court approved the terms of the Vitra Settlement, which provide, *inter alia*: (i) Vitra's as-filed proof of claim would be allowed in the aggregate amount of $2,900,000, subject to setoff of certain amounts; (ii) the net amount of Vitra's claim would be paid in full, in cash, within thirty (30) days of (a) the effective date of a plan of reorganization confirmed by the Bankruptcy Court in the Chapter 11 Case, (b) the conversion of the Chapter 11 Case to Chapter 7, or (c) the dismissal of the Chapter 11 Case; and (iii) that Vitra's lease would be rejected as of May 31, 2023 pursuant to 11 U.S.C. § 365.

**2.** **The First Chapter 11 Plan.**

On September 12, 2021, the Debtor filed a plan of reorganization (the "***First Plan***") [Dkt. No. 82], which contemplated that the Debtor would obtain exit financing that would be (i) secured by the Debtor's interest in the Property and (ii) sufficient to pay all of the Debtor's creditors in full.[2] To assist the Debtor in obtaining financing, the Debtor retained (i) Cushman & Wakefield, as broker, to source exit financing[3] and (ii) Rosenberg & Estis, P.C., as special counsel, to assist with the documentation for such financing.[4]

After filing the First Plan, and given challenges posed by the ongoing COVID-19 pandemic and the sustained downturn in the commercial leasing market, the Debtor made the business judgment decision to proceed with a disposition of the Property in contemplation of an

---

[1] *See Order (I) Resolving Motion of Vitra, Inc. to Convert the Debtor's Chapter 11 Case to a Chapter 7 Liquidation; (II) Allowing Vitra's Proof of Claim in a Compromised Amount; and (III) Granting Related Relief* [Dkt. No. 195].

[2] *See* First Plan at III.A.

[3] *See Application of Debtor Ninety-Five Madison Company, L.P. for an Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) Authorizing the Retention and Employment of Cushman & Wakefield as Mortgage Broker* Nunc Pro Tunc *to September 7, 2021* (the "***Cushman & Wakefield Retention Application***") [Dkt. No. 104] and order approving the Cushman & Wakefield Retention Application [Dkt. No. 122].

[4] *See Application of Debtor Ninety-Five Madison Company, L.P. for Entry of an Order Authorizing the Retention and Employment of Rosenberg & Estis, P.C. as Special Counsel to the Debtor* Nunc Pro Tunc *to February 18, 2022* (the "***Rosenberg & Estis Retention Application***") [Dkt. No. 150] and order approving the Rosenberg & Estis Retention Application [Dkt. No. 153].

amended plan of reorganization.  Concurrently with those efforts, the Debtor sought debtor-in-possession financing that would be a bridge to the Debtor's emergence from Chapter 11.

### 3.    The DIP Facility.

On October 26, 2022, the Debtor filed a motion seeking authority to enter into a secured, superpriority debtor-in-possession term loan facility with Madison Avenue Servicing LLC as DIP Lender with a maximum principal availability of $23,000,000.  On December 14, 2022, the Bankruptcy Court entered an order approving the DIP Facility.[5]  Pursuant to the DIP Order, the Debtor entered into the DIP Facility, which provided the Debtor with ample liquidity to, among other things, continue its operations and pay the administrative expenses of the Chapter 11 Case.  As of October 31, 2023, the outstanding loan balance under the DIP Facility is $11,842,020.01 (together with all accrued and unpaid interest, the ***"DIP Debt"***).[6]

The DIP Credit Agreement requires that any plan of reorganization must provide for either (i) the execution and delivery to the DIP Lender of the Security Instrument and the perfection of the DIP Lender's security interest (as set forth in Section 3.2 of the DIP Credit Agreement) or (ii) payment in full of the DIP Debt.[7]  In the event of the former, the Debtor must execute and deliver the Security Instrument to the DIP Lender upon Confirmation.[8]  The Security Instrument is an agreement that evidences and secures the DIP Loan and encumbers the Property pursuant to the terms of the DIP Documents.[9]  The Security Instrument provides that "[a]ll the covenants, conditions and agreements contained in the [DIP Credit Agreement] are hereby made a part of this Security Instrument to the same extent and with the same force as if fully set forth herein."[10]  All subsequent advances under the DIP Facility are secured by the Security Instrument upon its execution.[11]

The DIP Credit Agreement's terms, as incorporated into the Security Instrument, provide that the Debtor may utilize the proceeds of the DIP Loan for the "payment of claims under an Acceptable Plan[.]"  The DIP Credit Agreement defines "Acceptable Plan" as, among other things, a "Chapter 11 plan of [the Debtor] that, unless otherwise consented to in advance in writing by [the DIP Lender], provides for the [] execution and delivery to [the DIP Lender] by [the Debtor] of the Security Instrument[.]"[12]

---

[5]    *See Order (I) Authorizing Debtor to Obtain Postpetition Debtor-In-Possession Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Dkt. No. 197].

[6]    *See Chapter 11 Monthly Fee Statement for the Debtor for the Period of October 1, 2023 through October 31, 2023* at 14-15 [Dkt. No. 286].

[7]    *See* DIP Credit Agreement §§ 1.1 (providing definition of "Acceptable Plan"), 3.2.2 (providing that upon entry of the Confirmation Order, the Debtor must execute and deliver the Security Instrument to the DIP Lender).

[8]    *See id*. § 3.2.2.

[9]    *See id*. § 1.1.

[10]    *Id*., Ex. B, § 1.

[11]    *See id*. § 2.9.1.

[12]    *Id*. § 1.1.

## C. *Marketing and Sale of the Property.*

As set forth above, given the market climate in 2022, the Debtor and its Professionals enacted a marketing process of the Property. To assist with the marketing of the Property, the Debtor retained Branton Realty Services LLC (***"BRS"***) as real estate broker and sales agent.[13] Woody Heller is BRS's lead professional for the Debtor, and since BRS's retention, Mr. Heller has overseen the day-to-day management of the marketing process.

The Debtor also retained Fried, Frank, Harris, Shriver & Jacobson LLP as special real estate transaction and tax counsel to the Debtor to prepare a form Purchase and Sale Agreement for eventual execution by the Debtor and any Purchaser of the Property.[14]

The Debtor first conducted a "premarketing" process during which Mr. Heller informally gauged interest from potentially interested buyer groups, while marketing materials and expert reports were finalized for official open market promotion. Mr. Heller received inquiries from two types of potential buyer groups: (i) buyers that sought to convert the Property for residential use; and (ii) buyers that sought to maintain the Property for commercial office purposes. In early 2023, the Debtor launched a formal marketing process. During this period, the Debtor officially listed the Property on the open market.

To-date, the Debtor has received multiple bids for the Property, and continues to seek additional bids with the intent of selecting a bid that most maximizes the value of the Property. If the Debtor is able to secure a winning bid by or before the Outside Date, the Debtor intends to effectuate a Sale Transaction after the Effective Date and under the supervision of the Bankruptcy Court, as further described herein.

## II. SUMMARY OF THE AMENDED COMBINED PLAN.

## A. *The Contemplated Restructuring Transaction.*

The Debtor intends to utilize the Chapter 11 process and supervision of the Bankruptcy Court to pay all Allowed Claims in full, shed burdensome liabilities, and bring its marketing process to completion.

Specifically, and pursuant to the Restructuring Transaction, the Debtor will pay all Allowed Claims in full through the DIP Facility and the consummation of the Exit Facility as provided in the DIP Documents. After the Effective Date, the Debtor then intends to consummate a sale or other disposition of the Property upon completion of the Debtor's ongoing marketing process before the Outside Date pursuant to the terms of a Purchase and Sale Agreement between the Debtor and a Purchaser, the proceeds of which would be used to satisfy any Disputed Claims that may later become Allowed Claims.

---

[13] *See Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) Authorizing the Retention and Employment of Branton Realty Services LLC as Real Estate Agent to Debtor Ninety-Five Madison Company, L.P. Nunc Pro Tunc to August 17, 2022* [Dkt. No. 181].

[14] *See Order Authorizing the Retention and Employment of Fried, Frank, Harris, Shriver & Jacobson LLP as Special Real Estate Transaction & Tax Counsel to the Debtor Nunc Pro Tunc to January 14, 2023* [Dkt. No. 221].

**B.**    *Plan Treatment of Claims.*

The following table summarizes (i) the treatment of Claims and Interests that are classified under the Plan, (ii) which Classes (if any) are impaired by the Plan, and (iii) which Classes (if any) are entitled to vote on the Plan:

| Class | Designation | Treatment | Entitled to Vote |
|:-----:|-------------|-----------|------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims | Unimpaired | No (deemed to accept) |
| 3 | General Unsecured Claims | Unimpaired | No (deemed to accept) |
| 4 | Equity Interests in Debtor | Unimpaired | No (deemed to accept) |

**C.**    *Alternatives to the Plan.*

At this time, the Debtor is not aware of any viable alternatives to the Plan, other than the liquidation of its assets pursuant to a Chapter 11 plan of liquidation or by a trustee under Chapter 7 of the Bankruptcy Code.  In this respect, the Debtor notes that no other party has proposed a plan of reorganization in this Chapter 11 Case.

**III.    RISK FACTORS TO BE CONSIDERED.**

Holders of Claims and Interests should read and consider carefully the risk factors set forth herein.  Although there are several risk factors as discussed below, these factors should not be regarded as constituting the only risks present in connection with the Debtor or the Plan and its implementation.

**A.**    *Bankruptcy Law Considerations.*

The occurrence or non-occurrence of any or all the following contingencies, and any others, could affect distributions available to Holders of Allowed Claims and Interests under the Plan.

**1.    The Conditions Precedent to the Effective Date of the Plan May Not Occur.**

As set forth more fully in Article IX of the Plan, the Effective Date of the Plan is subject to a number of conditions precedent.  If such conditions precedent are not met or waived, the Effective Date will not take place.

**2.    Risks Related to Possible Objections to the Plan.**

There is a risk that certain parties could oppose and object to the Plan in the Bankruptcy Court either in its entirety or to specific provisions of the Plan.  While the Debtor believes that the proposed Plan complies with all relevant Bankruptcy Code provisions, there can be no guarantee that a party in interest will not file an objection to the Plan or that the Bankruptcy Court will not sustain such an objection.

**3. Conversion to a Chapter 7 Case.**

If no plan of reorganization can be confirmed, or if the Bankruptcy Court otherwise finds that it would be in the best interest of Holders of Claims and Interests, the Chapter 11 Case may be converted to a case under Chapter 7 of the Bankruptcy Code, pursuant to which a Chapter 7 trustee would be appointed or elected to liquidate the Debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code.

**B. *Other Risks.***

**1. The Debtor Will Be Subject to the Risks and Uncertainties Associated with the Chapter 11 Case.**

For the duration of the Chapter 11 Case, the Debtor's ability to operate, develop, and continue as a going concern, will continue to be subject to the risks and uncertainties associated with bankruptcy. These risks include the following: (i) ability to develop, confirm, and consummate the Restructuring Transaction specified in the Plan; (ii) ability to obtain Bankruptcy Court approval with respect to motions filed in the Chapter 11 Case from time to time; (iii) ability to maintain relationships with suppliers, vendors, service providers, customers, employees, payors, and other third parties; (iv) ability to maintain contracts that may be critical to the Debtor's operations; (v) ability of third parties to seek and obtain Bankruptcy Court approval to terminate contracts and other agreements with the Debtor; (vi) ability of third parties to seek and obtain Bankruptcy Court approval to appoint a Chapter 11 trustee or to convert the Chapter 11 Case to Chapter 7 proceedings; and (vii) the actions and decisions of the Debtor's creditors and other third parties who have interests in the Chapter 11 Case that may be inconsistent with the Debtor's intentions.

**2. The Reorganized Debtor May Be Adversely Affected by Potential Litigation, Including Litigation Arising Out of the Chapter 11 Case.**

In the future, the Debtor, the Reorganized Debtor, and/or the Debtor's General Partners may become parties to litigation. In general, litigation can be expensive and time consuming to bring or defend against. Such litigation could result in settlements or damages that could significantly affect the Debtor's financial condition. It is not possible to predict such potential litigation nor the final resolution of such litigation at this time.

**IV. CERTAIN FEDERAL UNITED STATES INCOME TAX CONSEQUENCES OF THE PLAN.**

The following discussion summarizes certain of the material United States federal income tax consequences expected to result from the implementation of the Plan. This discussion is based on current provisions of the Internal Revenue Code of 1986, as amended, applicable Treasury Regulations, judicial authority and current administrative rulings and pronouncements of the Internal Revenue Service (the "IRS"). There can be no assurance that the IRS will not take a contrary view, and no ruling from the IRS has been or will be sought. Legislative, judicial, or administrative changes or interpretations may be forthcoming that could alter or modify the

statements and conclusions set forth herein. Any such changes or interpretations may or may not be retroactive and could affect the tax consequences to, among others, the Debtor and the Holders of Claims or Interests.

The federal income tax consequences of the Plan are complex and subject to significant uncertainties. This summary does not address foreign, state, or local tax consequences of the Plan, nor does it purport to address all of the federal income tax consequences of the Plan. This summary also does not purport to address the federal income tax consequences of the Plan to taxpayers subject to special treatment under the federal income tax laws, such as broker-dealers, tax exempt entities, financial institutions, insurance companies, S corporations, small business investment companies, mutual funds, regulated investment companies, foreign corporations, and nonresident alien individuals.

Given that all Allowed Claims and Allowed Interests are to be paid in full in Cash under the Plan, the Debtor does not anticipate that the Plan will have material income tax consequences for creditors.

**EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING THE POTENTIAL FEDERAL, STATE, LOCAL, OR FOREIGN TAX CONSEQUENCES OF THE PLAN.**

## V. EFFECT OF CONFIRMATION OF THE AMENDED COMBINED PLAN.

### A. *Binding Effect of the Plan.*

The provisions of the confirmed Plan shall bind the Debtor, the Reorganized Debtor, any Entity acquiring property under the Plan, and any Holder, whether or not such Holder has filed a Proof of Claim or Interest in the Chapter 11 Case. All Claims shall be fixed and adjusted pursuant to the Plan. The Plan will also bind any taxing authority, recorder of deeds, or similar official for any county, state, or governmental unit in which any instrument related to the Plan or related to any transaction contemplated under the Plan is to be recorded with respect to any taxes of the kind specified in Section 1146(a) of the Bankruptcy Code.

### B. *Injunction, Exculpation, and Release Provisions of the Plan.*

The Plan contains injunction, exculpation, and release provisions. Article VIII of the Plan describes in specific and conspicuous language all acts to be enjoined and identifies entities that would be subject to said provisions in satisfaction of the requirements of Bankruptcy Rule 3016(c).

### C. *Confirmation of the Plan.*

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court to hold a confirmation hearing upon appropriate notice to all required parties. The Debtor will request that the Bankruptcy Court schedule the Confirmation Hearing. Notice of the Confirmation Hearing will be provided to all known creditors and equity holders or their representatives. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of the adjourned date made at the Confirmation

Hearing, at any subsequent adjourned Confirmation Hearing, or pursuant to a notice filed on the docket of the Chapter 11 Case.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation. Any objection to Confirmation must (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtor, would obviate such objection; (iv) conform to the Bankruptcy Rules; and (v) be filed with the Bankruptcy Court, with a copy to the chambers of the Bankruptcy Court, together with proof of service thereof.

### D.  *Post-Confirmation Asset Sale(s).*

As noted herein, the Debtor intends to continue to conduct a marketing process to solicit bids for an Asset Sale(s) of the Property after Confirmation and to consummate a Sale Transaction. To the extent the Debtor or the Reorganized Debtor, as applicable, effectuates a Sale Transaction before the Outside Date, the Debtor or the Reorganized Debtor, as applicable, may elect to conduct such a sale pursuant to Sections 363, 1123, and 1146(a) of the Bankruptcy Code and in accordance with the Bankruptcy Court's retention of jurisdiction under the Plan.

### VI.  NO DISTRIBUTIONS PENDING ALLOWANCE.

Notwithstanding any other provision of the Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such a Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim. To the extent that a Claim is not a Disputed Claim but is held by a Holder that is or may be liable to the Debtor, no payments or Distributions shall be made with respect to all or any portion of such Claim unless and until such Claim and liability have been settled or withdrawn or have been determined by Final Order of the Bankruptcy Court or such other court having jurisdiction over the matter.

### VII.  BEST INTERESTS OF CREDITORS/LIQUIDATION ANALYSIS.

Often called the "best interests of creditors" test, Section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court find, as a condition to confirmation, that a Chapter 11 plan provides, with respect to each impaired class, that each Holder of a claim or an equity interest in such impaired class either (1) has accepted the plan or (2) will receive or retain under the plan property of a value that is not less than the amount that the non-accepting Holder would receive or retain if a debtor liquidated under Chapter 7.

As the Plan provides that each Class of Claims and Interests is Unimpaired and thus are not entitled to vote, the Debtor submits that the "best interests of creditors test" does not apply to any Classes. Having no applicability to the Plan, the Debtor further submits that the requirements of Section 1129(a)(7) of the Bankruptcy Code have been met.

In any event, the Debtor believes that recoveries in a Chapter 7 scenario, as compared to those pursuant to the distribution terms provided under the Plan, would be reduced by (i) the delay necessarily resulting from the appointment of a Chapter 7 trustee; (ii) the fees and expenses of such trustee and any professionals he or she will retain; and (iii) additional Administrative Expense Claims. More specifically, and aside from general logistical concerns, the Chapter 7 trustee would not likely be immediately familiar with the intricacies of Debtor's assets, the Debtor's business, the Debtor's longstanding history, or with various regulatory laws related to the Debtor. Thus, an additional layer of advisors and experts would need to be retained by the Chapter 7 trustee, giving rise to additional administrative expenses that would be entitled to priority. Additionally, sales organized pursuant to Chapter 7 liquidations will often yield depressed values because the sales are conducted under "fire sale" conditions.

Because recoveries under the Plan exceed those in a hypothetical Chapter 7 case, the Debtor submits the Plan satisfies the best interests of creditors test.

## VIII.  CONCLUSION.

The Debtor believes the Plan is in the best interest of all stakeholders. The Debtor further believes the Plan is preferable to all other available alternatives and provides for a larger distribution to the Debtor's creditors than would otherwise result in other scenarios.

## PART TWO: PLAN OF REORGANIZATION

### ARTICLE I.
### RULES OF INTERPRETATION AND COMPUTATION OF TIME

**A.**  *Rules of Interpretation.*

Unless otherwise specified, all article, section, or exhibit references in this Plan are to the respective article in, section, or exhibit to, this Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit, or schedule as it may have been amended, restated, revised, supplemented or otherwise modified. If a time or date is specified for any payments or other Distribution under this Plan, it shall mean on or as soon as reasonably practicable thereafter. Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral.

**B.**    *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next Business Day.

**C.**    *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America.  Any conversion required to convert foreign currency to United States dollars shall be done using the applicable exchange rates on the Petition Date.

**D.**    *Controlling Document.*

In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

**ARTICLE II.**
**ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY TAX CLAIMS AND STATUTORY FEES**

**A.**    *Allowed Administrative Expense Claims.*

Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to a different treatment, each Holder of an Allowed Administrative Expense Claim shall be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash (i) on the Effective Date or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Expense Claim is due or as soon thereafter as is reasonably practicable, (ii) if an Administrative Expense Claim is Allowed after the Effective Date, on the date such Administrative Expense Claim is Allowed or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Expense Claim is due, (iii) at such time and upon such terms as may be agreed upon by such Holder and the Debtor, or (iv) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

**B.**    *DIP Claims.*

On the Effective Date, in full and final satisfaction of the Allowed DIP Claims, the DIP Facility of the DIP Lender under the DIP Documents shall: be Allowed in an amount equal to the aggregate amount of the then outstanding DIP Facility including (a) the principal amount outstanding under the DIP Facility on such date; (b) all interest accrued and unpaid thereon through and including the date of payment; (c) all accrued and unpaid fees, expenses, and indemnification obligations payable under the DIP Documents, including, the reasonable and documented fees and expenses of the attorneys and other advisors of the DIP Lender to the extent provided in the DIP Documents; and (d) the remaining DIP Claims will be converted on a dollar-for-dollar basis into the Exit Facility.

**C.**     *Professional Fee Claims.*

**1.**     **Final Fee Applications**.

All final requests for payment of Professional Fee Claims shall be filed and served no later than thirty (30) days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims.  Any objections to Professional Fee Claims must be filed and served on the Debtor and the requesting party no later than thirty (30) days after service of the final request for payment of Professional Fee Claims.  Except to the extent that the applicable Holder of an Allowed Professional Fee Claim agrees to less favorable treatment with the Debtor or, after the Effective Date, the Reorganized Debtor, each Holder of a Professional Fee Claim that has been approved by the Bankruptcy Court shall be paid in full in Cash.

**2.**     **Post-Effective Date Fees and Expenses**

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtor may, in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court, pay in Cash the legal, professional or other fees and expenses related to the implementation and consummation of the Plan incurred by the Reorganized Debtor or any Professional following the Effective Date.  Upon the Effective Date, any requirement that Professionals comply with the applicable provisions of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further notice to or action, order or approval of the Bankruptcy Court.

**D.**     *Priority Tax Claims.*

Except to the extent that any applicable Holder of an Allowed Priority Tax Claim has been paid by the Debtor before the Effective Date, or such Holder agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, on account of such Allowed Priority Tax Claim, at the option of the Debtor or, after the Effective Date, the Reorganized Debtor, payment in Cash in the full amount of such Allowed Priority Tax Claim, on or as soon as reasonably practicable following the latest to occur of (i) the Effective Date, (ii) the date on which such Priority Tax Claim becomes Allowed, and (iii) the date such Priority Tax Claim is payable under applicable non-bankruptcy law.

**E.**     *Statutory Fees Payable Pursuant to 28 U.S.C. § 1930.*

The Debtor shall pay all quarterly fees under 28 U.S.C. § 1930(a), plus any interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtor's business, for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

# ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**A.**     *Summary of Classification.*

The following table designates the Classes of Claims against and Interests in the Debtor's Estate, and specifies which of those Classes are (i) Unimpaired or Impaired by the Plan, (ii) entitled or not entitled to vote to accept or reject this Plan in accordance with Section 1126 of the Bankruptcy Code, and (iii) deemed to accept or not accept the Plan. A Claim or Interest is classified in a particular Class only to the extent that any such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims | Unimpaired | No (deemed to accept) |
| 3 | General Unsecured Claims | Unimpaired | No (deemed to accept) |
| 4 | Equity Interests in Debtor | Unimpaired | No (deemed to accept) |

**B.**     *Treatment of Claims and Interests.*

**1.**     <u>**Class 1 – Other Priority Claims**</u>

*Classification*: Class 1 consists of all Holders of Other Priority Claims.

*Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim has agreed with the Debtor to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; and (ii) the date the Other Priority Claim becomes an Allowed Claim.

*Voting*: Class 1 is Unimpaired under the Plan. A Holder of an Allowed Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Therefore, a Holder of an Allowed Other Priority Claim is not entitled to vote to accept or reject the Plan.

**2.**     <u>**Class 2 – Secured Claims**</u>

*Classification*: Class 2 consists of all Holders of Secured Claims.

*Treatment*: Except to the extent that a Holder of an Allowed Secured Claim has agreed with the Debtor to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such Allowed Secured Claim, Cash in an amount equal to such Allowed Secured Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; and (ii) the date the Secured Claim becomes an Allowed Claim.

*Voting*: Class 2 is Unimpaired under the Plan. A Holder of an Allowed Secured Claim is conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Therefore, a Holder of an Allowed Secured Claim is not entitled to vote to accept or reject the Plan.

### 3.        Class 3 – General Unsecured Claims

*Classification*: Class 3 consists of all General Unsecured Claims.

*Treatment*: Except to the extent that a Holder of an Allowed General Unsecured Claim has agreed with the Debtor to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such Allowed General Unsecured Claim, Cash in an amount equal to such Allowed General Unsecured Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; and (ii) the date the General Unsecured Claim becomes an Allowed Claim, including if such General Unsecured Claim becomes Allowed after the Effective Date.

*Voting*: Class 3 is Unimpaired under the Plan. A Holder of an Allowed General Unsecured Claim in Class 3 is conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Therefore, a Holder of an Allowed General Unsecured Claim is not entitled to vote to accept or reject the Plan.

### 4.        Class 4 – Equity Interests in the Debtor

*Classification*: Class 4 consists of all Holders of Interests in the Debtor.

*Treatment*: On the Effective Date, each Holder of an Allowed Interest in the Debtor shall receive interests in the Reorganized Debtor in the same number, proportion or percentage, as applicable, and with identical rights with respect to the Reorganized Debtor as the Allowed Interests such Holder held in the Debtor as of the Effective Date.

*Voting*: Class 4 is Unimpaired under the Plan. A Holder of an Allowed Interest in Class 4 is conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Therefore, a Holder of an Allowed Interest is not entitled to vote to accept or reject the Plan.

## ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN

A.        *Effectuating Plan Transactions; Approvals.*

On the Effective Date or as soon thereafter as is reasonably practicable, the Debtor may take any and all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate this Plan (the ***"Plan Transactions"***), including, but not limited to, (i) the filing of appropriate certificates of incorporation or other similar documents with the appropriate governmental authorities pursuant to applicable law, and (ii) all other actions that are necessary or appropriate to effectuate the provisions of this Plan.

Pursuant to the applicable provisions of the Bankruptcy Code, the Debtor or the Reorganized Debtor shall be authorized to execute, in the name of any applicable party, any

estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance (including, any Lien, Claim or encumbrance that is to be released and satisfied upon the Debtor's compliance with the provisions of this Plan) not expressly preserved in the Plan, and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

The Confirmation Order shall and shall be deemed to, pursuant to the applicable provisions of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect the Plan Transactions and any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

**B.      *Sources of Consideration for Plan Distributions.***

The Debtor shall fund distributions and satisfy applicable Allowed Claims and Allowed Interests under the Plan with respect to the Reorganization Transaction with Cash on hand and the DIP Facility.

Pursuant to the Restructuring Transaction, prior to, on, or after the Effective Date, the Debtor or the Reorganized Debtor, as applicable, may take any and all actions as may be necessary or appropriate in the Debtor's reasonable discretion to effectuate the Restructuring Transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (i) the execution and delivery of any new organizational documents, including any appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, formation, organization, arrangement, continuance, dissolution, sale, purchase, or liquidation, in each case, containing terms that are consistent with the terms of the Plan; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (iii) the filing of any new organizational documents, including any appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state law; and (iv) such other transactions that are required to effectuate the Restructuring Transaction, including any sales, mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations. The Restructuring Transaction shall be structured in a manner that takes into account the tax positions of creditors and the Reorganized Debtor.

Pursuant to the Restructuring Transaction, the Reorganized Debtor shall have the authority and right on behalf of the Debtor without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan, including, without limitation, to: (i) except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtor; (ii) make distributions to holders of Allowed Claims in accordance with the Plan; (iii) prosecute all Causes of Action on behalf of the Debtor, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Reorganized Debtor may determine is in the best interests of the Debtor; (iv) maintain the books, records, and accounts of the Debtor; (v) complete and file, as necessary, all final or otherwise

required federal, state, and local tax returns for the Debtor; and (vi) perform other duties and functions that are consistent with the implementation of the Plan.

For the avoidance of doubt, on or before the Effective Date, the Reorganized Debtor shall be authorized to execute and perform under the Exit Facility Documents without the need for any further corporate action and without further action by Holders of Claims or Interests. Notwithstanding anything contained in this Plan, the Debtor may also concurrently pursue a Sale Transaction and consummate such Sale Transaction by or before the Outside Date.

The Confirmation Order shall and shall be deemed to, pursuant to Sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transaction.

## C.  *Tax Matters.*

The terms of the Plan shall be structured to minimize, to the extent practicable, the aggregate tax impact on the Debtor, taking into account both the Cash tax impact on the Debtor in the tax year of the Restructuring Transaction, and the tax liability of the Debtor in subsequent years.

## D.  *Effectuating Documents.*

Upon entry of the Confirmation Order, the Debtor shall execute, release, and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan.

Pursuant to the applicable provisions of the Bankruptcy Code, the Debtor shall be authorized to execute, in the name of any applicable party, any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance (including, any Lien, Claim or encumbrance that is to be released and satisfied upon the Debtor's compliance with the provisions of this Plan) not expressly preserved in the Plan, and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

## E.  *Post-Confirmation Management.*

The Debtor shall continue in existence post-confirmation. After Confirmation of the Plan, the General Partners will continue to control the Reorganized Debtor pursuant to the terms of the Partnership Agreement.

## F.  *Post-Confirmation Asset Sale(s).*

To the extent the Debtor or the Reorganized Debtor, as applicable, effectuates any Sale Transaction prior to the Outside Date, the Debtor or the Reorganized Debtor, as applicable, may elect to sell such property pursuant to Sections 363, 1123, and 1146(a) of the Bankruptcy Code and in accordance with the Bankruptcy Court's retention of jurisdiction under the Plan.

## G. *Exemption From Transfer Taxes, Mortgage Recording Taxes, or Similar Taxes.*

To the maximum extent provided by Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan as confirmed by the Bankruptcy Court, shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax or similar tax due in connection with or in furtherance of the Plan as confirmed by the Bankruptcy Court and the funding requirements contained herein and shall not be subject to any state, local or federal law imposing such tax. The appropriate state or local government officials or agents shall forgo collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## H. *Retention of Professionals.*

The Reorganized Debtor shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Reorganized Debtor, are necessary to assist the Reorganized Debtor in the performance of its duties and to administer the Plan. The payment of the reasonable and documented fees and expenses of the retained professionals shall not be subject to the approval of the Bankruptcy Court.

## I. *Preservation of Rights of Action.*

Except as otherwise provided herein, the Debtor shall retain, and on the Effective Date shall be deemed to have assigned to the Reorganized Debtor, and the Reorganized Debtor may enforce, any claims, rights and causes of action arising under Sections 510 and 544 through 550 of the Bankruptcy Code or any similar provisions of state law, or any statute or legal theory. Except as otherwise specifically provided in the Plan, nothing herein shall be deemed to affect, diminish, or impair the rights and defenses, both legal and equitable, of the Debtor or the Reorganized Debtor with respect to any Claim, including legal and equitable defenses to setoffs or recoupment against Claims; and, except as otherwise specifically provided in the Plan, nothing herein shall be deemed to be a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other legal or equitable defense which the Debtor now has or had immediately prior to the Petition Date, against or with respect to any Claim. Except as otherwise specifically provided in the Plan, the Reorganized Debtor shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff, and other legal or equitable defenses which the Debtor now has or had immediately prior to the Petition Date fully as if the Chapter 11 Case had not been commenced, and all legal and equitable rights with respect to any Claim may be asserted after the Confirmation Date and the Effective Date to the same extent as if the Chapter 11 Case had not been commenced.

## ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## A. *General Treatment.*

As of and subject to the occurrence of the Effective Date, all Unexpired Leases and Executory Contracts to which the Debtor is a party are hereby assumed by the Reorganized

Debtor as of the Effective Date, except for an Unexpired Lease or Executory Contract that (i) the Debtor has previously rejected in accordance with applicable provisions of the Bankruptcy Code, (ii) is specifically designated as an Executory Contract or Unexpired Lease to be rejected in this Plan, or (iii) is the subject of a separate rejection motion filed under Section 365 of the Bankruptcy Code before the Effective Date.

Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order shall revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the Debtor and the applicable counterparty, or by order of the Bankruptcy Court.

**B.**     *Rejection Damages of Claims.*

In the event that the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan results in a Rejection Damages Claim in favor of a counterparty to such Executory Contract or Unexpired Lease, such Rejection Damages Claim shall be treated as a General Unsecured Claim pursuant to the terms of this Plan.

**C.**     *Insurance Policies and Agreements.*

To the extent that insurance policies or agreements are determined to be Executory Contracts, the Plan shall constitute a motion to assume such insurance policies and agreements.

Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approval of such assumption pursuant to Section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtor and its estate in this Chapter 11 Case.

Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtor existing as of the Confirmation Date with respect to each such insurance policy or agreement. Nothing contained in the Plan, including this Article V, shall constitute a waiver of any claim, right, or Cause of Action that the Debtor or Reorganized Debtor, as the case may be, may hold against the insurer under any policy of insurance or insurance agreement.

**D.**     *Reservation of Rights with Regards to Assumption of Executory Contracts and Unexpired Leases.*

Nothing contained in the Plan, nor the Debtor's delivery of a notice of proposed assumption of a contract or Unexpired Lease to the applicable contract and Unexpired Lease counterparties, shall constitute an admission by the Debtor that any such contract or Unexpired Lease is in fact an Executory Contract or Unexpired Lease or that the Debtor would have any liability thereunder. Notwithstanding any non-bankruptcy law to the contrary, the Debtor and the Reorganized Debtor expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased, or services previously received, by the Debtor from counterparties to rejected Executory Contracts or Unexpired Leases.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

All Holders of Claims are conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

**A.**     ***Distribution Agents.***

The Debtor or, after the Effective Date, the Reorganized Debtor, shall have the authority, each in its sole discretion, to enter into agreements with one or more Distribution Agents to facilitate the distributions required hereunder.

The Debtor or the Reorganized Debtor, as applicable, may pay to the Distribution Agent all of its reasonable and documented fees and expenses without the need for any approval of the Bankruptcy Court.  The Distribution Agent shall submit detailed invoices to the Debtor or the Reorganized Debtor, as applicable, for all fees and expenses for which the Distribution Agent seeks reimbursement, and the Debtor or the Reorganized Debtor, as applicable, shall pay those amounts that they, in their sole discretion, deem reasonable, and shall object in writing to those fees and expenses, if any, that the Debtor or the Reorganized Debtor, as applicable, deem to be unreasonable.

In the event that the Debtor or the Reorganized Debtor, as applicable, object to all or any portion of the amounts requested to be reimbursed in a Distribution Agent's invoice, the Debtor or the Reorganized Debtor, as applicable, and such Distribution Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees and/or expenses.  In the event that the Debtor or the Reorganized Debtor, as applicable, and a Distribution Agent are unable to resolve any differences regarding disputed fees or expenses, any party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

**B.**     ***Powers of the Distribution Agent.***

The Distribution Agent shall be empowered to: (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) make all distributions contemplated hereby, (iii) employ professionals to represent it with respect to its responsibilities, and (iv) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

**C.**     ***Date of Distributions.***

 Except as otherwise provided herein (including with respect to the transfers and other transactions described in Article IV of this Plan, which shall be made within the timeframes set forth in that Article), any Distributions and deliveries to be made hereunder shall be made on the Effective Date or as soon thereafter as is reasonably practicable, including for those claims that become Allowed after the Effective Date.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as

reasonably practicable after the next succeeding Business Day but shall be deemed to have been completed as of the required date.

**D.** *De Minimis Distributions.*

Notwithstanding any other provision of the Plan, the Reorganized Debtor nor the Distribution Agent shall have any obligation to make any distributions under the Plan with a value of less than $50, unless a written request therefor is received by the Distribution Agent from the relevant recipient within 120 days after the later of (i) the Effective Date and (ii) the date such Claim or Interest becomes an Allowed Claim or Interest. *De minimis* distributions for which no such request is timely received shall revert to the Reorganized Debtor. Upon such reversion, the relevant Allowed Claim or Interest of less than $50 (and any Claim or Interest on account of such missed distributions) shall be automatically deemed satisfied, discharged, and forever barred, notwithstanding any federal or state escheat laws to the contrary.

**E.** *Delivery of Distributions.*

If any Distribution to a Holder of an Allowed Claim is returned as undeliverable, the Distribution Agent shall use reasonable efforts to determine the correct current address of such Holder, but no Distribution to such Holder shall be made unless and until the Distribution Agent has determined to the best of its ability the current address of such Holder, at which time a Distribution shall be made to such Holder without interest; provided that such Distributions shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date. After such date, all unclaimed property or interest in property shall revert to Reorganized Debtor, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

**F.** *Compliance Matters.*

In connection with the Plan, to the extent applicable, the Debtor, the Reorganized Debtor, and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any federal, state, local or foreign tax law, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Debtor, the Reorganized Debtor, and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including withholding in kind, liquidating a portion of the distributions to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. For purposes of the Plan, any withheld amount (or property) shall be treated as if paid to the applicable claimant. The Reorganized Debtor reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances. Distributions in full or partial satisfaction of Allowed Claims shall be allocated first to trust fund-type taxes, then to other taxes, and then to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that has accrued on such Claims.

**G.**     *No Post-Petition Interest on Claims.*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, required by applicable law, by order of the Bankruptcy Court, or agreed to by the Debtor or, after the Effective Date, the Reorganized Debtor, no Holder of a Claim or Interest against the Debtor shall be entitled to interest accruing on or after the Petition Date with respect to such Claim or Interest, notwithstanding any dispute or other delay with respect to any distribution. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

**H.**     *Manner of Payment.*

At the option of the Reorganized Debtor, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

**I.**     *Setoffs and Recoupment.*

The Debtor or the Reorganized Debtor, as applicable, pursuant to applicable bankruptcy or nonbankruptcy law may, but shall not be required to, set off against any Allowed Claim and the Distributions to be made pursuant to this Plan on account of such Allowed Claim (before any Distribution is to be made on account of such Allowed Claim), any claims of any nature whatsoever that the Debtor or the Reorganized Debtor, as applicable, may have against the Holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim the Debtor or the Reorganized Debtor, as applicable, may have against the Holder of such Claim or Interest.

**J.**     *Distributions Free and Clear.*

Except as may be otherwise provided herein, any Distributions under this Plan shall be free and clear of any Liens, Claims, encumbrances, and other interests.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

**A.**     *Allowance of Claims.*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtor shall have the sole authority to (i) file, withdraw or litigate to judgment, in the Bankruptcy Court, objections to Claims or Interests, and (ii) settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court. Nothing in this Article VII shall limit the ability under the Bankruptcy Code of any party-in-interest to object to any Claim or Interest unless otherwise ordered by the Bankruptcy Court

**B.** *Estimation of Claims.*

After the Effective Date, the Reorganized Debtor may, within its reasonable discretion, at any time request that the Bankruptcy Court estimate any Disputed Claim that is Contingent or unliquidated pursuant to Section 502(c) of the Bankruptcy Code, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.

**C.** *Amendments to Proofs of Claim.*

On or after the Effective Date, a Proof of Claim may not be amended (other than solely to update or correct the name or address of the Holder of such Claim) without the prior authorization of the Bankruptcy Court or the Reorganized Debtor, as applicable, and any such amended Proof of Claim filed without such prior authorization shall be deemed disallowed in full and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

**D.** *No Distributions Pending Allowance.*

Notwithstanding any other provision of the Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such a Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim. To the extent that a Claim is not a Disputed Claim but is held by a Holder that is or may be liable to the Debtor, no payments or Distributions shall be made with respect to all or any portion of such Claim unless and until such Claim and liability have been settled or withdrawn or have been determined by Final Order of the Bankruptcy Court or such other court having jurisdiction over the matter.

**E.** *Distributions After Allowance.*

To the extent that a Disputed Claim or Interest ultimately becomes a finally Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the applicable provisions of the Plan.

**ARTICLE VIII.**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

**A.** *Compromise and Settlement of Claims, Interests, and Controversies.*

Pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the Plan is and shall be deemed a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.

The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable. The compromises, settlements, and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtor may compromise and settle Claims against, and Interests in, the Debtor and its Estate and Causes of Action against other Entities.

**B.**     *Discharge of Claims and Termination of Interests.*

Pursuant to Section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, including this Article VIII, and the Confirmation Order, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any Contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, any Claims for withdrawal liability that relate to services performed by employees of the Debtor before the Effective Date or that arise from a termination of employment, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (i) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code; or (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to Section 502 of the Bankruptcy Code. Any default by the Debtor with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Case shall be deemed cured (and no longer continuing) as of the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests as provided herein subject to the Effective Date occurring.

**C.**     *Releases by the Debtor.*

**Pursuant to Section 1123(b) of the Bankruptcy Code, for good and valuable consideration, as of the Effective Date, each of the Released Parties is unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged by the Debtor, the Reorganized Debtor, and the Estate from any and all Causes of Action, including any derivative Causes of Action asserted or assertable by or on behalf of the Debtor, the Reorganized Debtor, or the Estate, any Causes of Action that the Debtor, the Reorganized Debtor, or the Estate would have been legally entitled to assert in its own right or on behalf of the Holder of any Claim against or Interest in the Debtor or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the**

Debtor, the Reorganized Debtor, or the Estate (whether individually or collectively) ever had, now has, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part: (1) the Debtor, the Debtor's in-or-out-of-court restructuring efforts, any intercompany transactions, the Chapter 11 Case, the DIP Facility, or the Plan; (2) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the DIP Facility or the Plan; (3) the business or contractual arrangements between the Debtor and any Released Party, whether before or during the Debtor's restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Case; (4) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; or (5) the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of the occurrence of the Effective Date, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release: (1) to the extent that any Causes of Action against the Debtor are not released or discharged pursuant to the Plan, any rights of the Debtor and the Reorganized Debtor to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims or other Causes of Action in response to such Causes of Action; provided that such counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims or other Causes of Action may not be asserted against any Related Party of the Debtor or the Reorganized Debtor to the extent such claims have been released or discharged pursuant to the Plan, (2) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed, (3) any Cause of Action against a Holder of a Disputed Claim, to the extent such Cause of Action is necessary for the administration and resolution of such Claim solely in accordance with the Plan, (4) any Cause of Action against a Released Party unknown as of the Effective Date arising out of actual fraud, gross negligence, or willful misconduct of such Released Party, (5) any claims or Causes of Action against RAS Property Management, LLC or Rita Sklar arising before the Petition Date,  or (6) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or other document, instrument, or agreement executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) essential to the Confirmation of the Plan; (2) an exercise of the Debtor's business judgment; (3) in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (4) a good faith settlement and compromise of the Causes of Action released by the Debtor Release; (5) in the best interests of the Debtor and all Holders of Claims and Interests; (6) fair, equitable, and reasonable; (7) given and made

after due notice and opportunity for hearing; and (8) a bar to the Debtor, the Reorganized Debtor, and the Estate from asserting any Cause of Action released pursuant to the Debtor Release.

D. *Exculpation.*

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur any liability to any Person or Entity for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action arising from the Petition Date to the Case Closing Date related to any act or omission in connection with, relating to, or arising out of, the Debtor's restructuring efforts, the Chapter 11 Case, the filing of the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the Plan, the DIP Facility, any Sale Transaction, any Restructuring Transaction, or any contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with any of the foregoing, the funding of the Plan, the occurrence of the Effective Date, the pursuit of Confirmation, the pursuit of the Effective Date, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined by a Final Order to have constituted actual fraud, gross negligence, or willful misconduct; provided, that the foregoing shall not be deemed to release, affect, or limit any post-Effective Date rights or obligations of the Exculpated Parties under the Plan, any Restructuring Transaction, any Sale Transaction, or other document, instrument, or agreement executed to implement the Plan.

The Exculpated Parties have, and upon the Effective Date shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the distributions made pursuant to the Plan.

E. *Injunction.*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Persons or Entities that have held, hold, or may hold Claims or Interests that have been released or discharged pursuant to this Article VIII of this Plan and Section 1141(d) of the Bankruptcy Code shall be permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Persons or Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any lien or encumbrance of any kind against such

Persons or Entities or the property or the estates of such Persons or Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Persons or Entities or against the property of such Persons or Entities on account of or in connection with or with respect to any such Claims or Interests unless such Person or Entity has, on or before the Effective Date, asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to Sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A. *Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date is subject to the following conditions precedent:

1. The Confirmation Order, in form and substance acceptable to the Debtor and the DIP Lender, shall have been entered by the Bankruptcy Court;

2. An event of default under the DIP Documents shall not be continuing and an acceleration of the obligations or termination of the DIP Lender's commitments under the DIP Facility shall not have occurred;

3. All actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan are executed and delivered, as applicable, in form and substance satisfactory to the Debtor; and

4. All authorizations, consents and regulatory approvals, if any, required by the Debtor in connection with the consummation of the Plan are obtained and not revoked.

B. *Waiver of Conditions.*

Unless otherwise specifically provided in this Plan, the conditions set forth in this Article IX of this Plan may be waived in whole or in part by the Debtor without notice to any other parties in interest or the Bankruptcy Court and without a hearing.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.     *Plan Modification and Amendments.*

The Plan may be amended, modified, or supplemented by the Debtor or the Reorganized Debtor, as applicable, in the manner provided for by Section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to Section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, the Debtor or Reorganized Debtor, as applicable, may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of this Plan.

The Reorganized Debtor may make appropriate technical adjustments and modifications to this Plan after the Effective Date without further order or approval of the Bankruptcy Court.

### B.     *Revocation or Withdrawal of the Plan.*

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws the Plan, in accordance with the preceding sentence, or if a Confirmation Order is not entered confirming the Plan, then (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims or Interests, (b) prejudice in any manner the rights of the Debtor or any other Entity, including the Holders of Claims or Interests, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case and all matters arising out of, or related to, the Chapter 11 Case and the Plan, including jurisdiction:

1.     to hear and determine motions and/or applications for the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

2.     to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

3.     to ensure that Distributions to Holders of Allowed Claims are accomplished as provided herein;

4.      to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

5.      to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

6.      to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

7.      to hear and determine any application to modify this Plan in accordance with applicable provisions of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

8.      to hear and determine all applications under Sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred;

9.      to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated hereby or under any agreement, instrument, or other document governing or relating to any of the foregoing;

10.     to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan or to maintain the integrity of this Plan following consummation;

11.     to hear any disputes arising out of, and to enforce any order approving alternative dispute resolution procedures to resolve personal injury, employment litigation, and similar claims pursuant to Section 105(a) of the Bankruptcy Code;

12.     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

13.     enter and enforce any order for the sale of property pursuant to Sections 363, 1123, or 1146(a) of the Bankruptcy Code;

14.     to hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under Section 505(b) of the Bankruptcy Code);

15.     to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code; and

16.     to enter a final decree closing the Chapter 11 Case.

# ARTICLE XII.
## MISCELLANEOUS PROVISIONS

**A.**     *Immediate Binding Effect.*

Subject to Article IX and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, on the Effective Date, upon the effectiveness of the Plan, the terms of the Plan and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtor or the Reorganized Debtor, as applicable, and any and all Holders of Claims or Interests (regardless of whether the Holders of such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all parties to Executory Contracts and Unexpired Leases. All Claims shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan.

**B.**     *Additional Documents.*

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**C.**     *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order in accordance with Article IX hereof. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan or the Confirmation Order shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

**D.**     *Exhibits/Schedules.*

All exhibits and Schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

**E.**     *Substantial Consummation.*

On the Effective Date, the Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.

**F.**     *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights,

obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, however, that corporate or limited liability company governance matters relating to the Debtor not incorporated or formed (as applicable) in the State of New York shall be governed by the laws of the state of incorporation or formation (as applicable) of the Debtor.

## G.    *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, Affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

## H.    *Service of Documents.*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtor or Reorganized Debtor shall be served on:

| | |
|---|---|
| Debtor | Ninety-Five Madison Company, L.P. |
| | Michael Sklar |
| | General Partner |
| | |
| | <u>with copies to</u>: |
| | |
| Counsel to Debtor | Glenn Agre Bergman & Fuentes LLP |
| | 1185 Avenue of the Americas |
| | 22nd Floor |
| | New York, New York 10036 |
| | Attention: Andrew K. Glenn |
| | Shai Schmidt |
| | Richard C. Ramirez |
| | Naznen Rahman |
| | aglenn@glennagre.com |
| | sschmidt@glennagre.com |
| | rramirez@glennagre.com |
| | nrahman@glennagre.com |
| | Telephone: (212) 970-1600 |

## I.    *Entire Agreement.*

The Plan and the Confirmation Order supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan and Confirmation Order.

**J.**     *Expedited Tax Determination.*

The Debtor may request an expedited determination of taxes under Section 505(b) of the Bankruptcy Code for all returns filed for or on behalf of the Debtor for all taxable periods through the Effective Date.

*[Remainder of Page Intentionally Left Blank]*

Respectfully submitted, as of December 15, 2023:

Ninety-Five Madison Company, L.P.
The Debtor

By:  */s/ Michael Sklar*
Name: Michael Sklar
Title:  General Partner

**<u>EXHIBIT B</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| NINETY-FIVE MADISON COMPANY, L.P., | ) Case No. 21-10529 (DSJ) |
| | ) |
| Debtor. | ) |
| | ) |

**AMENDED COMBINED CHAPTER 11 PLAN OF REORGANIZATION**
**AND DISCLOSURE STATEMENT FOR DEBTOR**
**NINETY-FIVE MADISON COMPANY, L.P.**

Andrew K. Glenn
Shai Schmidt
Richard C. Ramirez
Naznen Rahman
**GLENN AGRE BERGMAN &**
**FUENTES LLP**
1185 Avenue of the Americas
22nd Floor New York, New York
10036 Telephone: (212) 970-1600

*Counsel to Debtor Ninety-Five Madison*
*Company, L.P.*

Dated: ~~September 27~~December 15, 2023

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY ........................................................................................5

DEFINITIONS .................................................................................................................5

PART ONE: DISCLOSURE STATEMENT. ..........................................................................12
    I.          BACKGROUND ..............................................................................................13
           A.      The Debtor, the Property, and Events Precipitating the Chapter 11 Filing. ......13
           B.      The Chapter 11 Case ..................................................................................14
                1.      The Vitra Dispute. ........................................................................14
                2.      The First Chapter 11 Plan. .............................................................14
                3.      The DIP Facility. ..........................................................................15
            C.      Marketing and Sale of the Property ..............................................................
                ~~15~~16
    II.         SUMMARY OF ~~THIS~~THE AMENDED COMBINED PLAN ~~AND DISCLOSURE~~
         ~~STATEMENT~~. ......................................................................................16
            A.      The Contemplated Restructuring Transaction ~~or Sale Transaction~~. ...............16
            B.      Plan Treatment of Claims. ...........................................................................~~16~~
                17
            C.      Alternatives to the Plan. ..............................................................................17
    III.        RISK FACTORS TO BE CONSIDERED. ...........................................................17
            A.      Bankruptcy Law Considerations. .................................................................~~17~~
                ~~1.The Asset Sale May Not Occur~~ .......................................................17
                1.      ~~2.~~The Conditions Precedent to the Effective Date of the Plan May Not
                    Occur ...............................................................................................17
                  2.      ~~3.~~Risks Related to Possible Objections to the Plan. ..........................17
                  3.      ~~4.~~Conversion to a Chapter 7 Case ....................................................
                      ~~17~~18
            B.      Other Risks. ..............................................................................................18
                  1.      The Debtor Will Be Subject to the Risks and Uncertainties Associated with the
                    Chapter 11 Case.        18
                2.      The Reorganized Debtor May ~~be~~Be Adversely Affected by Potential
                    Litigation, Including Litigation Arising Out of the Chapter 11 Case ......18
    IV.      CERTAIN FEDERAL UNITED STATES INCOME TAX CONSEQUENCES OF THE PLAN .18
    V.        EFFECT OF CONFIRMATION OF THE AMENDED COMBINED PLAN ~~AND~~
         ~~DISCLOSURE STATEMENT~~. .................................................................19
            A.      Binding Effect of the Plan. ..........................................................................19
            B.      Injunction, Exculpation, and Release Provisions of the Plan. .........................19
            C.      Confirmation of the Plan. .............................................................................19
            D.      Post-Confirmation Asset Sale(s) ..................................................................20
    VI.      NO DISTRIBUTIONS PENDING ALLOWANCE ..................................................20
    VII.    BEST INTERESTS OF CREDITORS/LIQUIDATION ANALYSIS .............................20
    VIII.  ~~VI.~~CONCLUSION ...........................................................................
        ~~20~~21

PART TWO: PLAN OF REORGANIZATION ....................................................................
~~20~~21
    Article I.      RULES OF INTERPRETATION AND COMPUTATION OF TIME. ...........................~~20~~
        21
           A.      Rules of Interpretation. ................................................................................~~20~~

21

B.    Computation of Time ...................................................................................... ~~20~~21

C.    Reference to Monetary Figures ........................................................................ ~~20~~

3    22

D.  Controlling Document...................................................................20
22

Article II. ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY TAX
CLAIMS AND STATUTORY FEES.......................................................
2122

A.  Allowed Administrative Expense Claims..................................................
2122

B.  DIP Claims...........................................................................21
22

C.  Professional Fee Claims...........................................................22

    1.  Final Fee Applications.......................................................22

    2.  Post-Effective Date Fees and Expenses.......................................
        2223

| | | | |
|---|---|---|---|
| | D. | Priority Tax Claims | ~~22~~ 23 |
| | E. | Statutory Fees Payable Pursuant to 28 U.S.C. § 1930 | ~~22~~ 23 |

Article III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ... 23

| | | | |
|---|---|---|---|
| | A. | Summary of Classification | 23 |
| | B. | Treatment of Claims and Interests | ~~23~~ 24 |
| | | 1. Class 1 – Other Priority Claims | ~~23~~24 |
| | | 2. Class 2 – Secured Claims | ~~23~~24 |
| | | 3. Class 3 – General Unsecured Claims | 24 |
| | | 4. Class 4 – Equity Interests in the Debtor | ~~24~~25 |

Article IV. MEANS FOR IMPLEMENTATION OF THE PLAN ... ~~24~~25

| | | | |
|---|---|---|---|
| | A. | Effectuating Plan Transactions; Approvals | ~~24~~ 25 |
| | B. | Sources of Consideration for Plan Distributions | ~~25~~ 25 |
| | | ~~1.Sale Transaction~~ | ~~25~~ |
| | | ~~2.Restructuring Transaction~~ | ~~25~~ |
| | ~~C.~~ | ~~Sale Transaction~~ | ~~25~~ |
| | ~~D.~~ | ~~Restructuring Transaction~~ | 26 |
| | C. | ~~E.~~Tax Matters | 27 |
| | D. | ~~F.~~Effectuating Documents | 27 |
| | E. | ~~G.~~Post-Confirmation Management | 27 |
| | F. | Post-Confirmation Asset Sale(s) | 27 |
| | G. | ~~H.~~Exemption ~~from~~From Transfer Taxes, Mortgage Recording Taxes, or Similar Taxes | 27 |
| | H. | ~~I.~~Retention of Professionals | 28 |
| | I. | ~~J.~~Preservation of Rights of Action | 28 |

Article V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ... 28

| | | | |
|---|---|---|---|
| | A. | General Treatment | 28 |
| | B. | Rejection Damages of Claims | 29 |
| | C. | Insurance Policies and Agreements | 29 |
| | D. | Reservation of Rights with Regards to Assumption of Executory Contracts and Unexpired Leases | 29 |

Article VI. PROVISIONS GOVERNING DISTRIBUTIONS ... ~~29~~30

| | | | |
|---|---|---|---|
| | A. | Distribution Agents | ~~29~~ 30 |
| | B. | Powers of the Distribution Agent | 30 |
| | C. | Date of Distributions | 30 |
| | D. | De Minimis Distributions | ~~30~~ 31 |
| | E. | Delivery of Distributions | 31 |
| | F. | Compliance Matters | 31 |

G.     No Post-Petition Interest on Claims ............................................................................ 31 32

H.     Manner of Payment ................................................................................................... 31 32

I.     Setoffs and Recoupment ........................................................................................... 32

J.     Distributions Free and Clear ..................................................................................... 32

Article VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS ........................................................................................................................... 32

A.     Allowance of Claims ................................................................................................ 32

B.     Estimation of Claims ................................................................................................ 32 33

C.     Amendments to Proofs of Claim .............................................................................. 32 33

D.     No Distributions Pending Allowance ....................................................................... 33

E.     Distributions After Allowance .................................................................................. 33

Article VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ............ 33

A.     Compromise and Settlement of Claims, Interests, and Controversies ...................... 33

B.     Discharge of Claims and Termination of Interests ................................................... 33 34

C.     Releases by the Releasing Parties. Debtor ................................................................ 34

D.     Exculpation ............................................................................................................... 35 36

E.     Injunction ................................................................................................................. 36

Article IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ....................... 37

A.     Conditions Precedent to the Effective Date .............................................................. 37

B.     Waiver of Conditions ............................................................................................... 37

Article X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ..................... 37 38

A.     Plan Modification and Amendments ........................................................................ 37 38

| | | |
|---|---|---|
| B. | Revocation or Withdrawal of the Plan | 38 Article XI. RETENTION OF JURISDICTION 38 Article XII. MISCELLANEOUS PROVISIONS ~~39~~40 |
| A. | Immediate Binding Effect | ~~39~~40 |
| B. | Additional Documents | 40 |
| C. | Reservation of Rights | 40 |
| D. | Exhibits/Schedules | 40 |
| E. | Substantial Consummation | 40 |
| F. | Governing Law | 40 |
| G. | Successors and Assigns | ~~40~~ 41 |
| H. | Service of Documents | 41 |
| I. | Entire Agreement | 41 |
| J. | Expedited Tax Determination | ~~41~~ 42 |

## INTRODUCTION AND SUMMARY

Debtor Ninety-Five Madison Company, L.P. hereby proposes the following Amended Combined Plan and Disclosure Statement pursuant to Chapter 11 of the Bankruptcy Code. Capitalized terms used but not otherwise defined have the meanings ascribed to them in the section titled "DEFINITIONS" of this Amended Combined Plan and Disclosure Statement. For ease of reading, this Amended Combined Plan and Disclosure Statement may be referred to as the "Plan" as that term is defined herein.

~~At a high level, the Plan facilitates a toggle between two (2) potential transactions that, if representing higher or better value, will either be incorporated as a Restructuring Transaction or a Sale Transaction:~~

- ~~A Sale Transaction contemplates a sale or other disposition of the Property upon completion of the Debtor's ongoing marketing process pursuant to the terms of a Purchase and Sale Agreement between the Debtor and a Purchaser, the proceeds of which would be used to satisfy all Allowed Claims and Allowed Interests in full; and~~

- ~~A Restructuring Transaction~~ The Plan contemplates, among other things, the payment of all ~~claims~~ Allowed Claims in full through the DIP Facility and the consummation of the ~~exit facility~~ Exit Facility as provided in the DIP Documents. ~~Although the~~ However, due to the significant value of the Property, which is the Debtor's primary asset, the Debtor anticipates that, after paying its creditors in full through the DIP Facility, the Reorganized Debtor will continue to pursue ~~the~~ its ongoing marketing process of the Property in earnest~~,~~ under ~~the Restructuring Transaction will serve as a backstop and provide the Debtor the optionality to enter into a sale or other disposition transaction(s) if such a transaction(s) represents higher or better value~~ supervision of the Bankruptcy Court for the benefit of all stakeholders and to satisfy any Disputed Claims that may later become Allowed Claims.

**Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code, Rule 3019 of the Bankruptcy Rules, and Article X of this Amended Combined Plan and Disclosure Statement, the Debtor reserves the right to alter, amend, modify, supplement, revoke, or withdraw this Amended Combined Plan and Disclosure Statement prior to its consummation.**

## DEFINITIONS

Except as otherwise provided herein, each capitalized term used in this Amended Combined Plan and Disclosure Statement shall have the meaning set forth below:

1. ***"Administrative Expense Claim"*** means any right to payment constituting a cost or expense of administration of the Chapter 11 Case under Sections 330, 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Estate, (b) any actual and necessary costs and expenses of operating the Debtor's business, (c) any indebtedness or obligations incurred or assumed by the Debtor during the Chapter 11 Case, (d) DIP Claims, and (e) any Bankruptcy Court-approved compensation for professional services rendered and reimbursement of expenses incurred in connection therewith.

2. ***"Affiliate"*** has the meaning set forth in Section 101(2) of the Bankruptcy Code.

3.	***"Allowed"*** means, with respect to any Claim, (i) a Claim against the Debtor that has been listed on the Schedules, as such Schedules may be amended from time to time pursuant to Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed, unless the Debtor or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order, (ii) any Claim for which a Proof of Claim was properly and timely filed in accordance with any order of the Bankruptcy Court (including the Bar Date Order), the Plan, the Bankruptcy Code, and the Bankruptcy Rules, as to which no objection to allowance has been interposed by a party in interest, or (iii) any Claim expressly allowed by a Final Order or pursuant

to this Plan. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been timely filed, is not considered Allowed and shall be expunged on the Effective Date without further action by the Debtor and without any further notice to or action, order or approval of the Bankruptcy Court.

4.     **"*Asset Sale(s)*"** means a sale or disposition transaction, in one or more transactions, of the Property, whether to effectuate a Sale Transaction or other transaction contemplated herein.

5.     **"*Asset Sale Proceeds*"** means any Cash proceeds of the Asset Sale(s).

6.     **"*Avoidance Actions*"** means any and all potential claims or causes of action to avoid a transfer of property or an obligation incurred by the Debtor pursuant to Sections 542 through 553 of the Bankruptcy Code.

7.     **"*Bankruptcy Code*"** means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*.

8.     **"*Bankruptcy Court*"** means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over this Chapter 11 Case.

9.     **"*Bankruptcy Rules*"** means the Federal Rules of Bankruptcy Procedure and any local rules of the Bankruptcy Court applicable to the Chapter 11 Case.

10.     **"*Bar Date Order*"** means the order ~~to be~~ entered ~~by~~in the ~~Bankruptcy Court~~Chapter 11 Case establishing a bar date for filing proofs of claim, ~~and a bar date for filing administrative expense claims~~filed on the docket in the Chapter 11 Case at Dkt. No. 90.

11.     **"*Business Day*"** means any day of the calendar week, except Saturday, Sunday, and a "legal holiday," as defined in Bankruptcy Rule 9006(a), or any day on which commercial banks are authorized or required by law to close.

12.     ***"Case Closing Date"* means the date on which the Bankruptcy Court enters an order closing the Chapter 11 Case after the full administration of the Estate and in accordance with the Bankruptcy Code and Bankruptcy Rules.**

13.     ~~12.~~**"*Cash*"** or **"*$*"** means lawful currency of the United States, including, but not limited to, bank deposits, checks, and other similar items.

14.     ~~13.~~**"*Cause of Action*"** means any action, claim, cause of action, controversy, proceeding, reimbursement claim, affirmative defense, demand, right, Lien, indemnity, guaranty, suit, obligation, liability, loss, damage, remedy, judgment, account, defense, offset (including setoff or recoupment rights), power, privilege, license and franchise of any kind or character whatsoever, known or unknown, foreseen or unforeseen, Contingent or non-Contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, and assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law. For the avoidance of doubt, Cause of Action includes: (i) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in

equity, (ii) the right to object to or otherwise contest Claims or Interests, (iii) any claim pursuant to Section 362 or Chapter 5 of the Bankruptcy Code, (iv) any Avoidance Action, (v) any claim or defense, including fraud, mistake, duress and usury, and any other defenses set forth in Section 558 of the Bankruptcy Code, and (vi) any claim under any state or foreign law, including any fraudulent transfer or similar claim.

15. ~~14.~~ **"*Chapter 11 Case*"** means the case commenced by the Debtor styled as "In re Ninety-Five Madison Company, L.P." and being administered in the Bankruptcy Court under Case No. 21-10529 (DSJ) under Chapter 11 of the Bankruptcy Code.

16. ~~15.~~ **"*Claim*"** means any "claim," as that term is defined in Section 101(5) of the Bankruptcy Code.

17. ~~16.~~ **"*Class*"** means any group of Claims or Interests classified in Article III of this Plan pursuant to Section 1122 of the Bankruptcy Code.

18. ~~17.~~ **"*Collateral*"** means any property or interest in property of the Estate subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not avoided or otherwise invalid under the Bankruptcy Code or applicable state law.

19. ~~18.~~ **"*Combined Plan and Disclosure Statement*"** means this combined disclosure statement and plan of reorganization under Chapter 11 of the Bankruptcy Code, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in their present form or as they may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof.

20. ~~19.~~ **"*Confirmation*"** means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Case.

21. ~~20.~~ **"*Confirmation Date*"** means the date on which the Bankruptcy Court enters the Confirmation Order.

22. ~~21.~~ **"*Confirmation Hearing*"** means the hearing conducted by the Bankruptcy Court pursuant to Section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

23. ~~22.~~ **"*Confirmation Order*"** means the order or orders of the Bankruptcy Court confirming the Plan in form and substance reasonably satisfactory to the DIP Lender.

24. ~~23.~~ **"*Contingent*"** means, when used in reference to a Claim, any Claim the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event, which event has not yet occurred, happened or been triggered as of the date on which such Claim is sought to be estimated or an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the holder of such Claim and whether or not a relationship between the holder of such Claim and the Debtor now or hereafter exists or previously existed.

25. ~~24.~~ **"*Debtor*"** means Ninety-Five Madison Company, L.P., in its capacity as debtor and debtor in possession in the Chapter 11 Case pursuant to Sections 1101, 1107(a) and 1108 of

the Bankruptcy Code.

26.    ***"Debtor Release"*** means the releases set forth in Article VIII.C of the Plan.

27.    ~~25.~~***"DIP Claim"*** means any and all Claims arising under, derived from, or based upon the DIP Documents, including claims for principal amounts outstanding, interest, fees, expenses, costs and other charges of the DIP Lender arising under or related to the DIP Facility.

28.    ~~26.~~***"DIP Credit Agreement"*** means that certain Secured, Super-Priority Debtor-in- Possession Loan and Security Agreement, dated November 4, 2023, by and among the Debtor and the DIP Lender.

29.    ~~27.~~***"DIP Documents"*** means the DIP Credit Agreement and any other documentation governing the DIP Facility, including the DIP Order, whether or not specifically mentioned herein or therein, as the same may be modified, amended, restated, supplemented or replaced from time to time.

30.    ~~28.~~***"DIP Facility"*** means the credit facility provided for under the DIP Credit Agreement.

31.    ~~29.~~***"DIP Lender"*** means Madison Avenue Servicing LLC.

32.    ~~30.~~***"DIP Order"*** means the order entered in the Chapter 11 Case approving the DIP Facility, as filed on the docket in the Chapter 11 Case at Dkt. No. 197.

33.    ~~31.~~***"Disputed"*** means, with respect to any Claim or Interest, a Claim or Interest or any portion thereof that is not Allowed but that has not been disallowed by a Final Order.

34.    ~~32.~~***"Distribution Agent"*** means any Person or Entity designated or retained by the Debtor (prior to the Effective Date) or the Reorganized Debtor (after the Effective Date), without the need for any further order of the Bankruptcy Court, to serve as distribution agent under the Plan.

35.    ~~33.~~***"Distribution"*** means Cash, property, interests in property, or other value distributed to Holders of Allowed Claims and Allowed Interests or their designated agents, under this Plan.

36.    ~~34.~~***"Distribution Date"*** means, except as otherwise set forth herein, the date or dates determined by the Debtor, on or after the Effective Date, with the first such date occurring on or as soon as is reasonably practicable after the Effective Date, upon which the Distribution Agent shall make distributions to Holders of Allowed Claims entitled to receive distributions under the Plan.

37.    ~~35.~~***"Effective Date"*** means the first Business Day after the Confirmation Date as set forth in the Effective Date Notice on which the conditions precedent specified in Article IX hereof have been either satisfied or waived. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

38.    ~~36.~~***"Effective Date Notice"*** means a notice, to be filed with the Bankruptcy Court by the Debtor on the Effective Date, setting forth the Effective Date.

39. ~~37.~~"*Entity*" means an entity as defined in Section 101(15) of the Bankruptcy Code.

40. ~~38.~~"*Estate*" means the estate created in the Chapter 11 Case containing all property and other interests of the Debtor pursuant to Section 541 of the Bankruptcy Code.

41. ~~39.~~"*Exculpated Parties*" means, collectively, and in each case in its capacity as such~~, each of the Released Parties:~~ (a) the Debtor; (b) the Reorganized Debtor; and (c) with respect to each of the Entities in the foregoing clauses (a) and ~~their~~(b), each Entity's Related ~~Persons~~Parties.

42. ~~40.~~"*Executory Contract*" means a contract to which the Debtor is a party and that is subject to assumption or rejection pursuant to Section 365 of the Bankruptcy Code.

43. ~~41.~~"*Exit Facility*" means~~, solely with respect to the Restructuring Transaction,~~ the facility provided for in the DIP Documents to be entered into by the Reorganized Debtor before or on the Effective Date.

44. ~~42.~~"*Exit Facility Documents*" means, ~~solely with respect to the Restructuring Transaction,~~ and in addition to the Security Instrument, collectively, each agreement, security agreement, pledge agreement, collateral assignments, mortgages, control agreements, guarantee, certificate, document or instrument executed and/or delivered in connection with any of the foregoing, whether or not specifically mentioned herein or therein, as the same may be modified, amended, restated, supplemented or replaced from time to time that shall govern the Exit Facility.

45. ~~43.~~"*Final Order*" means an order or judgment of the Bankruptcy Court in the Chapter 11 Case, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024, may be filed relating to such order shall not cause such order not to be a Final Order.

46. ~~44.~~"*General Partners*" means (i) RAS Property Management, LLC; (ii) Sharan Sklar Management LLC; and (iii) Michael Sklar Management, LLC.

47. ~~45.~~"*General Unsecured Claim*" means any Claim asserted against the Debtor that is not included within the other specifically defined Classes under this Plan or that is otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

48. ~~46.~~"*Holder*" means the legal or beneficial holder of a Claim or Interest.

49. ~~47.~~"*Impaired*" means, with respect to a Claim or Interest, that such Class of Claims or Interests is impaired within the meaning of Section 1124 of the Bankruptcy Code.

50.   48. *"Interest"* means the interest of any Holder of an equity security of the Debtor, within the meaning of Section 101(16) of the Bankruptcy Code, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including a partnership, limited liability company or similar interest in the Debtor.

51.   49. *"Lien"* means a lien as defined in Section 101(37) of the Bankruptcy Code.

52.   50. *"Other Priority Claim"* means any Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim, Professional Fee Claim, or Priority Tax Claim.

53.   51. *"Outside Date"* means December 31, 2023 2024.

54.   52. *"Person"* has the meaning set forth in Section 101(41) of the Bankruptcy Code.

55.   53. *"Petition Date"* means March 22, 2021, the date on which the Debtor's Chapter 11 bankruptcy petition was filed with the Bankruptcy Court.

56.   54. *"Plan"* means this Combined Plan and Disclosure Statement, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof, as the case may be, and any exhibits and schedules hereto.

57.   55. *"Plan Transactions"* shall have the meaning ascribed to it in Article IV hereof.

58.   56. *"Priority Tax Claim"* means any Allowed Claim of a governmental unit pursuant to Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

59.   57. *"Professional"* means any professional firm or professional Person retained by the Debtor in connection with this Chapter 11 Case pursuant to a Final Order in accordance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

60.   58. *"Professional Fee Claim"* means a Claim of any Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

61.   59. *"Proof of Claim"* means a written statement conforming substantially to the appropriate official form and Bankruptcy Rule 3001 describing the basis and amount of a Claim, together with supporting documentation evidencing such Claim or Interest, which complies with applicable provisions of the Plan, the Bankruptcy Code, Bankruptcy Rules, and any orders of the Bankruptcy Court.

62.   60. *"Property"* means that certain real property known as and located at 89-95 Madison Avenue, New York, New York.

63.   61. *"Purchase and Sale Agreement"* means the definitive purchase agreement for

an Asset Sale(s), including all exhibits and schedules thereto, and as may be amended, modified, or supplemented in accordance with the terms thereof.

64. 62. "*Purchaser*" means the purchaser(s) of the Property pursuant to any Purchase and Sale Agreement, together with any successors to and permitted assigns of such purchaser(s).

65. 63. "*Rejection Damages Claim*" means any Claim arising from, or relating to, the rejection of an Executory Contract or Unexpired Lease pursuant to Section 365(a) of the Bankruptcy Code by the Debtor, as limited by any applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

66. 64. "*Related ~~Persons~~Parties*" means each of, ~~with respect to any Person, such Person's Professionals~~and in each case in its capacity as such: current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns ~~and present and former Affiliates (whether by operation of law or otherwise) and each of their respective members, partners, equity holders, certificate holders, officers, directors, employees, representatives~~, subsidiaries, affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial ~~auditors, agents~~accountants, investment bankers, consultants, brokers, representatives, and other professionals ~~in each case acting in such capacity on or any time after the Petition Date, any~~ and advisors and any such Person ~~claiming by~~'s or ~~through any of them~~Entity's respective heirs, executors, estates, and nominees. For the avoidance of doubt, each of the General Partners and the Debtor's Professionals are Related Parties of the Debtor.

67. 65. "*Released Parties*" means, collectively, ~~(a) the Debtor, (b) the Reorganized Debtor,~~
~~(c) the Distribution Agent, (d) the Purchaser, (e) the DIP Lender, and (f) the Related Persons of~~and in each ~~of the foregoing Entities in clauses (a) through (f) of this definition.~~

~~66. "*Releasing Parties*" means, collectively,~~case in its capacity as such: (a) the Debtor~~;~~, (b) the Reorganized Debtor~~;~~ and (c) the ~~Distribution Agent, (d) the Purchaser, (e) the ~~DIP Lender~~, and (f) the Related Persons of each of the foregoing Entities in clauses (a) through (f) of this definition~~.

68. 67. "*Reorganized Debtor*" means the Debtor as reorganized pursuant to and under the Plan on or after the Effective Date.

69. 68. "*Restructuring Transaction*" means (i) the vesting of the Debtor's assets in the Reorganized Debtor in accordance with the Plan; ~~and~~(ii) entry into the Exit Facility Documents; and
(iii) any other transaction(s) that the Debtor reasonably determines necessary or appropriate to implement the foregoing in accordance with the Plan.

70. 69. "*Sale Transaction*" means an Asset Sale(s) to be effectuated pursuant to the Purchase and Sale Agreement and consummated by or before the Outside Date.

71. 70. "*Schedules*" means, collectively, the schedules of assets and liabilities,

schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs filed by the Debtor pursuant to Section 521 of the Bankruptcy Code, as such schedules may be or may have been amended, modified, or supplemented from time to time.

72. ~~71.~~*"Secured Claim"* means a Claim (i) secured by a valid and perfected Lien on Collateral that is enforceable pursuant to applicable law, the amount of which is equal to or less than the value of such Collateral (a) as set forth in this Plan, (b) as agreed to by the Holder of such Claim and the Debtor, or (c) as determined by a Final Order, or (ii) secured by the amount of any rights of setoff of the Holder thereof under Section 553 of the Bankruptcy Code.

73. ~~72.~~*"Security Instrument"* means that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, by and among the Debtor and the DIP Lender, substantially in the form annexed as "Exhibit B" to the DIP Credit Agreement.

74. ~~73.~~*"Unexpired Lease"* means a lease to which the Debtor is a party and that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

75. ~~74.~~*"Unimpaired"* means, with respect to a Claim or Interest, a Class of Claims or Interests that is not Impaired within the meaning of Section 1124 of the Bankruptcy Code.

76. *"Weinstein Estate"* means the Estate of Lois Weinstein, including, for the avoidance of doubt, Carol E. Keller and Gail Shields, as preliminary Executors of the Estate of Lois Weinstein.

## PART ONE: DISCLOSURE STATEMENT

The information provided herein discloses information regarding this Amended Combined Plan and Disclosure Statement for which the Debtor will seek confirmation by the Bankruptcy Court. The Debtor is providing the information herein to certain Holders of Claims.

**THE DEBTOR'S GENERAL PARTNERS HAVE APPROVED THE TRANSACTIONS CONTEMPLATED HEREIN AND BELIEVE THAT THE TRANSACTIONS CONTEMPLATED UNDER THE PLAN ARE FAIR AND EQUITABLE, MAXIMIZE THE VALUE OF THE DEBTOR'S ESTATES, AND REPRESENT THE BEST ALTERNATIVE FOR ACCOMPLISHING THE DEBTOR'S OVERALL RESTRUCTURING OBJECTIVES.**

The consummation and effectiveness of this Amended Combined Plan and Disclosure Statement are subject to certain material conditions precedent described herein and set forth in Article IX. There is no assurance that the Bankruptcy Court will confirm this Amended Combined Plan and Disclosure Statement or, if the Bankruptcy Court does confirm the Amended Combined Plan and Disclosure Statement, that the conditions necessary for it to become effective will be satisfied or, in the alternative, waived. The Debtor urges each Holder of a Claim or Interest to consult with its own advisors with respect to any legal, financial, securities, tax, or business advice in reviewing this Amended Combined Plan and Disclosure Statement and each proposed transaction contemplated herein.

~~THE DEBTOR'S GENERAL PARTNERS HAVE APPROVED THE TRANSACTIONS CONTEMPLATED HEREIN AND BELIEVE THAT THE TRANSACTIONS CONTEMPLATED UNDER THE PLAN ARE FAIR AND EQUITABLE, MAXIMIZE THE VALUE OF THE DEBTOR'S ESTATES, AND REPRESENT THE BEST ALTERNATIVE FOR ACCOMPLISHING THE DEBTOR'S OVERALL RESTRUCTURING OBJECTIVES.~~

This Amended Combined Plan and Disclosure Statement has been prepared in accordance with Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3016(b) and is not necessarily prepared in accordance with federal or state securities laws or other similar laws. This Amended Combined Plan and Disclosure Statement has not been approved or disapproved by the United States Securities and Exchange Commission (the "SEC") or any similar federal, state, local, or foreign regulatory agency, nor has the SEC or any other agency passed upon the accuracy or adequacy of the statements contained in this Amended Combined Plan and Disclosure Statement. The Debtor has sought to ensure the accuracy of the financial information provided in this Amended Combined Plan and Disclosure Statement.

## II.    BACKGROUND.

The Debtor provides the following background information concerning its history and primary asset; the events leading up to and occurring during the Chapter 11 Case; and various matters transpiring during the Chapter 11 Case. The information herein is abbreviated due to the Debtor's creditors' existing familiarity with most of its background and the Plan's provision for payment in full of all creditors holding Allowed Claims and unimpairment of Allowed Interests to be paid in full.

### A.    *The Debtor, the Property, and Events Precipitating the Chapter 11 Filing.*

The Debtor is a New York limited partnership that was formed on June 1, 1982 pursuant to a limited partnership agreement (as may be amended, the ***"Partnership Agreement"***). The Debtor's current general partners are: (i) RAS Property Management, LLC ("***RAS***"), an entity owned by Rita Sklar and various trusts formed by her; (ii) Sharan Sklar Management LLC ***("Sharan Sklar Management")***, an entity managed by Sharan Sklar; and (iii) Michael Sklar Management, LLC ***("Michael Sklar Management")***, an entity managed by Michael Sklar.

The Debtor is the fee simple and title owner of the Property. The Debtor and its predecessors have operated the Property since June 1, 1982. From 1982 to 2021, Rita Sklar, through RAS, managed the Property and the day-to-day affairs of the Debtor.

In June 2021, the Partnership Agreement was amended (the ***"Amended Partnership Agreement"***) to add Sharan Sklar Management and Michael Sklar Management as General Partners. Sharan Sklar and Michael Sklar subsequently replaced Rita Sklar in managing the day-to-day affairs of the Debtor and the Property. In addition, the Debtor retained Avison & Young to handle leasing and the day-to-day relationships with existing tenants. The Amendedamended Partnership Agreement provided that decisions as to key matters, including the terms and conditions of any financing or refinancing and approving a sale of the Property, required the unanimous approval of all General Partners.

In June 2022, the General Partners negotiated and entered into a second amendment to the Partnership Agreement, which eliminates the unanimous consent provision and requires all decisions to be made by a "vote of a majority" of the General Partners.

The Property provides full service commercial leases. The Debtor has two major tenants: (i)    Lee and Low Books, which leases half of the twelfth floor of the Property; and (ii) Douglas

Lister Architect, which leases an office on the twelfth floor of the Property.

The Property is encumbered by (i) an alleged judgment claim filed by Vitra, Inc. (***"Vitra"***) in an amount of $1,286,725.22; and (ii) the DIP Facility.

The Debtor commenced the Chapter 11 Case because it was facing liquidity challenges, legal judgments, and litigation expenses caused by years of prepetition litigation with Vitra. As of the date hereof, fourteen proofs of claim have been filed against the Debtor, and the total amount claimed is $21,850,450.91. The Debtor has also scheduled twelve creditors. See *Schedule E/F: Creditors Who have Unsecured Claims* [Dkt. No. 10-3].

**B.** *The Chapter 11 Case.*

**1. The Vitra Dispute.**

As of the Petition Date, the Debtor was engaged in several ongoing disputes with Vitra, which was a tenant and the Debtor's largest creditor. On April 1, 2021, shortly after the Petition Date, Vitra filed its first motion to convert the Chapter 11 Case to a Chapter 7 liquidation (the "***First Motion to Convert***") [Dkt. No. 15]. The First Motion to Convert was denied without prejudice [Dkt. No. 91]. On June 2, 2021, Vitra filed a proof of claim in the Chapter 11 Case, asserting a claim against the Debtor in the total amount of $13,758,246.78. On December 2, 2021, the Debtor moved to assume its lease with Vitra [Dkt. No. 128] based, in part, on the potential costs of its rejection and finding a substitute tenant. On July 12, 2022, Vitra filed a second motion to convert the Chapter 11 Case to a Chapter 7 liquidation (the ***"Second Motion to Convert"***) [Dkt. No. 162].

Following extensive negotiations, Vitra and the Debtor reached a global settlement of all ongoing disputes (the ***"Vitra Settlement"***),[1] including allowing Vitra's proof of claim in a compromised amount, resolving the Second Motion to Convert, and the disposition of Vitra's lease. The Bankruptcy Court approved the terms of the Vitra Settlement, which provide, *inter alia*: (i) Vitra's as-filed proof of claim would be allowed in the aggregate amount of $2,900,000, subject to setoff of certain amounts; (ii) the net amount of Vitra's claim would be paid in full, in cash, within thirty (30) days of (a) the effective date of a plan of reorganization confirmed by the Bankruptcy Court in the Chapter 11 Case, (b) the conversion of the Chapter 11 Case to Chapter 7, or (c) the dismissal of the Chapter 11 Case; and (iii) that Vitra's lease would be rejected as of May 31, 2023 pursuant to 11 U.S.C. § 365.

**2. The First Chapter 11 Plan.**

On September 12, 2021, the Debtor filed a plan of reorganization (~~as may be modified, amended, or supplemented,~~ the ***"First Plan"***) [Dkt. No. 82] ~~that~~, which contemplated that the Debtor would obtain exit financing that would be (i) secured by the Debtor's interest in the Property and ~~(ii)~~ (ii) sufficient to pay all of the Debtor's creditors in full.[2] To assist the Debtor in obtaining financing, the Debtor retained (i) Cushman & Wakefield, as broker, to source exit financing[3] and ~~(ii)~~ (ii) Rosenberg & Estis, P.C., as special counsel, to assist with the

---

[1] *See Order (I) Resolving Motion of Vitra, Inc. to Convert the Debtor's Chapter 11 Case to a Chapter 7 Liquidation; (II) Allowing Vitra's Proof of Claim in a Compromised Amount; and (III) Granting Related Relief* [Dkt. No. 195].

[2] *See* First Plan at III.A.

[3] *See Application of Debtor Ninety-Five Madison Company, L.P. for an Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) Authorizing the Retention and Employment of Cushman & Wakefield as Mortgage Broker* Nunc Pro Tunc *to September 7, 2021* (the

documentation for such financing.[4]

After filing the First Plan, and given challenges posed by the ongoing COVID-19 pandemic and the sustained downturn in the commercial leasing market, the Debtor made the business judgment decision to proceed with a disposition of the Property in contemplation of an amended

plan of reorganization. Concurrently with those efforts, the Debtor sought debtor-in-possession financing that would be a bridge to the Debtor's emergence from Chapter 11.

### 3. The DIP Facility.

On October 26, 2022, the Debtor filed a motion seeking authority to enter into a secured, superpriority debtor-in-possession term loan facility with Madison Avenue Servicing LLC as DIP Lender with a maximum principal availability of $23,000,000. On December 14, 2022, the Bankruptcy Court entered an order approving the DIP Facility.[5] Pursuant to the DIP Order, the Debtor entered into the DIP Facility, which provided the Debtor with ample liquidity to, among other things, continue its operations and pay the administrative expenses of the Chapter 11 Case. As of ~~August~~October 31, 2023, the ~~Debtor has drawn approximately $11,842,020.01 from~~outstanding loan balance under the DIP Facility is $11,842,020.01 (together with all accrued and unpaid interest, the **"DIP Debt"**).[6]

The DIP Credit Agreement requires that any plan of reorganization must provide for either (i) the execution and delivery to the DIP Lender of the Security Instrument and the perfection of the DIP Lender's security interest (as set forth in Section 3.2 of the DIP Credit Agreement) or (ii) payment in full of the DIP Debt.[7] In the event of the former, the Debtor must execute and deliver the Security Instrument to the DIP Lender upon Confirmation.[8] The Security Instrument is an agreement that evidences and secures the DIP Loan and encumbers the Property pursuant to the terms of the DIP Documents.[9] The Security Instrument provides that "[a]ll the covenants, conditions and agreements contained in the [DIP Credit Agreement] are hereby made a part of this Security Instrument to the same extent and with the same force as if fully set forth herein."[10] All subsequent advances under the DIP Facility are ~~evidenced~~secured by the Security Instrument.~~[9]~~ upon its execution.[11]

---

*Authorizing the Retention and Employment of Cushman & Wakefield as Mortgage Broker* Nunc Pro Tunc *to September 7, 2021* (the "**Cushman & Wakefield Retention Application**") [Dkt. No. 104] and order approving the Cushman & Wakefield Retention Application [Dkt. No. 122].

[4] *See Application of Debtor Ninety-Five Madison Company, L.P. for Entry of an Order Authorizing the Retention and Employment of Rosenberg & Estis, P.C. as Special Counsel to the Debtor* Nunc Pro Tunc *to February 18, 2022* (the "**Rosenberg & Estis Retention Application**") [Dkt. No. 150] and order approving the Rosenberg & Estis Retention Application [Dkt. No. 153].

[5] *See Order (I) Authorizing Debtor to Obtain Postpetition Debtor-In-Possession Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Dkt. No. 197].

[6] *See Chapter 11 Monthly Fee Statement for the Debtor for the Period of ~~August~~October 1, 2023 through ~~August~~October 31, 2023* at 14-15 [Dkt. No. ~~272~~286].

(i) [7]    *See* DIP Credit Agreement §§ 1.1 (providing definition of "Acceptable Plan"), 3.2.2 (providing that upon entry of the Confirmation Order, the Debtor must execute and deliver the Security Instrument to the DIP Lender).

(ii) [8]    *See id.* § 3.2.2.

(iii) [9] *See id.* § 1.1.

(iv) [9]    ~~*See id.* § 2.9.1.~~

The DIP Credit Agreement's terms, as incorporated into the Security Instrument, provide that the Debtor may utilize the proceeds of the DIP Loan for the "payment of claims under an Acceptable Plan[.]" The DIP Credit Agreement defines "Acceptable Plan" as, among other things, a "Chapter 11 plan of [the Debtor] that, unless otherwise consented to in advance in writing by [the DIP Lender], provides for the [] execution and delivery to [the DIP Lender] by [the Debtor] of the Security Instrument[.]"[12]

**C.** ~~C.~~ *Marketing and Sale of the Property.*

As set forth above, given the market climate in 2022, the Debtor and its Professionals enacted a marketing process of the Property. To assist with the marketing of the Property, the Debtor retained Branton Realty Services LLC (**"BRS"**) as real estate broker and sales agent.[~~10~~13] Woody Heller is BRS's lead professional for the Debtor, and since BRS's retention, Mr. Heller has overseen the day-to-day management of the marketing process.

The Debtor also retained Fried, Frank, Harris, Shriver & Jacobson LLP as special real estate transaction and tax counsel to the Debtor to prepare a form Purchase and Sale Agreement for eventual execution by the Debtor and any Purchaser of the Property.[~~11~~14]

The Debtor first conducted a "premarketing" process during which Mr. Heller informally gauged interest from potentially interested buyer groups, while marketing materials and expert reports were finalized for official open market promotion. Mr. Heller received inquiries from two types of potential buyer groups: (i) buyers that sought to convert the Property for residential use; and (ii) buyers that sought to maintain the Property for commercial office purposes. In early 2023, the Debtor launched a formal marketing process. During this period, the Debtor officially listed the Property on the open market.

To-date, the Debtor has received multiple bids for the Property, and continues to seek additional bids with the intent of selecting a bid that most maximizes the value of the Property. If the Debtor is able to secure a winning bid by or before the Outside Date, the Debtor intends to effectuate a Sale Transaction after the Effective Date and under the supervision of the Bankruptcy Court, as further described herein.

**III. SUMMARY OF ~~THIS~~THE AMENDED COMBINED PLAN ~~AND DISCLOSURE STATEMENT~~.**

**A.** *The Contemplated Restructuring Transaction ~~or Sale Transaction~~.*

---

[12] *Id.* § 1.1.

[~~10~~13]     *See Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) Authorizing the Retention and Employment of Branton Realty Services LLC as Real Estate Agent to Debtor Ninety-Five Madison Company, L.P.* Nunc Pro Tunc *to August 17, 2022* [Dkt. No. 181].

[~~11~~14]     *See Order Authorizing the Retention and Employment of Fried, Frank, Harris, Shriver & Jacobson LLP as Special Real Estate Transaction & Tax Counsel to the Debtor Nunc Pro Tunc to January 14, 2023* [Dkt. No. 221].

[11] *See id.* § 2.9.1.

The Debtor intends to utilize the Chapter 11 process ~~to~~and supervision of the Bankruptcy Court to pay all Allowed Claims in full, shed burdensome liabilities, and bring its marketing process to completion~~.~~

Specifically, and ~~consummate an asset sale of the Property, or to utilize the capital provided by the DIP Facility to shed its burdensome liabilities. As noted above, the Plan facilitates a toggle between two (2) potential transactions that will either be incorporated as a~~pursuant to the Restructuring Transaction ~~or a Sale Transaction:~~

~~•A Sale Transaction contemplates,~~ the Debtor will pay all Allowed Claims in full through the DIP Facility and the consummation of the Exit Facility as provided in the DIP Documents. After the Effective Date, the Debtor then intends to consummate a sale or other disposition of the Property upon completion of the Debtor's ongoing marketing process before the Outside Date pursuant to the terms of a Purchase and Sale Agreement between the Debtor and a Purchaser, the proceeds of which would be used to satisfy ~~all Allowed~~any Disputed Claims ~~and~~that may later become Allowed ~~Interests in full; and~~

~~•A Restructuring Transaction contemplates, among other things, the payment of all claims in full through the DIP Facility and the consummation of the exit facility as provided in the DIP Documents.~~
~~The Debtor intends to move as expeditiously as possible through either of the forgoing transactions~~Claims.

**B.**    *Plan Treatment of Claims.*

The following table summarizes (i) the treatment of Claims and Interests that are classified under the Plan, (ii) which Classes (if any) are impaired by the Plan, and (iii) which Classes (if any) are entitled to vote on the Plan:

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims | Unimpaired | No (deemed to accept) |
| 3 | General Unsecured Claims | Unimpaired | No (deemed to accept) |
| 4 | Equity Interests in Debtor | Unimpaired | No (deemed to accept) |

**C.**    *Alternatives to the Plan.*

At this time, the Debtor is not aware of any viable alternatives to the Plan, other than the liquidation of its assets pursuant to a Chapter 11 plan of liquidation or by a trustee under Chapter 7 of the Bankruptcy Code. In this respect, the Debtor notes that no other party has proposed a plan of reorganization in this Chapter 11 Case.

**IV.    RISK FACTORS TO BE CONSIDERED.**

Holders of Claims and Interests should read and consider carefully the risk factors set forth herein. Although there are several risk factors as discussed below, these factors should not be regarded as constituting the only risks present in connection with the Debtor or the Plan and its implementation.

**A.      *Bankruptcy Law Considerations.***

The occurrence or non-occurrence of any or all ~~of~~ the following contingencies, and any others, could affect distributions available to Holders of Allowed Claims and Interests under the Plan.

~~1.The Asset Sale May Not Occur.~~

~~The Debtor's Plan contemplates the possible occurrence of a Sale Transaction through an Asset Sale(s). There is no assurance that the Asset Sale(s) will occur.~~

**1.      ~~2.~~The Conditions Precedent to the Effective Date of the Plan May Not Occur.**

As set forth more fully in Article IX of the Plan, the Effective Date of the Plan is subject to a number of conditions precedent. If such conditions precedent are not met or waived, the Effective Date will not take place.

**2.      ~~3.~~Risks Related to Possible Objections to the Plan.**

There is a risk that certain parties could oppose and object to the Plan in the Bankruptcy Court either in its entirety or to specific provisions of the Plan. While the Debtor believes that the proposed Plan complies with all relevant Bankruptcy Code provisions, there can be no guarantee that a party in interest will not file an objection to the Plan or that the Bankruptcy Court will not sustain such an objection.

**3.      ~~4.~~Conversion to a Chapter 7 Case.**

If no plan of reorganization can be confirmed, or if the Bankruptcy Court otherwise finds that it would be in the best interest of ~~holders~~Holders of Claims and Interests, the Chapter 11 Case may be converted to a case under Chapter 7 of the Bankruptcy Code, pursuant to which a Chapter 7 trustee would be appointed or elected to liquidate the Debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code.

**B.      *Other Risks.***

**1.      The Debtor Will Be Subject to the Risks and Uncertainties Associated with the Chapter 11 Case.**

For the duration of the Chapter 11 Case, the Debtor's ability to operate, develop, and continue as a going concern, will continue to be subject to the risks and uncertainties associated with bankruptcy. These risks include the following: (i) ability to develop, confirm, and consummate the Restructuring ~~Transaction or the Sale~~ Transaction specified in the Plan; (ii) ability to obtain Bankruptcy Court approval with respect to motions filed in the Chapter 11 Case from time to time; (iii) ability to maintain relationships with suppliers, vendors, service providers, customers, employees, payors, and other third parties; (iv) ability to maintain contracts

that may be critical to the Debtor's operations; (v) ability of third parties to seek and obtain Bankruptcy Court approval to terminate contracts and other agreements with the Debtor; (vi) ability of third parties to seek and obtain Bankruptcy Court approval to appoint a Chapter 11 trustee or to convert the Chapter 11 Case to Chapter 7 proceedings; and (vii) the actions and decisions of the Debtor's creditors and other third parties who have interests in the Chapter 11 Case that may be inconsistent with the Debtor's intentions.

> **2.      The Reorganized Debtor May Be Adversely Affected by Potential Litigation, Including Litigation Arising Out of the Chapter 11 Case.**

In the future, the Debtor, the Reorganized Debtor, and/or the Debtor's General Partners may become parties to litigation. In general, litigation can be expensive and time consuming to bring or defend against. Such litigation could result in settlements or damages that could significantly affect the Debtor's financial condition. ~~It is also possible that certain parties will commence litigation with respect to any Sale Transaction.~~ It is not possible to predict such potential litigation nor the final resolution of such litigation at this time.

## V.      CERTAIN FEDERAL UNITED STATES INCOME TAX CONSEQUENCES OF THE PLAN.

The following discussion summarizes certain of the material United States federal income tax consequences expected to result from the implementation of the Plan. This discussion is based on current provisions of the Internal Revenue Code of 1986, as amended, applicable Treasury Regulations, judicial authority and current administrative rulings and pronouncements of the Internal Revenue Service (the "IRS"). There can be no assurance that the IRS will not take a contrary view, and no ruling from the IRS has been or will be sought. Legislative, judicial, or administrative changes or interpretations may be forthcoming that could alter or modify the statements and conclusions set forth herein. Any such changes or interpretations may or may not be retroactive and could affect the tax consequences to, among others, the Debtor and the Holders of Claims or Interests.

The federal income tax consequences of the Plan are complex and subject to significant uncertainties. This summary does not address foreign, state, or local tax consequences of the Plan, nor does it purport to address all of the federal income tax consequences of the Plan. This summary also does not purport to address the federal income tax consequences of the Plan to taxpayers subject to special treatment under the federal income tax laws, such as broker-dealers, tax exempt entities, financial institutions, insurance companies, S corporations, small business investment companies, mutual funds, regulated investment companies, foreign corporations, and nonresident alien individuals.

Given that all Allowed Claims and Allowed Interests are to be paid in full in Cash under the Plan, the Debtor does not anticipate that the Plan will have material income tax consequences for creditors.

> **EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING THE POTENTIAL FEDERAL, STATE, LOCAL, OR FOREIGN TAX CONSEQUENCES OF THE PLAN.**

## VI.      EFFECT OF CONFIRMATION OF THE AMENDED COMBINED PLAN ~~AND~~

**~~DISCLOSURE STATEMENT~~**.

**A.** **_Binding Effect of the Plan_**.

The provisions of the confirmed Plan shall bind the Debtor, the Reorganized Debtor, any Entity acquiring property under the Plan, and any Holder, whether or not such Holder has filed a Proof of Claim or Interest in the Chapter 11 Case. All Claims shall be fixed and adjusted pursuant to the Plan. The Plan will also bind any taxing authority, recorder of deeds, or similar official for any county, state, or governmental unit in which any instrument related to the Plan or related to any transaction contemplated under the Plan is to be recorded with respect to any taxes of the kind specified in Section 1146(a) of the Bankruptcy Code.

**B.** **_Injunction, Exculpation, and Release Provisions of the Plan_**.

The Plan contains injunction, exculpation, and release provisions. Article VIII of the Plan describes in specific and conspicuous language all acts to be enjoined and identifies entities that would be subject to said provisions in satisfaction of the requirements of Bankruptcy Rule 3016(c).

**C.** **_Confirmation of the Plan_**.

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court to hold a confirmation hearing upon appropriate notice to all required parties. The Debtor will request that the Bankruptcy Court schedule the Confirmation Hearing. Notice of the Confirmation Hearing will be provided to all known creditors and equity holders or their representatives. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of the adjourned date made at the Confirmation Hearing, at any subsequent adjourned Confirmation Hearing, or pursuant to a notice filed on the docket of the Chapter 11 Case.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation. Any objection to Confirmation must (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtor, would obviate such objection; (iv) conform to the Bankruptcy Rules; and (v) be filed with the Bankruptcy Court, with a copy to the chambers of the Bankruptcy Court, together with proof of service thereof.

**D.** **_Post-Confirmation Asset Sale(s)_**.

As noted herein, the Debtor intends to continue to conduct a marketing process to solicit bids for an Asset Sale(s) of the Property after Confirmation and to consummate a Sale Transaction. To the extent the Debtor or the Reorganized Debtor, as applicable, effectuates a Sale Transaction before the Outside Date, the Debtor or the Reorganized Debtor, as applicable, may elect to conduct such a sale pursuant to Sections 363, 1123, and 1146(a) of the Bankruptcy Code and in accordance with the Bankruptcy Court's retention of jurisdiction under the Plan.

**VII.** **NO DISTRIBUTIONS PENDING ALLOWANCE.**

Notwithstanding any other provision of the Plan, no payments or Distributions shall be

made with respect to all or any portion of a Disputed Claim unless and until all objections to such a Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim. To the extent that a Claim is not a Disputed Claim but is held by a Holder that is or may be liable to the Debtor, no payments or Distributions shall be made with respect to all or any portion of such Claim unless and until such Claim and liability have been settled or withdrawn or have been determined by Final Order of the Bankruptcy Court or such other court having jurisdiction over the matter.

## VIII.    BEST INTERESTS OF CREDITORS/LIQUIDATION ANALYSIS.

Often called the "best interests of creditors" test, Section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court find, as a condition to confirmation, that a Chapter 11 plan provides, with respect to each impaired class, that each Holder of a claim or an equity interest in such impaired class either (1) has accepted the plan or (2) will receive or retain under the plan property of a value that is not less than the amount that the non-accepting Holder would receive or retain if a debtor liquidated under Chapter 7.

As the Plan provides that each Class of Claims and Interests is Unimpaired and thus are not entitled to vote, the Debtor submits that the "best interests of creditors test" does not apply to any Classes. Having no applicability to the Plan, the Debtor further submits that the requirements of Section 1129(a)(7) of the Bankruptcy Code have been met.

In any event, the Debtor believes that recoveries in a Chapter 7 scenario, as compared to those pursuant to the distribution terms provided under the Plan, would be reduced by (i) the delay necessarily resulting from the appointment of a Chapter 7 trustee; (ii) the fees and expenses of such trustee and any professionals he or she will retain; and (iii) additional Administrative Expense Claims. More specifically, and aside from general logistical concerns, the Chapter 7 trustee would not likely be immediately familiar with the intricacies of Debtor's assets, the Debtor's business, the Debtor's longstanding history, or with various regulatory laws related to the Debtor. Thus, an additional layer of advisors and experts would need to be retained by the Chapter 7 trustee, giving rise to additional administrative expenses that would be entitled to priority. Additionally, sales organized pursuant to Chapter 7 liquidations will often yield depressed values because the sales are conducted under "fire sale" conditions.

Because recoveries under the Plan exceed those in a hypothetical Chapter 7 case, the Debtor submits the Plan satisfies the best interests of creditors test.

## IX.    ~~VI.~~CONCLUSION.

The Debtor believes the Plan is in the best interest of all stakeholders. The Debtor further believes the Plan is preferable to all other available alternatives and provides for a larger distribution to the Debtor's creditors than would otherwise result in other scenarios.

### PART TWO: PLAN OF REORGANIZATION ARTICLE I.
### RULES OF INTERPRETATION AND COMPUTATION OF TIME

**A.**    *Rules of Interpretation.*

Unless otherwise specified, all article, section, or exhibit references in this Plan are to the respective article in, section in, or exhibit to, this Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit, or schedule as it may have been amended, restated, revised, supplemented or otherwise modified. If a time or date is specified for any payments or other Distribution under this Plan, it shall mean on or as soon as reasonably practicable thereafter. Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral.

**B.**     *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next Business Day.

**C.**     *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America. Any conversion required to convert foreign currency to United States dollars shall be done using the applicable exchange rates on the Petition Date.

**D.**     *Controlling Document.*

In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

<h2 style="text-align:center">ARTICLE II.<br>ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY TAX CLAIMS AND STATUTORY FEES</h2>

**A.**     *Allowed Administrative Expense Claims.*

Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to a different treatment, each Holder of an Allowed Administrative Expense Claim shall be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash (i) on the Effective Date or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Expense Claim is due or as soon thereafter as is reasonably practicable, (ii) if an Administrative Expense Claim is Allowed after the Effective Date, on the date such Administrative Expense Claim is Allowed or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Expense Claim is due, (iii) at such time and upon such terms as may be agreed upon by such Holder and the Debtor, or (iv) at such

time and upon such terms as set forth in an order of the Bankruptcy Court.

**B.** *DIP Claims.*

On the Effective Date, in full and final satisfaction of the Allowed DIP Claims, the DIP Facility of the DIP Lender under the DIP Documents shall: ~~(i) if the Sale Transaction occurs, be paid in full in Cash on the Effective Date after the consummation of the Sale Transaction; or (ii) if the Restructuring Transaction occurs,~~ be Allowed in an amount equal to the aggregate amount of the then outstanding DIP Facility including (~~x~~a) the principal amount outstanding under the DIP Facility on such date; (~~y~~b) all interest accrued and unpaid thereon through and including the date of payment; ~~and~~ (~~z~~c) all accrued and unpaid fees, expenses, and indemnification obligations payable under the DIP Documents, including, the reasonable and documented fees and expenses of the attorneys and other advisors of the DIP Lender to the extent provided in the DIP Documents~~.~~ ~~If the Sale Transaction occurs, and contemporaneously with the foregoing payment, the DIP Facility and the DIP Documents shall be deemed canceled, all commitments under the DIP Documents shall be deemed terminated, all Liens on property of the Debtor arising out of or related to the DIP Facility shall automatically terminate, and all collateral subject to such Liens shall be automatically released, in each case without further action by the DIP Lender, and all guarantees of the Debtor arising out of or related to the DIP Claims shall be automatically discharged and released, in each case without further action by the DIP Lender. The DIP Lender shall take all actions to effectuate and confirm such termination, release, and discharge as reasonably requested by the Debtor or the Reorganized Debtor; provided, that any provisions of the DIP Documents governing the DIP Facility that by their terms survive the payoff and termination of such facility shall survive in accordance with the terms of such DIP Documents.~~ ~~If the Restructuring Transaction occurs,~~; and (d) the remaining DIP Claims will be converted on a dollar-for-dollar basis into the Exit Facility.

**C.** *Professional Fee Claims.*

**1.** <u>**Final Fee Applications**</u>.

All final requests for payment of Professional Fee Claims shall be filed and served no later than thirty (30) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims. Any objections to Professional Fee Claims must be filed and served on the Debtor and the requesting party no later than thirty (30) days after service of the final request for payment of Professional Fee Claims. Except to the extent that the applicable Holder of an Allowed Professional Fee Claim agrees to less favorable treatment with the Debtor or, after the Effective Date, the Reorganized Debtor, each Holder of a Professional Fee Claim that has been approved by the Bankruptcy Court shall be paid in full in Cash.

**2.** <u>**Post-Effective Date Fees and Expenses**</u>

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtor may, in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court, pay in Cash the legal, professional or other fees and expenses related to the implementation and consummation of the Plan incurred by the Reorganized Debtor or any Professional following the Effective Date. Upon the Effective Date,

any requirement that Professionals comply with the applicable provisions of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further notice to or action, order or approval of the Bankruptcy Court.

**D.**     *Priority Tax Claims.*

Except to the extent that any applicable Holder of an Allowed Priority Tax Claim has been paid by the Debtor before the Effective Date, or such Holder agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, on account of such Allowed Priority Tax Claim, at the option of the Debtor or, after the Effective Date, the Reorganized Debtor, payment in Cash in the full amount of such Allowed Priority Tax Claim, on or as soon as reasonably practicable following the latest to occur of (i) the Effective Date, (ii) the date on which such Priority Tax Claim becomes Allowed, and (iii) the date such Priority Tax Claim is payable under applicable non-bankruptcy law.

**E.**     *Statutory Fees Payable Pursuant to 28 U.S.C. § 1930.*

The Debtor shall pay all quarterly fees under 28 U.S.C. § 1930(a), plus any interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtor's business, for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

**A.**     *Summary of Classification.*

The following table designates the Classes of Claims against and Interests in the Debtor's Estate, and specifies which of those Classes are (i) Unimpaired or Impaired by the Plan, (ii) entitled or not entitled to vote to accept or reject this Plan in accordance with Section 1126 of the Bankruptcy Code, and (iii) deemed to accept or not accept the Plan. A Claim or Interest is classified in a particular Class only to the extent that any such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims | Unimpaired | No (deemed to accept) |
| 3 | General Unsecured Claims | Unimpaired | No (deemed to accept) |
| 4 | Equity Interests in Debtor | Unimpaired | No (deemed to accept) |

**B.**     *Treatment of Claims and Interests.*

1. **Class 1 – Other Priority Claims**

*Classification*: Class 1 consists of all Holders of Other Priority Claims.

*Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim has agreed with the Debtor to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; and (ii) the date the Other Priority Claim becomes an Allowed Claim.

*Voting*: Class 1 is Unimpaired under the Plan. ~~The~~A Holder of an Allowed Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Therefore, ~~the~~a Holder of an Allowed Other Priority Claim is not entitled to vote to accept or reject the Plan.

2. **Class 2 – Secured Claims**

*Classification*: Class 2 consists of all Holders of Secured Claims.

*Treatment*: Except to the extent that a Holder of ~~a~~an Allowed Secured Claim has agreed with the Debtor to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such Allowed Secured Claim, Cash in an amount equal to such Allowed Secured Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; and (ii) the date the Secured Claim becomes an Allowed Claim.

*Voting*: Class 2 is Unimpaired under the Plan. ~~The~~A Holder of an Allowed Secured Claim is conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Therefore, ~~the~~a Holder of an Allowed Secured Claim is not entitled to vote to accept or reject the Plan.

3. **Class 3 – General Unsecured Claims**

*Classification*: Class 3 consists of all General Unsecured Claims.

*Treatment*: Except to the extent that a Holder of ~~a~~an Allowed General Unsecured Claim has agreed with the Debtor to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such Allowed General Unsecured Claim, Cash in an amount equal to such Allowed General Unsecured Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; and (ii) the date the General Unsecured Claim becomes an Allowed Claim, including if such General Unsecured Claim becomes Allowed after the Effective Date.

*Voting*: Class 3 is Unimpaired under the Plan. ~~The~~A Holder of ~~a~~an Allowed General Unsecured Claim in Class 3 is conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Therefore, ~~the~~a Holder of ~~a~~an Allowed General Unsecured Claim is not entitled to vote to accept or reject the Plan.

4. **Class 4 – Equity Interests in the Debtor**

*Classification*: Class 4 consists of all Holders of Interests in the Debtor.

*Treatment*: On the Effective Date, each Holder of an Allowed Interest in the Debtor shall

receive interests in the Reorganized Debtor in the same number, proportion or percentage, as applicable, and with identical rights with respect to the Reorganized Debtor as the Allowed Interests such Holder held in the Debtor as of the Effective Date.

*Voting*: Class 4 is Unimpaired under the Plan. TheA Holder of an Allowed Interest in Class 4 is conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Therefore, a Holder of an Allowed Interest is not entitled to vote to accept or reject the Plan.

## ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN

**A.    *Effectuating Plan Transactions; Approvals.***

On the Effective Date or as soon thereafter as is reasonably practicable, the Debtor may take any and all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate this Plan (the ***"Plan Transactions"***), including, but not limited to, (i) the filing of appropriate certificates of incorporation or other similar documents with the appropriate governmental authorities pursuant to applicable law, and (ii)    all other actions that are necessary or appropriate to effectuate the provisions of this Plan.

Pursuant to the applicable provisions of the Bankruptcy Code, the Debtor or the Reorganized Debtor shall be authorized to execute, in the name of any applicable party, any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance (including, any Lien, Claim or encumbrance that is to be released and satisfied upon the Debtor's compliance with the provisions of this Plan) not expressly preserved in the Plan, and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

The Confirmation Order shall and shall be deemed to, pursuant to the applicable provisions of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect the Plan Transactions and any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

**B.    *Sources of Consideration for Plan Distributions.***

1.**Sale Transaction**

The Debtor shall fund distributions and satisfy applicable Allowed Claims and Allowed Interests under the Plan with respect to the Sale Transaction using Cash on hand and the Asset Sale Proceeds.

2.**Restructuring Transaction**

The Debtor shall fund distributions and satisfy applicable Allowed Claims and Allowed Interests under the Plan with respect to the Reorganization Transaction with Cash on hand and the DIP Facility.

C.**Sale Transaction.**

If the Debtor pursues the Sale Transaction, the Debtor will continue to conduct a

marketing process to solicit bids for an Asset Sale(s). If the Debtor is able to secure a Purchaser, the Holders of Allowed Claims and Allowed Interests will receive the Asset Sale Proceeds as set forth in Article IV of the Plan and the Asset Sale(s) will be consummated in accordance with the terms to be set forth in the Confirmation Order.

In the event that the Debtor determines to effectuate any Asset Sale(s) on or after the Confirmation Date, the Confirmation Order shall be deemed to authorize, among other things, all actions as may be necessary or appropriate to consummate and effect such Asset Sale(s), including, among other things, transferring any purchased assets and interests to be transferred to and vested in any Purchaser free and clear of all Liens, Claims, charges or other encumbrances pursuant to the terms of the Purchase and Sale Agreement, approve the Purchase and Sale Agreement, and authorize the Debtor or the Reorganized Debtor, as applicable, to undertake the transactions contemplated by the Purchase and Sale Agreement, including any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Asset Sale(s), including, for the avoidance of doubt, any and all actions required to be taken under applicable nonbankruptcy law (such actions, the *"Sale Approvals"*).

Pursuant to the Sale Transaction, the Reorganized Debtor shall have the authority and right on behalf of the Debtor without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan, including, without limitation, to:

(i) except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtor; (ii) make distributions to holders of Allowed Claims in accordance with the Plan; (iii) prosecute all Causes of Action on behalf of the Debtor, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Reorganized Debtor may determine is in the best interests of the Debtor; (iv) maintain the books, records, and accounts of the Debtor; (v) complete and file, as necessary, all final or otherwise required federal, state, and local tax returns for the Debtor; and (vi) perform other duties and functions that are consistent with the implementation of the Plan.

Notwithstanding anything contained in this Plan, if the Sale Transaction is not consummated by the Outside Date or the Purchase and Sale Agreement is terminated, all provisions contained in this Plan governing the Sale Transaction shall have no further force and effect, and the provisions governing the Restructuring Transaction shall govern. The rights and remedies of the Debtor and Purchaser under the Purchase and Sale Agreement and any related orders of the Bankruptcy Court shall be expressly preserved.

D. *Restructuring Transaction.*

If the Debtor pursuesPursuant to the Restructuring Transaction, prior to, on, or after the Effective Date, the Debtor or the Reorganized Debtor, as applicable, may take any and all actions as may be necessary or appropriate in the Debtor's reasonable discretion to effectuate the Restructuring Transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (i) the execution and delivery of any new organizational documents, including any appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, formation, organization, arrangement, continuance, dissolution, sale, purchase, or liquidation, in each case, containing terms that are consistent with the terms of the Plan; (ii) the execution and delivery of appropriate instruments of transfer, assignment,

assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (iii) the filing of any new organizational documents, including any appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state law; and (iv) such other transactions that are required to effectuate the Restructuring Transaction, including any sales, mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations. The Restructuring Transaction shall be structured in a manner that takes into account the tax positions of creditors and the Reorganized Debtor.

~~On~~

Pursuant to the Restructuring Transaction, the Reorganized Debtor shall have the authority and right on behalf of the Debtor without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan, including, without limitation, to:
(i) except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtor; (ii) make distributions to holders of Allowed Claims in accordance with the Plan; (iii) prosecute all Causes of Action on behalf of the Debtor, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Reorganized Debtor may determine is in the best interests of the Debtor; (iv) maintain the books, records, and accounts of the Debtor; (v) complete and file, as necessary, all final or otherwise required federal, state, and local tax returns for the Debtor; and (vi) perform other duties and functions that are consistent with the implementation of the Plan.

For the avoidance of doubt, on or before the Effective Date, the Reorganized Debtor shall be authorized to execute and perform under the Exit Facility Documents without the need for any further corporate action and without further action by Holders of Claims or Interests. Notwithstanding anything contained in this Plan, ~~in the event that the Debtor determines to effectuate a Restructuring Transaction prior to, on, or after the Effective Date,~~ the Debtor may also concurrently pursue ~~an Asset~~ a Sale ~~(s) of the Property, subject to the Sale Approvals as may be applicable~~ Transaction and consummate such Sale Transaction by or before the Outside Date.

The Confirmation Order shall and shall be deemed to, pursuant to Sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transaction.

**C.** ~~E.~~*Tax Matters.*

The terms of the Plan~~, the Asset Sale(s), the Sale Transaction and the Restructuring Transaction~~ shall be structured to minimize, to the extent practicable, the aggregate tax impact on the Debtor, taking into account both the Cash tax impact on the Debtor in the tax year of ~~the Sale Transaction or~~ the Restructuring Transaction, and the tax liability of the Debtor in subsequent years.

**D.** ~~F.~~*Effectuating Documents.*

Upon entry of the Confirmation Order, the Debtor ~~and, in the event of a Sale Transaction, the Purchaser and any necessary party thereto,~~ shall execute, release, and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan.

Pursuant to the applicable provisions of the Bankruptcy Code, the Debtor ~~and, in the event of a Sale Transaction, the Purchaser and any necessary party thereto,~~ shall be authorized to execute, in the name of any applicable party, any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance (including, any Lien, Claim or encumbrance that is to be released and satisfied upon the Debtor's compliance with the provisions of this Plan) not expressly preserved in the Plan, and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

**E.** ~~G.~~ *Post-Confirmation Management.*

The Debtor shall continue in existence post-confirmation. After Confirmation of the Plan, the General Partners will continue to control the Reorganized Debtor pursuant to the terms of the Partnership Agreement.

**F.** *Post-Confirmation Asset Sale(s).*

To the extent the Debtor or the Reorganized Debtor, as applicable, effectuates any Sale Transaction prior to the Outside Date, the Debtor or the Reorganized Debtor, as applicable, may elect to sell such property pursuant to Sections 363, 1123, and 1146(a) of the Bankruptcy Code and in accordance with the Bankruptcy Court's retention of jurisdiction under the Plan.

**G.** ~~H.~~ *Exemption From Transfer Taxes, Mortgage Recording Taxes, or Similar Taxes.*

To the maximum extent provided by Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan as confirmed by the Bankruptcy Court, shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax or similar tax due in connection with or in furtherance of the Plan as confirmed by the Bankruptcy Court and the funding requirements contained herein and shall not be subject to any state, local or federal law imposing such tax. The appropriate state or local government officials or agents shall forgo collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**H.** ~~I.~~ *Retention of Professionals.*

The Reorganized Debtor shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Reorganized Debtor, are necessary to assist the Reorganized Debtor in the performance of its duties and to administer the Plan. The payment of the reasonable and documented fees and expenses of the retained professionals shall not be subject to the approval of the Bankruptcy Court.

**I.** ~~J.~~ *Preservation of Rights of Action.*

Except as otherwise provided herein, the Debtor shall retain, and on the Effective Date shall be deemed to have assigned to the Reorganized Debtor, and the Reorganized Debtor may enforce, any claims, rights and causes of action arising under Sections 510 and 544 through 550 of the Bankruptcy Code or any similar provisions of state law, or any statute or legal theory. Except as otherwise specifically provided in the Plan, nothing herein shall be deemed to affect, diminish, or impair the rights and defenses, both legal and equitable, of the Debtor or the Reorganized Debtor with respect to any Claim, including legal and equitable defenses to setoffs or recoupment against Claims; and, except as otherwise specifically provided in the Plan, nothing herein shall be deemed to be a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other legal or equitable defense which the Debtor now has or had immediately prior to the Petition Date, against or with respect to any Claim. Except as otherwise specifically provided in the Plan, the Reorganized Debtor shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff, and other legal or equitable defenses which the Debtor now has or had immediately prior to the Petition Date fully as if the Chapter 11 Case had not been commenced, and all legal and equitable rights with respect to any Claim may be asserted after the Confirmation Date and the Effective Date to the same extent as if the Chapter 11 Case had not been commenced.

## ARTICLE V.TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.**     *General Treatment.*

As of and subject to the occurrence of the Effective Date and solely with respect to the Restructuring Transaction, all Unexpired Leases and Executory Contracts to which the Debtor is a party are hereby assumed by the Reorganized Debtor as of the Effective Date, except for an Unexpired Lease or Executory Contract that (i) the Debtor has previously rejected in accordance with applicable provisions of the Bankruptcy Code, (ii) is specifically designated as an Executory Contract or Unexpired Lease to be rejected in this Plan, or (iii) (iii) is the subject of a separate rejection motion filed under Section 365 of the Bankruptcy Code before the Effective Date.

Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order shall revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the Debtor and the applicable counterparty, or by order of the Bankruptcy Court.

**B.**     *Rejection Damages of Claims.*

In the event that the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan results in a Rejection Damages Claim in favor of a counterparty to such Executory Contract or Unexpired Lease, such Rejection Damages Claim shall be treated as a General Unsecured Claim pursuant to the terms of this Plan.

**C.**     *Insurance Policies and Agreements.*

To the extent that insurance policies or agreements are determined to be Executory Contracts, the Plan shall constitute a motion to assume such insurance policies and agreements.

Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approval of such assumption pursuant to Section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtor and its estate in this Chapter 11 Case.

Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtor existing as of the Confirmation Date with respect to each such insurance policy or agreement. Nothing contained in the Plan, including this Article V, shall constitute a waiver of any claim, right, or Cause of Action that the Debtor or Reorganized Debtor, as the case may be, may hold against the insurer under any policy of insurance or insurance agreement.

**D.**     ***Reservation of Rights with Regards to Assumption of Executory Contracts and Unexpired Leases.***

Nothing contained in the Plan, nor the Debtor's delivery of a notice of proposed assumption of a contract or Unexpired Lease to the applicable counterparties and Unexpired Lease counterparties, shall constitute an admission by the Debtor that any such contract or Unexpired Lease is in fact an Executory Contract or Unexpired Lease or that the Debtor would have any liability thereunder. Notwithstanding any non-bankruptcy law to the contrary, the Debtor and the Reorganized Debtor expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased, or services previously received, by the Debtor from counterparties to rejected Executory Contracts or Unexpired Leases.

**ARTICLE VI.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

All ~~holders~~Holders of Claims are conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

**A.**     ***Distribution Agents.***

The Debtor or, after the Effective Date, the Reorganized Debtor, shall have the authority, each in its sole discretion, to enter into agreements with one or more Distribution Agents to facilitate the distributions required hereunder.

The Debtor or the Reorganized Debtor, as applicable, may pay to the Distribution Agent all of its reasonable and documented fees and expenses without the need for any approval of the Bankruptcy Court. The Distribution Agent shall submit detailed invoices to the Debtor or the Reorganized Debtor, as applicable, for all fees and expenses for which the Distribution Agent seeks reimbursement, and the Debtor or the Reorganized Debtor, as applicable, shall pay those amounts that they, in their sole discretion, deem reasonable, and shall object in writing to those fees and expenses, if any, that the Debtor or the Reorganized Debtor, as applicable, deem to be unreasonable.

In the event that the Debtor or the Reorganized Debtor, as applicable, object to all or any portion of the amounts requested to be reimbursed in a Distribution Agent's invoice, the Debtor or the Reorganized Debtor, as applicable, and such Distribution Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees

and/or expenses. In the event that the Debtor or the Reorganized Debtor, as applicable, and a Distribution Agent are unable to resolve any differences regarding disputed fees or expenses, any party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

**B.**     *Powers of the Distribution Agent.*

The Distribution Agent shall be empowered to: (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) make all distributions contemplated hereby, (iii) employ professionals to represent it with respect to its responsibilities, and (iv) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

**C.**     *Date of Distributions.*

Except as otherwise provided herein (including with respect to the transfers and other transactions described in Article IV of this Plan, which shall be made within the timeframes set forth in that Article), any Distributions and deliveries to be made hereunder shall be made on the Effective Date or as soon thereafter as is reasonably practicable, including for those claims that become Allowed after the Effective Date. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**D.**     *De Minimis Distributions.*

Notwithstanding any other provision of the Plan, the Reorganized Debtor nor the Distribution Agent shall have any obligation to make any distributions under the Plan with a value of less than $50, unless a written request therefor is received by the Distribution Agent from the relevant recipient within 120 days after the later of (i) the Effective Date and (ii) the date such Claim or Interest becomes an Allowed Claim or Interest. *De minimis* distributions for which no such request is timely received shall revert to the Reorganized Debtor. Upon such reversion, the relevant Allowed Claim or Interest of less than $50 (and any Claim or Interest on account of such missed distributions) shall be automatically deemed satisfied, discharged, and forever barred, notwithstanding any federal or state escheat laws to the contrary.

**E.**     *Delivery of Distributions.*

If any Distribution to a Holder of an Allowed Claim is returned as undeliverable, the Distribution Agent shall use reasonable efforts to determine the correct current address of such Holder, but no Distribution to such Holder shall be made unless and until the Distribution Agent has determined to the best of its ability the current address of such Holder, at which time a Distribution shall be made to such Holder without interest; provided that such Distributions shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date. After such date, all unclaimed property or interest in property shall revert to Reorganized Debtor, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

**F.** *Compliance Matters.*

In connection with the Plan, to the extent applicable, the Debtor, the Reorganized Debtor, and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any federal, state, local or foreign tax law, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Debtor, the Reorganized Debtor, and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including withholding in kind, liquidating a portion of the distributions to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. For purposes of the Plan, any withheld amount (or property) shall be treated as if paid to the applicable claimant. The Reorganized Debtor reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances. Distributions in full or partial satisfaction of Allowed Claims shall be allocated first to trust fund-type taxes, then to other taxes, and then to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that has accrued on such Claims.

**G.** *No Post-Petition Interest on Claims.*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, required by applicable law, by order of the Bankruptcy Court, or agreed to by the Debtor or, after the Effective Date, the Reorganized Debtor, no Holder of a Claim or Interest against the Debtor shall be entitled to interest accruing on or after the Petition Date with respect to such Claim or Interest, notwithstanding any dispute or other delay with respect to any distribution. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

**H.** *Manner of Payment.*

At the option of the Reorganized Debtor, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

**I.** *Setoffs and Recoupment.*

The Debtor or the Reorganized Debtor, as applicable, pursuant to applicable bankruptcy or nonbankruptcy law may, but shall not be required to, set off against any Allowed Claim and the Distributions to be made pursuant to this Plan on account of such Allowed Claim (before any Distribution is to be made on account of such Allowed Claim), any claims of any nature whatsoever that the Debtor or the Reorganized Debtor, as applicable, may have against the Holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim the Debtor or the Reorganized Debtor, as applicable, may have against the Holder of such Claim or Interest.

**J.** *Distributions Free and Clear.*

Except as may be otherwise provided herein, any Distributions under this Plan shall be free and clear of any Liens, Claims, encumbrances, and other interests.

# ARTICLE VII.
# PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

**A.** *Allowance of Claims.*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtor shall have the sole authority to (i) file, withdraw or litigate to judgment, in the Bankruptcy Court, objections to Claims or Interests, and (ii) settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court. Nothing in this Article VII shall limit the ability under the Bankruptcy Code of any party-in-interest to object to any Claim or Interest unless otherwise ordered by the Bankruptcy Court

**B.** *Estimation of Claims.*

After the Effective Date, the Reorganized Debtor may, within its reasonable discretion, at any time request that the Bankruptcy Court estimate any Disputed Claim that is Contingent or unliquidated pursuant to Section 502(c) of the Bankruptcy Code, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.

**C.** *Amendments to Proofs of Claim.*

On or after the Effective Date, a Proof of Claim may not be amended (other than solely to update or correct the name or address of the Holder of such Claim) without the prior authorization of the Bankruptcy Court or the Reorganized Debtor, as applicable, and any such amended Proof of Claim filed without such prior authorization shall be deemed disallowed in full and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

**D.** *No Distributions Pending Allowance.*

~~If an objection to the amount, validity, priority, or classification of a Claim or Interest or a portion thereof is filed or is intended to be filed as set forth herein or a Claim or Interest otherwise remains a Disputed Claim or Interest, except as otherwise provided in a~~ ~~Final Order of the Bankruptcy Court, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest or portion thereof, as applicable, unless and until such~~ ~~Disputed Claim becomes an Allowed Claim or Interest~~<u>Notwithstanding any other provision of the Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such a Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim. To the extent that a Claim is not a Disputed Claim but is held by a Holder that is or may be liable to the Debtor, no payments or Distributions shall be</u>

made with respect to all or any portion of such Claim unless and until such Claim and liability have been settled or withdrawn or have been determined by Final Order of the Bankruptcy Court or such other court having jurisdiction over the matter.

**E.**    *Distributions After Allowance.*

To the extent that a Disputed Claim or Interest ultimately becomes a finally Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the applicable provisions of the Plan.

**ARTICLE VIII.**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

**A.**    *Compromise and Settlement of Claims, Interests, and Controversies.*

Pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the Plan is and shall be deemed a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.

The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable. The compromises, settlements, and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtor may compromise and settle Claims against, and Interests in, the Debtor and its Estate and Causes of Action against other Entities.

**B.**    *Discharge of Claims and Termination of Interests.*

Pursuant to Section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, including this Article VIII, and the Confirmation Order, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any Contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, any Claims for withdrawal liability that relate to services performed by employees of the Debtor before the Effective Date or that arise from a termination of employment, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (i) a Proof of Claim based upon such debt or right

is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code; or (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to Section 502 of the Bankruptcy Code. Any default by the Debtor with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Case shall be deemed cured (and no longer continuing) as of the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests as provided herein subject to the Effective Date occurring.

**C.** ***Releases by the*** ~~***Releasing Parties***~~***Debtor***.

~~PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING THE EFFORTS OF THE RELEASED PARTIES TO FACILITATE THE EXPEDITIOUS REORGANIZATION OF THE DEBTOR AND THE IMPLEMENTATION OF THE RESTRUCTURING CONTEMPLATED BY THE PLAN, PURSUANT TO THE CONFIRMATION ORDER, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, AND ON AND AFTER THE EFFECTIVE DATE, EACH RELEASED PARTY SHALL BE DEEMED FOREVER RELEASED AND DISCHARGED BY EACH RELEASING PARTY FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTOR OR ITS ESTATE, AS APPLICABLE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR FIXED, MATURED OR UNMATURED, EXISTING OR HEREINAFTER ARISING, IN LAW, AT EQUITY, OR OTHERWISE, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, INCLUDING, WITHOUT LIMITATION, THOSE THAT EACH RELEASING PARTY, DEBTOR, OR THE ESTATE WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR EQUITY INTEREST IN, THE DEBTOR, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR, THE BUSINESS OPERATIONS OF THE DEBTOR, ACTIONS TAKEN BY THE DEBTOR, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR AND ANY RELEASED PARTY, THE DEBTOR'S IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, THE CHAPTER 11 CASE, THE FORMULATION, PREPARATION, DISSEMINATION, OR NEGOTIATION OF THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, ANY PURCHASE AND SALE DOCUMENTS, OR OTHER DOCUMENTS, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, OTHER THAN CLAIMS OR LIABILITIES ARISING FROM ANY ACT OR OMISSION OF A RELEASED PARTY THAT CONSTITUTES FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE; PROVIDED THAT THE FOREGOING RELEASE SHALL NOT APPLY TO ANY EXPRESS CONTRACTUAL OR FINANCIAL OBLIGATIONS OR ANY RIGHT OR OBLIGATION ARISING UNDER OR THAT IS PART OF THE PLAN OR ANY AGREEMENTS ENTERED INTO PURSUANT TO, IN CONNECTION~~

WITH, OR CONTEMPLATED BY THE PLAN, AND ANY RIGHT TO ENFORCE THE PLAN AND CONFIRMATION ORDER IS NOT SO RELEASED; PROVIDED, FURTHER THAT THE FORGOING RELEASE SHALL APPLY ONLY TO ACTS AND OMISSIONS TAKEN BY THE GENERAL PARTNERS FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE. Pursuant to Section 1123(b) of the Bankruptcy Code, for good and valuable consideration, as of the Effective Date, each of the Released Parties is unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged by the Debtor, the Reorganized Debtor, and the Estate from any and all Causes of Action, including any derivative Causes of Action asserted or assertable by or on behalf of the Debtor, the Reorganized Debtor, or the Estate, any Causes of Action that the Debtor, the Reorganized Debtor, or the Estate would have been legally entitled to assert in its own right or on behalf of the Holder of any Claim against or Interest in the Debtor or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Debtor, the Reorganized Debtor, or the Estate (whether individually or collectively) ever had, now has, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part: (1) the Debtor, the Debtor's in-or-out-of-court restructuring efforts, any intercompany transactions, the Chapter 11 Case, the DIP Facility, or the Plan; (2) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the DIP Facility or the Plan; (3) the business or contractual arrangements between the Debtor and any Released Party, whether before or during the Debtor's restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Case; (4) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; or (5) the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of the occurrence of the Effective Date, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release: (1) to the extent that any Causes of Action against the Debtor are not released or discharged pursuant to the Plan, any rights of the Debtor and the Reorganized Debtor to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims or other Causes of Action in response to such Causes of Action; provided that such counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims or other Causes of Action may not be asserted against any Related Party of the Debtor or the Reorganized Debtor to the extent such claims have been released or discharged pursuant to the Plan, (2) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed, (3) any Cause of Action against a Holder of a Disputed Claim, to the extent such Cause of Action is necessary for the administration and resolution of such Claim solely in accordance with the Plan, (4) any Cause of Action against a Released Party unknown as of the Effective Date arising out of actual fraud, gross negligence, or willful misconduct of such Released Party, (5) any claims or Causes of Action against RAS Property Management, LLC or Rita Sklar

**arising before the Petition Date, or**

**(6)  any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or other document, instrument, or agreement executed to implement the Plan.**

~~ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THIS RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THIS RELEASE IS (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF SUCH CLAIMS; (III) IN THE BEST INTERESTS OF THE DEBTOR AND ALL HOLDERS OF CLAIMS AND INTERESTS; (IV) FAIR, EQUITABLE, AND REASONABLE; (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (VI) A BAR TO THE RELEASING PARTIES ASSERTING ANY CLAIM, CAUSE OF ACTION, OR LIABILITY RELATED THERETO, OF ANY KIND WHATSOEVER, AGAINST ANY OF THE RELEASED PARTIES OR THEIR PROPERTY.~~**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) essential to the Confirmation of the Plan; (2) an exercise of the Debtor's business judgment; (3) in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties;**

**(4)  a good faith settlement and compromise of the Causes of Action released by the Debtor Release; (5) in the best interests of the Debtor and all Holders of Claims and Interests; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to the Debtor, the Reorganized Debtor, and the Estate from asserting any Cause of Action released pursuant to the Debtor Release.**

**D.**  *Exculpation.*

~~UPON AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE DEBTOR, ITS EMPLOYEES, ATTORNEYS, INVESTMENT BANKERS, FINANCIAL ADVISORS, RESTRUCTURING CONSULTANTS AND OTHER PROFESSIONAL ADVISORS AND AGENTS SHALL BE DEEMED TO HAVE PURSUED CONFIRMATION OF THE PLAN IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, INCLUDING SECTION 1125(E) OF THE BANKRUPTCY CODE.~~

~~NO EXCULPATED PARTY SHALL INCUR ANY LIABILITY TO ANY ENTITY FOR ANY PREPETITION OR POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING, OR EFFECTING THE PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN OR ANY OTHER PREPETITION OR POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE~~

**RESTRUCTURING OF THE DEBTOR; PROVIDED THAT THE FOREGOING "EXCULPATION" SHALL HAVE NO EFFECT ON (I) THE LIABILITY OF ANY ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT AND**

**(II) THE LIABILITY THAT RESULTS FROM ANY SUCH ACTS OR OMISSIONS OF THE GENERAL PARTNERS PRIOR TO THE PETITION DATE; PROVIDED, FURTHER, THAT TO THE EXTENT PERMITTED BY APPLICABLE LAW EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING THEIR DUTIES PURSUANT TO, OR IN CONNECTION WITH, THE PLAN OR ANY OTHER RELATED DOCUMENT, INSTRUMENT, OR AGREEMENT.** Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur any liability to any Person or Entity for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action arising from the Petition Date to the Case Closing Date related to any act or omission in connection with, relating to, or arising out of, the Debtor's restructuring efforts, the Chapter 11 Case, the filing of the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the Plan, the DIP Facility, any Sale Transaction, any Restructuring Transaction, or any contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with any of the foregoing, the funding of the Plan, the occurrence of the Effective Date, the pursuit of Confirmation, the pursuit of the Effective Date, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined by a Final Order to have constituted actual fraud, gross negligence, or willful misconduct; provided, that the foregoing shall not be deemed to release, affect, or limit any post-Effective Date rights or obligations of the Exculpated Parties under the Plan, any Restructuring Transaction, any Sale Transaction, or other document, instrument, or agreement executed to implement the Plan.

**THE EXCULPATED PARTIES HAVE, AND UPON CONFIRMATION, SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, INCLUDING WITH REGARD TO THE DISTRIBUTIONS PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT AND SHALL NOT BE LIABLE AT ANY TIME FOR THE VIOLATIONS OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN** The Exculpated Parties have, and upon the Effective Date shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the distributions made pursuant to the Plan.

**E.**     *Injunction.*

**THE SATISFACTION, RELEASE AND DISCHARGE PURSUANT TO THIS ARTICLE VIII OF THE PLAN SHALL ALSO ACT AS AN INJUNCTION AGAINST**

ANY ENTITY BOUND BY SUCH PROVISION AGAINST COMMENCING OR CONTINUING ANY ACTION, EMPLOYMENT OF PROCESS OR ACT TO COLLECT, OFFSET, OR RECOVER ANY CLAIM OR CAUSE OF ACTION SATISFIED, RELEASED, OR DISCHARGED UNDER THE PLAN OR THE CONFIRMATION ORDER TO THE FULLEST EXTENT AUTHORIZED OR PROVIDED BY THE BANKRUPTCY CODE, INCLUDING, WITHOUT LIMITATION, TO THE EXTENT PROVIDED FOR OR AUTHORIZED BY SECTIONS 524 AND 1141 THEREOF Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Persons or Entities that have held, hold, or may hold Claims or Interests that have been released or discharged pursuant to this Article VIII of this Plan and Section 1141(d) of the Bankruptcy Code shall be permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Persons or Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Persons or Entities or the property or the estates of such Persons or Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Persons or Entities or against the property of such Persons or Entities on account of or in connection with or with respect to any such Claims or Interests unless such Person or Entity has, on or before the Effective Date, asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Unless otherwise provided in this the Plan or in the Confirmation Order, all injunctions or stays pursuant to Sections 105 or 362 of the Bankruptcy Code arising under or entered during the Chapter 11 Case, or otherwise in effect in the Chapter 11 Case pursuant to Sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and in existence existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay and to the extent consistent with the terms and provisions of this. All injunctions or stays contained in the Plan.

Upon the Bankruptcy Court's entry of or the Confirmation Order, all Holders of Claims and Interests, the Debtor, and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the post-Confirmation Debtor's and its Affiliates', employees', advisors', officers' and directors', and agents' implementation or consummation of this Plan shall remain in full force and effect in accordance with their terms.

# ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

**A.**     *Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date is subject to the following conditions precedent:

1.     The Confirmation Order, in form and substance acceptable to the Debtor and the DIP Lender, shall have been entered by the Bankruptcy Court;

2.     An event of default under the DIP Documents shall not be continuing and an acceleration of the obligations or termination of the DIP Lender's commitments under the DIP Facility shall not have occurred;

3.     All actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan are executed and delivered, as applicable, in form and substance satisfactory to the Debtor; and

4.     All authorizations, consents and regulatory approvals, if any, required by the Debtor in connection with the consummation of the Plan are obtained and not revoked.

~~The following is an additional condition precedent to the Effective Date of the Plan solely with respect to the Sale Transaction:~~

~~1.     The Purchase and Sale Agreement shall (i) have been executed and delivered by the Outside Date, and any conditions precedent contained to effectiveness therein have been satisfied or waived in accordance therewith, and (ii) be in full force and effect and binding upon the relevant parties.~~

**B.**     *Waiver of Conditions.*

Unless otherwise specifically provided in this Plan, the conditions set forth in this Article IX of this Plan may be waived in whole or in part by the Debtor without notice to any other parties in interest or the Bankruptcy Court and without a hearing.

# ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

**A.**     *Plan Modification and Amendments.*

The Plan may be amended, modified, or supplemented by the Debtor or the Reorganized Debtor, as applicable, in the manner provided for by Section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to Section 1125 of the Bankruptcy Code. In addition, after the Confirmation Date, the Debtor or Reorganized Debtor, as applicable, may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of this Plan.

The Reorganized Debtor may make appropriate technical adjustments and modifications to this Plan after the Effective Date without further order or approval of the Bankruptcy Court.

**B.** *Revocation or Withdrawal of the Plan.*

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, in accordance with the preceding sentence, or if a Confirmation Order is not entered confirming the Plan, then (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims or Interests, (b) prejudice in any manner the rights of the Debtor or any other Entity, including the Holders of Claims or Interests, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case and all matters arising out of, or related to, the Chapter 11 Case and the Plan, including jurisdiction:

1.      to hear and determine motions and/or applications for the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

2.      to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

3.      to ensure that Distributions to Holders of Allowed Claims are accomplished as provided herein;

4.      to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

5.      to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

6.      to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

7.      to hear and determine any application to modify this Plan in accordance with applicable provisions of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

8.      to hear and determine all applications under Sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of

expenses incurred;

9. to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated hereby or under any agreement, instrument, or other document governing or relating to any of the foregoing;

10. to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan or to maintain the integrity of this Plan following consummation;

11. to hear any disputes arising out of, and to enforce any order approving alternative dispute resolution procedures to resolve personal injury, employment litigation, and similar claims pursuant to Section 105(a) of the Bankruptcy Code;

12. to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

13. enter and enforce any order for the sale of property pursuant to Sections 363, 1123, or 1146(a) of the Bankruptcy Code;

14. ~~13.~~ to hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under Section 505(b) of the Bankruptcy Code);

15. ~~14.~~ to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code; and

16. ~~15.~~ to enter a final decree closing the Chapter 11 Case.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

**A.** *Immediate Binding Effect.*

Subject to Article IX and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, on the Effective Date, upon the effectiveness of the Plan, the terms of the Plan and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtor or the Reorganized Debtor, as applicable, and any and all Holders of Claims or Interests (regardless of whether the Holders of such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all parties to Executory Contracts and Unexpired Leases. All Claims shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan.

**B.** *Additional Documents.*

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor and all Holders of Claims or Interests

receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**C.**     *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order in accordance with Article IX hereof. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan or the Confirmation Order shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

**D.**     *Exhibits/Schedules.*

All exhibits and Schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

**E.**     *Substantial Consummation.*

On the Effective Date, the Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.

**F.**     *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, however, that corporate or limited liability company governance matters relating to the Debtor not incorporated or formed (as applicable) in the State of New York shall be governed by the laws of the state of incorporation or formation (as applicable) of the Debtor.

**G.**     *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, Affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**H.**     *Service of Documents.*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtor or Reorganized Debtor shall be served on:

Debtor                                    Ninety-Five Madison Company, L.P.
                                          Michael Sklar

General Partner

with copies to:

Counsel to Debtor    Glenn Agre Bergman & Fuentes LLP
1185 Avenue of the Americas
22nd Floor New York, New York
10036 Attention: Andrew K.
Glenn
Shai Schmidt
Richard C. Ramirez
Naznen Rahman
aglenn@glennagre.c
om
sschmidt@glennagre
.com
rramirez@glennagre
.com
nrahman@glennagre
.com
Telephone: (212) 970-1600

## I.      *Entire Agreement.*

The Plan and the Confirmation Order supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan and Confirmation Order.

## J.      *Expedited Tax Determination.*

The Debtor may request an expedited determination of taxes under Section 505(b) of the Bankruptcy Code for all returns filed for or on behalf of the Debtor for all taxable periods through the Effective Date.

[*Remainder of Page Intentionally Left Blank*]

Respectfully submitted, as of ~~September 27~~December 15, 2023:

Ninety-Five Madison Company, L.P. The Debtor

By: _/s/ Michael Sklar_____Name: Michael Sklar Title: General Partner