Andrew K. Glenn
Shai Schmidt
Richard C. Ramirez
Naznen Rahman
**GLENN AGRE BERGMAN & FUENTES LLP**
1185 Avenue of the Americas
22nd Floor
New York, New York 10036
Telephone: (212) 970-1600

*Counsel to Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| NINETY-FIVE MADISON COMPANY, L.P., | ) Case No. 21-10529 (DSJ) |
| | ) |
| Debtor. | ) |
| | ) |

**DEBTOR NINETY-FIVE MADISON COMPANY, L.P.'S**
**MEMORANDUM OF LAW IN SUPPORT OF AN ORDER APPROVING**
**AND CONFIRMING THE AMENDED COMBINED CHAPTER 11 PLAN**
**OF REORGANIZATION AND DISCLOSURE STATEMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT .................................................................................... 1

Relevant Background ..................................................................................................... 1

Response to The Weinstein Estate ................................................................................ 6

Response to RAS ........................................................................................................... 8

ARGUMENT ................................................................................................................ 11

I.   The Disclosure Statement Should Be Approved. ............................................. 11

II.  The Plan Should Be Confirmed. ....................................................................... 14

   A.   The Plan Complies With the Applicable Provisions of the
       Bankruptcy Code (Section 1129(a)(1)). ............................................................. 14

      1.   The Plan Satisfies the Classification Requirements of Section 1122. ....................... 15

      2.   The Plan Satisfies the Requirements of Section 1123(a). ........................ 15

      3.   The Plan Complies with the Discretionary Provisions of Section 1123(b). .............. 16

   B.   The Debtor Complied With the Applicable Provisions of the
       Bankruptcy Code (Section 1129(a)(2)). ............................................................. 17

   C.   The Debtor Proposed the Plan in Good Faith and Not By
       Any Means Forbidden By Law (Section 1129(a)(3)). ...................................... 18

   D.   The Plan Provides That the Debtor's Payment of Professional Fees and
       Expenses Are Subject to Court Approval (Section 1129(a)(4)). .................... 19

   E.   The Plan Does Not Require Governmental Regulatory
       Approval (Section 1129(a)(6)). ......................................................................... 20

   F.   The Best Interests Test Is Not Relevant to the Plan (Section 1129(a)(7)). .................... 20

   G.   The Plan Satisfies the Voting Requirements of the
       Bankruptcy Code (Section 1129(a)(8)). ............................................................. 21

   H.   The Plan Provides for Payment in Full of All
       Allowed Priority Claims (Section 1129(a)(9)). ................................................. 21

   I.   The Plan Does Not Require At Least One Class of Impaired,
       Non-Insider Claims to Accept the Plan (Section 1129(a)(10)). ..................... 21

   J.   The Plan Is Feasible (Section 1129(a)(11)). ...................................................... 21

   K.   The Plan Provides for the Payment of All Statutory Fees
       (Section 1129(a)(12)). ......................................................................................... 23

L.  Sections 1129(a)(13) through 1129(a)(16)
    Do Not Apply to the Plan.................................................................. 23

M.  The Debtor Complied with Sections 1129(b), 1129(c), and 1129(d)............................ 23

N.  The Plan Satisfies Sections 1123(a)(7) and 1129(a)(5)
    With Respect to Post-Confirmation Management. .......................................... 24

O.  The Release, Exculpation, and Injunction Provisions
    Should Be Approved............................................................................... 26

    1.  The Debtor Release Is Appropriate. ............................................... 26

    2.  The Exculpation Provision is Appropriate. ..................................... 27

    3.  The Injunction Clause is Necessary and Narrowly Tailored..................... 29

CONCLUSION.......................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Heartland Fed. Sav. & Loan Assoc. v. Briscoe Enters., Ltd., II (In re Briscoe Enters., Ltd., II)*,
994 F.2d 1160 (5th Cir. 1993) ................................................................................ 22

*In re Adana Mortg. Bankers, Inc.*,
14 B.R. 29 (Bankr. N.D. Ga. 1981) ........................................................................ 13

*In re Adelphia Commc'ns Corp.*,
368 B.R. 140 (Bankr. S.D.N.Y. 2007) .............................................................. 20, 26

*In re Bally Total Fitness*,
2007 WL 2779438 (Bankr. S.D.N.Y. 2007) ........................................................... 27

*In re Cajun Elec. Power Co-op, Inc.*,
230 B.R. 715 (Bankr. M.D. La. 1999) .................................................................... 22

*In re Calpine Corp.*,
2007 WL 4565223 (Bankr. S.D.N.Y. Dec. 19, 2007) ............................................. 28

*In re Cardinal Congregate I*,
121 B.R. 760 (Bankr. S.D. Ohio 1990) .................................................................. 11

*In re Charter Commc'ns*,
419 B.R. 221 (Bankr. S.D.N.Y. 2009) .................................................................... 26

*In re Chemtura Corp.*,
439 B.R. 561 (Bankr. S.D.N.Y. 2010) .................................................................... 18

*In re Cypresswood Land Partners, I*,
409 B.R. 396 (Bankr. S.D. Tex. 2009) ................................................................... 24

*In re Drexel Burnham Lambert Group, Inc.*,
138 B.R. 723 (Bankr. S.D.N.Y. 1992) .................................................................... 22

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 ........................................................................................................... 28

*In re Entz-White Lumber and Supply, Inc.*,
850 F.2d 1338 (9th Cir. 1988) ............................................................................... 18

*In re Feldman*,
53 B.R. 355 (Bankr. S.D.N.Y. 1985) ...................................................................... 12

*In re Forrest Hills Associates, Ltd*,
   18 B.R. 104 (Bankr. D. Del. 1982) ....................................................................... 13

*In re Galerie Des Monnaies of Geneva, Ltd.*,
   55 B.R. 253 (Bankr. S.D.N.Y. 1985) ................................................................... 12

*In re Genco Shipping & Trading Ltd.*,
   513 B.R. 233 (Bankr. S.D.N.Y. 2014) .................................................................. 27

*In re Global Crossing Ltd.*,
   295 B.R. 726 (Bankr. S.D.N.Y. 2003) .................................................................. 26

*In re Johns-Manville Corp.*,
   68 B.R. 618 (Bankr. S.D.N.Y. 1986) ................................................................... 17

*In re Journal Register Co.*,
   407 B.R. 520 (Bankr. S.D.N.Y 2009) ................................................................... 19

*In re Kent Terminal Corp.*,
   166 B.R. 555 (Bankr. S.D.N.Y. 1994) .................................................................. 21

*In re LATAM Airlines Group S.A.*,
   2022 WL 2206829 (Bankr. S.D.N.Y. 2022) ......................................................... 28

*In re Middle Plantation of Williamsburg*,
   47 B.R. 884 (Bankr. E.D. Va. 1984) .................................................................... 13

*In re Resorts Int'l*,
   145 B.R. 412 (Bankr. D.N.J. 1990) ...................................................................... 24

*In re Sabine Oil & Gas Corp.*,
   555 B.R. 180 (Bankr. S.D.N.Y. 2016) .................................................................. 26

*In re Scioto Valley Mortg. Co.*,
   88 B.R. 168 (Bankr. S.D. Ohio 1988) .................................................................. 11

*In re Source Enters., Inc.*,
   2007 WL 2455182 (Bankr. S.D.N.Y. Aug. 23, 2007) .......................................... 12

*In re Stearns Holdings, LLC*,
   607 B.R. 781 (Bankr. S.D.N.Y. 2019) .................................................................. 28

*In re Toy & Sports Warehouse, Inc.*,
   37 B.R. 141 (Bankr. S.D.N.Y. 1984) ................................................................... 24

*In re Union Cnty. Wholesale Tobacco & Candy Co.*,
    8 B.R. 442 (Bankr. D.N.J. 1981) ...................................................... 12

*In re WorldCom, Inc.*,
    2003 WL 23861928 (Bankr. S.D.N.Y. 2003)................................. 17, 19, 27

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.*,
    843 F.2d 636 (2d Cir. 1988) .......................................................... 22

*Koelbl v. Glessing (In re Koelbl)*,
    751 F.2d 137 (2d Cir. 1984) .......................................................... 18

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
    848 F.2d 414 (3d Cir. 1988) .......................................................... 12

*Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.*,
    844 F.2d 1142 (5th Cir. 1988) ....................................................... 12

**Statutes**

11 U.S.C. § 327(a) ............................................................................. 4

11 U.S.C. § 328(a) ............................................................................. 4

11 U.S.C. § 330 ................................................................................ 19

11 U.S.C. § 331 ................................................................................ 19

11 U.S.C. § 363 ................................................................................. 9

11 U.S.C. § 503(b) ........................................................................... 19

11 U.S.C. § 507(a)(2) ................................................................... 22, 23

11 U.S.C. § 1104 ................................................................................ 6

11 U.S.C. § 1112 ........................................................................... 8, 16

11 U.S.C. § 1122 ......................................................................... 14, 15

11 U.S.C. § 1123 ............................................... 9, 14, 15, 16, 18, 24

11 U.S.C. § 1125 ................................... 1, 11, 13, 14, 17, 18, 24

11 U.S.C. § 1126 ................................................... 1, 17, 18, 21

11 U.S.C. § 1129...........................................................................................................passim

11 U.S.C. § 1146(a) ...............................................................................................9

**Other Authorities**

1978 U.S.C.C.A.N. 5787 ......................................................................................17

1978 U.S.C.C.A.N. 5963 ......................................................................................12

H.R. REP. NO. 95-595...........................................................................................17

S. REP. NO. 989, 95-989.......................................................................................17

Debtor Ninety-Five Madison Company, L.P. (the "Debtor") submits this memorandum of law in support of the *Amended Combined Chapter 11 Plan of Reorganization and Disclosure Statement for Debtor Ninety-Five Madison Company, L.P.* [Docket No. 294] (as modified, amended, or supplemented from time to time, the "Combined Plan and Disclosure Statement" or the "Plan"),[1] pursuant to Sections 1125, 1126, and 1129 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

## PRELIMINARY STATEMENT

The Plan is a full payment plan that would pay all allowed claims in full. It leaves all Classes of Allowed Claims and Interests unimpaired. It satisfies the Bankruptcy Code's requirements. It was proposed in good faith by the Debtor. And there are no real confirmation objections remaining to the Plan. The Plan should be confirmed.

Accordingly, and for the reasons set forth more fully below, the Debtor respectfully requests that the Court enter the Confirmation Order approving the Combined Plan and Disclosure Statement.

## RELEVANT BACKGROUND

I.     **The Debtor, the Property, and Events Precipitating the Chapter 11 Filing.**

1.     The Debtor is a New York limited partnership that was formed on June 1, 1982 pursuant to a limited partnership agreement (as may be amended, the "Partnership Agreement"). The Debtor's current general partners are: (i) RAS Property Management, LLC ("RAS"), an entity owned by Rita Sklar and various trusts formed by her; (ii) Sharan Sklar Management LLC

---

[1]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Combined Plan and Disclosure Statement. For ease of reading and reference, the Disclosure Statement and Plan sections of the Combined Plan and Disclosure Statement are often individually referred to as the "Disclosure Statement" and the "Plan," respectively.

("Sharan Sklar Management"), an entity managed by Sharan Sklar; and (iii) Michael Sklar Management, LLC ("Michael Sklar Management"), an entity managed by Michael Sklar.

2.      The Debtor is the fee simple and title owner of the Property.  The Debtor and its predecessors have operated the Property since June 1, 1982.  From 1982 to 2021, Rita Sklar, through RAS, managed the Property and the day-to-day affairs of the Debtor.

3.      The Property is encumbered by (i) an alleged judgment claim filed by Vitra, Inc. ("Vitra") in an amount of $1,286,725.22; and (ii) the DIP Facility.  The Debtor commenced the Chapter 11 Case because it was facing liquidity challenges, legal judgments, and litigation expenses caused by years of prepetition litigation with Vitra.

4.      In June 2021, the Partnership Agreement was amended to add Sharan Sklar Management and Michael Sklar Management as General Partners.  Sharan Sklar and Michael Sklar subsequently replaced Rita Sklar in managing the day-to-day affairs of the Debtor and the Property.  The amended Partnership Agreement provided that decisions as to key matters, including the terms and conditions of any financing or refinancing and approving a sale of the Property, required the unanimous approval of all General Partners.

5.      In June 2022, the General Partners negotiated and entered into a second amendment to the Partnership Agreement, which eliminates the unanimous consent provision and requires all decisions to be made by a "vote of a majority" of the General Partners.

6.      The Property provides full service commercial leases.  The Debtor has two major tenants: (i) Lee and Low Books, which leases half of the twelfth floor of the Property; and (ii) Douglas Lister Architect, which leases an office on the twelfth floor of the Property.

## II. The DIP Facility.

7. On October 26, 2022, the Debtor filed a motion seeking authority to enter into a secured, superpriority debtor-in-possession term loan facility with Madison Avenue Servicing LLC as DIP Lender with a maximum principal availability of $23,000,000. On December 14, 2022, the Bankruptcy Court entered an order approving the DIP Facility.[2] Pursuant to the DIP Order, the Debtor entered into the DIP Facility, which provided the Debtor with ample liquidity to, among other things, continue its operations and pay the administrative expenses of the Chapter 11 Case. As of October 31, 2023, the outstanding loan balance under the DIP Facility is $11,842,020.01 (together with all accrued and unpaid interest, the "DIP Debt").[3]

8. The DIP Credit Agreement requires that any plan of reorganization must provide for either (i) the execution and delivery to the DIP Lender of the Security Instrument and the perfection of the DIP Lender's security interest (as set forth in Section 3.2 of the DIP Credit Agreement) or (ii) payment in full of the DIP Debt.[4] In the event of the former, the Debtor must execute and deliver the Security Instrument to the DIP Lender upon Confirmation.[5]

9. The Security Instrument is an agreement that evidences and secures the DIP Loan and encumbers the Property pursuant to the terms of the DIP Documents.[6] The Security Instrument provides that "[a]ll the covenants, conditions and agreements contained in the [DIP Credit Agreement] are hereby made a part of this Security Instrument to the same extent and with the

---

[2] *See Order (I) Authorizing Debtor to Obtain Postpetition Debtor-In-Possession Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Dkt. No. 197].

[3] *See Chapter 11 Monthly Fee Statement for the Debtor for the Period of October 1, 2023 through October 31, 2023* at 14-15 [Dkt. No. 286].

[4] *See* DIP Credit Agreement §§ 1.1 (providing definition of "Acceptable Plan"), 3.2.2 (providing that upon entry of the Confirmation Order, the Debtor must execute and deliver the Security Instrument to the DIP Lender).

[5] *See id.* § 3.2.2.

[6] *See id.* § 1.1.

same force as if fully set forth herein."[7]  All subsequent advances under the DIP Facility are secured by the Security Instrument upon its execution.[8]

10.     The DIP Credit Agreement's terms, as incorporated into the Security Instrument, provide that the Debtor may utilize the proceeds of the DIP Loan for the "payment of claims under an Acceptable Plan[.]"  The DIP Credit Agreement defines "Acceptable Plan" as, among other things, a "Chapter 11 plan of [the Debtor] that, unless otherwise consented to in advance in writing by [the DIP Lender], provides for the [] execution and delivery to [the DIP Lender] by [the Debtor] of the Security Instrument[.]"[9]

### III.     Marketing and Sale of the Property.

11.     As set forth above, given the market climate in 2022, the Debtor and its Professionals enacted a marketing process of the Property.  To assist with the marketing of the Property, the Debtor retained Branton Realty Services LLC ("BRS") as real estate broker and sales agent.[10]  Woody Heller is BRS's lead professional for the Debtor, and since BRS's retention, Mr. Heller has overseen the day-to-day management of the marketing process.

12.     The Debtor also retained Fried, Frank, Harris, Shriver & Jacobson LLP as special real estate transaction and tax counsel to the Debtor to prepare a form Purchase and Sale Agreement for eventual execution by the Debtor and any Purchaser of the Property.[11]

13.     The Debtor first conducted a "premarketing" process during which Mr. Heller informally gauged interest from potentially interested buyer groups, while marketing materials and

---

[7]     *Id*., Ex. B, § 1.
[8]     *See id*. § 2.9.1.
[9]     *Id*. § 1.1.
[10]    *See Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) Authorizing the Retention and Employment of Branton Realty Services LLC as Real Estate Agent to Debtor Ninety-Five Madison Company, L.P. Nunc Pro Tunc to August 17, 2022* [Dkt. No. 181].
[11]    *See Order Authorizing the Retention and Employment of Fried, Frank, Harris, Shriver & Jacobson LLP as Special Real Estate Transaction & Tax Counsel to the Debtor Nunc Pro Tunc to January 14, 2023* [Dkt. No. 221].

expert reports were finalized for official open market promotion. Mr. Heller received inquiries from two types of potential buyer groups: (i) buyers that sought to convert the Property for residential use; and (ii) buyers that sought to maintain the Property for commercial office purposes. In early 2023, the Debtor launched a formal marketing process. During this period, the Debtor officially listed the Property on the open market.

14. To-date, the Debtor has received multiple bids for the Property, and continues to seek additional bids with the intent of selecting a bid that most maximizes the value of the Property. If the Debtor is able to secure a winning bid by or before the Outside Date, the Debtor intends to effectuate a Sale Transaction after the Effective Date and under the supervision of the Bankruptcy Court, as further described herein.

## IV. The Combined Plan and Disclosure Statement.

15. On September 27, 2023, the Debtor filed the first Combined Plan and Disclosure Statement.

16. The following responses and objections to the Combined Plan and Disclosure Statement were filed:

- On December 5, 2023, Verrill Dana LLP filed *Creditor Verrill Dana LLP's Response to Combined Plan and Disclosure Statement* [Docket No. 287]. The foregoing response was withdrawn on December 13, 2023.[12]

- On December 5, 2023, Carol E. Keller and Gail Shields, as preliminary Executors of the Estate of Lois Weinstein (the "Weinstein Estate"), filed the *Objection of Creditor the Estate of Lois Weinstein to the Amended Plan of Reorganization and Disclosure Statement* [Docket No. 288] (the "Weinstein Estate Objection").

- On December 6, 2023, RAS Property Management, LLC ("RAS") filed its *Objection to Combined Chapter 11 Plan of Reorganization and Disclosure Statement for Debtor 95 Madison Company, L.P.* [Docket No. 289] (the "RAS Objection").

---

[12] *See Notice of Withdrawal of Creditor Verrill Dana LLP's Response to Combined Plan and Disclosure Statement* [Doket No. 293].

17.     On December 15, 2023, the Debtor filed an amended version of the Combined Plan and Disclosure Statement to address, *inter alia*, (i) certain informal comments from the Office of the United States Trustee, (ii) the Weinstein Estate Objection, and (iii) the RAS Objection.

18.     The Plan as amended provides for the payment of all Allowed Claims in full through the DIP Facility and the consummation of the Exit Facility as provided in the DIP Documents.  Moreover, the Debtor anticipates that, after paying its creditors in full through the DIP Facility shortly after the Effective Date, the Reorganized Debtor will continue to pursue its ongoing marketing process of the Property in order to consummate a sale or other disposition of the Property, the proceeds of which would be used to satisfy any Disputed Claims that may later become Allowed Claims.

## RESPONSE TO THE WEINSTEIN ESTATE

19.     Most of the disjointed statements in the Weinstein Estate Objection are not arguments against or concerning confirmation.  In substance, however, the Weinstein Estate raises five issues with respect to the Plan.  Each should be overruled for the reasons set forth below.

20.     *First*, the Weinstein Estate repeatedly and improperly suggests that the Plan should require the appointment of a Chapter 11 trustee pursuant to Section 1104 of the Bankruptcy Code if the Debtor does not have a binding sale contract by the Outside Date.  *See* Weinstein Estate Objection ¶ 6.  Section 1104(a) allows a court to appoint a Chapter 11 trustee upon request of a party in interest "and after notice and hearing."  11 U.S.C. § 1104(a).  Here, the Weinstein Estate seeks to subvert the explicit requirements of Section 1104(a) by asking the Court to approve the appointment of a Chapter 11 trustee as part of the plan confirmation process.  Putting aside the objection's false and conclusory statements concerning the Debtor's management, the Weinstein Estate provides no explanation for why it impliedly waits until confirmation to seek appointment

of a trustee. Such a request is procedurally improper and attempts to conflate confirmation issues with the self-serving preferences of the Weinstein Estate. No doubt, the Weinstein Estate could have brought a proper motion – or proposed an alternative plan – to appoint a trustee at any time during the Chapter 11 Case. It failed to ever do so. The Weinstein Estate additionally offers no reasons for why such a trustee would "obtain a higher price" for the Property as compared to the Debtor's retained and "dedicated" broker, nor why and under what documents the Restructuring Transaction is "equivalent to immediate default and post-Bankruptcy foreclosure." Weinstein Objection ¶¶ 10-11. The Court should look past these unsupported statements.

21. *Second*, the Weinstein Estate objects to Article IV.E of the Plan, which provides that the General Partners will continue to control the Reorganized Debtor pursuant to the terms of the Partnership Agreement. As set forth herein, keeping the current management in place, particularly Sharan Sklar and Michael Sklar, is in the best interests of creditors, implementation of the Plan, the consummation of any Sale Transaction, and is consistent with public policy. *See infra* ¶ II.N.

22. *Third*, the Weinstein Estate argues that the Plan is vague as it relates to the process for adjudicating Disputed Claims. Weinstein Estate Objection ¶ 21. Not so. Under the Plan, a Disputed Claim is defined as a Claim or any portion thereof "that is not Allowed but that has not been disallowed by a Final Order." Plan, Definitions. The Plan equips the Reorganized Debtor with the authority to "settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court," (Plan, Art. VII.A), and Disputed Claims that may later become Allowed Claims will receive distributions from proceeds of a sale of the Property pursuant to a Sale Transaction. *See* Disclosure Statement, Art. II.A. The Plan makes clear that the Debtor intends to consummate such a sale before the Outside Date, or December 31, 2024. *See*

Disclosure Statement, Art. II.A.[13]  The Weinstein Estate is not excepted from these provisions, and the Weinstein Estate offers no substantive reason for why its Disputed Claim should be treated differently now from other similarly situated claims.

23.     *Fourth*, the Weinstein Estate's suggestion that Chapter 7 dissolution may be the only "proper course" forward is both procedurally improper and fails as a matter of law.  *See* Weinstein Estate Objection ¶ 16.  While not entirely clear in its objection, the Debtor assumes the Weinstein Estate is invoking the standards for the appointment of a Chapter 7 trustee under Section 1112 of the Bankruptcy Code.  Under Section 1112, a court has discretion to convert a Chapter 11 case on request of a party in interest, after "notice and a hearing" and only for "cause."  11 U.S.C. § 1112(b)(1), (4).  Here, the Weinstein Estate, without citing or bringing forth a Section 1112 motion, implies that the Court should consider conversion as part of the plan confirmation process. But the Weinstein Estate never explains how or why the Debtor's General Partners – particularly Sharan Sklar Management LLC and Michael Sklar Management, LLC – are illegitimate managers of the Debtor under the plain terms of the Partnership Agreement as a matter of law.  The objection further fails to acknowledge the harm to creditor recoveries and the Property's sale value in a Chapter 7 scenario.  *See* Disclosure Statement VII ("Best Interests of Creditors/Liquidation Analysis").

24.     For the forgoing reasons, the Weinstein Estate Objection should be overruled.

## RESPONSE TO RAS

25.     Notably, RAS does "not object[] to the conversion of the DIP Financing into an exit facility to permit the Debtor to exit Chapter 11 and promptly pay its creditors."  RAS Objection ¶ 23.  RAS does raise four objections—all of which should be overruled as completely moot.

---

[13]     The Debtor and the Weinstein Estate continue to negotiate in good faith a potential settlement of their disputes.  *See* Nov. 9, 2023 Hr'g Tr. at 7:20-8:17.

26.     *First*, RAS's objection that the Plan is predicated on a "toggle" between a Sale Transaction and a Restructuring Transaction is moot because the Debtor has removed the "toggle" from the Plan and seeks authority to pay all Allowed Claims in full via the DIP Facility and as set forth in the DIP Documents.  *See* RAS Objection ¶ 4; Disclosure Statement, Art. II.A; Plan, Art. IV.B.  The RAS Objection assures it does not take issue with this path forward.  *See* RAS Objection ¶ 4.

27.     *Second*, RAS's objection that the Plan provides the Debtor with authority to effectuate a post-confirmation asset sale pursuant to Sections 363, 1123, and 1146(a) of the Bankruptcy Code is moot because this Court routinely confirms Chapter 11 plans that authorize a debtor or a reorganized debtor to conduct post-confirmation sales of property of the estate.[14]  *See* RAS Objection ¶¶ 6-12; Article IV.F.  The Plan as now-proposed seeks similar authority here.

28.     *Third*, RAS's argument that parties in interest will not be "giv[en] [] an opportunity to object to the sale" is moot because the Plan now makes clear that approval of any Sale Transaction will be sought by order of the Bankruptcy Court, which will retain jurisdiction to consider it.  *See* RAS Objection ¶ 8; *see also*, Plan, Article XI (retaining jurisdiction to "enter and enforce any order for the sale of property pursuant to Sections 363, 1123, or 1146(a) of the

---

[14]     *See In re Overseas Shipholding Group, Inc., et al.*, Case No. 12-20000 (PJW) (Bankr. S.D.N.Y. July 18, 2014) [Docket No. 3653] (confirmed plan provided that "[t]o the extent the Debtors or the Reorganized Debtors . . . sell any of their property during the period prior to . . . the date that is one year after the Confirmation Date, the Debtors or the Reorganized Debtors . . . may elect to sell such property pursuant to sections 363, 1123, 1141(c) and 1146(a)[.]"); *In re Filene's Basement, LLC, et al.*, Case No. 11-13511 (KJC) (Bankr. S.D.N.Y. Aug. 27, 2012) [Docket No. 1931] (confirmed plan provided that "[a]s of the Effective Date, the Reorganized Company shall . . . dispose of its property, . . . without supervision of the Bankruptcy Court, and free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order."); *In re The Great Atlantic & Pacific Tea Company, Inc., et al.,* Case No. 10-24549 (RDD) (Bankr. S.D.N.Y. Feb. 28, 2012) [Docket No. 3477] (confirmed plan provided that "[t]o the extent the Debtors . . . or Reorganized Debtors . . . sell any property after the Confirmation Date . . . the Debtors or Reorganized Debtors . . . may elect to purchase or sell such property pursuant to sections 363, 1123(a)(5)(D), 1141(c), and 1146(a)[.]"); *In re Calpine Corp., et al.*, Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. Sept. 27, 2007) [Docket. No. 6140] (confirmed plan provided that "[t]o the extent the Debtors or Reorganized Debtors . . . sell . . . any [] property within one year of Confirmation, the Debtors or Reorganized Debtors . . . may elect to sell such property pursuant to sections 363, 1123, and 1146(a)[.]").

Bankruptcy Code"); Disclosure Statement, V.D. (providing that the Debtor or Reorganized Debtor "may elect to conduct such a sale pursuant to Sections 363, 1123, and 1146(a) of the Bankruptcy Code and in accordance with the Bankruptcy Court's retention of jurisdiction under the Plan"). At the applicable time, the Debtor will fully disclose by appropriate pleading pertinent sale information and tax implications for all parties in interest – including RAS – to make an informed decision and raise concerns about the contemplated sale. That is the antithesis of a "blank check to conduct a Sale Transaction post-confirmation, without any of the protections routinely afforded to parties in interest." RAS Objection ¶ 8.

29.     *Fourth*, RAS argues the Debtor has ignored "corporate formalities" and that the Plan should include certain "safeguards," such as requiring that any post-confirmation sale be approved by a majority of the limited partners "whose interests are being affected" under the Plan. RAS Objection ¶ 12. RAS cites no case law related to confirming a plan to support its "affected interests" standard. The RAS Objection further concedes that the Partnership Agreement requires decisions concerning the business be made only by a majority of the General Partners and that "a vote of only a majority is required to ratify a decision," including proposing the Plan here. *See* RAS Objection ¶ 22. RAS makes no substantive recommendation for how supposed "governance infirmities" should be addressed – either under the Plan or through the Confirmation Order – aside from implying the plain terms of the amended Partnership Agreement should be unwound. RAS Objection ¶ 19.

30.     For the reasons further set forth herein, each of the foregoing objections should be denied. The Plan should be confirmed.

<u>**ARGUMENT**</u>

31.     This memorandum contains two sections.  In the first section, the Debtor requests approval of the Disclosure Statement to the extent required under applicable law.  In the second section, the Debtor sets forth how and why the Plan satisfies Section 1129 of the Bankruptcy Code and should be confirmed.

**I.      <u>The Disclosure Statement Should Be Approved</u>.**

32.     To grant approval of the Disclosure Statement, the Court must determine, among other things, whether the solicitation complied with Sections 1125(b) and 1125(a) of the Bankruptcy Code and Bankruptcy Rules 3017(d), 3017(e), and 3018(c).  Under Section 1125(b), solicited holders must receive either "the plan or a summary of the plan," along with "a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."  11 U.S.C. § 1125(b).  Section 1125(a) of the Bankruptcy Code defines "adequate information" as

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan[.]

11 U.S.C. § 1125(a)(1).

33.     Courts generally examine whether a disclosure statement contains such information as: (i) the circumstances that gave rise to the filing of the bankruptcy petition; (ii) the condition and performance of the debtor while in Chapter 11; (iii) information regarding claims against the estate; (iv) a liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7; (v) a summary of the plan of reorganization; (vi) information relevant to the risks

being taken by the creditors and interest holders; and (vii) the tax consequences of the plan. *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170-171 (Bankr. S.D. Ohio 1988) (citing cases).

34.     These factors, however, are "yardstick[s] against which the adequacy of disclosure may be measured." *In re Cardinal Congregate I,* 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990). The precise information required will be governed by "the facts and circumstances" presented in each case. *In re Galerie Des Monnaies of Geneva, Ltd.*, 55 B.R. 253, 259 (Bankr. S.D.N.Y. 1985); *see In re Source Enters., Inc.*, Case No. 06-11707 (AJG), 2007 WL 2455182, at *1 (Bankr. S.D.N.Y. Aug. 23, 2007) (approving a disclosure statement "based on the facts and circumstances of the Debtors' cases").

35.     Indeed, whether a disclosure statement contains adequate information is intended by Congress to be a flexible, fact-specific inquiry left within the discretion of the bankruptcy court:

> Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation, and, of course, the need for investor protection. There will be a balancing of interests in each case. In reorganization cases, there is frequently great uncertainty. Therefore the need for flexibility is greatest.

H.R. REP. NO.95-595, at 409 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6365. *See also Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 417 (3d Cir. 1988) (observing that "adequate information will be determined by the facts and circumstances of each case"); *Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.),* 844 F.2d 1142, 1157 (5th Cir. 1988) (opining that what constitutes adequate information is "subjective," and "made on a case by case basis," and "largely in the discretion of the bankruptcy court").

36.     The Debtor prepared a Disclosure Statement consistent with these objectives. However, case law suggests that a disclosure statement is not necessary where a plan provides that

all classes of claims and interests are unimpaired, and acceptances of the plan are, accordingly, not solicited. *See, e.g., In re Feldman,* 53 B.R. 355, 357-358 (Bankr. S.D.N.Y. 1985) ("a disclosure statement is required only for the purpose of soliciting an acceptance or rejection of the plan. [ ] Thus, the adequacy of the content of the disclosure statement need not be viewed from the point of view of [the unimpaired classes]"); *In re Union Cnty. Wholesale Tobacco & Candy Co.,* 8 B.R. 442, 443 (Bankr. D.N.J. 1981) (when acceptances of a plan of reorganization are not required and not solicited, a disclosure statement is not required); *but see In re Forrest Hills Associates, Ltd,* 18 B.R. 104 (Bankr. D. Del. 1982) (a disclosure statement must be filed even though the plan states that all classes are unimpaired).

37.     Furthermore, some courts have held that only holders of impaired claims or interests have standing to object to the adequacy of a disclosure statement, and then only as it affects their class, suggesting that no parties in interest have standing to object to approval of the adequacy of a disclosure statement with respect to a fully unimpaired plan. *See, e.g., In re Adana Mortg. Bankers, Inc.,* 14 B.R. 29, 30 (Bankr. N.D. Ga. 1981) ("creditors have standing to object to [a disclosure statement] only as to their [c]lass and may not object to the adequacy of [a disclosure statement] as it may affect another class of creditors"); *In re Middle Plantation of Williamsburg,* 47 B.R. 884, 891 (Bankr. E.D. Va. 1984), *aff'd,* 755 F.2d 928 (4th Cir. 1985) ("holders of impaired claims who have been induced to vote in favor of a plan are the only ones who may raise the issue of the adequacy of the [disclosure statement]").

38.     Accordingly, the Debtor believes there is no specific legal requirement that the Debtor obtain approval of a formal disclosure statement because no Class of Claims or Interests is Impaired under the Plan and, thus, votes on the Plan are not being solicited. Nevertheless, the Debtor believes the Disclosure Statement is a valuable informational tool and, to promote

transparency, prepared and filed the Disclosure Statement that will provide the Debtor's stakeholders with a better understanding of this Chapter 11 Case and the Plan.

39.     The Debtor believes that the Disclosure Statement contains adequate information within the meaning of Section 1125(a)(1) of the Bankruptcy Code and should be approved, particularly given that the Plan provides that all classes of Claims and Interests are Unimpaired. The Disclosure Statement is extensive and comprehensive and includes, among other things, an overview and summary of the Plan (including descriptions of the requirements for confirmation of the Plan and classification and treatment of Claims and Interests), proposed distributions under the Plan, possible risk factors affecting the Debtor, conditions to confirmation of the Plan, tax consequences of the Plan, and the effects of confirmation of the Plan. The Disclosure Statement also contains background information regarding the Chapter 11 Case, including a description of the Debtor's business and the events leading to the commencement of the Chapter 11 Case.

40.     The Debtor, therefore, believes that the Disclosure Statement contains sufficient information to enable "a hypothetical investor" to make an informed judgment about the Plan, satisfying applicable statutory and case law requirements for approval of the Disclosure Statement. *See* 11 U.S.C. § 1125(a)(1). Accordingly, the Debtor respectfully requests that the Court enter an order approving the adequacy of the information contained in the Disclosure Statement.

**II.     The Plan Should Be Confirmed.**

    **A.     The Plan Complies With the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(1)).**

41.     Section 1129(a)(1) of the Bankruptcy Code requires that a plan "compl[y] with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(1). The principal aim of this provision is to ensure compliance with the sections of the Bankruptcy Code governing classification of claims and interests and the contents of a Chapter 11 plan. Accordingly, the

determination of whether the Plan complies with Section 1129(a)(1) requires an analysis of Sections 1122 and 1123 of the Bankruptcy Code, as well as other applicable provisions.

### 1. *The Plan Satisfies the Classification Requirements of Section 1122.*

42. Section 1122(a) of the Bankruptcy Code provides that, with the exception of "convenience classes" of unsecured claims, "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a).

43. The Plan's classification of Claims and Interests satisfies the requirements of Section 1122 because the Plan places Claims and Interests into four (4) separate Classes, with each Class differing from the Claims and Interests in each other Class in a legal or factual nature or based on other relevant criteria. *See* Plan, Art. III. Valid business, legal and factual reasons justify the separate classification of the particular Claims or Interests into the Classes created under the Plan, and no unfair discrimination exists between or among Holders of Claims and Interests. Namely, the Plan separately classifies the Claims or Interests because each Holder of such Claims or Interests may hold (or may have held) rights in or against the Debtor's estate legally dissimilar to the Claims or Interests in other Classes or because substantial administrative convenience resulted from such classification.

### 2. *The Plan Satisfies the Requirements of Section 1123(a).*

44. Section 1123(a) of the Bankruptcy Code sets forth eight mandatory requirements to confirm a Chapter 11 plan, generally related to the specification of claims treatment and classification, the equal treatment of claims within classes, and the mechanics of implementing the plan. *See* 11 U.S.C. § 1123(a). The Plan satisfies each of the applicable requirements by way of the provisions set out in the various Articles, as detailed below:

| Bankruptcy Code Subsection | Confirmation Requirement | Plan Article |
|---|---|---|
| 1123(a)(1) | The plan must designate "classes of claims, other than claims of a kind specified in section 507(a)(2), 507(a)(3), or 507(a)(8) of [the Bankruptcy Code], and classes of interests." | Article III |
| 1123(a)(2) | The plan must "specify any class of claims or interests that is not impaired under the plan." | Article III |
| 1123(a)(3) | The plan must "specify the treatment of any class of claims or interests that is impaired under the plan." | Article III |
| 1123(a)(4) | The plan must "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." | Article III |
| 1123(a)(5) | The plan must provide "adequate means" for its implementation. | Article IV |
| 1123(a)(6) | The debtor's corporate constituent documents must prohibit the issuance of nonvoting equity securities. | Not Applicable |
| 1123(a)(7) | The plan provisions with respect to the manner of selection of any director, officer, or trustee, or any other successor thereto, must be "consistent with the interests of creditors and equity security holders and with public policy." | *See infra* ¶¶ 69-71 |
| 1123(a)(8) | In a case in which the debtor is an individual, the plan must provide for the payment to creditors under the plan of certain earnings from personal services performed by the debtor. | Not Applicable |

45. Accordingly, the Plan complies with Section 1123(a) of the Bankruptcy Code.

**3.    *The Plan Complies with the Discretionary Provisions of Section 1123(b).***

46. Section 1123(b) of the Bankruptcy Code sets forth various discretionary provisions that may be incorporated into a Chapter 11 plan, including that a plan may: (a) impair or leave unimpaired any class of claims or interests; (b) provide for the assumption, assumption and

assignment, or rejection of executory contracts and unexpired leases; and (c) include any other appropriate provision not inconsistent with the applicable provisions of Chapter 11. 11 U.S.C. § 1123(b)(1)-(2), (6). Section 1123(b)(1) is satisfied by Article III of the Plan, and Section 1123(b)(2) is satisfied by Article V of the Plan. Article VIII of the Plan includes release, exculpation and injunction provisions, all of which are consistent with Section 1123(b)(6) for the reasons set forth below. *See infra* ¶ 52.

**B.     The Debtor Complied With the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(2)).**

47.     Section 1129(a)(2) of the Bankruptcy Code requires that a plan proponent "compl[y] with the applicable provisions of [title 11]." 11 U.S.C. § 1129(a)(2). Generally, the inquiry under Section 1129(a)(2) focuses on whether the plan proponent has complied with the disclosure and solicitation requirements of Sections 1125 and 1126 of the Bankruptcy Code. *See In re WorldCom, Inc.*, Case No. 02-13533 (AJG), 2003 WL 23861928, at 25-26 (Bankr. S.D.N.Y. 2003); *In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986), *aff'd in relevant part*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom., Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) ("Objections to confirmation raised under § 1129(a)(2) generally involve the alleged failure of the plan proponent to comply with § 1125 and § 1126 of the Code. These sections provide for the appropriate manner of disclosure and solicitation of plan votes.") (internal citations omitted); H.R. REP. NO. 95-595, at 412 (1977), S. REP. NO. 989, 95-989, at 126 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5912 (Section 1129(a)(2) of the Bankruptcy Code "requires that the proponent of the plan comply with the applicable provisions of Chapter 11, such as § 1125 regarding disclosure").

48.     Section 1125 of the Bankruptcy Code provides that acceptances or rejections of a plan may not be solicited until a disclosure statement is approved by a court, and that the same

disclosure statement must be transmitted to each holder of a claim or interest in a particular class. 11 U.S.C. §§ 1125(a)-(b). Here, the Court has not yet approved the Disclosure Statement and the Debtor has not solicited any acceptances or rejections.

49. Section 1126 specifies the requirements for acceptance of a plan of reorganization. Under Section 1126, only holders of allowed claims in impaired classes may vote to accept or reject the Plan. Pursuant to Section 1126(f) of the Bankruptcy Code, "a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required." 11 U.S.C. § 1126(f). Here, because all Classes are treated as unimpaired under the Plan, such Classes are conclusively presumed to have accepted the Plan and no solicitation is required. *See In re Entz-White Lumber and Supply, Inc.*, 850 F.2d 1338, 1340 n.3 (9th Cir. 1988), *superseded by statute*, 11 U.S.C. § 1123(d).

50. Accordingly, the Debtor has complied fully with Sections 1125 and 1126 of the Bankruptcy Code.

**C.  The Debtor Proposed the Plan in Good Faith and Not By Any Means Forbidden By Law (Section 1129(a)(3)).**

51. Section 1129(a)(3) of the Bankruptcy Code requires a plan proponent to propose the plan " in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The Second Circuit has defined the good faith standard as "requiring a showing that the plan was proposed with 'honesty and good intentions' and with 'a basis for expecting that a reorganization can be effected.'" *Koelbl* v. *Glessing (In re Koelbl),* 751 F.2d 137, 139 (2d Cir. 1984) (citations omitted). Good faith is "generally interpreted to mean that there exists a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re Chemtura Corp.,* 439 B.R. 561, 608 (Bankr. S.D.N.Y. 2010) (citations omitted)). "Whether

a [Chapter 11] plan has been proposed in good faith must be viewed in the totality of the circumstances, and the requirement of [s]ection 1129(a)(3) speaks more to the process of plan development than to the content of the plan." *Id.*

52.     Here, the Debtor has proposed the Plan in good faith and solely for the legitimate and beneficial purpose of (a) paying Allowed Claims in full through the DIP Facility and (b) allowing the Reorganized Debtor to continue pursuing its ongoing marketing process of the Property in order to maximize the value of its primary asset for the benefit of all stakeholders and to satisfy any Disputed Claims that may later become Allowed Claims.   The Plan and the transactions contemplated by the Plan were developed after substantial analysis and arm's-length negotiations between the Debtor and its key creditors, including Vitra and the DIP Lender.  Finally, as set forth herein, the Plan complies with bankruptcy and applicable nonbankruptcy law.

### D.     The Plan Provides That the Debtor's Payment of Professional Fees and Expenses Are Subject to Court Approval (Section 1129(a)(4)).

53.     Section 1129(a)(4) of the Bankruptcy Code requires that "any payment made or to be made by the proponent . . . for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable."  11 U.S.C. § 1129(a)(4).  Section 1129(a)(4) has been construed to require that all payments of professional fees that are made from estate assets be subject to review and approval as to their "reasonableness" by the court.  *In re Journal Register Co.,* 407 B.R. 520, 537 (Bankr. S.D.N.Y 2009), *appeal dismissed sub nom., Freeman* v. *Journal Register Co.,* 452 B.R. 367 (S.D.N.Y. 2010); *In re Worldcom, Inc.,* 2003 WL 23861928, at *54 (same).

54.     Article II of the Plan provides that all professional fees of the Debtor must be approved by the Court pursuant to final fee applications and subject to the requirements of the

Bankruptcy Code. Towards that end, Article XI of the Plan provides that the Bankruptcy Court retains jurisdiction to "hear and determine all applications under Sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred." In sum, all payments for services provided to the Debtor during the Chapter 11 Case must be approved by the Court as reasonable in accordance with Section 1129(a)(4).

**E.      The Plan Does Not Require Governmental Regulatory Approval (Section 1129(a)(6)).**

55.      Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that has or will have jurisdiction over a debtor after confirmation has approved any rate change provided for in the plan. 11 U.S.C. § 1129(a)(6). This requirement is inapplicable to this Chapter 11 Case.

**F.      The Best Interests Test Is Not Relevant to the Plan (Section 1129(a)(7)).**

56.      Section 1129(a)(7) of the Bankruptcy Code, commonly known as the "best interests test," requires that, "with respect to each impaired class of claims or interests," members of such class that have not accepted the plan will receive at least as much as they would in a hypothetical chapter 7 liquidation." 11 U.S.C. § 1129(a)(7). The best interests test is satisfied where the estimated recoveries under a proposed plan for a debtor's stakeholders that reject that plan are greater than or equal to the recoveries such stakeholders would receive in a hypothetical Chapter 7 liquidation. *In re Adelphia Commc'ns Corp.,* 368 B.R. 140, 252 (Bankr. S.D.N.Y. 2007) ("In determining whether the best interests standard is met, the court must measure what is to be received by rejecting creditors in the impaired classes under the plan against what would be received by them in the event of liquidation under chapter 7."). Because the best interests test by its terms does not apply to unimpaired Classes or Interests under the Plan, it is not relevant for any of the Classes identified in the Plan.

**G.** **The Plan Satisfies the Voting Requirements of the Bankruptcy Code (Section 1129(a)(8)).**

57.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan.  *See* 11 U.S.C. § 1129(a)(8).  A class of claims or interests that is not impaired under a plan is "conclusively presumed" to have accepted the plan and need not be further examined under Section 1129(a)(8) of the Bankruptcy Code.  *See id.* § 1126(f).  As set forth above, all of the Classes are composed of unimpaired Allowed Claims and Interests and presumed to accept the Plan on behalf thereof.  Accordingly, Section 1129(a)(8) has been satisfied.

**H.** **The Plan Provides for Payment in Full of All Allowed Priority Claims (Section 1129(a)(9)).**

58.     Section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be paid in full on the effective date of a plan and that the holders of certain other priority claims receive deferred cash payments. 11 U.S.C. § 1129(a)(9).  Section 1129(a)(9) is satisfied by Articles II.A and II.D of the Plan.

**I.** **The Plan Does Not Require at Least One Class of Impaired, Non-Insider Claims to Accept the Plan (Section 1129(a)(10)).**

59.     Section 1129(a)(10) of the Bankruptcy Code provides that, to the extent there is an impaired class of claims, at least one impaired class of claims must accept the plan, "without including any acceptance of the plan by any insider."  11 U.S.C. § 1129(a)(10).  The Plan contains no impaired Classes.  *See* Plan, Art. III.

**J.** **The Plan Is Feasible (Section 1129(a)(11)).**

60.     Section 1129(a)(11) of the Bankruptcy Code requires that the Plan be feasible to be confirmed.  Specifically, a court must determine that "confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any

successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  11 U.S.C. § 1129(a)(11).

61.     The key element of feasibility is whether there exists a reasonable probability that the provisions of the Plan can be performed; the purpose of the feasibility test is to protect against "visionary" or speculative plans.  *In re Kent Terminal Corp.*, 166 B.R. 555, 560 (Bankr. S.D.N.Y. 1994).  A debtor does not have to guarantee the success of a plan to demonstrate its feasibility.  *See Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed."); *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 762 (Bankr. S.D.N.Y. 1992) ("The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds"); *see also Heartland Fed. Sav. & Loan Assoc. v. Briscoe Enters., Ltd., II* (*In re Briscoe Enters., Ltd., II),* 994 F.2d 1160, 1166 (5th Cir. 1993) ("Only a reasonable assurance of commercial viability is required.") (citation omitted), *cert. denied,* 510 U.S. 992 (1993); *In re Cajun Elec. Power Co-op, Inc.,* 230 B.R. 715, 745 (Bankr. M.D. La. 1999) ("The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds.").  Instead, courts will find that a plan is feasible if a debtor demonstrates a reasonable assurance that consummation of the plan will not likely be followed by a further need for financial reorganization.  *See In re Johns-Manville Corp.*, 843 F.2d at 649.

62.     The Plan satisfies the standard of feasibility under Section 1129(a)(11).  The Debtor submits that it will be able to make all required payments on Allowed Claims under the Plan through the DIP Facility and the consummation of the Exit Facility.  Moreover, after paying all creditors in full, and because of the significant value of the Property, the Reorganized Debtor believes it is likely to effectuate a sale or other disposition of the Property.  Proceeds from such a

post-confirmation transaction will satisfy any Disputed Claims that may later become Allowed Claims.

**K.** **The Plan Provides for the Payment of All Statutory Fees (Section 1129(a)(12)).**

63.     Section 1129(a)(12) of the Bankruptcy Code requires the payment of "all fees payable under section 1930 of title 28 [of the United States Code], as determined by the court at the hearing on the confirmation of the plan."  11 U.S.C. § 1129(a)(12).  Section 507(a)(2) of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [Section 1930 of] chapter 123 of title 28" are afforded priority status.  11 U.S.C. § 507(a)(2).  Section 1129(a)(12) is satisfied by Article II.E of the Plan.

**L.** **Sections 1129(a)(13) through 1129(a)(16) Do Not Apply to the Plan.**

64.     Sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Plan as the Debtor does not owe any retiree obligations, do not owe any domestic support obligations, are not individuals, and are not nonprofit corporations.  *See* 11 U.S.C. § 1129(a)(13)-(16).

**M.** **The Debtor Complied with Sections 1129(b), 1129(c), and 1129(d).**

65.     The Plan satisfies the remaining provisions of Section 1129 of the Bankruptcy Code.

66.     Section 1129(b) of the Bankruptcy Code provides a mechanism (known as "cram down") for confirmation of a Chapter 11 plan in circumstances where the plan is not accepted by all impaired classes of claims.  11 U.S.C. § 1129(b)(1).  Section 1129(b) is not applicable because there are no impaired Classes under the Plan.

67.     Section 1129(c) of the Bankruptcy Code, which prohibits confirmation of multiple plans, is not implicated because there is only one proposed plan.  11 U.S.C. § 1129(c).

68.     Section 1129(d) of the Bankruptcy Code states that "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933." 11 U.S.C. § 1129(d).  The purpose of the Plan is not to avoid taxes or the application of Section 5 of the Securities Act of 1933.  Article II.D of the Plan contemplates the payment of all Allowed Priority Tax Claims.  Moreover, no governmental unit or any other party has requested that the Court decline to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.  Accordingly, the Plan satisfies the requirements of Section 1129(d).

**N.     The Plan Satisfies Sections 1123(a)(7) and 1129(a)(5) With Respect to Post-Confirmation Management.**

69.     Section 1123(a)(7) of the Bankruptcy Code (a sub-requirement within Section 1129(a)(1) of the Bankruptcy Code) provides that a plan's provisions with respect to the manner of selection of any director, officer, or trustee, or any other successor thereto must be "consistent with the interests of creditors and equity security holders and with public policy."  11 U.S.C. § 1123(a)(7).  Similarly, Section 1129(a)(5)(A)(i) of the Bankruptcy Code requires that the proponent of a plan disclose the identity and affiliations of any individual proposed to serve as a director or officer of the debtor under the plan, while Section 1129(a)(5)(A)(ii) of the Bankruptcy Code requires that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy. 11 U.S.C. § 1129(a)(5)(A)(i)-(ii).

70.     Where the debtor's management is both competent and essential to the debtor's success, allowing management to continue controlling the reorganized debtor comports with Sections 1123(a)(7) and 1129(a)(5). *See In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149-

50 (Bankr. S.D.N.Y. 1984) (continuation of debtors' president and founder, who had years of experience in the debtors' businesses, satisfied Section 1129(a)(5)); *In re Cypresswood Land Partners, I*, 409 B.R. 396, 427 (Bankr. S.D. Tex. 2009) ("keeping a competent officer in charge of the reorganized debtor is consistent with public policy"); *In re Resorts Int'l*, 145 B.R. 412, 450 (Bankr. D.N.J. 1990) (explaining that "continuation of present management [wa]s essential to the ongoing operations of the Debtors").

71.     Here, the General Partners' continuing control of the Reorganized Debtor comports with Sections 1123(a)(7) and 1129(a)(5).  The General Partners are RAS, Sharan Sklar Management LLC, and Michael Sklar Management, LLC.  *See* Combined Plan and Disclosure Statement, Definitions § 45.  During the Chapter 11 Case, Sharan and Michael Sklar replaced Rita Sklar in managing the day-to-day affairs of the Debtor and the Property.  Disclosure Statement, Art. I.A.  Under the Plan, the Debtor's General Partners will continue to control the Debtor pursuant to the terms of the Partnership Agreement.  *See* Plan, Article IV.F.  As a direct result of the efforts of Sharan and Michael Sklar, the Debtor and its business has been able to continue as a going concern.  Further, the Debtor has now been able to propose a Plan that will pay all Allowed Claims in full, achieving a result that at one point appeared tenuous in this Chapter 11 Case.  To the extent that the Weinstein Estate has concerns regarding Rita Sklar's control over the Reorganized Debtor, the Partnership Agreement requires all decisions to be made by a "vote of a majority" of the General Partners.  Disclosure Statement, Art. I.A.  Michael and Sharan Sklar have proven themselves more than capable of continuing to operate the Debtor post-confirmation.  Therefore, the Debtor submits that the requirements of Sections 1123(a)(7) and 1129(a)(5) are satisfied.

**O.    The Release, Exculpation, and Injunction Provisions Should Be Approved.**

72.    Like virtually every other Chapter 11 plan in this Court, the Plan: (a) releases certain Causes of Action of the Debtor, the Reorganized Debtor, and the Estate (the "Debtor Release"), *see* Plan, Art. VIII.C., (b) exculpates claims for estate fiduciaries in connection with the Chapter 11 Case, *see* Plan, Art. VIII.E; and (c) imposes an injunction with respect to exculpated and released claims.  *See* Plan, Art. VIII.F.  The Plan contains ***no*** third-party releases, and limits the Debtor Release as it relates to certain pre-petition claims against RAS and Rita Sklar.  The Court should approve these provisions in light of the facts and circumstances of the Chapter 11 Case.

**1.    *The Debtor Release Is Appropriate.***

73.    The Debtor has considerable leeway in granting releases of their own claims as a valid exercise of their business judgement, and courts consider such releases "uncontroversial." *See, e.g., Adelphia Commc'ns Corp.,* 368 B.R. at 263 n.289 (holding the debtor may release its own claims); *In re Charter Commc'ns*, 419 B.R. 221, 257 (Bankr. S.D.N.Y. 2009) (noting that a debtor's release of its own claims is permissible).  Courts apply a "best interests of the estate" standard or require a showing that granting such releases is a valid exercise of the debtor's business judgment.  *See In re Sabine Oil & Gas Corp.,* 555 B.R. 180, 309 (Bankr. S.D.N.Y. 2016) ("Debtor releases are approved by courts in the Second Circuit when the Debtors establish that such releases are in the 'best interests of the estate[.]'"); *In re Global Crossing Ltd.,* 295 B.R. 726, 746-47 (Bankr. S.D.N.Y. 2003) (approving, as exercise of reasonable business judgment, a decision by debtors to enter into mutual releases).  Here, the Debtor Release is a vital component of the Plan

and constitutes a sound exercise of the Debtor's business judgment. This Court has approved similar debtor release provisions in numerous other Chapter 11 plans.[15]

## 2. *The Exculpation Provision is Appropriate.*

74. The exculpation provision is limited to claims against the Exculpated Parties, each of which played a critical role in the Chapter 11 Case, including the negotiation and formulation of the Plan, for acts or omissions involving, among other things, the filing of the Chapter 11 Case, the Chapter 11 Case itself, the DIP Facility, and the Plan. Plan, Art. VIII.E. The Exculpation Clause is supported by the facts and law and should be approved.

75. Courts in the Second Circuit evaluate an exculpation provision based upon a number of factors, including whether the plan was proposed in good faith, whether the provision is integral to the plan, and whether such exculpation from liability was necessary for plan negotiations. *See In re Bally Total Fitness,* Case No. 07–12395 (BRL), 2007 WL 2779438, at *8 (Bankr. S.D.N.Y. 2007) (finding exculpation, release, and injunction provisions appropriate because they were fair and equitable, necessary to successful reorganization, and integral to the plan); *In re WorldCom, Inc.,* 2003 WL 23861928 at *28 (approving an exculpation provision where it "was an essential element of the Plan formulation process and negotiations"). Exculpation provisions are permissible where the exculpated party has provided substantial consideration to a debtor's reorganization. *See In re Genco Shipping & Trading Ltd.,* 513 B.R. 233, 268-69 (Bankr. S.D.N.Y. 2014); *see also* Order at 26, *In re Residential Cap., LLC,* Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 11, 2013), Docket No. 6065 (confirming plan that contained exculpations for non-debtor parties that were "instrumental to the successful prosecution of the Chapter 11

---

[15] *See, e.g., In re Revlon, Inc., et al.,* Case No. 22-10760 (DSJ) (Bankr. S.D.N.Y. April 3, 2023) [Docket No. 1746]; *In re GTT Communications, Inc.,* Case No. 21-11880 (MEW) (Bankr. S.D.N.Y. Dec. 28, 2022) [Docket No. 821]; *In re LSC Commc'ns, Inc.,* Case No. 20-10950 (SHL) (Bankr. S.D.N.Y. Feb. 24, 2021) [Docket No. 1246]; *In re Windstream Holdings, Inc.,* Case No. 19-22312 (RDD) (Bankr. S.D.N.Y. June 26, 2020) [Docket No. 2243].

Cases or their resolution pursuant to the Plan, and/or provided a substantial contribution to the Debtors").

76.     Here, the Debtor proposes to exculpate the Debtor, the Reorganized Debtor, and its Related Parties. *See* Combined Plan and Disclosure Statement, Definitions §§ 40, 65. This Court routinely approves exculpation provisions that include the debtor's general partners.[16]

77.     Courts further approve exculpation clauses that cover conduct taking place outside the strict confines of Chapter 11 cases, so long as they are sufficiently narrow in scope. *In re LATAM Airlines Group S.A.,* Case No. 20-11254 (JLG), 2022 WL 2206829, at *49 (Bankr. S.D.N.Y. 2022). Exculpation clauses are considered to be sufficiently narrow when they are tailored to cover conduct related to the debtor's reorganization. *See In re Stearns Holdings, LLC,* 607 B.R. 781, 790 (Bankr. S.D.N.Y. 2019) (endorsing the debtors' observation that "in the Second Circuit, exculpation provisions that extend to prepetition conduct and cover non-estate fiduciaries are regularly approved because courts have recognized the appropriateness of extending exculpation to parties who make a substantial contribution to a debtor's reorganization and play an integral role in building consensus in support of a debtor's restructuring"). Here, the Exculpation Clause carves out causes of action related to gross negligence or willful misconduct, and is tailored specifically to protect the Exculpated Parties from inappropriate and vexatious litigation based on the actions taken in furtherance of the Debtor's restructuring until the Case Closing Date. *See In re Calpine Corp.,* Case No. 05-60200 BRL, 2007 WL 4565223, at *10 (Bankr. S.D.N.Y. Dec. 19, 2007) (approving exculpation provisions where they were deemed

---

[16]     *See, e.g., In re Revlon, Inc., et al.,* Case No. 22-10760 (DSJ) (Bankr. S.D.N.Y. April 3, 2023) [Docket No. 1746]; *In re MatlinPatterson Global Opportunities Partners II L.P.*, Case No. 21-11255 (DSJ) (Bankr. S.D.N.Y. May 22, 2023) [Docket No. 915].

"appropriately tailored to protect the Exculpated Parties from inappropriate litigation and do not relieve any party of liability for gross negligence or willful misconduct").

### 3. *The Injunction Clause is Necessary and Narrowly Tailored.*

78.     The injunction provision enjoins all Persons or Entities from commencing or continuing any action or other proceeding against the Debtor, the Reorganized Debtor, the Exculpated Parties, or the Released Parties on account of, in connection with, or with respect to any Claims, Causes of Action, or Interests that have been released pursuant to Article VIII of the Plan.   Accordingly, the injunction provision is necessary to preserve and enforce the Debtor Release and the Exculpation Clause, and it is narrowly tailored to achieve that purpose.  *See In re Drexel Burnham Lambert Grp., Inc.,* 960 F.2d 285, 293 (holding that a court may approve injunction provision where such provision "plays an important part in the debtor's reorganization plan").  As a result, to the extent the Court finds the Debtor Release and the exculpation clause to be appropriate, the Court should approve the injunction provision.

## CONCLUSION

The Court should approve and confirm the Combined Plan and Disclosure Statement as satisfying all of the applicable requirements of the Bankruptcy Code.

[*Signature Page Follows*]

Dated: December 15, 2023       By: */s/ Andrew K. Glenn*
       New York, New York     Andrew K. Glenn
                    Shai Schmidt
                    Richard C. Ramirez
                    Naznen Rahman

**GLENN AGRE BERGMAN & FUENTES LLP**
1185 Avenue of the Americas
22nd Floor
New York, New York 10036
Telephone: (212) 970-1600
Email: aglenn@glennagre.com
       sschmidt@glennagre.com
       rramirez@glennagre.com
       nrahman@glennagre.com

*Counsel to Debtor*