1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 21-10529-dsj

4    - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    NINETY-FIVE MADISON COMPANY, LP,

8

9          Debtor.

10    - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                    United States Bankruptcy Court

13                    One Bowling Green

14                    New York, NY 10004

15

16                    April 18, 2024

17                    10:00 AM

18

19

20

21    B E F O R E :

22    HON DAVID S. JONES

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO:   UNKNOWN

1   HEARING re 1) Motion Filed by the Debtors for Entry of an

2   Order (I) Approving the Sale of the Property Free and Clear

3   of All Liens, Claims, Encumbrances and Interests (Except

4   Permitted Encumbrances), (II) Approving the Assumption and

5   Assignment of Executory Contracts and Unexpired Leases

6   Related Thereto, and (III) Granting Related Relief

7

8   HEARING re 2) Application Filed by Gruber Palumberi Raffaele

9   & Fried, CPAs PC, as Accountant, for Allowance of

10  Compensation and Reimbursement of Expenses

11

12  HEARING re 3) Application Filed by Glenn Agre Bergman &

13  Fuentes LLP for Allowance of Compensation and Reimbursement

14  of Expenses

15

16  HEARING re 4) Application Filed by Rosenberg & Estis PC for

17  Allowance of Compensation and Reimbursement of Expenses

18

19

20

21

22

23

24

25  Transcribed by:  Sonya Ledanski Hyde

1  A P P E A R A N C E S :

2

3  GLENN AGRE BERGMAN FUENTES LLP

4      Attorneys for the Debtor

5      1185 Avenue of the Americas, 22nd Floor

6      New York, NY 10036

7

8  BY:  ANDREW K. GLENN

9      NAZNEN RAHMAN

10

11  JEFFREY A. BARR

12      Pro Se for Estate of Lois Weinstein

13      211 West 106th Street, Apt 7a

14      New York, NY 10025

15

16  BY:  JEFFREY A. BARR

17

18  WATCHTEL MISSRY

19      Attorneys for Madison 29 Holding LLC

20      885 2nd Avenue

21      New York, NY 10017

22

23  BY:  MORRIS MISSRY

24      STEVEN J. COHEN

25

1    DOJ - United States Trustee

2         Attorneys for the United State Trustee

3         Southern District of New York

4         Alexander Hamilton Custom House

5         New York, NY 10004-1408

6

7    BY:  MARK BRUH

8

9    MANATT, PHELPS PHILLIPS, LLP

10        Attorneys for Branton Realty Services, LLC

11        7 Times Square

12        New York, NY 10036

13

14   BY:  SCHUYLER CARROLL

15

16   ROSENBERG ESTIS, P.C.

17        Attorneys for Rosenberg Estis, P.C.

18        733 Third Avenue, Suite 14th Floor

19        New York, NY 10017

20

21   BY:  ARTHUR E. ROSENBERG

22        JOHN D. GIAMPOLO

23

24

25

```
 1   PROSKAUER ROSE LLP

 2        Attorneys for RAS Property Management, LLC

 3        Eleven Time Square

 4        New York, NY 10036

 5

 6   BY:  TIMOTHY Q. KARCHER

 7

 8   CULLEN AND DYKMAN LLP

 9        Attorneys for Gruber Palumberi Raffaele Fried, CPAs PC

10        The Omni Building

11        333 Earle Ovington Boulevard

12        Uniondale, NY 11533

13

14   BY:  BONNIE LYNN POLLACK

15

16   ALSO PRESENT TELEPHONICALLY:

17   WOODY HELLER

18   REUVEN C. KLEIN

19   MICHAEL E. LEFKOWITZ

20   BART RAFFAELE

21   RICHARD CARLOS RAMIREZ

22   SHAI SCHMIDT

23   RONALD D. SEMAU

24   MICHAEL SKLAR

25   SHARAN SKLAR
```

1    BRETT SILVERMAN

2    UDAY GORREPATI

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           P R O C E E D I N G S

2           THE COURT:  All right.  The next case and final

3    case on the calendar is Ninety-Five Madison.  Let me get

4    appearances on this one.

5           MR. GLENN:  Good morning, Your Honor.  Andrew

6    Glenn, Glenn Agre Bergman, and Fuentes on behalf of the

7    Debtor.  I'm joined by my colleague Naznen Rahman, who may

8    be addressing some of the matters today for Your Honor.

9           THE COURT:  Great.  Nice to see you both of you.

10   Yeah, we have a big crowd.  Thank you.  Actually, let me

11   thank everyone for waiting.  I anticipated this might be a

12   long-ish hearing, which is why I put you last.  I understand

13   you may have made some progress.

14          Let me just say this.  I've got about 14 lawyerly

15   faces visible to me.  In the interest of time, I'm not going

16   to take appearances upfront, but everyone -- every time -- I

17   will, in the course of the hearing, give anyone an

18   opportunity to speak who wants it, and then you can just

19   state your appearance at that time.  All right?

20          Let me, I think first, stick with the Debtor.  I

21   believe there have been sort of ongoing discussions right up

22   to --

23          MR. GLENN:  Yeah.  Let me -- could I --

24          THE COURT:  -- the minute or so.  So, tell me

25   where we are.

1          MR. GLENN:  Okay.  Yes, yes, Your Honor.  So

2     today, we have two batches of items on the agenda.

3     Obviously, the big-ticket item is our motion to approve

4     sale.  And ironically, after a very lengthy sale process

5     where there was a lot of frustration because there was a

6     lack of developments, over the last 24 hours, there have

7     been many, many developments, including those leading right

8     up to the hearing.

9          We also have a number of, I believe, either

10    largely uncontested or completely uncontested fee

11    applications.  And so, we'll take those in whatever order

12    Your Honor requests.

13          But on the sale motion, we have a motion that we

14    filed to approve a sale, and it's outlined, you know, in the

15    motion.

16          THE COURT:  Great.

17          MR. GLENN:  The motion did not contemplate an

18    auction or any bid protections.  I think both we and the

19    purchaser thought it was a pre-emptively high offer and

20    given the significant amount of time that had elapsed since

21    we started the sale process, that this would likely be it.

22          THE COURT:  Okay.

23          MR. GLENN:  We've had some interest from another

24    party since we filed the motion, and even pre-dating the

25    motion, that did not really progress to the point that it

1    was actionable.

2           What happened yesterday is that we received a --

3    an offer that was higher than the offer that was in the

4    motion.  And we contacted Chambers to see whether the Court

5    could accommodate a hearing later today, to the extent that

6    we would be exploring that offer.  And the offer was $65

7    million.

8           What happened overnight is that there were

9    discussions, and further discussions leading up to the

10   hearing today with both the existing buyer and the

11   interesting -- interested buyer.  And the existing buyer has

12   agreed to match the $65 million offer by the competitive

13   buyer.

14          And so, we are prepared to proceed today with the

15   existing buyer, with some revised terms.  And I can explain

16   why we're doing that, and what the revised terms are.  You

17   know, on the Zoom today, you have obviously the Debtor's

18   representatives.  You have counsel for Rita Sklar.  The

19   Sklars are on the Zoom as well.

20          But you also have counsel to the buyer and counsel

21   to the competing buyer.  And this is all late breaking news

22   and particularly to the competing buyer, they have not heard

23   about this development.  So that's where we are.  From the

24   Debtor's perspective, we believe this is all good news.

25   It's obviously been a very hectic 24-hour period, but we are

1  prepared to proceed right now to get this transaction

2  approved.

3            THE COURT:  Okay.  So, let me ask.  Is the -- I'm

4  going to give counsel for both the original and the

5  competing buyer some floor time coming up.  But let me ask

6  Mr. Glenn.  Is the buyer known and vetted and sort of

7  quality checked the compete -- that is the newly arriving

8  competing buyer?  Or is that -- or are they a little bit of

9  an unknown quantity?

10           MR. GLENN:  What I would say is this.  We -- the

11 reason we're going forward today with this matched offer is

12 as follows.  The -- we're not going to proceed with any

13 competitive offer without, you know, sufficient assurances

14 that that buyer is in fact a higher and better offer.

15 That's principle number one.

16           Principle number two, our existing buyer gave us a

17 certain period of time to get approval from Your Honor.  And

18 today's hearing is outside of that actual date.  And so, you

19 know, the process as it now stands, does not allow us

20 additional time to get approval from the Court.

21           So, if we weren't going to proceed with the

22 existing buyer, and that's Madison 29, I'll call them, then

23 we were going to spend the day with the competing buyer

24 getting you know, updated, signed documents, getting a

25 deposit, and a bank account.  The buyer asked for additional

1  information.

2          And so, you know, if we were going to go that

3  route, we were going to scramble to get that done.  And we

4  obviously were not going to go beyond today without an

5  approved transaction, lest we lose both.  And so, you know,

6  I guess what I would explain to Your Honor is, you know, we

7  didn't get final assurances of those matters.

8          I don't have any reason to believe, as I sit here

9  today, that they could not come up with whatever they said

10  they would deliver.  I don't have any basis to say they

11  would.  I just -- I don't know.

12          THE COURT:  Okay.  Let me ask this.  You've got

13  the proposed purchase price really either original or as

14  revised upward, generates sufficient proceeds.  I just want

15  you to confirm this, that all administrative costs of the

16  estate, all -- and all, even general unsecured creditors

17  will be paid in full, right?  And then you're going to have

18  surplus funds available for essentially whatever the right

19  word is?

20          MR. GLENN:  Yes, Your Honor.

21          THE COURT:  But the partners with that ownership

22  interest in the Debtor?

23          MR. GLENN:  Yes.  So, I'll recap where we are.  We

24  confirmed a plan a few months ago.

25          THE COURT:  Right.  That was my other --

1           MR. GLENN:  And --

2           THE COURT:  -- yeah, and that has a built-in time

3    limit to finalize this sale.

4           MR. GLENN:  Yes.  And so, what happened was, we

5    had this toggle idea in our plan.  And the toggle idea was,

6    we could confirm the plan, sell the assets, and distribute

7    money to creditors, or we could take down from our exit

8    facility and pay off the creditors.  And we chose a hybrid

9    between those two things.

10          So, our exit financier funded after you know, some

11   delays.  And so, all of the allowed undisputed gucks have

12   been paid in full in cash.  There are remaining disputed

13   claims that have not been paid.  Those approximate, I

14   believe, $4.5 million, to give Your Honor a sense of that,

15   you know, the surplus here.

16          There is the exit financing facility, which is in

17   the neighborhood, I believe, of $20 million as we sit here

18   today, plus, or minus.  And so, that's a very long way of

19   saying, even in a worse-case scenario, there should be, you

20   know, after taxes -- and there could be significant taxes

21   because this is a fee simple sale, and the parties are going

22   to have to address that.

23          THE COURT:  Right.

24          MR. GLENN:  There will be substantial excess

25   proceeds available to the Debtor after payment of those

1    claims.

2         THE COURT: Okay. So far, you've told me about

3    $24.5 million of intended recipients, so that leaves $40

4    million cushion to play with to meet other obligations,

5    including taxes, and then pay people, as well as

6    (indiscernible) --

7         MR. GLENN: I think the worst-case scenario -- in

8    a worst-case scenario, you know, we dispute, you know, the

9    (indiscernible) --

10         THE COURT: Yeah, that -- right. You have to

11    reserve for the disputed claims, right.

12         MR. GLENN: -- disputed claims. So, yes, yes.

13         THE COURT: Okay. Okay, got it. So, let --

14    anything you want to add on the sale? I think you've given

15    me a very concise, but complete recap.

16         MR. GLENN: Yes. So, the revised purchase price,

17    the enhanced purchase price is $65 million. There are some

18    other terms. I would like to --

19         THE COURT: Oh yeah, walk me -- you were going to

20    describe the other terms.

21         MR. GLENN: -- address (indiscernible) --

22         THE COURT: What are those?

23         MR. GLENN: -- into the record. Yeah, and I got

24    to make sure I read these correctly because they were

25    provided into my email shortly before the hearing. So, it's

1   conditioned on the following terms, that we get a final sale

2   order today, that we not engage with any buyers in any way

3   to undermine, you know, top the sale, do anything in that

4   regard.  The buyer would have a right of specific

5   performance if we, you know, don't close, and they want that

6   remedy.  We would provide them with a liquidated damages

7   provision, which is a -- you know, basically a break-up fee

8   of five percent if the deal doesn't close because we pursue

9   a competitive buyer or for other reasons within our control.

10          There was a provision in the existing agreement

11  allowing us a 30 -- a one-time 30-day extension for the

12  closing date.  And that matter was to address the potential

13  that our two remaining tenants would not be out by the

14  closing date.  We have agreed to eliminate that extension

15  right because we now have secured agreements from our

16  tenants, which will include, you know, eviction orders for

17  them to be out within the timeline that we expect in May.

18  So, the closing would be in May, and we're not going to

19  extend that date under our 30-day extension right, because

20  we don't believe we need it.

21          In terms of the five percent, if for some reason

22  we haven't closed through some fault of ours, which I think

23  is quite unlikely, that we would have the right to cure the

24  defaults, you know, on a reasonable basis, and that you

25  know, if anybody challenges the sale in any way, tries to

1    get an injunction, that we would fight that, you know, so

2    that this deal would close.

3           In other words, this is all a long way of saying

4    the purchaser wants, and in fact, deserves finality today.

5    They stepped up and these are the terms that they have

6    required.  And Mr. Missry is on, if I have misstated those,

7    and our -- I believe my co-counsel from the Rosenberg Estis

8    is on, if I did not get that correct, I'd invite them to

9    chime in.

10           THE COURT:  Okay.  Yeah, let's pause and make

11   sure.  So, Mr. Glenn just described revised terms, and let's

12   make sure that whoever the participants were in negotiating

13   that are satisfied with how it was articulated and see if

14   they want to add anything else.  So, is that Mr. Missry, is

15   where I should turn first?

16           MR. MISSRY:  Yes, hi, Judge.  Good afternoon.

17   It's afternoon -- oh, it's still the morning.  The answer is

18   that Mr. Glenn has faithfully repeated what we agreed to.  I

19   do have one clarification, however.  The liquidated damage

20   provision of five percent was inserted to protect the buyer,

21   who was approached last night at 6:00 p.m. to increase the

22   purchase price from $62.8 million to $65 million, so that

23   the seller doesn't default, so that the seller doesn't

24   change its mind, so that the seller is incentivized to close

25   on the transaction forthwith.

1          THE COURT:  Okay.  And Mr. Missry, just -- I

2    understood that, but it's fine that you articulate that

3    clearly.  Can you just say who you represent?

4          MR. MISSRY:  Sure.  We represent the buyer.  The

5    entity is Madison 29 Holding LLC.  We were retained last

6    night at 7:00 p.m. and appeared this morning by filing a

7    notice of appearance with the Court.

8          THE COURT:  Great.  Okay, thank you.  Anything

9    else you want to add while you've got the floor?

10          MR. MISSRY:  My partner Steve Cohen is here with

11    me.  He may want to add something in here, so I'm going to

12    turn the camera towards him, if you don't mind, Your Honor.

13          THE COURT:  That's fine.  Hi, Mr. Cohen.

14          MR. COHEN:  Hi, good morning, Your Honor.  Just

15    one additional clarification to add to Mr. Missry's point on

16    the liquidated damages.  Because Mr. Glenn had mentioned, I

17    think somewhat in passing, that if for some reason the

18    Debtor were to pursue another deal, which was -- we want to

19    make clear, that's not acceptable, not part of the revised

20    terms, because we're going into this, and we raised our bid

21    to make sure that does not happen.

22          So, the five percent liquidated damages is just as

23    it says to guard against the seller not closing.  But we

24    want there to be no misunderstanding about the Debtor has

25    the right to pursue any other bidders.  This is final on

1    what the sale order entered today.

2              THE COURT:  Right, okay.  I think that was clear

3    from Mr. Glenn's comments, but and -- grammatically, your

4    sentence could be ambiguous, so it's clear the deal is, the

5    Debtor is not to pursue or engage with or encourage other

6    competing deals, right?  You've got a specific performance

7    right.  You increased your bid amount.  You wanted to -- you

8    -- your -- the conditions are what they are.  They're all

9    aimed at that, correct?

10             MR. COHEN:  Correct, yes.  Correct.

11             THE COURT:  Okay, I got it.  Okay, that's

12   understood.  All right.  So, let me -- I think that covers

13   me with the intended purchaser proposed and favored by

14   Debtors, unless there's anything else you want to add at

15   this point?

16             MR. COHEN:  No.

17             THE COURT:  I think -- okay, great.  So, let me

18   hear -- I'll just -- well, let me come back to Mr. Glenn.

19   There were objections or limited objections filed with

20   respect to the sale.  And what's the status of those?

21             MR. GLENN:  I believe there are only two

22   objections, and I believe one of them might be resolved in

23   principle.  We can deal with that one, which is the U.S.

24   Trustee engaged with us on the exculpation provision that we

25   included in the order.  And I can give Your Honor kind of

1    the legislative history with that.  And then --

2              THE COURT:  Yeah, I'll tell you, I read the

3    papers.  I think if the sale documents met what the U.S.

4    Trustee was concerned, they might read -- they might mean I

5    would've shared their concern if there was an intent to

6    expand the reach of the exculpation clause.  But I think

7    your response was, they don't.  And I think your reading was

8    right.

9              MR. GLENN:  Correct.

10             THE COURT:  So that's kind of where I --

11             MR. GLENN:  So, it's a very simple --

12             THE COURT:  -- came -- yeah --

13             MR. GLENN:  Very simple, Judge.  We had this

14   exculpation in the plan.  Your Honor asked us, and we agreed

15   to cut off that exculpation as of the plan effective date.

16   We wanted to extend to the sale date because there could've

17   been, and thankfully there doesn't appear to be a -- you

18   know, at least as of now, any meaningful litigation with

19   respect to the sale.

20             But we held that in abeyance until the sale was

21   actually here.  We've delivered what we believe is a

22   terrific success.  And the general partners, all three of

23   them would benefit from this, deserve the protection and the

24   comfort of the exculpation, which had we been able to

25   deliver this in conjunction with the plan, I don't even

1  think this would be in dispute.

2         So, we're -- you know, we're really just -- this

3  is a check back in on this exculpation issue, but we believe

4  this qualifies for what the plan contemplated.  And that you

5  know, we shouldn't be penalized because the plan -- you

6  know, we accelerated the plan to benefit the creditors, and

7  we postponed the sale, or we continued to pursue the sale

8  and we're here now.  We think the general partners deserve

9  the exculpation.

10         There's no expansion of the exculpation beyond

11  what was included in the plan.  If there are any, you know,

12  scrivener's concerns about how that, you know, ultimately

13  you know, was drafted, we're happy to address that, but the

14  concept is very simple.  They got the plan exculpation.  We

15  held in abeyance.  They should get the same exculpation now.

16         THE COURT:  Okay.  And the -- I want to make --

17  get explicitly on the record.  So, the parties that are at

18  issue here, the partners are RSA Property Management LLC,

19  and then Sharan Sklar Management LLC, and then Michael Sklar

20  Management LLC, correct?  So, it doesn't extend to the

21  individual principles themselves?

22         MR. GLENN:  (Indiscernible).  That is correct, I

23  believe, because those are the general partners, yes.

24         THE COURT:  Right, and --

25         MR. GLENN:  And it's (indiscernible) in

1    conjunction with the sale.

2          THE COURT:  -- so, to the extent the individuals

3    benefit from that, so be it, but that's not a function of

4    what I'm doing.  That's a function of --

5          MR. GLENN:  Correct.

6          THE COURT:  -- LLC law.  Okay, got it.

7          MR. GLENN:  Right.

8          THE COURT:  All right.  Let -- yeah, let me hear

9    from Mr. Bruh about that.  Does that clarification give your

10   office comfort?  And where is the -- where is your office

11   now?

12         MR. BRUH:  Thank you, Your Honor.  Mark Bruh for

13   the United States Trustee.  I'm sorry for covering my mouth.

14   We filed the limited objection, and afterwards, I did have

15   discussions with Debtor's counsel over the language.  We

16   were concerned it was an expansion.

17         We were unclear as to why it was necessary because

18   we thought the confirmation order made it clear that sales

19   transactions contemplated and conducted post-effective date,

20   the exculpation provision would attach to that so to speak.

21   So, when I saw this new language, I was asking why.

22         And then, as Your Honor said, we thought when they

23   included the trusts as part of the exculpated parties, we

24   were asking why.  And I was told that that would be revised

25   to reflect -- that the findings of fact would be revised to

1    mimic the language in the confirmation order, which Your

2    Honor just said would be general partners means RAS Property

3    Management, Sharan Sklar Management LLC, and Michael Sklar

4    Management LLC, and where we are happy with that, and we

5    agreed to that.

6         We also had a concern that the new language had

7    omitted the "as estate fiduciaries," because the exculpation

8    would only exculpate parties, related parties, general

9    partners are related parties, to the extent they were estate

10   fiduciaries.

11        The Debtors agreed that they would revise the

12   language and say no general partner as estates shall -- as

13   estate fiduciaries shall incur any liability to any person

14   or entity.  And it goes on.  So, it says the same thing, but

15   in a different way.  So, with that revision, we would have

16   no objection as well.

17        And as counsel said today, as long as they're not

18   expanding the exculpation or modifying it in any way, as

19   Your Honor approved, pursuant to the confirmation order,

20   then we're satisfied.  And that's what we wanted to get into

21   the record.

22        THE COURT:  Okay.  Okay, thanks.  Let me come back

23   to Mr. Glenn.  So, I'm certain we're good with respect to

24   the identity of the general partners.  That's just been --

25   that's just a clarification issue, really.  And are we -- is

1  the Debtor also agreeable to the, as estate fiduciaries

2  language or concept that Mr. Bruh just described?

3          MR. GLENN:  I don't know what that means.  I mean,

4  you know, they're being released in their capacity as such.

5  I mean, so if you want to -- those entities are being

6  released in that capacity, maybe that's a more precise way

7  to put it.  But you know, the -- they're --

8          THE COURT:  Well, let me ask.  Do -- is -- do they

9  act as fiduciaries for the estate as a whole as a matter of

10  law?  I would think so.

11          MR. GLENN:  Yeah, I mean, look, they're general

12  partners.  They have fiduciary duties under the partnership

13  agreement and under governing law.  So, yes.  I think that's

14  subsumed within it.  But you know, I don't know what that

15  means.  And so, I think it's again, more precise to release

16  them or exculpate them acting in their capacities as general

17  partners in connection with the sale.

18          THE COURT:  Okay.  So, let's -- Mr. Bruh, what do

19  you make of that proposed wording?

20          MR. BRUH:  Your Honor, I mean, I go back to the

21  confirmation order.  And it says, exculpated parties means

22  collectively, and in each case, in the capacity as such, the

23  Debtor, Debtor's related party to the extent such related

24  party are estate fiduciaries under applicable law.

25          Then you go to related parties, and general

1    partners is listed as a related party.  So, they get

2    released to the extent they're estate fiduciaries.

3                    MR. GLENN:  I see that.

4                    MR. BRUH:  When that line was --

5                    MR. GLENN:  Yeah, that's fine.

6                    MR. BRUH:  -- deleted, that was the concern.

7                    THE COURT:  -- (indiscernible) -- I think maybe

8    you can stop talking.  Mr. Glenn is softly saying, that's

9    fine.

10                   MR. GLENN:  I agree, I agree.

11                   THE COURT:  Okay.

12                   MR. GLENN:  I -- Ms. Rahman gave me that language

13   in red, and I skipped over the red, so that's perfectly

14   fine.  My fault.

15                   THE COURT:  Okay.

16                   MR. BRUH:  Okay.

17                   THE COURT:  So, we're good.  All right.  So, let

18   me -- I'm trying to go sort of handle issues as they arrive.

19   So, I think now, let me say as to the U.S. Trustee's limited

20   objection, I think we've arrived at a place that I'm

21   comfortable with, and that the U.S. Trustee is satisfied

22   with.  And so, we'll deem its objection either withdrawn in

23   light of the colloquy, or to the extent it's not overruled,

24   okay?  So that'll be my oral ruling with respect solely to

25   the U.S. Trustee objection issues.

1                Okay.  And Mr. Glenn, I want to tackle --

2                MR. BRUH:  Actually, Your Honor, if I just -- I'm

3     sorry for cutting you off.

4                THE COURT:  Yeah, go ahead.

5                MR. BRUH:  This is Mark Bruh again.  I would just

6     ask that -- I just want to confirm that the language that

7     was sent to me from Debtor's counsel is the language that's

8     going to be inserted into the revised proposed order.

9                MR. GLENN:  That's correct.

10               THE COURT:  Yeah, I think -- I am hopeful that

11    we're going to approve the order, a sale order today --

12               MR. GLENN:  Yes.

13               THE COURT:  -- in some form, and you'll circulate

14    it, including to the U.S. Trustee program, so they can lay

15    eyes upon it and say, yes, thank you, we're good.  Okay?

16    So, we'll -- that'll --

17               MR. BRUH:  Thank you, I was trying to get ahead of

18    it, right, at this point.  Thank you.

19               THE COURT:  Yeah, no, no, absolutely.  Okay, so do

20    you want to also talk about the so-called Branton objection

21    at this point?  Or I say so-called --

22               MR. GLENN:  Yes.

23               THE COURT:  -- because I'm just using a

24    (indiscernible) form entity name.

25               MR. GLENN:  Yes.

1          THE COURT:  Okay.  Go ahead, Mr. Glenn.

2          MR. GLENN:  Okay.  So, we hired Branton to conduct

3     a sale process as Your Honor knows.  That sale process,

4     during Branton's tenure was unsuccessful.  We -- the

5     property was marketed to many, many parties, but

6     unfortunately, we did not get a binding offer.  And the

7     Branton engagement letter expired by its terms at the end of

8     the year.

9          Part of the Branton engagement letter was an

10    amendment that was undertaken last summer, pursuant to which

11    Branton got indemnity.  Because at that point in time, there

12    was, I would call it, more dissention and dispute about the

13    conduct of the sale process and differences about what kind

14    of form the sale might take.  And there had been threats of

15    potential litigation.

16          Thankfully, the temperature since then, at least

17    on the sale process, has been taken down quite a bit.  And

18    we're now in a position, as Your Honor can see, that there's

19    no pending objection to the sale by any economic stakeholder

20    in the case.  You have the U.S. Trustee, and you have

21    Branton.

22          Branton has sought an indemnity reserve and other

23    related relief for that indemnification obligation.  They've

24    sought an escrow fund, or general releases from parties that

25    haven't been really identified, but I'm sure we can surmise

1   what they're looking for here.

2           And so, where we are right now is that, you know,

3   the indemnification agreement that Branton received does not

4   require any kind of escrow or any kind of fund.  It's an

5   unsecured contractual obligation.  And what they're asking

6   for now is something different.  It's almost akin to a fee

7   advancement request for claims that have not been asserted -

8   -

9           THE COURT:  Right.

10          MR. GLENN:  -- may never be asserted.  And you

11  know, our view at this point is that you know, the part of

12  the sale motion is that there's going to be a finding, you

13  know, of good faith and connection with this sale, that it's

14  the highest and best offer available to us and -- under the

15  current circumstances.  So, we don't see --

16          THE COURT:  Can I -- yeah.  Sorry, go ahead and

17  finish your sentence.

18          MR. GLENN:  We don't see a threat of any

19  litigation that would trigger the indemnification.  And so,

20  they have a contract right.  If as and when there's an

21  actual claim that is made, which I highly doubt, then we can

22  address this at that point in time.

23          But right now, all they have is an unsecured

24  obligation.  And they're not entitled to anything more than

25  that.  So, it's not --

1          THE COURT:  Right.

2          MR. GLENN:  -- an objection to the sale itself.

3  It's ancillary to the objection, and we would ask for the

4  Court to overrule it.

5          THE COURT:  Okay.  Let me ask a couple of

6  questions.  So, is Branton covered by the confirmed plan's

7  exculpation clause and/or confirmation order exculpation

8  clause for their services as broker through the period of

9  their engagement?

10         MR. GLENN:  I will have to confirm that.  I'm

11 going to ask Ms. Rahman to confirm that while we're on the

12 Zoom.  I believe all the professionals and all of the

13 Debtor's representatives were exculpated, but that's just my

14 vague recollection.  (Indiscernible) verify that, Your Honor

15 --

16         THE COURT:  Right.  I mean, in the plan -- I'll

17 tell you my own -- for my own review, brokers were on the

18 list in the plan.  The confirmation order dialed back the

19 scope of exculpation somewhat.  And it included the

20 fiduciary reference but didn't explicitly eliminate coverage

21 to brokers.  So, I think they -- my thinking coming in is

22 that they benefitted from that clause, and that that clause

23 ran through the effective date, which is February 14th of

24 2024, whereas their retention period expired of its own

25 terms December 31 of 2023.  Does that sound right to you,

1    Mr. Glenn?

2            MR. GLENN:  It does.  It does.

3            THE COURT:  Okay.  I'll turn it to Ms. Rahman,

4    who's just being put on the spot and volunteered.  But does

5    that sound right to you?

6            MS. RAHMAN:  Yes, I believe so.

7            THE COURT:  Okay.

8            MR. BRUH:  Your Honor, if I may?  It's Mark Bruh

9    for the United States Trustee.

10           THE COURT:  Yes.

11           MR. BRUH:  Brokers are (indiscernible) as a

12   related party, under these (indiscernible) --

13           THE COURT:  Right, exactly.  That's what I was

14   just getting at, yeah.  Okay, so all right.  So, I think,

15   look, I'm going to hear from Branton, but my leaning coming

16   in is -- aligns with the Debtor's reaction, and that Branton

17   has not identified any actual claim against it or any even

18   threatened claim, anything that triggers a current need for

19   or entitlement to an indemnification payment.  And further,

20   the -- its exposure is very limited because its retention

21   expired at the end of 2023.  And it's already covered by an

22   exculpation clause in the plan anyway.

23           I would just add on my own that I looked also at

24   the confirmed plan.  The confirmed plan contemplates this

25   sale to be followed by distributions.  And there's a whole

1    distribution scheme set forth in the plan, to which -- at

2    which time, at the time of confirmation, Branton could've

3    sought protections and a more long-lasting or funded

4    indemnification entitlement, and it didn't seek that or get

5    it.

6             So, I don't see a basis to impose that requirement

7    now, superimposed on the sale that was already contemplated

8    to occur by the previously approved plan.  So that's my

9    thinking coming in.

10            Having said all those unreceptive things, let me

11   just offer the floor to whoever's here for Branton and see

12   if you want to pushback on any of that,

13            MR. CARROLL:  Yes, Your Honor.  Thank you.  This

14   is Schuyler Carroll of Manatt, Phelps and Phillips.  And

15   Your Honor, let me first say, we would be very pleased if

16   everything that you and Mr. Glenn said turned out to be

17   true.  We have no interest of ever having to use the

18   indemnification protections, and particularly glad to hear

19   that it appears all of the partners have put aside their

20   differences.

21            But what we are concerned about, Your Honor, is

22   unfortunately, as we've all seen, anyone can bring a suit,

23   even as meritless as it may be.  So, based on our experience

24   in the case, we were concerned, and still are concerned,

25   that a litigation might be commenced by one of the general

1  partners, that the plan provides, as you said, for all

2  administrative expenses to be paid.  But the sale provides

3  that all proceeds will be distributed before our claim could

4  be paid potentially.  We're not asking for --

5            THE COURT:  But you -- I'm sorry, let me jump in.

6  You don't now have a ripe claim, right?  Like, nobody's sued

7  you.  Nobody's -- you're not incurring legal expenses, are

8  you, at this time, in connection with your work?

9            MR. CARROLL:  You are correct, Your Honor.  And

10  again, we are hopeful we never will.

11            THE COURT:  Okay, got it.

12            MR. CARROLL:  So, the issue we have is the plan

13  provides for all administrative expenses to be paid, but the

14  sale provides for all the proceeds to be distributed.  So,

15  to the extent that a potential outcome here is the sale

16  closes, the proceeds are distributed, and a day later, a

17  litigation is commenced against us, as meritless as it may

18  be, our indemnification rights would essentially be stripped

19  because, as Mr. Glenn said, we have a contractual right as

20  against the Debtor.  But the Debtor will have no assets, so

21  --

22            THE COURT:  I -- yeah, no, I -- look, I understand

23  the concern.  I just don't see -- I question whether you

24  have an entitlement on behalf of Branton.  But because

25  there's no currently ripe admin claim, the plan was

1    previously confirmed and included a contemplation of

2    distribution of all proceeds at the end of the sale

3    processes.  So, I guess what's your pushback for that, from

4    that?  What's your entitlement?

5              MR. CARROLL:  Well, I think, Your Honor, what I

6    would say is, all of the relevant parties are here.  And all

7    of the relevant parties could state on the record that they

8    will not bring a claim.

9              THE COURT:  Well, I was thinking --

10             MR. CARROLL:  And then this is very plain and

11   simple.

12             THE COURT:  Let me interrupt you.  I was thinking

13   of doing that, and maybe you'll get some comfort, but I'm

14   not sure that -- even as -- I guess I'm a nice person, so

15   I'm happy to work the room.  And I need to hear that for

16   purposes of approving the sale or not approving the sale

17   anyway.

18             But I will say, I just -- right -- well, I think

19   I'll stop talking.  Let me do this.  I'm going to formally

20   reserve decision at this time on the Branton objection,

21   pending further input from all parties.  And Mr. Glenn, help

22   me remember to come back and make sure I button that down

23   for record purposes, okay?

24             Let me circle the room.  Let me start with Mr.

25   Karcher, who's come into the case in a very welcome and

1   constructive way, as from what I can tell, although I only

2   see things from afar.

3                  MR. KARCHER:  Yes.

4                  THE COURT:  Can you say anything that might, with

5   respect to the sale overall, and then --

6                  MR. KARCHER:  Your Honor -- yes, (indiscernible)

7   aware --

8                  THE COURT:  Yeah, go ahead.

9                  MR. KARCHER:  Yeah.  I'm sorry, Your Honor.  I

10  didn't mean to interrupt.

11                 THE COURT:  Go ahead.  I speak in run-on tangled

12  sentences and mess people up all the time, sorry about that.

13                 MR. KARCHER:  Yeah, let me just say with respect

14  to Branton, I'm not aware of any claims against Mr. Branton.

15  I have not discussed it with my client.  I'm -- I just --

16                 THE COURT:  Okay.  And your plan, just -- and to

17  make sure, as everyone knows, it's RAS.

18                 MR. KARCHER:  RAS Property Management.

19                 THE COURT:  Okay.  And what is the view of RAS

20  Property Management with respect to the sale, including the

21  modified purchase price and terms described by Mr. Glenn

22  today?

23                 MR. KARCHER:  Yeah, that, I have to say, I was

24  delighted to hear that there's been, I guess what I'll call

25  a mini auction in the last 24 hours.  But the first I heard

1     of it was the same time Your Honor heard of it.

2              And so, my quick notes are that the parties aren't

3     allowed to engage in any way with any other parties between

4     now and the closing, and the liquidated damages of five

5     percent.  Those to me seem like the types of things that you

6     might get if you actually had like a backup bidder or

7     somebody to rely on in the event that the sale did not close

8     with this particular buyer.  And my concern is that if it

9     doesn't close with this particular buyer, there -- the

10    Debtor has an obligation to pay off the DIP loan, which

11    turned into exit financing by the dates certain.

12             And so, I think from our perspective, we would

13    have much greater comfort if we had an alternative buyer in

14    the wings to the extent that, through no fault of the

15    Debtors, the deal didn't close by the time we had to pay off

16    the DIP.

17             I also think that just at -- in general,

18    preventing the partners from speaking to alternative buyers

19    would seemingly be contrary to their fiduciary duties.

20             THE COURT:  Well, why doesn't this -- the

21    following analysis work?  Debtors -- it's not an absolute

22    rule that property be sold through an auction process.  And

23    if a Debtor comes to the Court saying we have done a robust

24    marketing process, and worked really hard, and we have

25    formed the informed business judgment that this is the best,

1   most lucrative path forward for the -- and most beneficial

2   to the estate.  And we want you to approve this sale without

3   undergoing an auction process, then the Court, I think can

4   approve that.  And isn't this -- isn't that what's happening

5   here, just with the happenstance that another offer came in

6   and pushed up the price a little over $2 million?

7            MR. KARCHER:  It is, Your Honor.  But the concern

8   stays, that you know, if the sale doesn't close, there is a

9   -- an obligation to satisfy the loan.

10           THE COURT:  Okay.  So, let me --

11           MR. GLENN:  May I respond?

12           THE COURT:  Yeah, let me -- I was going to ask you

13  to.  Go ahead.  That's Mr. Glenn.

14           MR. GLENN:  Thank you, Your Honor.  So, our

15  calculus on this matter is as follows, Judge.  I think the

16  law is very clear that once the Court issues an order, it's

17  final, and we can't have an auction.  We can't revisit the

18  order, even if someone comes in with $10 more million.

19           I think you know, at some point, the process is

20  final, and this order that we have to get, you know, today,

21  is going to provide that finality.  We have no ability after

22  that order is entered -- and I don't believe the Court has

23  any ability, absent fraud, which is clearly not the case

24  here, to revisit this and open the process back up.

25           And I'm sure this transcript will you know --

1  these words on -- which are very strong, and declarative

2  would be used against me if we ever attempted to do that.

3  And so, the granting of this breakup fee, I view as

4  basically a nominal concession to the buyer because we can't

5  revisit the sale.  And so, there's really not going to be a

6  breakup fee.

7          Our obligation to turn over the property is

8  subject to basically title and the tenants leaving.  It's

9  not an operating building in, you know, any meaningful

10  sense.  So, I don't believe there's any risk of anything

11  happening between now and the closing.

12          And so, all these things that we're saying,

13  specific performance, the liquidated damages are from, you

14  know, my view, a buyer who deserves some sympathy for

15  stepping up and asking for reasonable concessions because

16  they have stepped up.  And you know, I'll fight hard for

17  them because I think they're entitled to this.

18          THE COURT:  Right.  Can I ask this?  Is -- I don't

19  think anyone's saying they're not entitled to protection in

20  the event the Debtor walks away.  So, do they get their --

21  whatever, functionally breakup fee, if they choose to walk

22  away and abandon the deal or fail to close for any reason?

23          MR. GLENN:  No, no, no.

24          THE COURT:  Okay.

25          MR. GLENN:  That's only -- it's a one-sided thing

1    we have to -- we're the ones that have to breach.  And we

2    have a cure right, and there's going to be other -- you

3    know, if a third party comes in and tries to do something

4    outside of our control by way of an injunction, that's --

5    it's really to keep us honest, so that they're assured that

6    we're going to follow through with this after this last-

7    minute hiccup.

8             MR. MISSRY:  Yeah, I'd like to add a couple of

9    things, Your Honor, if you don't mind?  This is Morris

10   Missry --

11            THE COURT:  Yeah, just say your name for the

12   record.  Go ahead.

13            MR. MISSRY:  Yeah, Morris Missry.

14            THE COURT:  I see.

15            MR. MISSRY:  Our client has stepped up to the tune

16   of $2.2 million in additional purchase price.  The

17   liquidated damage provision would yield them $3 point

18   something million if the seller breached and decided not to

19   sell to us.  Given that there'll be a final sale order, we

20   don't see that happening.

21            THE COURT:  Yeah.

22            MR. MISSRY:  Additionally, my client has posted

23   $4,710,000 as an initial deposit, and has an obligation

24   within five days after the issuance of the sale order to

25   post another $1,570,000.  So, it will have $6.28 million up

1    as a deposit with the seller's title insurance who -- would

2    sit with the escrow agent.  So, if it defaulted, to Mr.

3    Karcher's point, it will have forfeited close to $6.3

4    million.  So, it's not going to happen.  We're ready to

5    close.

6              THE COURT:  Okay.

7              MR. MISSRY:  If the tenant was out tomorrow, we'd

8    close tomorrow.  Right now, the assumption is we're going to

9    close all equity, so we're not relying on third parties.

10   We're ready to go.  And we were cajoled, if you will, Your

11   Honor, last night to put up another $2.2 million, which will

12   benefit all of the partners in this deal.

13             THE COURT:  Okay, got it.

14             MR. GLENN:  And I want to raise one other point,

15   because Mr. Karcher did raise what we believe is a very

16   valid point, which is the exit financing, okay.  We -- this

17   was on the general partners' list of significant concerns.

18   And I want to explain how those were ameliorated.

19             Mr. Karcher is absolutely right that there was --

20   there's a maturity date in our exit financing of around the

21   end of this year.  And we were very concerned if the closing

22   date for this transaction, Your Honor, extended into the

23   summer -- late into the late summer, early fall, in which

24   case, you know, God only knows where the market would be,

25   and we would have to scramble to find a replacement --

1          THE COURT:  Right.

2          MR. GLENN:  -- purchaser.  So, we did a couple

3     things.  And the buyer has now helped us.  We have these two

4     tenants.  And we were concerned that they were not going to

5     exit in a timely way.  And we now have arrangements in

6     place.  And this is why it's a good thing that we've lost

7     that ability to extend the closing, because we don't need

8     it, number one.

9          And number two, if this buyer, by some, you know,

10    unforeseen problem doesn't close, Mr. Missry is absolutely

11    right, we have the right to have Your Honor adjudicate on an

12    expedited basis, whether that deposit comes to us.  In that

13    circumstance, that would provide us with additional capital

14    and the ability to get a replacement buyer in a much more

15    comfortable period before that exit financing actually

16    matures.  So --

17         THE COURT:  Okay, got it.

18         MR. GLENN:  -- what Mr. Karcher said is right.

19    And it was definitely on our minds as we navigated this

20    process.

21         THE COURT:  Okay.  So, let me do the following.

22    I'm going to acknowledge, I'm supposed to be attending a

23    judge's meeting that's starting pretty soon, so I'm trying

24    to move expeditiously through the hearing and yet get this

25    full entire hearing in.  And you get dibs, but I just want

1    to let you know I'm going to try to steer the ship.

2          Mr. Barr, I'm going to come to you in a second,

3    but let me come to Mr. Karcher.  But let me just ask.  Is

4    RAS comfortable with the basic terms of this sale?

5          MR. KARCHER:  Yes, Your Honor.  We appreciate Mr.

6    Glenn's (indiscernible) --

7          THE COURT:  Okay.  And let me give representatives

8    of the other two general partners a chance to -- well, who's

9    here for the other two general partners?

10          MR. KARCHER:  They don't have separate counsel.

11    Only Ms. Sklar, RAS property has separate counsel.

12          THE COURT:  Okay, okay.

13          MR. KARCHER:  But they did --

14          THE COURT:  So, I'll just -- yeah, go ahead.

15          MR. KARCHER:  Yeah.  They did confirm to me that

16    they have no interest in pursuing any claims against Branton

17    Realty, in response to Your Honor's concern.

18          THE COURT:  Okay.  Got it.

19          MR. KARCHER:  And so, I (indiscernible) confirm

20    that.

21          THE COURT:  All right, thank you.  Let me come to

22    Mr. Barr.  Go ahead, thanks for your patience.

23          MR. BARR:  Thank you.

24          THE COURT:  Oh sorry.  You just muted yourself.

25    Having unmuted you.  I think you doubled clicked.

1          MR. BARR:  Sorry about that.  Sorry.  I think that

2     Mr. Karcher's point about being able to pursue other buyers

3     in the pendency of the action was not really addressed.  I

4     thought my perception is that the argument switched

5     immediately to the five percent breakup.

6          THE COURT:  Hang on a second, Mr. Barr.  Who do

7     you represent?

8          MR. BARR:  I represent the estate of Lois

9     Weinstein.  They own --

10          THE COURT:  Oh, yes.

11          MR. BARR:  -- (indiscernible) percent equity

12     (indiscernible).  And under the -- anyway.

13          My greatest objection -- I have no objection to

14     this sale.  I'm -- and I'm pleased that the price has

15     increased.  My concern is with respect to the five percent

16     breakup fee.  My feeling is that it's an unusual term.

17          And given the circumstances that the -- that

18     there's a lot of unknowns out there, I think that the

19     Debtor's counsel's being a little optimistic that there are

20     no problems.  I can think of about three that would derail

21     or delay the closing.  And if that triggers a $3,250,000

22     payment to the buyer, that's problematic to me.

23          I think that the cure period may not be

24     sufficient.  I can think of three problems.  One, the estate

25     of Lois Weinstein owes money to the Internal Revenue

1   Service, the U.S. Treasury.  I can conceive, and have been

2   told, that we have a 61-66 exemption to defer payment of

3   taxes.  However, that has to be secured by property.

4          It is my understanding that the IRS intends to

5   lien Ninety-Five Madison Avenue.  If that happens, obviously

6   it can be resolved but maybe not in a minute.  And maybe

7   that's a process that would take longer than the cure

8   period.

9          Another problem that I perceive is that the title

10  company may, in its due diligence, come across this decision

11  from October of 2020, dissolving Ninety-Five Madison.  That

12  may create an issue as to whether a certificate of good

13  standing, which is generally required from the Secretary of

14  State in this kind of transaction, you know -- it may cause

15  a lot of questions.

16         Title companies tend to be concerned about not

17  having any liability at all for anything.  And so, they come

18  up with objections that don't seem reasonable, but still

19  have to be dealt with.  So, I am very concerned that there

20  may be delays with respect to title that are unforeseen.

21         And that I would therefore suggest that if there

22  is to be a breakup fee of $3,250,000 payable by the seller,

23  that that would be limited only to instances where there is

24  a willful default, which would be the (indiscernible) --

25                THE COURT:  Well, okay, look -- I mean, I think --

1          MR. BARR:  Sorry, Your Honor.

2          THE COURT:  So, yeah, let me -- so, let me just

3    try to recap.  So, you have concerns particularly focused on

4    the five percent breakup fee.  You'd like -- you just said

5    you'd like the willfulness component to be introduced to

6    that.  But the estate of Lois Weinstein does not have a

7    problem with basically the terms of the sale.  On offering,

8    you'd like this transaction to close successfully and

9    generate proceeds, right?

10         MR. BARR:  Yes, absolutely.

11         THE COURT:  Okay, got it.  Let me hear from Mr.

12   Glenn in response to that concern.

13         MR. GLENN:  So --

14         THE COURT:  I think the answer may be, you got an

15   -- sorry, I'm going to cut you off and say things that occur

16   to me.  The potential breakup fee exposure of $3.2 million

17   is accompanied by an increased purchase price commitment of

18   $2 million plus, which eases the pain.  And these are

19   demands made by the purchaser in connection with its

20   willingness to lock in, including play ball at a higher

21   purchase price.  But let me let Mr. Glenn augment those

22   thoughts.

23         MR. GLENN:  So, yes.  So, Your Honor, you

24   articulated that ultimately, what we're here for today, the

25   standard of review is business judgment and the general

1    partners.  And now, we've heard it's unanimous, agree that

2    this is the best available transaction under the

3    circumstances.

4            But again, like I did with Mr. Karcher, the notion

5    that we couldn't clear title, you know, and get title

6    insurance is certainly a concern.  You know, Mr. Barr and I

7    have a lot of differences, and we will continue to.  But

8    again, that's a concern that any seller has.

9            What I would say mitigates that one is that we

10   just went through this process with the exit financing

11   facility.  We cleared the title company in that circumstance

12   two months ago.  There's no new title issues that have

13   popped up.

14           If what Mr. Barr is referring to is a tax lien

15   that would be imposed, he's not talking about a tax lien on

16   Ninety-Five Madison.  He's talking about a tax lien on the

17   estate of Lois Weinstein, which may realize on the Weinstein

18   interest in Ninety-Five Madison.  So, I don't view that as a

19   circumstance, where the IRS would have the ability to enjoin

20   the sale.

21           And Your Honor, as part of the sale order, is

22   going to provide the title company with significant comfort

23   that the sale is actually free and clear of all claims and

24   interests, including a potential tax lien of the IRS.  And

25   that would attach to the proceeds.

1              So, what I would say to the Court is, number one,

2       the partners are mindful of concerns such as that.  Number

3       two, I think that's a very unlikely circumstance.  Number

4       three, I guarantee you, if anybody, whether it's the IRS or

5       the plumber for the building tries to hold up the sale by

6       putting in some lien, we are going to be back before Your

7       Honor on an expedited basis to address that because I would

8       view that as a frivolous, certainly non-meritorious legal

9       action that a party would take.

10             THE COURT:  Got it.  And I think one thing I'll

11      just add is that no one is here on behalf of the IRS, and

12      this is noticed as a proposed free and clear sale.  So that

13      aligns with your comments.  I did just want to observe the -

14      -

15             MR. GLENN:  Yeah.

16             THE COURT:  -- absence of objection presented

17      timely today or prior today -- to today for -- by the IRS.

18      Okay.  So that's helpful.  Mr. Barr, if we -- I think we've

19      covered -- anything else you want to add?  I'll give you

20      that opportunity.

21             MR. BARR:  Thank you, Your Honor.  I just wanted

22      to say that the five percent fee, I think should be limited

23      to willful default.  I think that it's a (indiscernible)

24      provision.

25             THE COURT:  (Indiscernible) --

1          MR. BARR:  And my words of wisdom to everyone is,

2   with respect to real estate transactions, it's always a

3   mistake to reinvent the wheel.  So, to put something in a

4   contract you don't know what the consequences are, it may

5   make sense the day you put it in, but it ultimately is

6   something that you will learn is a mistake.

7          THE COURT:  Okay.  Mr. Glenn, and I'll give the

8   purchasers -- proposed purchasers a chance to speak to the

9   idea of inserting a willfulness requirement on the breakup

10  fee.

11         MR. GLENN:  Yeah, I think we're comfortable with

12  how things are.  And again, if by some chance that this is a

13  default on behalf of some obligation that we have, there is

14  a -- there's going to be a cure period, a reasonable cure

15  period for us to address that.

16         You know, obviously, you know, Mr. Barr is trying

17  to renegotiate the deal that was negotiated at arm's length,

18  you know, last night and this morning.  And so, that's not

19  the deal.  So, I would turn that over to Mr. Missry because

20  you know, if he agrees to it, that -- great.  But we're, you

21  know, again, I want to compliment Mr. Missry and his client.

22  They did -- they stepped up.  And I don't think the deal

23  should be recut, given what they've done.  If he -- if he's

24  acceptable to that, amenable to that, fine.  But we're here

25  to defend the deal that we've agreed to.

1          THE COURT:  Okay, Mr. Missry, anything you want to

2     say about the proposed insertion of a willfulness

3     requirement?

4          MR. MISSRY:  Yes, Your Honor.  We don't agree to

5     that.  There are very few obligations of the seller under

6     the purchase and sale agreement.  Your Honor can take a look

7     at it.  And I've been doing this for quite some time.  We do

8     a tremendous amount of real estate work.

9          This isn't a breakup fee.  This is a liquidated

10    damage provision.  And the provision was negotiated.  We're

11    happy to pay $62.8 million, Your Honor, and have Your Honor

12    issue the sale order on that basis.  But as Mr. Glenn and

13    his co-counsel, Mr. Lefkowitz have done and said to us, we

14    have a deal.  They're going to honor the deal.  I have full

15    faith and confidence in the seller and the general partners

16    that they will sell the property to us on this basis.

17         And so, we're not going to entertain, or we don't

18    want to entertain Your Honor, any type of paranoid, wild

19    theories that someone may espouse, when this is a simple

20    real estate deal.  There aren't many representations.  There

21    aren't any tenants really, in the building.  This is a

22    simple real estate (indiscernible) --

23         THE COURT:  Okay, I got it.  Let -- I'm going to

24    cut you off, Mr. Missry.  So, I -- like, you know, there's

25    the famous sentence, you had me at hello.  I really wanted

1    to hear a yes or a no.

2              MR. MISSRY:  Okay, sorry.

3              THE COURT:  And I don't need your full rationale.

4    So, the deal on -- so that's not acceptable to the

5    purchaser?

6              MR. MISSRY:  No.

7              THE COURT:  Okay.  Let me see if there's anyone

8    else who wants to be heard on the sale before I get to

9    ruling.  Does anyone else want to be heard?

10             MR. ROSENBERG:  I do, Your Honor.  Good afternoon.

11             THE COURT:  Yes, go ahead, Mr. Rosenberg.

12             MR. ROSENBERG:  Yes, hi.  Arthur Rosenberg of

13   Holland and Knight, LLP.  We are counsel for the competing

14   purchaser, which is a company called Madison 95 Associates

15   LLC.  We have been involved in negotiations.  My client has

16   been involved in negotiations with the Debtors in this case

17   for months and months and months, since at least the

18   beginning of the year.

19             This is not a -- it's a last-minute hiccup, I

20   think it was referred to as.  We've been dancing with them

21   for a while, and this dance just, everything takes longer

22   than it should take.  I've been practicing bankruptcy law a

23   long time in the Southern District.  That's nothing great

24   about me.

25             But, and generally, a stalking-horse structure is

1  not the rule.  It's not in Section 363.  It's not required.

2  But generally, it's what happens in the Southern District

3  and throughout the rest of the country.  And there's a

4  reason for that, which is because it sets up a fulsome and

5  proper and guardrail, properly guard-railed auction.

6         What happened here was, the Debtors filed this

7  motion, which they are absolutely within their rights to

8  file in this case, but it was done differently than usual.

9  I believe some of the people or maybe two of them said,

10  don't reinvent the wheel for this case.

11        And I know they're not reinventing the wheel, but

12  certainly, the motion that they filed here was the exception

13  rather than the rule.  And our client reached out almost

14  immediately to Mr. Glenn and his cohorts and their people at

15  Rosenberg and asked this and said, hey, wait a minute,

16  shouldn't this be in the form of an auction and a stalking-

17  horse.  And the answer was, hey, we can keep talking, don't

18  worry, we're going to keep talking.  And my client has been

19  back and forth and back and forth.

20        The issue with -- and you know, we apologize for

21  taking so much time, but number one, things have just taken

22  a lot of time on both sides.  Number two, it's not as easy

23  as you think to raise $65 million.  You would think it's

24  easy, but it's not.

25        And the reason Your Honor, for the stalking-horse

1    structure being followed is, number one, it's standard,

2    number two, it works, number three, it sets up very

3    definitive guidelines for an auction.

4             What we have, Your Honor, at this point, is an

5    auction that has occurred extemporaneously unintentionally

6    based on the manner in which the motion was filed.  In fact,

7    the $5 million breakup fee is what I see as an ex post facto

8    breakup fee that would have been talked about months ago

9    when the motion was filed, would've been decided in

10   connection with the bidding procedures.  They were very

11   informal.  There were no bidding procedures here, Your

12   Honor.  So that, as a result, you know, our client did this,

13   they did that.

14            And again, I'm not speaking bad of anyone, or you

15   know, giving -- casting aspersions on anyone here.  But this

16   is a kind of dance that would have been done much better

17   under the strictures of a stalking horse bid, and not under

18   the strictures of something that was bid.  Because, yeah, we

19   sort of ran out of people.  I mean, they didn't run out of

20   potential buyers here.  I will tell you, Your Honor, my

21   client was absolutely speaking with them at the beginning of

22   the year.  This motion sort of came out of left field as a

23   surprise.  We thought this was going to be a standard

24   stalking horse motion, and it was not.

25            So, you know, look, stalking horse motions are not

 1   necessary.  They're not required.  But the type of motion

 2   that when here, everything has to be so buttoned up, I had a

 3   former senior partner who used to say, as pure as Caesar's

 4   wife.  He was (indiscernible), he said that.

 5          But it has to be as pure as Caesar's wife in this

 6   case.  It has to be as clean.  And the way I see it, Your

 7   Honor, especially last-minute issues arising, the -- it's an

 8   auction, but it's not an auction.  The way I see it is,

 9   unfortunately, the way that this things were structured was

10   a way that might work in most -- in many cases, but if it

11   really gets to a fulsome auction, where parties are going

12   back and forth a lot, it just is not the best way at all.

13   And in fact, it's the worst way.

14          I can't tell you that my client would be willing

15   to go higher than 65.  Although, if you give me five

16   minutes, I can call him and ask what they'd be willing to go

17   to.  I mean, that came out of left field, too, just the way

18   things are going.

19          My client has submitted several auctions --

20   several bids, my apologies -- several bids over the last

21   week or two.  But the last bid they did, I thought was

22   higher and better, but it was not an apples to apples bid.

23   I understand.  They wanted all cash, but my client thought a

24   better deal was to go in a different direction.  Complete

25   discretion, I get it.

1        But you know, what's happening here, and I

2   understand that this is 100 percent, theoretically, at

3   least, 100 percent plan, which may make things a little

4   different.  But what's happening here is, we're going

5   through the auction process, without the common guardrails

6   that are normally here.

7        And again, the five percent breakup fee last

8   second, the counterbid last second, if this were a standard

9   stalking horse structure, we would be sitting in Mr. Glenn's

10  office and, you know, re-handing envelopes across a table or

11  something like that, which would --

12       THE COURT:  So, Mr. Rosenberg, let me just ask.  I

13  appreciate everything you're saying, but you say your client

14  was engaged with the Debtors for a substantial period, I

15  guess it's early this year.  And I -- I'm just looking back

16  at the transcript from the combined confirmation and

17  disclosure statement hearing, which set an outside date for

18  completion of the sale process of June 30th, right?  So, and

19  that's not an accident.  This sale process has been tortured

20  it's and gone way beyond what was desirable and needs to be

21  brought up to compensate the beneficiaries of the estate.

22  And so --

23       MR. ROSENBERG:  Sure.

24       THE COURT:  So, my concern is, you're sort of --

25  you know, to sort of critique the process and suggest it be

1    opened up is -- strikes me as a little bit untimely.  I

2    mean, I will say, I appreciate the value of an auction.

3    Almost always, I prefer an auction.  There's nothing that

4    determines that you're actually achieving market value

5    better than an auction.

6            But in this case, there's been such a robust and

7    tortured and long-running marketing process, that I think

8    it's, you know, again, as Mr. Glenn has reminded me a couple

9    of times, and is correct, it's a business judgment standard.

10   And I do see reason to -- for the exercise of business

11   judgment that's on display here today.  So, I guess to

12   translate that to a question for you, is there any failure

13   to meet the business judgment standard that you see here?

14           MR. ROSENBERG:  Well, two quick responses on that.

15   Number one, my firm was brought in, and that's just -- my

16   firm was brought in, and that's just my firm, maybe it's my

17   client's fault, was brought in after the confirmation

18   hearing, like three days after or something like that.  So,

19   we didn't have the chance to speak up there and see what was

20   going on.

21           And number two, we are willing to close within the

22   guidelines set out in the plan June 30th, et cetera.  I'm

23   sorry, Your Honor, my new office automatically, the lights

24   go off --

25           THE COURT:  Oh, you have one of those auto-dimming

1  light features.  Yes, you need to gesticulate more.

2           MR. ROSENBERG:  Hold on.  I'll talk -- I would

3  talk -- there we go.  I would talk with my hands more.

4  Normally, I do.  But on Zoom, it's difficult.

5           THE COURT:  Okay.

6           MR. ROSENBERG:  So, we would be willing to go on

7  that.  But we've gone through.  But we certainly have been

8  out there.  We're not a last-minute hiccup.

9           THE COURT:  Okay, I've got it.  But you're not

10  giving me a legal -- you know, a legal objection, really.

11           MR. ROSENBERG:  I mean, I agree with you, Your

12  Honor.  It's the discretion.  It's the business judgment.

13  Look, I mean if you have two offers that are roughly the

14  same, you can go with A or you can go with B.

15           THE COURT:  Okay.

16           MR. ROSENBERG:  Even if (indiscernible) higher.

17  Even if B is higher, you theoretically could go with A

18  because it's a bird in the hand, rather than two in the

19  bush.

20           THE COURT:  Okay, I've got it.  Does anyone --

21  thank you very much, Mr. Rosenberg.  Does anyone else want

22  to be heard with respect to the proposed sale?

23           MR. CARROLL:  Yes, Your Honor.  This is Mr.

24  Carroll again on behalf of Branton.  I'll be very quick,

25  Your Honor.  I just wanted to say that Mr. Glenn started off

1  earlier by saying that Branton was not involved in the sale.

2  You may have noticed, Your Honor, a while back we filed a

3  stipulation adjourning the time for Branton to file a fee

4  application.

5          We have some concerns about whether or not this

6  buyer was procured during the time period of Branton's

7  exclusive brokerage.  We will address that in the future.  I

8  just didn't want silence to be --

9          THE COURT:  Okay.  So, I'm going to view that as a

10  reservation of rights, but I will note, there was a

11  representation and/or sworn statement in the record leading

12  to the sale bidding that Branton was not involved in the

13  acquisition or development of this purchaser.  Mr. Glenn, do

14  you want to say anything?

15          MR. GLENN:  Yeah, that's correct.  The -- this

16  buyer emerged after their contract was terminated.  And our

17  position is that there's no fee earned as a result of that.

18          THE COURT:  Okay.

19          MR. GLENN:  But you know, they're free to file

20  whatever they're going to file.

21          THE COURT:  And that'll be dealt with another day

22  if necessary?

23          MR. ROSENBERG:  May I be heard, Your Honor, on

24  that point?  This is --

25          THE COURT:  Who is that?

1          MR. ROSENBERG:  -- Mr. Rosenberg?

2          THE COURT:  Yes.

3          MR. ROSENBERG:  Hi, this is Mr. Rosenberg again,

4    my apologies.  If you can hear me.  We -- as part of our

5    bid, we agreed that we would take care of Mr. Carroll's

6    client, whatever is owed, so that it would be outside of the

7    purview of the purchase price.  So, theoretically, to the

8    extent -- our bid may generate more money in that event,

9    because I think it was fairly clear that Mr. Heller and his

10   company at Branton was involved in our client, not -- maybe

11   not so much on the others.

12          So that is in one way, our -- the way our bid is

13   better, as opposed to just higher.  But again, I understand

14   business judgment is business judgment.  I would just think

15   that you know, you don't want to set bad precedents in this

16   case for that.

17          THE COURT:  I certainly don't want to set bad

18   precedent ever.  That's -- so, yeah, Branton is Mr. Heller's

19   firm, is that right?

20          MR. GLENN:  Yes.

21          MR. ROSENBERG:  Yeah, my apologies, yes, sir.

22          THE COURT:  Okay.  I don't want to fail to say I

23   still recall the arrival of Mr. Heller on the scene, and the

24   confidence he inspired among a lot of people.  So, I do

25   acknowledge the, I guess reputation he enjoys and the

1    confidence that his participation inspired in a lot of

2    people.  So, I felt like that's worth saying while we're at

3    it.

4              Okay, let me -- but let me come back to Mr. Glenn

5    and see if you have any wrapping up comments.  I think we've

6    heard from everybody actively participating who seems to

7    want to.

8              MR. GLENN:  Yes.  So, Your Honor, with respect to

9    Mr. Rosenberg's comment about the brokerage, that was

10   communicated in his client's offer that Mr. Heller's firm's

11   fee would be paid by them.  And so, the general partners

12   assessed that, and they have determined to move forward with

13   the existing buyer.

14             So again, subject to business judgment, that's

15   their view.  I don't have anything to add.  I think we've

16   covered everything (indiscernible) --

17             THE COURT:  Okay.  Let me ask one thing that I

18   want to make sure I have from somebody's mouth besides --

19   well, really from your mouth, is that the judgment of the

20   Debtor and its principles, that going forward with the sale

21   as proposed, sort of the favored purchaser is the most

22   likely to timely close?

23             MR. GLENN:  Yes.  So, right now, it's our

24   assessment that this is the highest and best offer with the

25   least amount of execution risk.

1          THE COURT:  Okay, thank you.  All right.  I

2     appreciate everybody's arguments and the work that's gone

3     into this, and I am prepared to rule on the sale motion.  As

4     follows, I'll say there's going to be a significant proposed

5     sale order that's going to contain all of the necessary

6     legal findings and legal conclusions.

7          And I expect to enter a version of that.  I'll ask

8     that it be circulated and submitted in Word as with the

9     mutual agreement of the -- certainly, the relevant parties,

10    including the Debtors, the prevailing purchaser, and the

11    U.S. Trustee's Office.

12         And so, here's what the -- and anybody else that

13    the Debtor's consider appropriate, I would like to not have

14    to deal with a fight over the contents of the proposed

15    order.  So, any modifications from that which was submitted

16    with the motion, should be submitted in redline, so that I

17    can readily see it.  And then also, in a clean version in

18    Word.

19         Okay.  So, the following is the oral ruling of the

20    Court in brief form, while also incorporating the proposed

21    order that I anticipate entering.

22         Before the Court is a motion to approve a proposed

23    sale of property free and clear of the Debtor's essentially

24    only meaningful asset, at least only meaningful asset, at

25    least if not only asset period.

1              That is the property located at Ninety-Five

2    Madison, a substantial, but under-utilized office building

3    in Manhattan.  The Debtor asks -- seeks Court approval post-

4    confirmation of a plan of sale of the premises to a

5    purchaser known as Madison 29, or that's how I'll refer to

6    them, on terms that were recently increased to a cash

7    component of $65 million, which represents an increase

8    achieved just in the last 24 hours in light of a competing

9    offer that came in from another bidder.

10             The Debtor -- I should say, this bankruptcy was

11    commenced in 2021, and has had a lengthy history.  It's been

12    fairly clear for a long time that the best solution for this

13    bankruptcy was going to involve a sale of the property or an

14    economically equivalent transaction, even if not a fee

15    simple sale.

16             That has been pursued for a very long time,

17    through a variety of means.  It's been a very contentious

18    case.  And the Court confirmed a plan of reorganization that

19    specifically included an outside date for the completion of

20    a transaction that's now sought to be approved of June 30th,

21    2024.

22             For a specific and litigated reason, constituents

23    of the bankruptcy estate have waited a long time to be paid

24    and objected to any longer process.  And the Court agreed

25    that allowing an even more open-ended process would be an

1   unjust imposition on them, particularly because here, with

2   the economics of this case, unsecured creditors are being

3   paid in full.  And the marginal benefit of the form of sale

4   or other transaction and/or the proceeds will be realized by

5   the partners in the -- essentially, the owners of the

6   property, which is owned by a consortium of generally --

7   basically three partners.

8          The motion is governed by Section 363(b) of the

9   Code.  And the applicable standard is that a judge

10  determining a Section 363(b) application must expressly find

11  from the evidence presented before him at the hearing a good

12  business reason to grant such an application, in re Lionel

13  Corp., 722 F.2d 1063 at 1071 (2d Cir. 1983).

14         There must be some articulated business

15  justification other than appeasement of major creditors for

16  using, selling, or leasing property out of the ordinary

17  course of business before the Bankruptcy Judge may order

18  such disposition under Section 363(b).  Id. at 1070.

19         And the Second Circuit also has held that a sale

20  of a substantial part of a Chapter 11 estate other than in

21  the ordinary course of a business may be conducted if a good

22  business reason exists to support it, In re Gucci, 126 F.3d

23  380 at 387 (2d Cir. 1997), citing Lionel.

24         Lionel articulated four factors that judges

25  typically evaluate on -- in considering 363 sale motions.

1    These are the proportionate value of the asset to the estate

2    as a whole, the amount of elapsed time since the filing, the

3    likelihood that a plan of reorganization will be proposed

4    and confirmed in the near future, here we're post-

5    confirmation.  The effect of the proposed disposition on

6    future plans of reorganization, the proceeds to be obtained

7    from the disposition, vis-a-vis any appraisals of the

8    property, and a number of others.  722 F.2d at 1071.  This

9    list is not intended to be exclusive, but merely to provide

10   guidance to the bankruptcy judge.  Id.

11           And the Court should consider all salient factors

12   pertaining to the proceeding and accordingly act to further

13   the diverse interests of the Debtor, creditors, and equity

14   holders alike.  Id.

15           Here, I'm satisfied that the Debtor has formed and

16   articulated a -- its -- in its own exercise of its business

17   judgment, what it believes to be good business reason to

18   proceed with the sale and the proposed purchaser that it

19   wishes to proceed with.  And the Court is satisfied that

20   these -- the applicable standards are met.

21           The -- it's clear that the solution being advanced

22   will generate sufficient funds, more than sufficient funds

23   to meet the needs of the estate and its creditors, and in

24   fact, will generate an appreciable surplus for the benefit

25   of the, I'll just call them the owners of the property

1    through their partnerships.

2          I know from having lived this case over which I've

3    presided, that the Debtor here engaged in a sale and

4    marketing process beginning in way back in 2022 with, as I

5    commented earlier on the hearing, the assistance of a highly

6    respected real estate professional, Mr. Heller, retained

7    through Branton Realty Services, and substantial work was

8    done in attempting to cultivate a transaction.

9          There was a lot of inter-partner difficulty and

10   contention that seems to have subsided, which I'm glad to

11   see.  But at any rate, I am satisfied here.  There were

12   comments made suggesting that an auction process would have

13   been better.  And I agree that often an auction process is a

14   superior mechanism.  But here, the Debtor made the

15   determination not to do that, partly, I think, because it

16   engaged in such a robust and long-running private marketing

17   process that there was little gain to be had in the present

18   circumstances through an auction process.  And in addition,

19   I think experiences demonstrated that this Debtor had a very

20   difficult time finding a ready, willing, and able and

21   adequately funded and lucrative purchaser to warrant a

22   transaction.

23          And I'm confident and satisfied that the Debtor

24   has engaged in a sound practice, a robust marketing practice

25   that gives me confidence that this sale results from and

1     achieves a reasonable approximation of market value.

2          So, another way of putting that more simply is,

3     yes, I generally think auctions are best and are preferred,

4     but here, the Debtor engaged in such a lengthy and energetic

5     marketing process that we have the functional equivalent of

6     an auction outcome already.

7          There've been no economic objections filed to the

8     proposed sale, but some concerns voiced during the course of

9     the hearing, including with respect to the modified terms

10    that were recently negotiated by the Debtor with its

11    original proposed purchaser, including beneficially for the

12    estate, of course, an increased purchase price, but also a

13    liquidated damages provision to protect the purchaser in

14    connection with its agreement to increase its purchase

15    price.

16         I again am satisfied that the modified terms are

17    reasonable exercises of the Debtor's business judgment in

18    that to secure a higher purchase price and lock in what it

19    considers to be the most reliable purchaser or the

20    purchaser, as Mr. Glenn put it, who presents the least

21    execution risk, it was a worthwhile and relatively low risk

22    commitment to put up a liquidated damages -- to agree to a

23    liquidated damages figure of $3.25 million in exchange for

24    achieving a substantial increase in purchase price and

25    securing the relative certainty of closing they have

1    negotiated for.

2              So, I am satisfied that that is a specific

3    instance of a reason to exercise of business judgment.

4    There's been no formal objection to that.  But to the extent

5    there is any such objection, it's overruled for that reason.

6              I'm -- that brings me around to the two limited

7    objections that were filed to the proposed sale.  One was

8    filed by the Office of the U.S. Trustee, and it's been

9    resolved based on clarifications made on the record today,

10   and I think in conversations before the hearing.  To the

11   extent it's not resolved, the objection is overruled.  I

12   appreciate the efforts and the process policing activity of

13   the U.S. Trustee's Office, as I always do, in guarding

14   against any unwarranted expansion of the exculpation clause.

15             But the clarifications that have been made on the

16   record make clear that the topical limits of the exculpation

17   clause are not exceeded -- you know, have not been expanded

18   and it's just -- we're just ensuring that those protections

19   go right through the sale that's being approved here today.

20             I'm going to turn to the limited objection filed

21   by Branton.  And I'm also going to overrule that limited

22   objection.  That limited objection sought a requirement

23   being attached to the Court's approval of the sale that

24   proceeds of the sale be escrowed to protect Branton against

25   any potential future expense it might incur through

1    litigation or otherwise that would trigger an entitlement it

2    might have to indemnification.

3              Branton is not -- has confirmed on the record that

4    it is not now the subject of any litigation, nor is it aware

5    of any threatened litigation.  Further, we have reassurances

6    from Mr. Karcher on behalf of RAS, the RAS entity that

7    there's no intended claim, nor -- and we have a

8    representation by Mr. Glenn that neither of the other

9    general partners (indiscernible) -- it's either general --

10   is it general or limited, Mr. Glenn?  You're on mute --

11             MR. GLENN:  General, general, general.

12             THE COURT:  -- but I read your lips, general.  So,

13   neither of the other two general partners (indiscernible) to

14   pursue any claim, either.  I hope that provides some

15   reassurance to the Branton firm.  But I'll also say it makes

16   the potential exposure for which the Branton firm seeks

17   protection seemingly to the Court unlikely.

18             Further, the -- this case is post-confirmation.

19   The confirmation order authorized a distribution process and

20   mechanism which is not being varied through the sale

21   process.  All that's happening is a sale is happening to

22   realize benefits and value for the estate.  And with the

23   proceeds to be then distributed according to the previously

24   approved plan process.

25             So, the sale, in my thinking, does not present an

1    appropriate time to inject new substantive protections for

2    Branton.  I -- I'll just -- oh, I should further add,

3    they're -- I'm not holding whether Branton was or was not a

4    fiduciary of the estate that's entitled to protection under

5    the exculpation clause.  I think there's at least a

6    substantial argument that they are.  And I got a slightly

7    equivocal confirmation of that from Debtor's counsel.  But

8    whether that is or is not the case, I still conclude that

9    Branton's entitlements are too speculative and contingent to

10   warrant commitment in escrowing of estate funds as a

11   condition of this sale.  I just don't see a legal basis to

12   inject that as a requirement for this sale.

13          I just want to touch on a couple of other aspects

14   of the relief sought.  One is that -- I'll -- oh, I'll

15   explicitly say that I've first sought this sale as proposed

16   to be free and clear of any interest in such property under

17   Section 36 -- excuse me -- Section 363(f) of the Code.  I've

18   reviewed the transaction and the papers against the backdrop

19   of Section 363(f), which has five subparts written in the

20   disjunctive and permit a sale to be free and clear of

21   interest if any of those five conditions are met.  See In re

22   Borders Group Inc., 453 B.R. 477 at 483 (Bankr. S.D.N.Y.

23   2011).

24          One such subpart is that a sale can be completed

25   free and clear, if such interest is a lien, and the price at

1    which such property to be sold is greater than the aggregate

2    value of all liens on such a property.  That's 363 (f)(3).

3           Debtor has shown that the value of the sale

4    proceeds, and I find that the value of the sale proceeds

5    that are anticipated, $65 million, will be sufficient to

6    satisfy all allowed claims in full and any -- and the

7    encumbrance on the property that is now held by the DIP

8    lender, which is the only encumbrance.

9           There's been no showing or introduction of any

10   evidence to the contrary of any lien or other interest in

11   the property held by any that would render the proceeds not

12   more than sufficient to meet that prong of 363(f), namely,

13   subsection 3.  And therefore, a free and clear sale is

14   permissible under the Code.

15          The Debtor does list a limited number of permitted

16   encumbrances that the purchaser will accept and assume.

17   Those appear economically minor and to the extent they

18   haven't been modified through further negotiations, don't

19   undermine the Court's conclusion with respect to 363(f)(3).

20          I'll also note that the motion seeks protections

21   under Section 363(m) and (n), aimed at protecting a good

22   faith purchaser's interest in property preserved from a

23   Debtor under Section 363(b).  The Second Circuit applies the

24   good faith exception to a buyer who purchases the assets for

25   value in good faith and without notice of adverse claims.

1  In re Gucci 126 F.3d at 389.  And good faith is demonstrated

2  by integrity of conduct throughout the course of sale

3  proceedings.  Id at 390.

4         The Debtor has made a showing of the marketing and

5  sale process that gives the Court an adequate basis to

6  conclude that the requested finding of good faith is

7  appropriate, and in other words, that the good -- the

8  purchaser is proceeding in good faith as required by the

9  Code.  That includes a lengthy and arm's length negotiation

10  process, at various times, including with the assistance of

11  real estate professionals.  And there's no indication of

12  misconduct.  Moreover, no one objected or came forward and

13  presented evidence of any misconduct, notwithstanding the

14  properly noticed request for a finding of good faith that

15  accompanied this motion.

16         Let me -- what that brings us down to is a request

17  for waiver of the stay that would otherwise apply to the

18  sale under Rule 6004(h) and 6006(d).  Ordinarily, Rule

19  6004(h) stays an order authorizing a sale of the property

20  for 14 days after entry of the order unless the Court orders

21  otherwise.  And Rule 6006(d) has similar effect with respect

22  to leases.

23         Let me ask Mr. Glenn, do -- are you -- is --

24  what's the practical need for that at this point?

25         MR. GLENN:  I -- look, I think that practically

1   speaking, the earliest I think we could close is mid-May.

2   And so, you know, obviously we want there to be no stay once

3   we're ready to close.  I thought, you know, we can't get a

4   stay of something that is not imminent to close.  So that's

5   what we're kind of balancing here.

6           I mean, it may be, you know, early June before we

7   close, so it's -- you know, we'll have to see how it plays

8   out.  But you know, the tenants have to exit, and then we

9   have 10 days after that.  We believe that the tenants are

10  going to exit by, you know, June 1st at the absolute latest,

11  probably mid-May.  So that's when the closing would occur.

12  And we can update everybody as we get closer to that, but

13  that's the practical reality.

14          THE COURT:  Okay.  Let me ask this.  My ordinary

15  practice is, I very often waive the stay, if -- in unopposed

16  sales.  However, I'm mindful of preserving people's rights

17  to pursue appellate rights if they want to, if they've

18  objected, and I'm also very mindful of not imposing a time

19  pressured burden on District Court colleagues in the event

20  of an appeal.

21          So, let me ask this.  Does anyone who has appeared

22  at today's hearing object to the entry of -- to the approval

23  of a waiver of the 14-day stay period?  I'll pause.  And I -

24  - okay, no one's saying yes.  And I'm just going to say a

25  sentence, and then I'll give you another chance.

1           The reason I'm asking this is, my inclination is

2     to approve the requested waiver of the stay under Rule

3     6004(h) and 6006(d).  However, anyone -- if there exists

4     anyone who wants to pursue an appeal or may want to pursue

5     an appeal, I will give you a chance to object to that waiver

6     of the immediate effectiveness, and thereby preserve your

7     unharried appellate rights.  But, if you don't let me know

8     that you may want to do that, I'm going to approve the

9     immediate effectiveness of the order.  So, with that more

10    long-winded explanation, is there anyone who objects to the

11    waiver of the otherwise applicable stay?

12           MR. ROSENBERG:  Your Honor, Arthur Rosenberg,

13    Holland and Knight on behalf of my client.  I'm not sure

14    what they -- how they want to proceed here.  I'm not telling

15    you they are going to appeal, but I'm not telling you

16    they're not going to appeal.  So --

17           THE COURT:  Okay.  I can also modify it.  I

18    understand, and I want to make clear, I am fully committed

19    to preserving people's rights.  I question whether your

20    client has any viable rights here, but would it be adequate

21    to meet your needs if I modified the 14-day period to seven

22    days, without prejudice to further extension request if

23    needed?

24           MR. ROSENBERG:  Sure, Your Honor, yes.  That would

25    be fine, Your Honor.

1          THE COURT:  Okay.  That'll get people a little

2     closer to where they want to go.  That is -- that'll give

3     people a little assurance that they will want sooner rather

4     than later but give you an opportunity.  Does anybody

5     object?  Now we're up to a seven-day period.  Does anyone

6     object to that?  I'll --

7          MR. GLENN:  Your Honor --

8          THE COURT:  Hang on, Mr. Glenn.  And I'll -- let

9     me just hear if any other participants in the hearing, and

10    then I'll come back to you.  Okay, no one else said yes, so

11    go ahead, Mr. Glenn.

12          MR. GLENN:  So, I just -- so the record is clear,

13    Mr. Rosenberg's client is a frustrated competitive bidder.

14    I believe under applicable law he doesn't have standing to

15    object.  I'm sure he disagrees with me, and that's not a

16    question that needs to be answered today, but I just didn't

17    want to leave today without that position being articulated

18    on the record.

19          THE COURT:  Right.  I put it more equivocally,

20    partly because I don't want to make advisory rulings, but I

21    -- you heard me I'm sure say I'm not sure what appellate

22    rights Mr. Rosenberg's client could have.  But nevertheless,

23    I think it's just sound practice to allow a seven-day

24    effectiveness period.  So, I'll ask you to modify the

25    proposed order to do that, as opposed to 14, but not zero,

1    okay?

2              And but I will say, Mr. Rosenberg, before you

3    proceed, you know, check out your client's entitlements

4    pretty carefully because I have some real questions about

5    that, as obviously does Mr. Glenn, okay?

6              MR. ROSENBERG:  No, I hear you loud and clear,

7    Your Honor.

8              THE COURT:  Okay.  Mr. Glenn, let me ask -- so

9    that -- let me say, that concludes my oral ruling.  I like

10   to say that sentence for transcript purposes, with a couple

11   of periods of colloquy injected in there.  But is there

12   anything else I need to do or hold today?

13             MR. GLENN:  So, we do have some fee applications?

14   I don't know that any of them --

15             THE COURT:  Oh, oh, I'm sorry, yes.

16             MR. GLENN:  -- (indiscernible) objections, but I -

17   - just so everybody's on the phone, on the Zoom now, given

18   the late-breaking amendments to the terms of the purchase, I

19   think what our inclination would be is not to do a -- not to

20   do an amendment to the purchase agreement itself, but to

21   just put this all in an order, which we will circulate to

22   everybody before submitting it, hopefully to the Court this

23   afternoon.  And subject to that, I think it's just the fee

24   applications at this point.

25             THE COURT:  Okay, yeah.  The -- I had thought we

1    would do the fee apps first, so they left my head.  And it's

2    been a long time talking about the sale.  So, let me ask

3    this.  There was -- it may be that two were unopposed and

4    one was opposed.  And then there's one that met -- got a

5    significant objection, and you may have worked that out.

6    Where are -- can you just tell me where you are on the fee

7    apps?

8              MR. GLENN:  I'm going to turn it over to my

9    colleague, who's been handling the fee apps, Naznen Rahman.

10   And the other professionals have representatives on the

11   phone, on the Zoom, and they can clarify --

12             THE COURT:  Okay, hang on a second.  I think --

13   I'm going to guess Mr. Missry wants permission to leave.

14             MR. MISSRY:  We do.  Yes, Your Honor.

15             THE COURT:  Okay, yes.  So, anyone -- thank you.

16   Anyone with no interest in the fee applications is -- and

17   who is only here for the sale is free to go.  We've

18   concluded that portion of the hearing, all right?

19             MR. MISSRY:  Thank you so much, Your Honor.  Take

20   care.

21             THE COURT:  Thank you all.

22             MR. MISSRY:  Thank you.

23             THE COURT:  All right.  So, yeah, Ms. Rahman, nice

24   to see you.  And yeah, let's turn to the fee applications.

25   You can just let me know where you got in your discussions.

1          MS. RAHMAN:  Sure.  Good afternoon, Your Honor.

2   For the record, Naznen Rahman, Glenn Agre for the Debtor.

3   We filed our third interim and final fee application at

4   Docket Number 340.  No objections were filed, so we filed a

5   CNO and a proposed order.

6          After we received informal comments from the U.S.

7   Trustee, we applied a reduction to the amount sought for the

8   third interim period.  And the proposed order reflects that

9   reduction.  I believe in footnotes three and four, that's

10  explained.

11         THE COURT:  Okay --

12         MS. RAHMAN:  For the record -- yeah.

13         THE COURT:  Hang on a second.  I need you to help

14  orient me.  Tell me again which fee application are we

15  talking about at the moment?

16         MS. RAHMAN:  The Glenn Agre fee application.

17         THE COURT:  Okay, got it.  Okay.  Got it.  So,

18  yes, and you're asking me to approve it as modified through

19  consensual agreement with the U.S. Trustee through informal

20  discussions, right?

21         MS. RAHMAN:  Correct.

22         THE COURT:  Okay.  Mr. Bruh, here you are.  Thank

23  you for spending such a long hearing with me.

24         MR. BRUH:  (Indiscernible), Your Honor --

25         THE COURT:  What's the U.S. Trustee's position on

1    the Glenn Agre application?

2              MR. BRUH:  Yeah, thank you, Your Honor.  Mark Bruh

3    for the United States Trustee.  We reached -- we've resolved

4    all of them.  I'll go through the first one with you, as

5    you're asking for it.

6              THE COURT:  Okay.

7              MR. BRUH:  We did give counsel informal comments

8    about certain objections, the expense, and I believe it was

9    some vagueness and some time work in related to time entries

10   made me -- the amounts set forth on the proposed order in a

11   footnote is the accurate reduction agreed to between the

12   United States Trustee and Debtor's counsel, Your Honor.

13             THE COURT:  Okay.  And that's on the Glenn Agre

14   one, right?

15             MR. BRUH:  Correct.

16             THE COURT:  And can you confirm -- you -- maybe

17   Ms. Rahman, that the amount sought for compensation for fee

18   application preparation time is not greater than five

19   percent of the total sought?

20             MS. RAHMAN:  Yes, I can confirm that.

21             THE COURT:  Okay.  Great.  Okay.  So, does anyone

22   else want to be heard with respect to the Glenn Agre fee

23   application?  All right.  No one said yes.  I'm going to

24   approve it for -- in -- on the modified terms based on the

25   negotiated reduction that's been -- that was worked out.

1    I think -- I appreciate the U.S. Trustee's work in
2    this regard, and I'm satisfied that the requirements for fee
3    award are met here.  The work was necessary and appropriate
4    for the benefit of the estate and adequately documented in
5    light of the concerns that were taken into account in
6    negotiations with the U.S. Trustee.

7    And as my one question suggests, I pay particular
8    attention to how much I'm paying people to prepare fee
9    applications, which gives me a nice bright line law rule to
10   apply.  And I'm satisfied, based on Ms. Rahman's
11   representation.  Okay, so, thanks.  You can go ahead with
12   the next one, then, Ms. Rahman.

13   MS. RAHMAN:  Your Honor, I'm aware that other
14   professionals have had discussions with the U.S. Trustee
15   regarding their fees but agreed to various discounts.
16   However, we weren't involved in preparing those fee
17   applications.

18   THE COURT:  Oh, okay.  So, those are -- yeah, so
19   who's going to -- so, I guess we're here on -- we've got --
20   well, is anyone here to speak to the Gruber firm
21   application?

22   MS. POLLACK:  Good afternoon, Your Honor, Bonnie
23   Pollack, Cullen and Dykman for Gruber Palumberi Raffaele and
24   Fried.  Bart Raffaele is also present.

25   THE COURT:  Great.

1    MS. POLLACK:  Yeah, Your Honor, the accounts were

2    retained back in 2021, in the three years, did a

3    considerable amount of work as detailed in the application.

4    There was an interim application filed in May of 2023 on

5    Gruber's behalf by the Debtor's former counsel at that time,

6    after he had already been replaced.  And it sat dormant for

7    nearly a year.

8    No one ever contacted -- nobody from the Debtor's

9    side ever contacted them to notice it, et cetera.  So, we

10   withdrew the interim application and filed the present final

11   one, in which Gruber's seeking -- sought $247,197.25.  We

12   discussed the application with the U.S. Trustee, who had

13   some issues, partly because nobody had ever really discussed

14   with Gruber how to maintain their records.

15   And it was impossible to go back and clarify three

16   years' worth of entries, so we agreed to a reduction of

17   $37,197.25, to $210,000, which is approximately 15 percent

18   of the amount sought.

19   THE COURT:  Right.

20   MS. POLLACK:  Given everything that's transpired,

21   we believe that this is a fair compromise.  On April 10th,

22   we filed the proposed order in a letter reflecting that

23   agreement.  Unless Your Honor has any questions, we would

24   ask that the application as voluntarily reduced be approved

25   by the Court.

1          THE COURT:  Oh okay, thanks.  Yeah, no, I reviewed

2     that.  Let me ask, does anyone else want to be heard with

3     respect to the Gruber (indiscernible) --

4          MR. BRUH:  Your Honor, Mark Bruh with the United

5     States Trustee.  I did reach out to counsel regarding

6     concerns in the United States Trustee regarding vague and

7     lumped time, as well as non-compliance with General Order

8     447 because there was -- the applicant did not bill on one-

9     tenth of an hour.

10         So, there were numerous issues here throughout the

11    time that the professional was retained, and that's how we

12    arrived at the amount, the reduced amount then.  And we have

13    no objection, Your Honor.

14         THE COURT:  Okay.

15         MR. BRUH:  That's the agreement we reached.

16         THE COURT:  Okay, thanks.  So, I'm going to

17    approve the application.  I've independently reviewed the

18    submission, and I think there were some issues -- this can

19    happen if people aren't familiar with bankruptcy

20    requirements, with insufficient detail and lumping and the

21    wrong time increments.

22         But I'm satisfied that the negotiated reduction

23    arrived at in discussion with the U.S. Trustee accomplishes

24    an appropriate adjustment in light of those issues, and I'm

25    further satisfied that the remaining fees sought are

1    appropriate and warrant compensation under Section 330 of

2    the Code.

3            So, you can submit a proposed order to our

4    Chambers order email box, and we'll get that process.  So,

5    yeah.

6            MS. POLLACK:  Thank you.

7            THE COURT:  Are you familiar with the -- there's

8    sort of a -- there's a standard format for those in a

9    template.  Are you up to speed on that?

10           MS. POLLACK:  The form of order?

11           THE COURT:  Yeah.

12           MS. POLLACK:  Yes, I've practiced before in the

13   Southern District all the time.

14           THE COURT:  Just making sure, since you're -- I

15   thought you had it down, but not your client originally.

16   So, yeah, make sure you follow the standard form of order,

17   and that'll make life easy, all right?

18           MS. POLLACK:  Thank you, Your Honor.

19           THE COURT:  Thank you.  Okay, and then we're down

20   to I think the third and final fee application, which is on

21   behalf of the Rosenberg firm.  Am I right?

22           MR. GIAMPOLO:  Good afternoon, Your Honor.  John

23   Giampolo for Rosenberg and Estis regarding its third and

24   final fee application.

25           THE COURT:  Right.  Nice to see you.

1          MR. GIAMPOLO:  Thank you, Your Honor.  We've

2    resolved the United States Trustee's objection to our fee

3    application.  No other objections were filed or voiced.  And

4    we resolved it for a voluntary reduction in the amount of

5    $21,532.57, which is a 15 percent reduction, which ensures

6    that the total fees paid for preparation of the fee

7    application are five percent or less, and resolves all other

8    issues raised by the United States Trustee, vagueness,

9    lumping, et cetera.

10          THE COURT:  Okay.  And so, the total amount to be

11    paid is a little in excess -- a little over $100,000 at this

12    point?  What's the total amount?

13          MR. GIAMPOLO:  The total amount to be paid, Your

14    Honor, is by my calculation in my revised proposed order

15    that I circulated to the United States Trustee and the

16    Debtor is $172,508.43.  And Your Honor, that is because the

17    -- that -- that's because we -- my firm has not been -- not

18    received payment under the second interim fee application

19    order.

20          THE COURT:  Oh yeah, you're combining.

21          MR. GIAMPOLO:  Right.  Plus, the amount -- the

22    reduced amount for this third and final fee application

23    period comes to $122,000 -- excuse me -- $122,017.93.

24          THE COURT:  Okay.  Got it.  All right.  Let's see.

25    Let me hear from Mr. Bruh about this one if I may.

1           MR. BRUH:  Thank you, Your Honor.  Mark Bruh for

2      the United States Trustee.  We filed an objection in this

3      one because I -- counsel was away and then I was away, and

4      just in an abundance of caution, I wanted to put something

5      on file, and I just didn't have a chance to engage with

6      informal discussions with counsel after the objection was

7      filed and we set forth three topics.

8           One was the five percent capped.  I know Your

9      Honor puts it in, in preparation of fee apps.  We saw that

10     there was an increase in the billing rate, and there was a

11     lot of vague and lumped time.  counsel did come back to me

12     showing that certain of the time for the prior period, as

13     well as that -- they disclosed the rate increase that was

14     buried in their certification in their fee app, which was

15     not --

16          THE COURT:  Right.  I saw that, yeah.

17          MR. BRUH:  -- proper and maybe going forward, you

18     know, they have to file a notice.  So, taking those into

19     account -- into consideration, we've resolved it at the 15

20     percent across the board, Your Honor.

21          THE COURT:  Okay, I'm satisfied, and I'll approve

22     the fee application as revised.  I will say, the objection

23     filed by the U.S. Trustee I think was pretty well taken.  I

24     was concerned with some of the -- I guess I'm sure they

25     picked out some of the more concerning lumped billing

1  entries.

2         I understand from the response, I think the

3  position was, look, I worked -- we worked three hours on

4  essentially a document-driven task and tossed in an email or

5  a phone call here and there all in the same task.

6         But that needs to be teased out and explained.  I

7  mean, that's -- and so, that is concerning.  But and as well

8  as the fee preparation limit that I imposed.  Excuse me.

9  And in the future, make sure you follow the appropriate

10 billing rate notification or disclosure process, okay?

11        But having said all of that, I think the reduction

12 arrived at satisfies all of the concerns I identified coming

13 in.  I am satisfied that the remaining amount for which

14 approval is sought is appropriate and justified under

15 Section 330, so it's approved, okay?  So, you can just

16 submit your proposed order to Chambers.

17        This hearing's been so long that I've run out of

18 water.  Okay.  But I think that brings us to a close of a

19 long hearing.  Mr. Glenn, anything else you want to raise?

20        MR. GLENN:  No, Your Honor.  I think we're all

21 set.  Thank you very much for your time.

22        THE COURT:  Okay, thank you very much.  I -- do

23 let me know if and when you successfully close on this

24 transaction.  I'll want to see or hear of it.  I -- if -- I

25 guess the appropriate formal way to do it is maybe to file a

1     notice of closing having occurred, but --

2            MR. GLENN:  We will do that; we will do that.

3            THE COURT:  That would be great.  All right?

4     Thanks everybody.

5            MR. GLENN:  And I think, Your Honor, just one

6     quick housekeeping matter.

7            THE COURT:  Sure.

8            MR. GLENN:  We put on for status conference in

9     response to Mr. Barr's concern that the sale process was

10    going to drag on, a status conference in mid-June.  I think,

11    you know, we'll file a notice of closing, and I don't -- I

12    think we -- do -- we might have set the date, if we did,

13    we'll cancel the date with the Court.  I just wanted to note

14    that.

15           THE COURT:  Okay.  Why don't you keep it in place

16    for now?  And because if anything's fallen off the rails,

17    we'll -- I'll want to see you, and if I get a nice notice

18    saying we closed, then you can cancel that.  My --

19           MR. GLENN:  Very well.

20           THE COURT:  -- ever-ready deputy, Ms. Calderon

21    says she doesn't have a date for you in June, so --

22           MR. GLENN:  Okay.

23           THE COURT:  -- that -- I don't know if that means

24    you didn't schedule it or (indiscernible) --

25           MR. GLENN:  We'll set one, we'll set one.

1          THE COURT:  Yeah.

2          MR. GLENN:  We'll set one, okay.

3          THE COURT:  I'm -- yes.  So, find a date, and

4     let's get a conference scheduled just to have guardrails in

5     place, okay?

6          MR. GLENN:  Okay, thank you.

7          THE COURT:  All right.  Thanks, everybody.  Take

8     care.  We're adjourned.

9          MR. GLENN:  Bye-bye, thank you, Judge.

10          (Whereupon these proceedings were concluded)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    I N D E X

2

3                    RULINGS

4                                   Page      Line

5    Objection filed by Office of the        63        5

6    U.S. Trustee, to the Extent It's Not

7    Resolved, the Objection, OVERRULED

8    Limited Objection Filed by Branton,      63        21

9    OVERRULED

10   Glen Agree Fee Application, GRANTED      74        23

11   Gruber Palumberi Raffaele & Fried, CPAs PC   77    16

12   Fee Application GRANTED

13   Rosenberg Firm Fee Application           80        21

14

15

16

17

18

19

20

21

22

23

24

25

1            C E R T I F I C A T I O N

2

3     I, Sonya Ledanski Hyde, certified that the foregoing

4  transcript is a true and accurate record of the proceedings.

5

6

7

8  Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20  Veritext Legal Solutions

21  330 Old Country Road

22  Suite 300

23  Mineola, NY 11501

24

25  Date:  April 23, 2024

| & |
| --- |
| **&** 2:9,12,16 84:11 |

| 1 |
| --- |
| **1** 2:1 |
| **1,570,000** 36:25 |
| **10** 34:18 68:9 |
| **100** 51:2,3 |
| **100,000** 79:11 |
| **10004** 1:14 |
| **10004-1408** 4:5 |
| **10017** 3:21 4:19 |
| **10025** 3:14 |
| **10036** 3:6 4:12 5:4 |
| **1063** 59:13 |
| **106th** 3:13 |
| **1070** 59:18 |
| **1071** 59:13 60:8 |
| **10:00** 1:17 |
| **10th** 76:21 |
| **11** 59:20 |
| **11501** 85:23 |
| **11533** 5:12 |
| **1185** 3:5 |
| **12151** 85:7 |
| **122,000** 79:23 |
| **122,017.93.** 79:23 |
| **126** 59:22 67:1 |
| **14** 7:14 67:20 68:23 69:21 70:25 |

| 2 |
| --- |
| **14th** 4:18 27:23 |
| **15** 76:17 79:5 80:19 |
| **16** 84:11 |
| **172,508.43.** 79:16 |
| **18** 1:16 |
| **1983** 59:13 |
| **1997** 59:23 |
| **1st** 68:10 |

| 2 |
| --- |
| **2** 2:8 34:6 42:18 |
| **2.2** 36:16 37:11 |
| **20** 12:17 |
| **2011** 65:23 |
| **2020** 41:11 |
| **2021** 58:11 76:2 |
| **2022** 61:4 |
| **2023** 27:25 28:21 76:4 |
| **2024** 1:16 27:24 58:21 85:25 |
| **21** 84:8,13 |
| **21,532.57** 79:5 |
| **21-10529** 1:3 |
| **210,000** 76:17 |
| **211** 3:13 |
| **22nd** 3:5 |
| **23** 84:10 85:25 |
| **24** 8:6 9:25 32:25 58:8 |
| **24.5** 13:3 |

| 2 |
| --- |
| **247,197.25.** 76:11 |
| **29** 3:19 10:22 16:5 58:5 |
| **2d** 59:13,23 |
| **2nd** 3:20 |

| 3 |
| --- |
| **3** 2:12 36:17 66:2,13,19 |
| **3,250,000** 40:21 41:22 |
| **3.2** 42:16 |
| **3.25** 62:23 |
| **30** 14:11,11,19 |
| **300** 85:22 |
| **30th** 51:18 52:22 58:20 |
| **31** 27:25 |
| **330** 78:1 81:15 85:21 |
| **333** 5:11 |
| **340** 73:4 |
| **36** 65:17 |
| **363** 48:1 59:8 59:10,18,25 65:17,19 66:2 66:12,19,21,23 |
| **37,197.25** 76:17 |
| **380** 59:23 |
| **387** 59:23 |
| **389** 67:1 |
| **390** 67:3 |

| 4 |
| --- |
| **4** 2:16 |

| 4,710,000 |
| --- |
| **4,710,000** 36:23 |
| **4.5** 12:14 |
| **40** 13:3 |
| **447** 77:8 |
| **453** 65:22 |
| **477** 65:22 |
| **483** 65:22 |

| 5 |
| --- |
| **5** 49:7 84:5 |

| 6 |
| --- |
| **6.28** 36:25 |
| **6.3** 37:3 |
| **6004** 67:18,19 69:3 |
| **6006** 67:18,21 69:3 |
| **61-66** 41:2 |
| **62.8** 15:22 46:11 |
| **63** 84:5,8 |
| **65** 9:6,12 13:17 15:22 48:23 50:15 58:7 66:5 |
| **6:00** 15:21 |

| 7 |
| --- |
| **7** 4:11 |
| **722** 59:13 60:8 |
| **733** 4:18 |
| **74** 84:10 |
| **77** 84:11 |
| **7:00** 16:6 |
| **7a** 3:13 |

| 8 |
|---|
| **80** 84:13 |
| **885** 3:20 |

| 9 |
|---|
| **95** 47:14 |

| a |
|---|

**abandon** 35:22
**abeyance** 18:20 19:15
**ability** 34:21 34:23 38:7,14 43:19
**able** 18:24 40:2 61:20
**absence** 44:16
**absent** 34:23
**absolute** 33:21 68:10
**absolutely** 24:19 37:19 38:10 42:10 48:7 49:21
**abundance** 80:4
**accelerated** 19:6
**accept** 66:16
**acceptable** 16:19 45:24 47:4
**accident** 51:19
**accommodate** 9:5
**accompanied** 42:17 67:15

**accomplishes** 77:23
**account** 10:25 75:5 80:19
**accountant** 2:9
**accounts** 76:1
**accurate** 74:11 85:4
**achieved** 58:8
**achieves** 62:1
**achieving** 52:4 62:24
**acknowledge** 38:22 55:25
**acquisition** 54:13
**act** 22:9 60:12
**acting** 22:16
**action** 40:3 44:9
**actionable** 9:1
**actively** 56:6
**activity** 63:12
**actual** 10:18 26:21 28:17
**actually** 7:10 18:21 24:2 33:6 38:15 43:23 52:4
**add** 13:14 15:14 16:9,11 16:15 17:14 28:23 36:8 44:11,19 56:15 65:2
**addition** 61:18

**additional** 10:20,25 16:15 36:16 38:13
**additionally** 36:22
**address** 12:22 13:21 14:12 19:13 26:22 44:7 45:15 54:7
**addressed** 40:3
**addressing** 7:8
**adequate** 67:5 69:20
**adequately** 61:21 75:4
**adjourned** 83:8
**adjourning** 54:3
**adjudicate** 38:11
**adjustment** 77:24
**admin** 30:25
**administrative** 11:15 30:2,13
**advanced** 60:21
**advancement** 26:7
**adverse** 66:25
**advisory** 70:20
**afar** 32:2
**afternoon** 15:16,17 47:10 71:23 73:1

75:22 78:22
**agenda** 8:2
**agent** 37:2
**aggregate** 66:1
**ago** 11:24 43:12 49:8
**agre** 2:12 3:3 7:6 73:2,16 74:1,13,22
**agree** 23:10,10 43:1 46:4 53:11 61:13 62:22 84:10
**agreeable** 22:1
**agreed** 9:12 14:14 15:18 18:14 21:5,11 45:25 55:5 58:24 74:11 75:15 76:16
**agreement** 14:10 22:13 26:3 46:6 57:9 62:14 71:20 73:19 76:23 77:15
**agreements** 14:15
**agrees** 45:20
**ahead** 24:4,17 25:1 26:16 32:8,11 34:13 36:12 39:14,22 47:11 70:11 75:11
**aimed** 17:9 66:21

akin 26:6
alexander 4:4
aligns 28:16
　44:13
alike 60:14
allow 10:19
　70:23
allowance 2:9
　2:13,17
allowed 12:11
　33:3 66:6
allowing 14:11
　58:25
alternative
　33:13,18
ambiguous
　17:4
ameliorated
　37:18
amenable
　45:24
amendment
　25:10 71:20
amendments
　71:18
americas 3:5
amount 8:20
　17:7 46:8
　56:25 60:2
　73:7 74:17
　76:3,18 77:12
　77:12 79:4,10
　79:12,13,21,22
　81:13
amounts 74:10
analysis 33:21

ancillary 27:3
andrew 3:8 7:5
answer 15:17
　42:14 48:17
answered
　70:16
anticipate
　57:21
anticipated
　7:11 66:5
anybody 14:25
　44:4 57:12
　70:4
anyone's 35:19
anything's
　82:16
anyway 28:22
　31:17 40:12
apologies
　50:20 55:4,21
apologize
　48:20
app 80:14
appeal 68:20
　69:4,5,15,16
appear 18:17
　66:17
appearance
　7:19 16:7
appearances
　7:4,16
appeared 16:6
　68:21
appears 29:19
appeasement
　59:15

appellate
　68:17 69:7
　70:21
apples 50:22
　50:22
applicable
　22:24 59:9
　60:20 69:11
　70:14
applicant 77:8
application 2:8
　2:12,16 54:4
　59:10,12 73:3
　73:14,16 74:1
　74:18,23 75:21
　76:3,4,10,12
　76:24 77:17
　78:20,24 79:3
　79:7,18,22
　80:22 84:10,12
　84:13
applications
　8:11 71:13,24
　72:16,24 75:9
　75:17
applied 73:7
applies 66:23
apply 67:17
　75:10
appraisals
　60:7
appreciable
　60:24
appreciate
　39:5 51:13
　52:2 57:2
　63:12 75:1

approached
　15:21
appropriate
　57:13 65:1
　67:7 75:3
　77:24 78:1
　81:9,14,25
approval 10:17
　10:20 58:3
　63:23 68:22
　81:14
approve 8:3,14
　24:11 34:2,4
　57:22 69:2,8
　73:18 74:24
　77:17 80:21
approved 10:2
　11:5 21:19
　29:8 58:20
　63:19 64:24
　76:24 81:15
approving 2:2
　2:4 31:16,16
approximate
　12:13
approximately
　76:17
approximation
　62:1
apps 72:1,7,9
　80:9
april 1:16
　76:21 85:25
apt 3:13
argument 40:4
　65:6

**arguments**
57:2
**arising** 50:7
**arm's** 45:17
67:9
**arrangements**
38:5
**arrival** 55:23
**arrive** 23:18
**arrived** 23:20
77:12,23 81:12
**arriving** 10:7
**arthur** 4:21
47:12 69:12
**articulate** 16:2
**articulated**
15:13 42:24
59:14,24 60:16
70:17
**aside** 29:19
**asked** 10:25
18:14 48:15
**asking** 20:21
20:24 26:5
30:4 35:15
69:1 73:18
74:5
**asks** 58:3
**aspects** 65:13
**aspersions**
49:15
**asserted** 26:7
26:10
**assessed** 56:12
**assessment**
56:24

**asset** 57:24,24
57:25 60:1
**assets** 12:6
30:20 66:24
**assignment** 2:5
**assistance** 61:5
67:10
**associates**
47:14
**assume** 66:16
**assumption**
2:4 37:8
**assurance** 70:3
**assurances**
10:13 11:7
**assured** 36:5
**attach** 20:20
43:25
**attached** 63:23
**attempted** 35:2
**attempting**
61:8
**attending**
38:22
**attention** 75:8
**attorneys** 3:4
3:19 4:2,10,17
5:2,9
**auction** 8:18
32:25 33:22
34:3,17 48:5
48:16 49:3,5
50:8,8,11 51:5
52:2,3,5 61:12
61:13,18 62:6
**auctions** 50:19
62:3

**augment** 42:21
**authorized**
64:19
**authorizing**
67:19
**auto** 52:25
**automatically**
52:23
**available** 11:18
12:25 26:14
43:2
**avenue** 3:5,20
4:18 41:5
**award** 75:3
**aware** 32:7,14
64:4 75:13

**b**

**b** 1:21 53:14,17
59:8,10,18
66:23
**b.r.** 65:22
**back** 17:18
19:3 21:22
22:20 27:18
31:22 34:24
44:6 48:19,19
50:12 51:15
54:2 56:4 61:4
70:10 76:2,15
80:11
**backdrop**
65:18
**backup** 33:6
**bad** 49:14
55:15,17
**balancing** 68:5

**ball** 42:20
**bank** 10:25
**bankr** 65:22
**bankruptcy**
1:1,12,23
47:22 58:10,13
58:23 59:17
60:10 77:19
**barr** 3:11,16
39:2,22,23
40:1,6,8,11
42:1,10 43:6
43:14 44:18,21
45:1,16
**barr's** 82:9
**bart** 5:20 75:24
**based** 29:23
49:6 63:9
74:24 75:10
**basic** 39:4
**basically** 14:7
35:4,8 42:7
59:7
**basis** 11:10
14:24 29:6
38:12 44:7
46:12,16 65:11
67:5
**batches** 8:2
**beginning**
47:18 49:21
61:4
**behalf** 7:6
30:24 44:11
45:13 53:24
64:6 69:13
76:5 78:21

**believe** 7:21
8:9 9:24 11:8
12:14,17 14:20
15:7 17:21,22
18:21 19:3,23
27:12 28:6
34:22 35:10
37:15 48:9
68:9 70:14
73:9 74:8
76:21
**believes** 60:17
**beneficial** 34:1
**beneficially**
62:11
**beneficiaries**
51:21
**benefit** 18:23
19:6 20:3
37:12 59:3
60:24 75:4
**benefits** 64:22
**benefitted**
27:22
**bergman** 2:12
3:3 7:6
**best** 26:14
33:25 43:2
50:12 56:24
58:12 62:3
**better** 10:14
49:16 50:22,24
52:5 55:13
61:13
**beyond** 11:4
19:10 51:20

**bid** 8:18 16:20
17:7 49:17,18
50:21,22 55:5
55:8,12
**bidder** 33:6
58:9 70:13
**bidders** 16:25
**bidding** 49:10
49:11 54:12
**bids** 50:20,20
**big** 7:10 8:3
**bill** 77:8
**billing** 80:10
80:25 81:10
**binding** 25:6
**bird** 53:18
**bit** 10:8 25:17
52:1
**board** 80:20
**bonnie** 5:14
75:22
**borders** 65:22
**boulevard** 5:11
**bowling** 1:13
**box** 78:4
**branton** 4:10
24:20 25:2,7,9
25:11,21,22
26:3 27:6
28:15,16 29:2
29:11 30:24
31:20 32:14,14
39:16 53:24
54:1,3,12
55:10,18 61:7
63:21,24 64:3
64:15,16 65:2

65:3 84:8
**branton's** 25:4
54:6 65:9
**breach** 36:1
**breached**
36:18
**break** 14:7
**breaking** 9:21
71:18
**breakup** 35:3,6
35:21 40:5,16
41:22 42:4,16
45:9 46:9 49:7
49:8 51:7
**brett** 6:1
**brief** 57:20
**bright** 75:9
**bring** 29:22
31:8
**brings** 63:6
67:16 81:18
**broker** 27:8
**brokerage** 54:7
56:9
**brokers** 27:17
27:21 28:11
**brought** 51:21
52:15,16,17
**bruh** 4:7 20:9
20:12,12 22:2
22:18,20 23:4
23:6,16 24:2,5
24:5,17 28:8,8
28:11 73:22,24
74:2,2,7,15
77:4,4,15
79:25 80:1,1

80:17
**building** 5:10
35:9 44:5
46:21 58:2
**built** 12:2
**burden** 68:19
**buried** 80:14
**bush** 53:19
**business** 33:25
42:25 52:9,10
52:13 53:12
55:14,14 56:14
59:12,14,17,21
59:22 60:16,17
62:17 63:3
**button** 31:22
**buttoned** 50:2
**buyer** 9:10,11
9:11,13,15,20
9:21,22 10:5,6
10:8,14,16,22
10:23,25 14:4
14:9 15:20
16:4 33:8,9,13
35:4,14 38:3,9
38:14 40:22
54:6,16 56:13
66:24
**buyers** 14:2
33:18 40:2
49:20
**bye** 83:9,9

**c**

**c** 3:1 5:18 7:1
85:1,1
**caesar's** 50:3,5

cajoled 37:10
calculation 79:14
calculus 34:15
calderon 82:20
calendar 7:3
call 10:22 25:12 32:24 50:16 60:25 81:5
called 24:20,21 47:14
camera 16:12
cancel 82:13 82:18
capacities 22:16
capacity 22:4,6 22:22
capital 38:13
capped 80:8
care 55:5 72:20 83:8
carefully 71:4
carlos 5:21
carroll 4:14 29:13,14 30:9 30:12 31:5,10 53:23,24
carroll's 55:5
case 1:3 7:2,3 12:19 13:7,8 22:22 25:20 29:24 31:25 34:23 37:24 47:16 48:8,10 50:6 52:6

55:16 58:18 59:2 61:2 64:18 65:8
cases 50:10
cash 12:12 50:23 58:6
casting 49:15
cause 41:14
caution 80:4
certain 10:17 21:23 33:11 74:8 80:12
certainly 43:6 44:8 48:12 53:7 55:17 57:9
certainty 62:25
certificate 41:12
certification 80:14
certified 85:3
cetera 52:22 76:9 79:9
challenges 14:25
chambers 9:4 78:4 81:16
chance 39:8 45:8,12 52:19 68:25 69:5 80:5
change 15:24
chapter 59:20
check 19:3 71:3

checked 10:7
chime 15:9
choose 35:21
chose 12:8
cir 59:13,23
circle 31:24
circuit 59:19 66:23
circulate 24:13 71:21
circulated 57:8 79:15
circumstance 38:13 43:11,19 44:3
circumstances 26:15 40:17 43:3 61:18
citing 59:23
claim 26:21 28:17,18 30:3 30:6,25 31:8 64:7,14
claims 2:3 12:13 13:1,11 13:12 26:7 32:14 39:16 43:23 66:6,25
clarification 15:19 16:15 20:9 21:25
clarifications 63:9,15
clarify 72:11 76:15
clause 18:6 27:7,8,22,22

28:22 63:14,17 65:5
clean 50:6 57:17
clear 2:2 16:19 17:2,4 20:18 34:16 43:5,23 44:12 55:9 57:23 58:12 60:21 63:16 65:16,20,25 66:13 69:18 70:12 71:6
cleared 43:11
clearly 16:3 34:23
clicked 39:25
client 32:15 36:15,22 45:21 47:15 48:13,18 49:12,21 50:14 50:19,23 51:13 55:6,10 69:13 69:20 70:13,22 78:15
client's 52:17 56:10 71:3
close 14:5,8 15:2,24 33:7,9 33:15 34:8 35:22 37:3,5,8 37:9 38:10 42:8 52:21 56:22 68:1,3,4 68:7 81:18,23
closed 14:22 82:18

**closer** 68:12
70:2
**closes** 30:16
**closing** 14:12
14:14,18 16:23
33:4 35:11
37:21 38:7
40:21 62:25
68:11 82:1,11
**cno** 73:5
**code** 59:9
65:17 66:14
67:9 78:2
**cohen** 3:24
16:10,13,14
17:10,16
**cohorts** 48:14
**colleague** 7:7
72:9
**colleagues**
68:19
**collectively**
22:22
**colloquy** 23:23
71:11
**combined**
51:16
**combining**
79:20
**come** 11:9
17:18 21:22
31:22,25 39:2
39:3,21 41:10
41:17 56:4
70:10 80:11
**comes** 33:23
34:18 36:3

38:12 79:23
**comfort** 18:24
20:10 31:13
33:13 43:22
**comfortable**
23:21 38:15
39:4 45:11
**coming** 10:5
27:21 28:15
29:9 81:12
**commenced**
29:25 30:17
58:11
**comment** 56:9
**commented**
61:5
**comments** 17:3
44:13 56:5
61:12 73:6
74:7
**commitment**
42:17 62:22
65:10
**committed**
69:18
**common** 51:5
**communicated**
56:10
**companies**
41:16
**company** 1:7
41:10 43:11,22
47:14 55:10
**compensate**
51:21
**compensation**
2:10,13,17

74:17 78:1
**compete** 10:7
**competing**
9:21,22 10:5,8
10:23 17:6
47:13 58:8
**competitive**
9:12 10:13
14:9 70:13
**complete** 13:15
50:24
**completed**
65:24
**completely**
8:10
**completion**
51:18 58:19
**compliance**
77:7
**compliment**
45:21
**component**
42:5 58:7
**compromise**
76:21
**conceive** 41:1
**concept** 19:14
22:2
**concern** 18:5
21:6 23:6
30:23 33:8
34:7 39:17
40:15 42:12
43:6,8 51:24
82:9
**concerned** 18:4
20:16 29:21,24

29:24 37:21
38:4 41:16,19
80:24
**concerning**
80:25 81:7
**concerns** 19:12
37:17 42:3
44:2 54:5 62:8
75:5 77:6
81:12
**concession**
35:4
**concessions**
35:15
**concise** 13:15
**conclude** 65:8
67:6
**concluded**
72:18 83:10
**concludes** 71:9
**conclusion**
66:19
**conclusions**
57:6
**condition**
65:11
**conditioned**
14:1
**conditions**
17:8 65:21
**conduct** 25:2
25:13 67:2
**conducted**
20:19 59:21
**conference**
82:8,10 83:4

**confidence**
46:15 55:24
56:1 61:25
**confident**
61:23
**confirm** 11:15
12:6 24:6
27:10,11 39:15
39:19 74:16,20
**confirmation**
20:18 21:1,19
22:21 27:7,18
29:2 51:16
52:17 58:4
60:5 64:18,19
65:7
**confirmed**
11:24 27:6
28:24,24 31:1
58:18 60:4
64:3
**conjunction**
18:25 20:1
**connection**
22:17 26:13
30:8 42:19
49:10 62:14
**consensual**
73:19
**consequences**
45:4
**consider** 57:13
60:11
**considerable**
76:3
**consideration**
80:19

**considering**
59:25
**considers**
62:19
**consortium**
59:6
**constituents**
58:22
**constructive**
32:1
**contacted** 9:4
76:8,9
**contain** 57:5
**contemplate**
8:17
**contemplated**
19:4 20:19
29:7
**contemplates**
28:24
**contemplation**
31:1
**contention**
61:10
**contentious**
58:17
**contents** 57:14
**contingent**
65:9
**continue** 43:7
**continued** 19:7
**contract** 26:20
45:4 54:16
**contracts** 2:5
**contractual**
26:5 30:19

**contrary** 33:19
66:10
**control** 14:9
36:4
**conversations**
63:10
**corp** 59:13
**correct** 15:8
17:9,10,10
18:9 19:20,22
20:5 24:9 30:9
52:9 54:15
73:21 74:15
**correctly** 13:24
**costs** 11:15
**could've** 18:16
29:2
**counsel** 9:18
9:20,20 10:4
15:7 20:15
21:17 24:7
39:10,11 46:13
47:13 65:7
74:7,12 76:5
77:5 80:3,6,11
**counsel's** 40:19
**counterbid**
51:8
**country** 48:3
85:21
**couple** 27:5
36:8 38:2 52:8
65:13 71:10
**course** 7:17
59:17,21 62:8
62:12 67:2

**court** 1:1,12
7:2,9,24 8:16
8:22 9:4 10:3
10:20 11:12,21
11:25 12:2,23
13:2,10,13,19
13:22 15:10
16:1,7,8,13
17:2,11,17
18:2,10,12
19:16,24 20:2
20:6,8 21:22
22:8,18 23:7
23:11,15,17
24:4,10,13,19
24:23 25:1
26:9,16 27:1,4
27:5,16 28:3,7
28:10,13 30:5
30:11,22 31:9
31:12 32:4,8
32:11,16,19
33:20,23 34:3
34:10,12,16,22
35:18,24 36:11
36:14,21 37:6
37:13 38:1,17
38:21 39:7,12
39:14,18,21,24
40:6,10 41:25
42:2,11,14
44:1,10,16,25
45:7 46:1,23
47:3,7,11
51:12,24 52:25
53:5,9,15,20
54:9,18,21,25

55:2,17,22
56:17 57:1,20
57:22 58:3,18
58:24 60:11,19
64:12,17 67:5
67:20 68:14,19
69:17 70:1,8
70:19 71:8,15
71:22,25 72:12
72:15,21,23
73:11,13,17,22
73:25 74:6,13
74:16,21 75:18
75:25 76:19,25
77:1,14,16
78:7,11,14,19
78:25 79:10,20
79:24 80:16,21
81:22 82:3,7
82:13,15,20,23
83:1,3,7
**court's** 63:23
66:19
**coverage** 27:20
**covered** 27:6
28:21 44:19
56:16
**covering** 20:13
**covers** 17:12
**cpas** 2:9 5:9
84:11
**create** 41:12
**creditors** 11:16
12:7,8 19:6
59:2,15 60:13
60:23

**critique** 51:25
**crowd** 7:10
**cullen** 5:8
75:23
**cultivate** 61:8
**cure** 14:23
36:2 40:23
41:7 45:14,14
**current** 26:15
28:18
**currently** 30:25
**cushion** 13:4
**custom** 4:4
**cut** 18:15 42:15
46:24
**cutting** 24:3

**d**

**d** 4:22 5:23 7:1
67:18,21 69:3
84:1
**damage** 15:19
36:17 46:10
**damages** 14:6
16:16,22 33:4
35:13 62:13,22
62:23
**dance** 47:21
49:16
**dancing** 47:20
**date** 10:18
14:12,14,19
18:15,16 20:19
27:23 37:20,22
51:17 58:19
82:12,13,21
83:3 85:25

**dates** 33:11
**dating** 8:24
**david** 1:22
**day** 10:23
14:11,19 30:16
45:5 54:21
68:23 69:21
70:5,23
**days** 36:24
52:18 67:20
68:9 69:22
**deal** 14:8 15:2
16:18 17:4,23
33:15 35:22
37:12 45:17,19
45:22,25 46:14
46:14,20 47:4
50:24 57:14
**deals** 17:6
**dealt** 41:19
54:21
**debtor** 1:9 3:4
7:7,20 11:22
12:25 16:18,24
17:5 22:1,23
30:20,20 33:10
33:23 35:20
56:20 58:3,10
60:13,15 61:3
61:14,19,23
62:4,10 66:3
66:15,23 67:4
73:2 79:16
**debtor's** 9:17
9:24 20:15
22:23 24:7
27:13 28:16

40:19 57:13,23
62:17 65:7
74:12 76:5,8
**debtors** 2:1
17:14 21:11
33:15,21 47:16
48:6 51:14
57:10
**december**
27:25
**decided** 36:18
49:9
**decision** 31:20
41:10
**declarative**
35:1
**deem** 23:22
**default** 15:23
41:24 44:23
45:13
**defaulted** 37:2
**defaults** 14:24
**defend** 45:25
**defer** 41:2
**definitely**
38:19
**definitive** 49:3
**delay** 40:21
**delays** 12:11
41:20
**deleted** 23:6
**delighted**
32:24
**deliver** 11:10
18:25
**delivered**
18:21

**demands** 42:19
**demonstrated**
  61:19 67:1
**deposit** 10:25
  36:23 37:1
  38:12
**deputy** 82:20
**derail** 40:20
**describe** 13:20
**described**
  15:11 22:2
  32:21
**deserve** 18:23
  19:8
**deserves** 15:4
  35:14
**desirable**
  51:20
**detail** 77:20
**detailed** 76:3
**determination**
  61:15
**determined**
  56:12
**determines**
  52:4
**determining**
  59:10
**development**
  9:23 54:13
**developments**
  8:6,7
**dialed** 27:18
**dibs** 38:25
**differences**
  25:13 29:20
  43:7

**different** 21:15
  26:6 50:24
  51:4
**differently**
  48:8
**difficult** 53:4
  61:20
**difficulty** 61:9
**diligence** 41:10
**dimming** 52:25
**dip** 33:10,16
  66:7
**direction** 50:24
**disagrees**
  70:15
**disclosed** 80:13
**disclosure**
  51:17 81:10
**discounts**
  75:15
**discretion**
  50:25 53:12
**discussed**
  32:15 76:12,13
**discussion**
  77:23
**discussions**
  7:21 9:9,9
  20:15 72:25
  73:20 75:14
  80:6
**disjunctive**
  65:20
**display** 52:11
**disposition**
  59:18 60:5,7

**dispute** 13:8
  19:1 25:12
**disputed** 12:12
  13:11,12
**dissention**
  25:12
**dissolving**
  41:11
**distribute** 12:6
**distributed**
  30:3,14,16
  64:23
**distribution**
  29:1 31:2
  64:19
**distributions**
  28:25
**district** 1:2 4:3
  47:23 48:2
  68:19 78:13
**diverse** 60:13
**docket** 73:4
**document** 81:4
**documented**
  75:4
**documents**
  10:24 18:3
**doing** 9:16
  20:4 31:13
  46:7
**doj** 4:1
**dormant** 76:6
**doubled** 39:25
**doubt** 26:21
**drafted** 19:13
**drag** 82:10

**driven** 81:4
**dsj** 1:3
**due** 41:10
**duties** 22:12
  33:19
**dykman** 5:8
  75:23

e

**e** 1:21,21 3:1,1
  4:21 5:19 7:1,1
  84:1 85:1
**earle** 5:11
**earlier** 54:1
  61:5
**earliest** 68:1
**early** 37:23
  51:15 68:6
**earned** 54:17
**eases** 42:18
**easy** 48:22,24
  78:17
**economic**
  25:19 62:7
**economically**
  58:14 66:17
**economics** 59:2
**ecro** 1:25
**effect** 60:5
  67:21
**effective** 18:15
  20:19 27:23
**effectiveness**
  69:6,9 70:24
**efforts** 63:12
**either** 8:9
  11:13 23:22
  64:9,14

| | | | |
|---|---|---|---|
| **elapsed** 8:20 | **entities** 22:5 | **estate** 3:12 | **exception** |
| 60:2 | **entitled** 26:24 | 11:16 21:7,9 | 48:12 66:24 |
| **eleven** 5:3 | 35:17,19 65:4 | 21:13 22:1,9 | **excess** 12:24 |
| **eliminate** | **entitlement** | 22:24 23:2 | 79:11 |
| 14:14 27:20 | 28:19 29:4 | 34:2 40:8,24 | **exchange** |
| **email** 13:25 | 30:24 31:4 | 42:6 43:17 | 62:23 |
| 78:4 81:4 | 64:1 | 45:2 46:8,20 | **exclusive** 54:7 |
| **emerged** 54:16 | **entitlements** | 46:22 51:21 | 60:9 |
| **emptively** 8:19 | 65:9 71:3 | 58:23 59:20 | **exculpate** 21:8 |
| **encourage** 17:5 | **entity** 16:5 | 60:1,23 61:6 | 22:16 |
| **encumbrance** | 21:14 24:24 | 62:12 64:22 | **exculpated** |
| 66:7,8 | 64:6 | 65:4,10 67:11 | 20:23 22:21 |
| **encumbrances** | **entries** 74:9 | 75:4 | 27:13 |
| 2:3,4 66:16 | 76:16 81:1 | **estates** 21:12 | **exculpation** |
| **ended** 58:25 | **entry** 2:1 67:20 | **estis** 2:16 4:16 | 17:24 18:6,14 |
| **energetic** 62:4 | 68:22 | 4:17 15:7 | 18:15,24 19:3 |
| **engage** 14:2 | **envelopes** | 78:23 | 19:9,10,14,15 |
| 17:5 33:3 80:5 | 51:10 | **et** 52:22 76:9 | 20:20 21:7,18 |
| **engaged** 17:24 | **equity** 37:9 | 79:9 | 27:7,7,19 |
| 51:14 61:3,16 | 40:11 60:13 | **evaluate** 59:25 | 28:22 63:14,16 |
| 61:24 62:4 | **equivalent** | **event** 33:7 | 65:5 |
| **engagement** | 58:14 62:5 | 35:20 55:8 | **excuse** 65:17 |
| 25:7,9 27:9 | **equivocal** 65:7 | 68:19 | 79:23 81:8 |
| **enhanced** | **equivocally** | **everybody** | **execution** |
| 13:17 | 70:19 | 56:6 68:12 | 56:25 62:21 |
| **enjoin** 43:19 | **escrow** 25:24 | 71:22 82:4 | **executory** 2:5 |
| **enjoys** 55:25 | 26:4 37:2 | 83:7 | **exemption** |
| **ensures** 79:5 | **escrowed** | **everybody's** | 41:2 |
| **ensuring** 63:18 | 63:24 | 57:2 71:17 | **exercise** 52:10 |
| **enter** 57:7 | **escrowing** | **eviction** 14:16 | 60:16 63:3 |
| **entered** 17:1 | 65:10 | **evidence** 59:11 | **exercises** 62:17 |
| 34:22 | **especially** 50:7 | 66:10 67:13 | **existing** 9:10 |
| **entering** 57:21 | **espouse** 46:19 | **ex** 49:7 | 9:11,15 10:16 |
| **entertain** | **essentially** | **exactly** 28:13 | 10:22 14:10 |
| 46:17,18 | 11:18 30:18 | **exceeded** 63:17 | 56:13 |
| **entire** 38:25 | 57:23 59:5 | **except** 2:3 | **exists** 59:22 |
| | 81:4 | | 69:3 |

exit  12:7,10,16
  33:11 37:16,20
  38:5,15 43:10
  68:8,10
expand  18:6
expanded
  63:17
expanding
  21:18
expansion
  19:10 20:16
  63:14
expect  14:17
  57:7
expedited
  38:12 44:7
expeditiously
  38:24
expense  63:25
  74:8
expenses  2:10
  2:14,17 30:2,7
  30:13
experience
  29:23
experiences
  61:19
expired  25:7
  27:24 28:21
explain  9:15
  11:6 37:18
explained
  73:10 81:6
explanation
  69:10
explicitly
  19:17 27:20

  65:15
exploring  9:6
exposure  28:20
  42:16 64:16
expressly
  59:10
extemporane...
  49:5
extend  14:19
  18:16 19:20
  38:7
extended  37:22
extension
  14:11,14,19
  69:22
extent  9:5 20:2
  21:9 22:23
  23:2,23 30:15
  33:14 55:8
  63:4,11 66:17
  84:6
eyes  24:15

**f**

f  1:21 65:17,19
  66:2,12,19
  85:1
f.2d  59:13 60:8
f.3d  59:22 67:1
faces  7:15
facility  12:8,16
  43:11
fact  10:14 15:4
  20:25 49:6
  50:13 60:24
facto  49:7
factors  59:24
  60:11

fail  35:22
  55:22
failure  52:12
fair  76:21
fairly  55:9
  58:12
faith  26:13
  46:15 66:22,24
  66:25 67:1,6,8
  67:14
faithfully
  15:18
fall  37:23
fallen  82:16
familiar  77:19
  78:7
famous  46:25
far  13:2
fault  14:22
  23:14 33:14
  52:17
favored  17:13
  56:21
features  53:1
february  27:23
fee  8:10 12:21
  14:7 26:6 35:3
  35:6,21 40:16
  41:22 42:4,16
  44:22 45:10
  46:9 49:7,8
  51:7 54:3,17
  56:11 58:14
  71:13,23 72:1
  72:6,9,16,24
  73:3,14,16
  74:17,22 75:2

  75:8,16 78:20
  78:24 79:2,6
  79:18,22 80:9
  80:14,22 81:8
  84:10,12,13
feeling  40:16
fees  75:15
  77:25 79:6
felt  56:2
fiduciaries
  21:7,10,13
  22:1,9,24 23:2
fiduciary
  22:12 27:20
  33:19 65:4
field  49:22
  50:17
fight  15:1
  35:16 57:14
figure  62:23
file  48:8 54:3
  54:19,20 80:7
  80:18 81:25
  82:11
filed  2:1,8,12
  2:16 8:14,24
  17:19 20:14
  48:6,12 49:6,9
  54:2 62:7 63:7
  63:8,20 73:3,4
  73:4 76:4,10
  76:22 79:3
  80:2,7,23 84:5
  84:8
filing  16:6 60:2
final  7:2 11:7
  14:1 16:25

34:17,20 36:19
73:3 76:10
78:20,24 79:22
**finality** 15:4
34:21
**finalize** 12:3
**financier** 12:10
**financing**
12:16 33:11
37:16,20 38:15
43:10
**find** 37:25
59:10 66:4
83:3
**finding** 26:12
61:20 67:6,14
**findings** 20:25
57:6
**fine** 16:2,13
23:5,9,14
45:24 69:25
**finish** 26:17
**firm** 52:15,16
52:16 55:19
64:15,16 75:20
78:21 79:17
84:13
**firm's** 56:10
**first** 7:20 15:15
29:15 32:25
65:15 72:1
74:4
**five** 1:7 7:3
14:8,21 15:20
16:22 33:4
36:24 40:5,15
41:5,11 42:4

43:16,18 44:22
50:15 51:7
58:1 65:19,21
74:18 79:7
80:8
**floor** 3:5 4:18
10:5 16:9
29:11
**focused** 42:3
**follow** 36:6
78:16 81:9
**followed** 28:25
49:1
**following** 14:1
33:21 38:21
57:19
**follows** 10:12
34:15 57:4
**footnote** 74:11
**footnotes** 73:9
**foregoing** 85:3
**forfeited** 37:3
**form** 24:13,24
25:14 48:16
57:20 59:3
78:10,16
**formal** 63:4
81:25
**formally** 31:19
**format** 78:8
**formed** 33:25
60:15
**former** 50:3
76:5
**forth** 29:1
48:19,19 50:12
74:10 80:7

**forthwith**
15:25
**forward** 10:11
34:1 56:12,20
67:12 80:17
**four** 59:24 73:9
**fraud** 34:23
**free** 2:2 43:23
44:12 54:19
57:23 65:16,20
65:25 66:13
72:17
**fried** 2:9 5:9
75:24 84:11
**frivolous** 44:8
**frustrated**
70:13
**frustration** 8:5
**fuentes** 2:13
3:3 7:6
**full** 11:17
12:12 38:25
46:14 47:3
59:3 66:6
**fully** 69:18
**fulsome** 48:4
50:11
**function** 20:3,4
**functional** 62:5
**functionally**
35:21
**fund** 25:24
26:4
**funded** 12:10
29:3 61:21
**funds** 11:18
60:22,22 65:10

**further** 9:9
28:19 31:21
60:12 64:5,15
65:2 66:18
69:22 77:25
**future** 54:7
60:4,6 63:25
81:9

## g

**g** 7:1
**gain** 61:17
**general** 11:16
18:22 19:8,23
21:2,8,12,24
22:11,16,25
25:24 29:25
33:17 37:17
39:8,9 42:25
46:15 56:11
64:9,9,10,11
64:11,11,12,13
77:7
**generally**
41:13 47:25
48:2 59:6 62:3
**generate** 42:9
55:8 60:22,24
**generates**
11:14
**gesticulate**
53:1
**getting** 10:24
10:24 28:14
**giampolo** 4:22
78:22,23 79:1
79:13,21

| | | | |
|---|---|---|---|
| **give** 7:17 10:4 | 35:23,25 37:14 | 11:2,3,4,17 | **grammatically** |
| 12:14 17:25 | 38:2,18 42:12 | 12:21 13:19 | 17:3 |
| 20:9 39:7 | 42:13,21,23 | 14:18 16:11,20 | **grant** 59:12 |
| 44:19 45:7 | 44:15 45:7,11 | 24:8,11 26:12 | **granted** 84:10 |
| 50:15 68:25 | 46:12 48:14 | 27:11 28:15 | 84:12 |
| 69:5 70:2,4 | 52:8 53:25 | 31:19 34:12,21 | **granting** 2:6 |
| 74:7 | 54:13,15,19 | 35:5 36:2,6 | 35:3 |
| **given** 8:20 | 55:20 56:4,8 | 37:4,8 38:4,22 | **great** 7:9 8:16 |
| 13:14 36:19 | 56:23 62:20 | 39:1,2 42:15 | 16:8 17:17 |
| 40:17 45:23 | 64:8,10,11 | 43:22 44:6 | 45:20 47:23 |
| 71:17 76:20 | 67:23,25 70:7 | 45:14 46:14,17 | 74:21 75:25 |
| **gives** 61:25 | 70:8,11,12 | 46:23 48:18 | 82:3 |
| 67:5 75:9 | 71:5,8,13,16 | 49:23 50:11,18 | **greater** 33:13 |
| **giving** 49:15 | 72:8 73:2,16 | 51:4 52:20 | 66:1 74:18 |
| 53:10 | 74:1,13,22 | 54:9,20 56:20 | **greatest** 40:13 |
| **glad** 29:18 | 81:19,20 82:2 | 57:4,5 58:13 | **green** 1:13 |
| 61:10 | 82:5,8,19,22 | 63:20,21 68:10 | **group** 65:22 |
| **glen** 84:10 | 82:25 83:2,6,9 | 68:24 69:8,15 | **gruber** 2:8 5:9 |
| **glenn** 2:12 3:3 | **glenn's** 17:3 | 69:16 72:8,13 | 75:20,23 76:14 |
| 3:8 7:5,6,6,23 | 39:6 51:9 | 74:23 75:19 | 77:3 84:11 |
| 8:1,17,23 10:6 | **go** 11:2,4 22:20 | 77:16 80:17 | **gruber's** 76:5 |
| 10:10 11:20,23 | 22:25 23:18 | 82:10 | 76:11 |
| 12:1,4,24 13:7 | 24:4 25:1 | **good** 7:5 9:24 | **guarantee** 44:4 |
| 13:12,16,21,23 | 26:16 32:8,11 | 15:16 16:14 | **guard** 16:23 |
| 15:11,18 16:16 | 34:13 36:12 | 21:23 23:17 | 48:5 |
| 17:18,21 18:9 | 37:10 39:14,22 | 24:15 26:13 | **guarding** |
| 18:11,13 19:22 | 47:11 50:15,16 | 38:6 41:12 | 63:13 |
| 19:25 20:5,7 | 50:24 52:24 | 47:10 59:11,21 | **guardrail** 48:5 |
| 21:23 22:3,11 | 53:3,6,14,14 | 60:17 66:21,24 | **guardrails** |
| 23:3,5,8,10,12 | 53:17 63:19 | 66:25 67:1,6,7 | 51:5 83:4 |
| 24:1,9,12,22 | 70:2,11 72:17 | 67:8,14 73:1 | **gucci** 59:22 |
| 24:25 25:1,2 | 74:4 75:11 | 75:22 78:22 | 67:1 |
| 26:10,18 27:2 | 76:15 | **gorrepati** 6:2 | **gucks** 12:11 |
| 27:10 28:1,2 | **god** 37:24 | **governed** 59:8 | **guess** 11:6 31:3 |
| 29:16 30:19 | **goes** 21:14 | **governing** | 31:14 32:24 |
| 31:21 32:21 | **going** 7:15 10:4 | 22:13 | 51:15 52:11 |
| 34:11,13,14 | 10:11,12,21,23 | | 55:25 72:13 |

75:19 80:24
81:25
**guidance** 60:10
**guidelines** 49:3
52:22

**h**

**h** 67:18,19 69:3
**hamilton** 4:4
**hand** 53:18
**handing** 51:10
**handle** 23:18
**handling** 72:9
**hands** 53:3
**hang** 40:6 70:8
72:12 73:13
**happen** 16:21
37:4 77:19
**happened** 9:2
9:8 12:4 48:6
**happening**
34:4 35:11
36:20 51:1,4
64:21,21
**happens** 41:5
48:2
**happenstance**
34:5
**happy** 19:13
21:4 31:15
46:11
**hard** 33:24
35:16
**head** 72:1
**hear** 17:18
20:8 28:15
29:18 31:15
32:24 42:11

47:1 55:4 70:9
71:6 79:25
81:24
**heard** 9:22
32:25 33:1
43:1 47:8,9
53:22 54:23
56:6 70:21
74:22 77:2
**hearing** 2:1,8
2:12,16 7:12
7:17 8:8 9:5,10
10:18 13:25
38:24,25 51:17
52:18 59:11
61:5 62:9
63:10 68:22
70:9 72:18
73:23 81:19
**hearing's**
81:17
**hectic** 9:25
**held** 18:20
19:15 59:19
66:7,11
**heller** 5:17
55:9,23 61:6
**heller's** 55:18
56:10
**hello** 46:25
**help** 31:21
73:13
**helped** 38:3
**helpful** 44:18
**hey** 48:15,17
**hi** 15:16 16:13
16:14 47:12

55:3
**hiccup** 36:7
47:19 53:8
**high** 8:19
**higher** 9:3
10:14 42:20
50:15,22 53:16
53:17 55:13
62:18
**highest** 26:14
56:24
**highly** 26:21
61:5
**hired** 25:2
**history** 18:1
58:11
**hold** 44:5 53:2
71:12
**holders** 60:14
**holding** 3:19
16:5 65:3
**holland** 47:13
69:13
**hon** 1:22
**honest** 36:5
**honor** 7:5,8 8:1
8:12 10:17
11:6,20 12:14
16:12,14 17:25
18:14 20:12,22
21:2,19 22:20
24:2 25:3,18
27:14 28:8
29:13,15,21
30:9 31:5 32:6
32:9 33:1 34:7
34:14 36:9

37:11,22 38:11
39:5 42:1,23
43:21 44:7,21
46:4,6,11,11
46:14,18 47:10
48:25 49:4,12
49:20 50:7
52:23 53:12,23
53:25 54:2,23
56:8 69:12,24
69:25 70:7
71:7 72:14,19
73:1,24 74:2
74:12 75:13,22
76:1,23 77:4
77:13 78:18,22
79:1,14,16
80:1,9,20
81:20 82:5
**honor's** 39:17
**hope** 64:14
**hopeful** 24:10
30:10
**hopefully**
71:22
**horse** 47:25
48:17,25 49:17
49:24,25 51:9
**hour** 9:25 77:9
**hours** 8:6
32:25 58:8
81:3
**house** 4:4
**housekeeping**
82:6
**hybrid** 12:8

**hyde** 2:25 85:3 85:8

**i**

**idea** 12:5,5 45:9
**identified** 25:25 28:17 81:12
**identity** 21:24
**ii** 2:4
**iii** 2:6
**immediate** 69:6,9
**immediately** 40:5 48:14
**imminent** 68:4
**impose** 29:6
**imposed** 43:15 81:8
**imposing** 68:18
**imposition** 59:1
**impossible** 76:15
**incentivized** 15:24
**inclination** 69:1 71:19
**include** 14:16
**included** 17:25 19:11 20:23 27:19 31:1 58:19
**includes** 67:9
**including** 8:7 13:5 24:14

32:20 42:20 43:24 57:10 62:9,11 67:10
**incorporating** 57:20
**increase** 15:21 58:7 62:14,24 80:10,13
**increased** 17:7 40:15 42:17 58:6 62:12
**increments** 77:21
**incur** 21:13 63:25
**incurring** 30:7
**indemnificat...** 25:23 26:3,19 28:19 29:4,18 30:18 64:2
**indemnity** 25:11,22
**independently** 77:17
**indication** 67:11
**indiscernible** 13:6,9,21 19:22,25 23:7 24:24 27:14 28:11,12 32:6 39:6,19 40:11 40:12 41:24 44:23,25 46:22 50:4 53:16 56:16 64:9,13 71:16 73:24

77:3 82:24
**individual** 19:21
**individuals** 20:2
**informal** 49:11 73:6,19 74:7 80:6
**information** 11:1
**informed** 33:25
**initial** 36:23
**inject** 65:1,12
**injected** 71:11
**injunction** 15:1 36:4
**input** 31:21
**inserted** 15:20 24:8
**inserting** 45:9
**insertion** 46:2
**inspired** 55:24 56:1
**instance** 63:3
**instances** 41:23
**insufficient** 77:20
**insurance** 37:1 43:6
**integrity** 67:2
**intended** 13:3 17:13 60:9 64:7
**intends** 41:4

**intent** 18:5
**inter** 61:9
**interest** 7:15 8:23 11:22 29:17 39:16 43:18 65:16,21 65:25 66:10,22 72:16
**interested** 9:11
**interesting** 9:11
**interests** 2:3 43:24 60:13
**interim** 73:3,8 76:4,10 79:18
**internal** 40:25
**interrupt** 31:12 32:10
**introduced** 42:5
**introduction** 66:9
**invite** 15:8
**involve** 58:13
**involved** 47:15 47:16 54:1,12 55:10 75:16
**ironically** 8:4
**irs** 41:4 43:19 43:24 44:4,11 44:17
**ish** 7:12
**issuance** 36:24
**issue** 19:3,18 21:25 30:12 41:12 46:12 48:20

**issues** 23:18,25
34:16 43:12
50:7 76:13
77:10,18,24
79:8
**item** 8:3
**items** 8:2

## j

**j** 3:24
**jeffrey** 3:11,16
**john** 4:22
78:22
**joined** 7:7
**jones** 1:22
**judge** 1:23
15:16 18:13
34:15 59:9,17
60:10 83:9
**judge's** 38:23
**judges** 59:24
**judgment**
33:25 42:25
52:9,11,13
53:12 55:14,14
56:14,19 60:17
62:17 63:3
**jump** 30:5
**june** 51:18
52:22 58:20
68:6,10 82:10
82:21
**justification**
59:15
**justified** 81:14

## k

**k** 3:8
**karcher** 5:6
31:25 32:3,6,9
32:13,18,23
34:7 37:15,19
38:18 39:3,5
39:10,13,15,19
43:4 64:6
**karcher's** 37:3
40:2
**keep** 36:5
48:17,18 82:15
**kind** 17:25
18:10 25:13
26:4,4 41:14
49:16 68:5
**klein** 5:18
**knight** 47:13
69:13
**know** 8:14 9:17
10:13,19,24
11:2,5,6,11
12:10,15,20
13:8,8 14:3,5,7
14:16,24,25
15:1 18:18
19:2,5,6,11,12
19:13 22:3,4,7
22:14,14 26:2
26:11,11,13
34:8,19,20,25
35:9,14,16
36:3 37:24
38:9 39:1
41:14 43:5,6
45:4,16,16,18

45:20,21 46:24
48:11,20 49:12
49:15,25 51:1
51:10,25 52:8
53:10 54:19
55:15 61:2
63:17 68:2,3,6
68:7,8,10 69:7
71:3,14 72:25
80:8,18 81:23
82:11,23
**known** 10:6
58:5
**knows** 25:3
32:17 37:24

## l

**lack** 8:6
**language** 20:15
20:21 21:1,6
21:12 22:2
23:12 24:6,7
**largely** 8:10
**lasting** 29:3
**late** 9:21 37:23
37:23 71:18
**latest** 68:10
**law** 20:6 22:10
22:13,24 34:16
47:22 70:14
75:9
**lawyerly** 7:14
**lay** 24:14
**leading** 8:7 9:9
54:11
**leaning** 28:15
**learn** 45:6

**leases** 2:5
67:22
**leasing** 59:16
**leave** 70:17
72:13
**leaves** 13:3
**leaving** 35:8
**ledanski** 2:25
85:3,8
**lefkowitz** 5:19
46:13
**left** 49:22
50:17 72:1
**legal** 30:7 44:8
53:10,10 57:6
57:6 65:11
85:20
**legislative** 18:1
**lender** 66:8
**length** 45:17
67:9
**lengthy** 8:4
58:11 62:4
67:9
**lest** 11:5
**letter** 25:7,9
76:22
**liability** 21:13
41:17
**lien** 41:5 43:14
43:15,16,24
44:6 65:25
66:10
**liens** 2:3 66:2
**life** 78:17
**light** 23:23
53:1 58:8 75:5

77:24
**lights** 52:23
**likelihood** 60:3
**likely** 8:21
  56:22
**limit** 12:3 81:8
**limited** 17:19
  20:14 23:19
  28:20 41:23
  44:22 63:6,20
  63:21,22 64:10
  66:15 84:8
**limits** 63:16
**line** 23:4 75:9
  84:4
**lionel** 59:12,23
  59:24
**lips** 64:12
**liquidated** 14:6
  15:19 16:16,22
  33:4 35:13
  36:17 46:9
  62:13,22,23
**list** 27:18 37:17
  60:9 66:15
**listed** 23:1
**litigated** 58:22
**litigation** 18:18
  25:15 26:19
  29:25 30:17
  64:1,4,5
**little** 10:8 34:6
  40:19 51:3
  52:1 61:17
  70:1,3 79:11
  79:11

**lived** 61:2
**llc** 3:19 4:10
  5:2 16:5 19:18
  19:19,20 20:6
  21:3,4 47:15
**llp** 2:13 3:3 4:9
  5:1,8 47:13
**loan** 33:10 34:9
**located** 58:1
**lock** 42:20
  62:18
**lois** 3:12 40:8
  40:25 42:6
  43:17
**long** 7:12 12:18
  15:3 21:17
  29:3 47:23
  52:7 58:12,16
  58:23 61:16
  69:10 72:2
  73:23 81:17,19
**longer** 41:7
  47:21 58:24
**look** 22:11
  28:15 30:22
  41:25 46:6
  49:25 53:13
  67:25 81:3
**looked** 28:23
**looking** 26:1
  51:15
**lose** 11:5
**lost** 38:6
**lot** 8:5 40:18
  41:15 43:7
  48:22 50:12
  55:24 56:1

61:9 80:11
**loud** 71:6
**low** 62:21
**lp** 1:7
**lucrative** 34:1
  61:21
**lumped** 77:7
  80:11,25
**lumping** 77:20
  79:9
**lynn** 5:14

## m

**m** 66:21
**made** 7:13
  20:18 26:21
  42:19 61:12,14
  63:9,15 67:4
  74:10
**madison** 1:7
  3:19 7:3 10:22
  16:5 41:5,11
  43:16,18 47:14
  58:2,5
**maintain** 76:14
**major** 59:15
**make** 13:24
  15:10,12 16:19
  16:21 19:16
  22:19 31:22
  32:17 45:5
  51:3 56:18
  63:16 69:18
  70:20 78:16,17
  81:9
**makes** 64:15
**making** 78:14

**management**
  5:2 19:18,19
  19:20 21:3,3,4
  32:18,20
**manatt** 4:9
  29:14
**manhattan**
  58:3
**manner** 49:6
**marginal** 59:3
**mark** 4:7 20:12
  24:5 28:8 74:2
  77:4 80:1
**market** 37:24
  52:4 62:1
**marketed** 25:5
**marketing**
  33:24 52:7
  61:4,16,24
  62:5 67:4
**match** 9:12
**matched** 10:11
**matter** 1:5
  14:12 22:9
  34:15 82:6
**matters** 7:8
  11:7
**matures** 38:16
**maturity** 37:20
**mean** 18:4 22:3
  22:5,11,20
  27:16 32:10
  41:25 49:19
  50:17 52:2
  53:11,13 68:6
  81:7

**meaningful**
18:18 35:9
57:24,24
**means** 21:2
22:3,15,21
58:17 82:23
**mechanism**
61:14 64:20
**meet** 13:4
52:13 60:23
66:12 69:21
**meeting** 38:23
**mentioned**
16:16
**merely** 60:9
**meritless** 29:23
30:17
**meritorious**
44:8
**mess** 32:12
**met** 18:3 60:20
65:21 72:4
75:3
**michael** 5:19
5:24 19:19
21:3
**mid** 68:1,11
82:10
**million** 9:7,12
12:14,17 13:3
13:4,17 15:22
15:22 34:6,18
36:16,18,25
37:4,11 42:16
42:18 46:11
48:23 49:7
58:7 62:23

66:5
**mimic** 21:1
**mind** 15:24
16:12 36:9
**mindful** 44:2
68:16,18
**minds** 38:19
**mineola** 85:23
**mini** 32:25
**minor** 66:17
**minus** 12:18
**minute** 7:24
36:7 41:6
47:19 48:15
50:7 53:8
**minutes** 50:16
**misconduct**
67:12,13
**missry** 3:18,23
15:6,14,16
16:1,4,10 36:8
36:10,13,13,15
36:22 37:7
38:10 45:19,21
46:1,4,24 47:2
47:6 72:13,14
72:19,22
**missry's** 16:15
**misstated** 15:6
**mistake** 45:3,6
**misundersta...**
16:24
**mitigates** 43:9
**modifications**
57:15
**modified** 32:21
62:9,16 66:18

69:21 73:18
74:24
**modify** 69:17
70:24
**modifying**
21:18
**moment** 73:15
**money** 12:7
40:25 55:8
**months** 11:24
43:12 47:17,17
47:17 49:8
**morning** 7:5
15:17 16:6,14
45:18
**morris** 3:23
36:9,13
**motion** 2:1 8:3
8:13,13,15,17
8:24,25 9:4
26:12 48:7,12
49:6,9,22,24
50:1 57:3,16
57:22 59:8
66:20 67:15
**motions** 49:25
59:25
**mouth** 20:13
56:18,19
**move** 38:24
56:12
**mute** 64:10
**muted** 39:24
**mutual** 57:9

**n**

**n** 3:1 7:1 66:21
84:1 85:1
**name** 24:24
36:11
**navigated**
38:19
**naznen** 3:9 7:7
72:9 73:2
**near** 60:4
**nearly** 76:7
**necessary**
20:17 50:1
54:22 57:5
75:3
**need** 14:20
28:18 31:15
38:7 47:3 53:1
67:24 71:12
73:13
**needed** 69:23
**needs** 51:20
60:23 69:21
70:16 81:6
**negotiated**
45:17 46:10
62:10 63:1
74:25 77:22
**negotiating**
15:12
**negotiation**
67:9
**negotiations**
47:15,16 66:18
75:6
**neighborhood**
12:17

**neither** 64:8,13
**never** 26:10
  30:10
**nevertheless**
  70:22
**new** 1:2,14 3:6
  3:14,21 4:3,5
  4:12,19 5:4
  20:21 21:6
  43:12 52:23
  65:1
**newly** 10:7
**news** 9:21,24
**nice** 7:9 31:14
  72:23 75:9
  78:25 82:17
**night** 15:21
  16:6 37:11
  45:18
**ninety** 1:7 7:3
  41:5,11 43:16
  43:18 58:1
**nobody's** 30:6
  30:7
**nominal** 35:4
**non** 44:8 77:7
**normally** 51:6
  53:4
**note** 54:10
  66:20 82:13
**notes** 33:2
**notice** 16:7
  66:25 76:9
  80:18 82:1,11
  82:17
**noticed** 44:12
  54:2 67:14

**notification**
  81:10
**notion** 43:4
**notwithstand...**
  67:13
**number** 8:9
  10:15,16 38:8
  38:9 44:1,2,3
  48:21,22 49:1
  49:2,2 52:15
  52:21 60:8
  66:15 73:4
**numerous**
  77:10
**ny** 1:14 3:6,14
  3:21 4:5,12,19
  5:4,12 85:23

**o**

**o** 1:21 7:1 85:1
**object** 68:22
  69:5 70:5,6,15
**objected** 58:24
  67:12 68:18
**objection**
  20:14 21:16
  23:20,22,25
  24:20 25:19
  27:2,3 31:20
  40:13,13 44:16
  53:10 63:4,5
  63:11,20,22,22
  72:5 77:13
  79:2 80:2,6,22
  84:5,7,8
**objections**
  17:19,19,22
  41:18 62:7

  63:7 71:16
  73:4 74:8 79:3
**objects** 69:10
**obligation**
  25:23 26:5,24
  33:10 34:9
  35:7 36:23
  45:13
**obligations**
  13:4 46:5
**observe** 44:13
**obtained** 60:6
**obviously** 8:3
  9:17,25 11:4
  41:5 45:16
  68:2 71:5
**occur** 29:8
  42:15 68:11
**occurred** 49:5
  82:1
**october** 41:11
**offer** 8:19 9:3,3
  9:6,6,12 10:11
  10:13,14 25:6
  26:14 29:11
  34:5 56:10,24
  58:9
**offering** 42:7
**offers** 53:13
**office** 20:10,10
  51:10 52:23
  57:11 58:2
  63:8,13 84:5
**oh** 13:19 15:17
  39:24 40:10
  52:25 65:2,14
  71:15,15 75:18

  77:1 79:20
**okay** 8:1,22
  10:3 11:12
  13:2,13,13
  15:10 16:1,8
  17:2,11,11,17
  19:16 20:6
  21:22,22 22:18
  23:11,15,16,24
  24:1,15,19
  25:1,2 27:5
  28:3,7,14
  30:11 31:23
  32:16,19 34:10
  35:24 37:6,13
  37:16 38:17,21
  39:7,12,12,18
  41:25 42:11
  44:18 45:7
  46:1,23 47:2,7
  53:5,9,15,20
  54:9,18 55:22
  56:4,17 57:1
  57:19 68:14,24
  69:17 70:1,10
  71:1,5,8,25
  72:12,15 73:11
  73:17,17,22
  74:6,13,21,21
  75:11,18 77:1
  77:14,16 78:19
  79:10,24 80:21
  81:10,15,18,22
  82:15,22 83:2
  83:5,6
**old** 85:21

omitted  21:7
omni  5:10
once  34:16
  68:2
one's  68:24
ones  36:1
ongoing  7:21
open  34:24
  58:25
opened  52:1
operating  35:9
opportunity
  7:18 44:20
  70:4
opposed  55:13
  70:25 72:4
optimistic
  40:19
oral  23:24
  57:19 71:9
order  2:2 8:11
  14:2 17:1,25
  20:18 21:1,19
  22:21 24:8,11
  24:11 27:7,18
  34:16,18,20,22
  36:19,24 43:21
  46:12 57:5,15
  57:21 59:17
  64:19 67:19,20
  69:9 70:25
  71:21 73:5,8
  74:10 76:22
  77:7 78:3,4,10
  78:16 79:14,19
  81:16

orders  14:16
  67:20
ordinarily
  67:18
ordinary  59:16
  59:21 68:14
orient  73:14
original  10:4
  11:13 62:11
originally
  78:15
outcome  30:15
  62:6
outlined  8:14
outside  10:18
  36:4 51:17
  55:6 58:19
overall  32:5
overnight  9:8
overrule  27:4
  63:21
overruled
  23:23 63:5,11
  84:7,9
ovington  5:11
owed  55:6
owes  40:25
own  27:17,17
  27:24 28:23
  40:9 60:16
owned  59:6
owners  59:5
  60:25
ownership
  11:21

p

p  3:1,1 7:1
p.c.  4:16,17
p.m.  15:21
  16:6
page  84:4
paid  11:17
  12:12,13 30:2
  30:4,13 56:11
  58:23 59:3
  79:6,11,13
pain  42:18
palumberi  2:8
  5:9 75:23
  84:11
papers  18:3
  65:18
paranoid
  46:18
part  16:19
  20:23 25:9
  26:11 43:21
  55:4 59:20
participants
  15:12 70:9
participating
  56:6
participation
  56:1
particular  33:8
  33:9 75:7
particularly
  9:22 29:18
  42:3 59:1
parties  12:21
  19:17 20:23
  21:8,8,9 22:21

22:25 25:5,24
  31:6,7,21 33:2
  33:3 37:9
  50:11 57:9
partly  61:15
  70:20 76:13
partner  16:10
  21:12 50:3
  61:9
partners  11:21
  18:22 19:8,18
  19:23 21:2,9
  21:24 22:12,17
  23:1 29:19
  30:1 33:18
  37:12,17 39:8
  39:9 43:1 44:2
  46:15 56:11
  59:5,7 64:9,13
partnership
  22:12
partnerships
  61:1
party  8:24
  22:23,24 23:1
  28:12 36:3
  44:9
passing  16:17
path  34:1
patience  39:22
pause  15:10
  68:23
pay  12:8 13:5
  33:10,15 46:11
  75:7
payable  41:22

**paying** 75:8
**payment** 12:25
  28:19 40:22
  41:2 79:18
**pc** 2:9,16 5:9
  84:11
**penalized** 19:5
**pendency** 40:3
**pending** 25:19
  31:21
**people** 13:5
  32:12 48:9,14
  49:19 55:24
  56:2 70:1,3
  75:8 77:19
**people's** 68:16
  69:19
**perceive** 41:9
**percent** 14:8
  14:21 15:20
  16:22 33:5
  40:5,11,15
  42:4 44:22
  51:2,3,7 74:19
  76:17 79:5,7
  80:8,20
**perception**
  40:4
**perfectly** 23:13
**performance**
  14:5 17:6
  35:13
**period** 9:25
  10:17 27:8,24
  38:15 40:23
  41:8 45:14,15
  51:14 54:6

57:25 68:23
69:21 70:5,24
73:8 79:23
80:12
**periods** 71:11
**permissible**
  66:14
**permission**
  72:13
**permit** 65:20
**permitted** 2:4
  66:15
**person** 21:13
  31:14
**perspective**
  9:24 33:12
**pertaining**
  60:12
**phelps** 4:9
  29:14
**phillips** 4:9
  29:14
**phone** 71:17
  72:11 81:5
**picked** 80:25
**place** 23:20
  38:6 82:15
  83:5
**plain** 31:10
**plan** 11:24
  12:5,6 18:14
  18:15,25 19:4
  19:5,6,11,14
  27:16,18 28:22
  28:24,24 29:1
  29:8 30:1,12
  30:25 32:16

51:3 52:22
58:4,18 60:3
64:24
**plan's** 27:6
**plans** 60:6
**play** 13:4 42:20
**plays** 68:7
**pleased** 29:15
  40:14
**plumber** 44:5
**plus** 12:18
  42:18 79:21
**point** 8:25
  16:15 17:15
  24:18,21 25:11
  26:11,22 34:19
  36:17 37:3,14
  37:16 40:2
  49:4 54:24
  67:24 71:24
  79:12
**policing** 63:12
**pollack** 5:14
  75:22,23 76:1
  76:20 78:6,10
  78:12,18
**popped** 43:13
**portion** 72:18
**position** 25:18
  54:17 70:17
  73:25 81:3
**post** 20:19
  36:25 49:7
  58:3 60:4
  64:18
**posted** 36:22

**postponed**
  19:7
**potential** 14:12
  25:15 30:15
  42:16 43:24
  49:20 63:25
  64:16
**potentially**
  30:4
**practical** 67:24
  68:13
**practically**
  67:25
**practice** 61:24
  61:24 68:15
  70:23
**practiced**
  78:12
**practicing**
  47:22
**pre** 8:19,24
**precedent**
  55:18
**precedents**
  55:15
**precise** 22:6,15
**prefer** 52:3
**preferred** 62:3
**prejudice**
  69:22
**premises** 58:4
**preparation**
  74:18 79:6
  80:9 81:8
**prepare** 75:8
**prepared** 9:14
  10:1 57:3

**preparing** 75:16

**present** 5:16 61:17 64:25 75:24 76:10

**presented** 44:16 59:11 67:13

**presents** 62:20

**preserve** 69:6

**preserved** 66:22

**preserving** 68:16 69:19

**presided** 61:3

**pressured** 68:19

**pretty** 38:23 71:4 80:23

**prevailing** 57:10

**preventing** 33:18

**previously** 29:8 31:1 64:23

**price** 11:13 13:16,17 15:22 32:21 34:6 36:16 40:14 42:17,21 55:7 62:12,15,18,24 65:25

**principle** 10:15 10:16 17:23

**principles** 19:21 56:20

**prior** 44:17 80:12

**private** 61:16

**pro** 3:12

**probably** 68:11

**problem** 38:10 41:9 42:7

**problematic** 40:22

**problems** 40:20,24

**procedures** 49:10,11

**proceed** 9:14 10:1,12,21 60:18,19 69:14 71:3

**proceeding** 60:12 67:8

**proceedings** 67:3 83:10 85:4

**proceeds** 11:14 12:25 30:3,14 30:16 31:2 42:9 43:25 59:4 60:6 63:24 64:23 66:4,4,11

**process** 8:4,21 10:19 25:3,3 25:13,17 33:22 33:24 34:3,19 34:24 38:20 41:7 43:10 51:5,18,19,25

52:7 58:24,25 61:4,12,13,17 61:18 62:5 63:12 64:19,21 64:24 67:5,10 78:4 81:10 82:9

**processes** 31:3

**procured** 54:6

**professional** 61:6 77:11

**professionals** 27:12 67:11 72:10 75:14

**program** 24:14

**progress** 7:13 8:25

**prong** 66:12

**proper** 48:5 80:17

**properly** 48:5 67:14

**property** 2:2 5:2 19:18 21:2 25:5 32:18,20 33:22 35:7 39:11 41:3 46:16 57:23 58:1,13 59:6 59:16 60:8,25 65:16 66:1,2,7 66:11,22 67:19

**proportionate** 60:1

**proposed** 11:13 17:13 22:19 24:8

44:12 45:8 46:2 53:22 56:21 57:4,14 57:20,22 60:3 60:5,18 62:8 62:11 63:7 65:15 70:25 73:5,8 74:10 76:22 78:3 79:14 81:16

**proskauer** 5:1

**protect** 15:20 62:13 63:24

**protecting** 66:21

**protection** 18:23 35:19 64:17 65:4

**protections** 8:18 29:3,18 63:18 65:1 66:20

**provide** 14:6 34:21 38:13 43:22 60:9

**provided** 13:25

**provides** 30:1 30:2,13,14 64:14

**provision** 14:7 14:10 15:20 17:24 20:20 36:17 44:24 46:10,10 62:13

**purchase** 11:13 13:16,17 15:22 32:21

36:16 42:17,21
46:6 55:7
62:12,14,18,24
71:18,20
**purchaser** 8:19
15:4 17:13
38:2 42:19
47:5,14 54:13
56:21 57:10
58:5 60:18
61:21 62:11,13
62:19,20 66:16
67:8
**purchaser's**
66:22
**purchasers**
45:8,8
**purchases**
66:24
**pure** 50:3,5
**purposes** 31:16
31:23 71:10
**pursuant**
21:19 25:10
**pursue** 14:8
16:18,25 17:5
19:7 40:2
64:14 68:17
69:4,4
**pursued** 58:16
**pursuing** 39:16
**purview** 55:7
**pushback**
29:12 31:3
**pushed** 34:6
**put** 7:12 22:7
28:4 29:19

37:11 45:3,5
62:20,22 70:19
71:21 80:4
82:8
**puts** 80:9
**putting** 44:6
62:2

**q**

**qualifies** 19:4
**quality** 10:7
**quantity** 10:9
**question** 30:23
52:12 69:19
70:16 75:7
**questions** 27:6
41:15 71:4
76:23
**quick** 33:2
52:14 53:24
82:6
**quite** 14:23
25:17 46:7

**r**

**r** 1:21 3:1 7:1
85:1
**raffaele** 2:8 5:9
5:20 75:23,24
84:11
**rahman** 3:9
7:7 23:12
27:11 28:3,6
72:9,23 73:1,2
73:12,16,21
74:17,20 75:12
75:13

**rahman's**
75:10
**railed** 48:5
**rails** 82:16
**raise** 37:14,15
48:23 81:19
**raised** 16:20
79:8
**ramirez** 5:21
**ran** 27:23
49:19
**ras** 5:2 21:2
32:17,18,19
39:4,11 64:6,6
**rate** 61:11
80:10,13 81:10
**rather** 48:13
53:18 70:3
**rationale** 47:3
**reach** 18:6
77:5
**reached** 48:13
74:3 77:15
**reaction** 28:16
**read** 13:24
18:2,4 64:12
**readily** 57:17
**reading** 18:7
**ready** 37:4,10
61:20 68:3
82:20
**real** 45:2 46:8
46:20,22 61:6
67:11 71:4
**reality** 68:13
**realize** 43:17
64:22

**realized** 59:4
**really** 8:25
11:13 19:2
21:25 25:25
33:24 35:5
36:5 40:3
46:21,25 50:11
53:10 56:19
76:13
**realty** 4:10
39:17 61:7
**reason** 10:11
11:8 14:21
16:17 35:22
48:4,25 52:10
58:22 59:12,22
60:17 63:3,5
69:1
**reasonable**
14:24 35:15
41:18 45:14
62:1,17
**reasons** 14:9
**reassurance**
64:15
**reassurances**
64:5
**recall** 55:23
**recap** 11:23
13:15 42:3
**received** 9:2
26:3 73:6
79:18
**recently** 58:6
62:10
**recipients** 13:3

recollection 27:14
record 13:23
19:17 21:21
31:7,23 36:12
54:11 63:9,16
64:3 70:12,18
73:2,12 85:4
records 76:14
recut 45:23
red 23:13,13
redline 57:16
reduced 76:24
77:12 79:22
reduction 73:7
73:9 74:11,25
76:16 77:22
79:4,5 81:11
refer 58:5
reference 27:20
referred 47:20
referring 43:14
reflect 20:25
reflecting 76:22
reflects 73:8
regard 14:4
75:2
regarding 75:15 77:5,6
78:23
reimbursement 2:10,13,17
reinvent 45:3
48:10

reinventing 48:11
related 2:6,6
21:8,9 22:23
22:23,25 23:1
25:23 28:12
74:9
relative 62:25
relatively 62:21
release 22:15
released 22:4,6
23:2
releases 25:24
relevant 31:6,7
57:9
reliable 62:19
relief 2:6 25:23
65:14
rely 33:7
relying 37:9
remaining 12:12 14:13
77:25 81:13
remedy 14:6
remember 31:22
reminded 52:8
render 66:11
renegotiate 45:17
reorganization 58:18 60:3,6
repeated 15:18
replaced 76:6
replacement 37:25 38:14

represent 16:3
16:4 40:7,8
representation 54:11 64:8
75:11
representations 46:20
representatives 9:18 27:13
39:7 72:10
represents 58:7
reputation 55:25
request 26:7
67:14,16 69:22
requested 67:6
69:2
requests 8:12
require 26:4
required 15:6
41:13 48:1
50:1 67:8
requirement 29:6 45:9 46:3
63:22 65:12
requirements 75:2 77:20
reservation 54:10
reserve 13:11
25:22 31:20
resolved 17:22
41:6 63:9,11
74:3 79:2,4
80:19 84:7

resolves 79:7
respect 17:20
18:19 21:23
23:24 32:5,13
32:20 40:15
41:20 45:2
53:22 56:8
62:9 66:19
67:21 74:22
77:3
respected 61:6
respond 34:11
response 18:7
39:17 42:12
81:2 82:9
responses 52:14
rest 48:3
result 49:12
54:17
results 61:25
retained 16:5
61:6 76:2
77:11
retention 27:24 28:20
reuven 5:18
revenue 40:25
review 27:17
42:25
reviewed 65:18
77:1,17
revise 21:11
revised 9:15,16
11:14 13:16
15:11 16:19
20:24,25 24:8

79:14 80:22
**revision** 21:15
**revisit** 34:17
34:24 35:5
**richard** 5:21
**right** 7:2,19,21
8:7 10:1 11:17
11:18,25 12:23
13:10,11 14:4
14:15,19,23
16:25 17:2,6,7
17:12 18:8
19:24 20:7,8
23:17 24:18
26:2,9,20,23
27:1,16,25
28:5,13,14
30:6,19 31:18
35:18 36:2
37:8,19 38:1
38:11,11,18
39:21 42:9
51:18 55:19
56:23 57:1
63:19 70:19
72:18,23 73:20
74:14,23 76:19
78:17,21,25
79:21,24 80:16
82:3 83:7
**rights** 30:18
48:7 54:10
68:16,17 69:7
69:19,20 70:22
**ripe** 30:6,25
**risk** 35:10
56:25 62:21,21

**rita** 9:18
**road** 85:21
**robust** 33:23
52:6 61:16,24
**ronald** 5:23
**room** 31:15,24
**rose** 5:1
**rosenberg** 2:16
4:16,17,21
15:7 47:10,11
47:12,12 48:15
51:12,23 52:14
53:2,6,11,16
53:21 54:23
55:1,1,3,3,21
69:12,12,24
71:2,6 78:21
78:23 84:13
**rosenberg's**
56:9 70:13,22
**roughly** 53:13
**route** 11:3
**rsa** 19:18
**rule** 33:22 48:1
48:13 57:3
67:18,18,21
69:2 75:9
**ruling** 23:24
47:9 57:19
71:9
**rulings** 70:20
84:3
**run** 32:11
49:19 81:17
**running** 52:7
61:16

**s**

**s** 1:22 3:1 7:1
**s.d.n.y.** 65:22
**sale** 2:2 8:4,4
8:13,14,21
12:3,21 13:14
14:1,3,25 17:1
17:20 18:3,16
18:19,20 19:7
19:7 20:1
22:17 24:11
25:3,3,13,14
25:17,19 26:12
26:13 27:2
28:25 29:7
30:2,14,15
31:2,16,16
32:5,20 33:7
34:2,8 35:5
36:19,24 39:4
40:14 42:7
43:20,21,23
44:5,12 46:6
46:12 47:8
51:18,19 53:22
54:1,12 56:20
57:3,5,23 58:4
58:13,15 59:3
59:19,25 60:18
61:3,25 62:8
63:7,19,23,24
64:20,21,25
65:11,12,15,20
65:24 66:3,4
66:13 67:2,5
67:18,19 72:2
72:17 82:9

**sales** 20:18
68:16
**salient** 60:11
**sat** 76:6
**satisfied** 15:13
21:20 23:21
60:15,19 61:11
61:23 62:16
63:2 75:2,10
77:22,25 80:21
81:13
**satisfies** 81:12
**satisfy** 34:9
66:6
**saw** 20:21 80:9
80:16
**saying** 12:19
15:3 23:8
33:23 35:12,19
51:13 54:1
56:2 68:24
82:18
**says** 16:23
21:14 22:21
82:21
**scenario** 12:19
13:7,8
**scene** 55:23
**schedule** 82:24
**scheduled** 83:4
**scheme** 29:1
**schmidt** 5:22
**schuyler** 4:14
29:14
**scope** 27:19
**scramble** 11:3
37:25

scrivener's 19:12
se 3:12
second 39:2 40:6 51:8,8 59:19 66:23 72:12 73:13 79:18
secretary 41:13
section 48:1 59:8,10,18 65:17,17,19 66:21,23 78:1 81:15
secure 62:18
secured 14:15 41:3
securing 62:25
see 7:9 9:4 15:13 23:3 25:18 26:15,18 29:6,11 30:23 32:2 36:14,20 47:7 49:7 50:6 50:8 52:10,13 52:19 56:5 57:17 61:11 65:11,21 68:7 72:24 78:25 79:24 81:24 82:17
seek 29:4
seeking 76:11
seeks 58:3 64:16 66:20

seem 33:5 41:18
seemingly 33:19 64:17
seems 56:6 61:10
seen 29:22
sell 12:6 36:19 46:16
seller 15:23,23 15:24 16:23 36:18 41:22 43:8 46:5,15
seller's 37:1
selling 59:16
semau 5:23
senior 50:3
sense 12:14 35:10 45:5
sent 24:7
sentence 17:4 26:17 46:25 68:25 71:10
sentences 32:12
separate 39:10 39:11
service 41:1
services 4:10 27:8 61:7
set 29:1 51:17 52:22 55:15,17 74:10 80:7 81:21 82:12,25 82:25 83:2
sets 48:4 49:2

seven 69:21 70:5,23
several 50:19 50:20,20
shai 5:22
sharan 5:25 19:19 21:3
shared 18:5
ship 39:1
shortly 13:25
showing 66:9 67:4 80:12
shown 66:3
side 76:9
sided 35:25
sides 48:22
signature 85:7
signed 10:24
significant 8:20 12:20 37:17 43:22 57:4 72:5
silence 54:8
silverman 6:1
similar 67:21
simple 12:21 18:11,13 19:14 31:11 46:19,22 58:15
simply 62:2
sir 55:21
sit 11:8 12:17 37:2
sitting 51:9
skipped 23:13
sklar 5:24,25 9:18 19:19,19

21:3,3 39:11
sklars 9:19
slightly 65:6
softly 23:8
sold 33:22 66:1
solely 23:24
solution 58:12 60:21
solutions 85:20
somebody 33:7
somebody's 56:18
somewhat 16:17 27:19
sonya 2:25 85:3,8
soon 38:23
sooner 70:3
sorry 20:13 24:3 26:16 30:5 32:9,12 39:24 40:1,1 42:1,15 47:2 52:23 71:15
sort 7:21 10:6 23:18 49:19,22 51:24,25 56:21 78:8
sought 25:22 25:24 29:3 58:20 63:22 65:14,15 73:7 74:17,19 76:11 76:18 77:25 81:14
sound 27:25 28:5 61:24

70:23
**southern** 1:2
  4:3 47:23 48:2
  78:13
**speak** 7:18
  20:20 32:11
  45:8 52:19
  75:20
**speaking** 33:18
  49:14,21 68:1
**specific** 14:4
  17:6 35:13
  58:22 63:2
**specifically**
  58:19
**speculative**
  65:9
**speed** 78:9
**spend** 10:23
**spending** 73:23
**spot** 28:4
**square** 4:11
  5:3
**stakeholder**
  25:19
**stalking** 47:25
  48:16,25 49:17
  49:24,25 51:9
**standard** 42:25
  49:1,23 51:8
  52:9,13 59:9
  78:8,16
**standards**
  60:20
**standing** 41:13
  70:14

**stands** 10:19
**start** 31:24
**started** 8:21
  53:25
**starting** 38:23
**state** 4:2 7:19
  31:7 41:14
**statement**
  51:17 54:11
**states** 1:1,12
  4:1 20:13 28:9
  74:3,12 77:5,6
  79:2,8,15 80:2
**status** 17:20
  82:8,10
**stay** 67:17 68:2
  68:4,15,23
  69:2,11
**stays** 34:8
  67:19
**steer** 39:1
**stepped** 15:5
  35:16 36:15
  45:22
**stepping** 35:15
**steve** 16:10
**steven** 3:24
**stick** 7:20
**stipulation**
  54:3
**stop** 23:8 31:19
**street** 3:13
**strictures**
  49:17,18
**strikes** 52:1
**stripped** 30:18

**strong** 35:1
**structure**
  47:25 49:1
  51:9
**structured**
  50:9
**subject** 35:8
  56:14 64:4
  71:23
**submission**
  77:18
**submit** 78:3
  81:16
**submitted**
  50:19 57:8,15
  57:16
**submitting**
  71:22
**subpart** 65:24
**subparts** 65:19
**subsection**
  66:13
**subsided** 61:10
**substantial**
  12:24 51:14
  58:2 59:20
  61:7 62:24
  65:6
**substantive**
  65:1
**subsumed**
  22:14
**success** 18:22
**successfully**
  42:8 81:23
**sued** 30:6

**sufficient**
  10:13 11:14
  40:24 60:22,22
  66:5,12
**suggest** 41:21
  51:25
**suggesting**
  61:12
**suggests** 75:7
**suit** 29:22
**suite** 4:18
  85:22
**summer** 25:10
  37:23,23
**superimposed**
  29:7
**superior** 61:14
**support** 59:22
**supposed**
  38:22
**sure** 13:24
  15:11,12 16:4
  16:21 25:25
  31:14,22 32:17
  34:25 51:23
  56:18 69:13,24
  70:15,21,21
  73:1 78:14,16
  80:24 81:9
  82:7
**surmise** 25:25
**surplus** 11:18
  12:15 60:24
**surprise** 49:23
**switched** 40:4
**sworn** 54:11

**sympathy**
35:14

**t**

**t** 85:1,1
**table** 51:10
**tackle** 24:1
**take** 7:16 8:11
12:7 25:14
41:7 44:9 46:6
47:22 55:5
72:19 83:7
**taken** 25:17
48:21 75:5
80:23
**takes** 47:21
**talk** 24:20 53:2
53:3,3
**talked** 49:8
**talking** 23:8
31:19 43:15,16
48:17,18 72:2
73:15
**tangled** 32:11
**task** 81:4,5
**tax** 43:14,15,16
43:24
**taxes** 12:20,20
13:5 41:3
**teased** 81:6
**telephonically**
5:16
**tell** 7:24 18:2
27:17 32:1
49:20 50:14
72:6 73:14
**telling** 69:14
69:15

**temperature**
25:16
**template** 78:9
**tenant** 37:7
**tenants** 14:13
14:16 35:8
38:4 46:21
68:8,9
**tend** 41:16
**tenth** 77:9
**tenure** 25:4
**term** 40:16
**terminated**
54:16
**terms** 9:15,16
13:18,20 14:1
14:21 15:5,11
16:20 25:7
27:25 32:21
39:4 42:7 58:6
62:9,16 71:18
74:24
**terrific** 18:22
**thank** 7:10,11
16:8 20:12
24:15,17,18
29:13 34:14
39:21,23 44:21
53:21 57:1
72:15,19,21,22
73:22 74:2
78:6,18,19
79:1 80:1
81:21,22 83:6
83:9
**thankfully**
18:17 25:16

**thanks** 21:22
39:22 75:11
77:1,16 82:4
83:7
**theoretically**
51:2 53:17
55:7
**theories** 46:19
**thereto** 2:6
**thing** 21:14
35:25 38:6
44:10 56:17
**things** 12:9
29:10 32:2
33:5 35:12
36:9 38:3
42:15 45:12
48:21 50:9,18
51:3
**think** 7:20 8:18
13:7,14 14:22
16:17 17:2,12
17:17 18:3,6,7
19:1,8 22:10
22:13,15 23:7
23:19,20 24:10
27:21 28:14
31:5,18 33:12
33:17 34:3,15
34:19 35:17,19
39:25 40:1,18
40:20,23,24
41:25 42:14
44:3,10,18,22
44:23 45:11,22
47:20 48:23,23
52:7 55:9,14

56:5,15 61:15
61:19 62:3
63:10 65:15
67:25 68:1
70:23 71:19,23
72:12 75:1
77:18 78:20
80:23 81:2,11
81:18,20 82:5
82:10,12
**thinking** 27:21
29:9 31:9,12
64:25
**third** 4:18 36:3
37:9 73:3,8
78:20,23 79:22
**thought** 8:19
20:18,22 40:4
49:23 50:21,23
68:3 71:25
78:15
**thoughts** 42:22
**threat** 26:18
**threatened**
28:18 64:5
**threats** 25:14
**three** 18:22
40:20,24 44:2
49:2 52:18
59:7 73:9 76:2
76:15 80:7
81:3
**ticket** 8:3
**time** 5:3 7:15
7:16,19 8:20
10:5,17,20
12:2 14:11

25:11 26:22
29:2,2 30:8
31:20 32:12
33:1,15 46:7
47:23 48:21,22
54:3,6 58:12
58:16,23 60:2
61:20 65:1
68:18 72:2
74:9,9,18 76:5
77:7,11,21
78:13 80:11,12
81:21
**timeline** 14:17
**timely** 38:5
44:17 56:22
**times** 4:11 52:9
67:10
**timothy** 5:6
**title** 35:8 37:1
41:9,16,20
43:5,5,11,12
43:22
**today** 7:8 8:2
9:5,10,14,17
10:11 11:4,9
12:18 14:2
15:4 17:1
21:17 24:11
32:22 34:20
42:24 44:17,17
44:17 52:11
63:9,19 70:16
70:17 71:12
**today's** 10:18
68:22

**toggle** 12:5,5
**told** 13:2 20:24
41:2
**tomorrow** 37:7
37:8
**top** 14:3
**topical** 63:16
**topics** 80:7
**tortured** 51:19
52:7
**tossed** 81:4
**total** 74:19
79:6,10,12,13
**touch** 65:13
**towards** 16:12
**transaction**
10:1 11:5
15:25 37:22
41:14 42:8
43:2 58:14,20
59:4 61:8,22
65:18 81:24
**transactions**
20:19 45:2
**transcribed**
2:25
**transcript**
34:25 51:16
71:10 85:4
**translate** 52:12
**transpired**
76:20
**treasury** 41:1
**tremendous**
46:8
**tries** 14:25
36:3 44:5

**trigger** 26:19
64:1
**triggers** 28:18
40:21
**true** 29:17 85:4
**trustee** 4:1,2
17:24 18:4
20:13 23:21,25
24:14 25:20
28:9 63:8 73:7
73:19 74:3,12
75:6,14 76:12
77:5,6,23 79:8
79:15 80:2,23
84:6
**trustee's** 23:19
57:11 63:13
73:25 75:1
79:2
**trusts** 20:23
**try** 39:1 42:3
**trying** 23:18
24:17 38:23
45:16
**tune** 36:15
**turn** 15:15
16:12 28:3
35:7 45:19
63:20 72:8,24
**turned** 29:16
33:11
**two** 8:2 10:16
12:9 14:13
17:21 38:3,9
39:8,9 43:12
44:3 48:9,22
49:2 50:21

52:14,21 53:13
53:18 63:6
64:13 72:3
**type** 46:18 50:1
**types** 33:5
**typically** 59:25

**u**

**u.s.** 1:23 17:23
18:3 23:19,21
23:25 24:14
25:20 41:1
57:11 63:8,13
73:6,19,25
75:1,6,14
76:12 77:23
80:23 84:6
**uday** 6:2
**ultimately**
19:12 42:24
45:5
**unanimous**
43:1
**unclear** 20:17
**uncontested**
8:10,10
**under** 14:19
22:12,13,24
26:14 28:12
40:12 43:2
46:5 49:17,17
58:2 59:18
65:4,16 66:14
66:21,23 67:18
69:2 70:14
78:1 79:18
81:14

**undergoing**
34:3
**undermine**
14:3 66:19
**understand**
7:12 30:22
50:23 51:2
55:13 69:18
81:2
**understanding**
41:4
**understood**
16:2 17:12
**undertaken**
25:10
**undisputed**
12:11
**unexpired** 2:5
**unforeseen**
38:10 41:20
**unfortunately**
25:6 29:22
50:9
**unharried** 69:7
**unintentional...**
49:5
**uniondale** 5:12
**united** 1:1,12
4:1,2 20:13
28:9 74:3,12
77:4,6 79:2,8
79:15 80:2
**unjust** 59:1
**unknown** 1:25
10:9
**unknowns**
40:18

**unmuted** 39:25
**unopposed**
68:15 72:3
**unreceptive**
29:10
**unsecured**
11:16 26:5,23
59:2
**unsuccessful**
25:4
**untimely** 52:1
**unusual** 40:16
**unwarranted**
63:14
**update** 68:12
**updated** 10:24
**upfront** 7:16
**upward** 11:14
**use** 29:17
**used** 35:2 50:3
**using** 24:23
59:16
**usual** 48:8
**utilized** 58:2

**v**

**vague** 27:14
77:6 80:11
**vagueness** 74:9
79:8
**valid** 37:16
**value** 52:2,4
60:1 62:1
64:22 66:2,3,4
66:25
**varied** 64:20
**variety** 58:17

**various** 67:10
75:15
**verify** 27:14
**veritext** 85:20
**version** 57:7,17
**vetted** 10:6
**viable** 69:20
**view** 26:11
32:19 35:3,14
43:18 44:8
54:9 56:15
**vis** 60:7,7
**visible** 7:15
**voiced** 62:8
79:3
**voluntarily**
76:24
**voluntary** 79:4
**volunteered**
28:4

**w**

**wait** 48:15
**waited** 58:23
**waiting** 7:11
**waive** 68:15
**waiver** 67:17
68:23 69:2,5
69:11
**walk** 13:19
35:21
**walks** 35:20
**want** 11:14
13:14 14:5
15:14 16:9,11
16:18,24 17:14
19:16 22:5
24:1,6,20

29:12 34:2
37:14,18 38:25
44:13,19 45:21
46:1,18 47:9
53:21 54:8,14
55:15,17,22
56:7,18 65:13
68:2,17 69:4,8
69:14,18 70:2
70:3,17,20
74:22 77:2
81:19,24 82:17
**wanted** 17:7
18:16 21:20
44:21 46:25
50:23 53:25
80:4 82:13
**wants** 7:18
15:4 47:8 69:4
72:13
**warrant** 61:21
65:10 78:1
**watchtel** 3:18
**water** 81:18
**way** 12:18 14:2
14:25 15:3
21:15,18 22:6
32:1 33:3 36:4
38:5 50:6,8,9
50:10,12,13,17
51:20 55:12,12
61:4 62:2
81:25
**we've** 8:23
18:21 23:20
29:22 38:6
43:1 44:18

45:25 47:20
53:7 56:5,15
72:17 74:3
75:19 79:1
80:19
**week** 50:21
**weinstein** 3:12
40:9,25 42:6
43:17,17
**welcome** 31:25
**went** 43:10
**west** 3:13
**wheel** 45:3
48:10,11
**whoever's**
29:11
**wife** 50:4,5
**wild** 46:18
**willful** 41:24
44:23
**willfulness**
42:5 45:9 46:2
**willing** 50:14
50:16 52:21
53:6 61:20
**willingness**
42:20
**winded** 69:10
**wings** 33:14
**wisdom** 45:1
**wishes** 60:19
**withdrawn**
23:22
**withdrew**
76:10
**woody** 5:17

**word** 11:19
57:8,18
**wording** 22:19
**words** 15:3
35:1 45:1 67:7
**work** 30:8
31:15 33:21
46:8 50:10
57:2 61:7 74:9
75:1,3 76:3
**worked** 33:24
72:5 74:25
81:3,3
**works** 49:2
**worry** 48:18
**worse** 12:19
**worst** 13:7,8
50:13
**worth** 56:2
76:16
**worthwhile**
62:21
**would've** 18:5
49:9
**wrapping** 56:5
**written** 65:19
**wrong** 77:21

| **x** |
| --- |

**x** 1:4,10 84:1

| **y** |
| --- |

**yeah** 7:10,23
12:2 13:10,19
13:23 15:10
18:2,12 20:8
22:11 23:5
24:4,10,19

26:16 28:14
30:22 32:8,9
32:13,23 34:12
36:8,11,13,21
39:14,15 42:2
44:15 45:11
49:18 54:15
55:18,21 71:25
72:23,24 73:12
74:2 75:18
76:1 77:1 78:5
78:11,16 79:20
80:16 83:1
**year** 25:8
37:21 47:18
49:22 51:15
76:7
**years** 76:2,16
**yesterday** 9:2
**yield** 36:17
**york** 1:2,14 3:6
3:14,21 4:3,5
4:12,19 5:4

| **z** |
| --- |

**zero** 70:25
**zoom** 9:17,19
27:12 53:4
71:17 72:11