Andrew K. Glenn
Shai Schmidt
Richard C. Ramirez
Naznen Rahman
**GLENN AGRE BERGMAN & FUENTES LLP**
1185 Avenue of the Americas
22nd Floor
New York, New York 10036
Telephone: (212) 970-1600

*Counsel to Post-Effective Date Debtor*
*Ninety-Five Madison Company, L.P.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>NINETY-FIVE MADISON COMPANY, L.P.,<br><br>Post-Effective Date Debtor. | Chapter 11<br><br>Case No. 21-10529 (DSJ) |

### NINETY-FIVE MADISON COMPANY, L.P.'S MOTION TO COMPEL DOCUMENTS FROM BRANTON REALTY SERVICES LLC

Post-Effective Date Debtor Ninety-Five Madison Company, L.P. (the "Debtor") by and through its attorneys, Glenn Agre Bergman & Fuentes LLP, hereby moves for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), compelling Branton Realty Services LLC ("Branton") to produce documents pursuant to Fed. R. Civ. P. 26, 34, and 37, made applicable to this matter by Fed. R. Bankr. P. 7026, 7034, and 7037 (the "Motion").[1] In support of the Motion, the Debtor respectfully states as follows:

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the *Final Application For (i) Payment of Real Estate Broker and Sales Agent Commissions, (ii) Reimbursement of Expenses, and (iii) Related Relief* [Dkt. No. 362].

## RELIEF REQUESTED

1. The Debtor requests that the Court (i) order immediate production by Branton pursuant to the Document Requests and (ii) grant such further relief as the Court deems just and proper.

## JURISDICTION, VENUE, AND STATUTORY BASES FOR RELIEF

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This motion seeks relief pursuant to 11 U.S.C. § 105(a), Fed. R. Bankr. P. 7026, 7034, and 7037, and Fed. R. Civ. P. 26, 34, and 37.

## RELEVANT BACKGROUND

### I. The Sale Process and Branton's Retention

4. The Debtor was the fee simple and title owner of a commercial building located at 95 Madison Avenue, New York New, York 10016 (the "Property").

5. During the Chapter 11 cases, the Debtor made the decision to proceed with a sale of the Property to an outside buyer.

6. To effectuate a prompt sale transaction, the Debtor retained Branton as its real estate broker and sales agent pursuant to a certain *Listing Agreement for Sale,* dated August 18, 2022 (the "Listing Agreement"), which memorialized the terms and conditions of Branton's retention by the Debtor. Pursuant to the Listing Agreement, Branton had the exclusive right to market the property from August 18, 2022 through December 31, 2023 (the "Term"). *See* Listing Agreement §§ 1-2. During the Term, the Debtor was required to refer all incoming inquires to Branton, and all negotiations were to be conducted through Branton. *See id.* § 3. Within ten days after the Term expired, Branton was required to give the Debtor a list (the "List") of every party

who toured the Property during the Term. *See id.* § 5. If the Debtor signed an agreement with any party on the List within one year after expiration of the Term, Branton was entitled to a commission. *See id.* § 5.

7. On August 31, 2022, the Court entered the *Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) Authorizing the Retention and Employment of Branton Realty Services LLC as Real Estate Agent to Debtor Ninety-Five Madison Company, L.P. Nunc Pro Tunc to August 17, 2022* [Dkt. No. 181] (the (the "Retention Order"), as amended by an order dated May 25, 2023.[2]

8. On May 2, 2024, the Court entered an order approving a sale of the Property (the "Sale") to Madison 29 Holding LLC, as amended by an order dated June 5, 2024.[3]

## II. The Fee Request

9. On June 4, 2024, Branton filed its *Final Application For (i) Payment of Real Estate Broker and Sales Agent Commissions, (ii) Reimbursement of Expenses, and (iii) Related Relief* [Dkt. No. 362] (the "Fee Request") and the supporting Declaration of Warren M. Heller [Dkt. No. 362, Ex. A] (the "Heller Declaration"). The Fee Request – which is, in form and effect, an adversary complaint masquerading as a fee application – initiated fact-intensive proceedings that effectively seek a declaratory judgment that Branton is entitled to a commission under the terms

---

[2] *See Order Amending the Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) Authorizing the Retention and Employment of Branton Realty Services LLC as Real Estate Broker and Sales Agent* [Dkt. No. 243].

[3] *See Order Pursuant to Sections 105, 363, 365 and 1146 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure for Entry of An Order (I) Approving the Sale of the Property Free and Clear of All Liens, Claims, Encumbrances and Interests (Except Permitted Encumbrances), (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases Related Thereto, and (III) Granting Related Relief* [Dkt. No. 358]; *Second Amended and Restated Order Pursuant to Sections 105, 363, 365 and 1146 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure for Entry of An Order (I) Approving the Sale of the Property Free and Clear of All Liens, Claims, Encumbrances and Interests (Except Permitted Encumbrances), (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases Related Thereto, and (III) Granting Related Relief* [Dkt. No. 363].

of the Listing Agreement because the Sale of the Property is a result of Branton's marketing efforts. Fee Request ¶ 1.[4]

10. In support of its claims, Branton details the allegedly extensive efforts it undertook to market and sell the Property, including, but not limited to, the following:

- Once Branton had researched the Property, Branton prepared and circulated extensive marketing materials to be submitted to prospective bidders. Fee Request ¶ 12; Heller Declaration ¶ 19.

- "Branton marketed the Property extensively to hundreds of prospects, ultimately conducting over 140 tours to 110 groups that were potential prospects – a record number of tours in Branton's multiple decades in the business." Fee Request ¶ 15.

- The Heller Declaration spends 11 pages extensively laying out Branton's "Marketing Program and Negotiations With Prospective Purchasers." Heller Declaration ¶¶ 19-51.

11. The Fee Request also discusses the List prepared by Branton "of every party who toured the Property during the Term" (Fee Request ¶ 5) and claims that one of the approximately 25 bids that the Debtor received "came from one of Branton's prospects later included in the List." Heller Declaration ¶ 35.

12. Moreover, the Fee Request discusses Branton's role in the negotiation process with potential buyers. Branton alleges that, during the Term, it helped to negotiate a letter of intent between the Debtor and a prospective buyer (the "Branton Prospective Buyer"), which provided the Branton Prospective Buyer with an exclusivity period. Fee Request ¶ 17. Branton claims that

---

[4] On this point, the Debtor urges the Court to strongly consider whether converting the Fee Request into an adversary proceeding is in the best interest of the parties and judicial economy. Fundamentally, Branton has not met the preliminary requirement of establishing he is entitled to compensation pursuant to the underlying agreements and the Bankruptcy Code. Indeed, by Branton's own admission, **not even Branton has fully confirmed it is entitled to alleged fees.** *See* Fee Request ¶ 42 ("Branton is presently unaware of certain facts that may be relevant to this Application."). At best, the Fee Request seeks a declaratory judgment that the "sale is the result of Branton's marketing efforts"; consequently, it may be better suited as an adversary proceeding to recover money from the Debtor and/or to determine Branton's property interest in the sale proceeds. *See, e.g.,* Branton Fee Request ¶ 40 (stating the "Relief Requested" is, *inter alia,* "$950,000 on account of Branton's Commission from the sale proceeds"). *See also* Fed. R. Bank. P. 7001(9). The Court has *sua sponte* authority under 11 U.S.C. § 105(a) to convert the Fee Request into an adversary proceeding. *See In re Cable*, 2022 WL 2707691, at *4 (Bankr. E.D. Tenn. July 12, 2022) (collecting cases). The Debtor also reserves its right to seek such relief on motion.

the Debtor may have communicated with Madison 29 Holding LLC during the purported exclusivity period, thereby interfering with Branton's ability to collect on a commission based on a sale to the Branton Prospective Buyer. *Id.* ¶ 26.

### III. The Discovery Dispute

13. On June 5, 2024, in connection with the Fee Request, Branton initiated discovery proceedings, including serving document requests on the Debtor.

14. On July 1, 2024, the Debtor served its First Request for the Production of Documents (the "Document Requests"), seeking information relating to the Fee Request. A copy of the Document Requests is attached hereto **Exhibit B**.

15. Branton subsequently produced certain materials purportedly responsive to the Document Requests. On July 19, 2024, however, Branton served Responses and Objections to the Document Requests (the "R&Os"), a copy of which is attached hereto as **Exhibit C**. Pursuant to the R&Os, Branton unilaterally limited or refused to produce any materials responsive to Request Nos. 4, 5, 6, 8, 9, 10, and 11, claiming that they are irrelevant, overly broad and unduly burdensome, and disproportional to the needs of the case. However, the documents and communications sought in Request Nos. 4, 5, 6, 8, 9, 10, and 11 are plainly relevant to the Fee Request because they concern:

- the advertising, marketing, promoting, and/or publicizing of the Property by Branton or any of its affiliates, including Mr. Heller (**Request No. 4**);

- any tours, visits, or 'walk-throughs' of the Property conducted by Branton or any of its affiliates (**Request No. 5**);

- any nondisclosure agreements entered into with any Person in connection with the Property (**Request No. 6**);

- any disposition, rental, leasing, or other contractual arrangement with regard to the Property (**Request No. 8**); and

- the List, including (i) the formation of the List (**Request No. 10**), (ii) the various iterations of the List (**Request No. 9**), and any iterations of the List exchanged between Branton and any parties who toured the Property during the Term (**Request No. 11**).

*See* Document Requests at 9-10.

16. During a meet-and-confer on July 25, 2024, counsel for Branton conveyed Branton's belief that it had satisfied its discovery obligations and that no other documents would be forthcoming.

17. On July 28, 2024, counsel for the Debtor e-mailed counsel for Branton, demanding that Branton produce documents responsive to Request Nos. 4, 5, 6, 8, 9, 10, and 11 because they are directly relevant to the allegations made by Branton itself in the Fee Request. In response, counsel for Branton reiterated Branton's position that Branton had complied with its discovery obligations. On July 31, 2024, counsel for the Debtor e-mailed counsel for Branton and stated that if Branton's position remained the same, the Debtor would need to move to compel. These e-mail exchanges are attached hereto as **Exhibit D**.

18. Rather than respond to counsel's July 31 e-mail, Branton filed a letter with the Court on August 1, 2024 requesting a status conference. *See* Dkt No. 367.

## ARGUMENT

### I. Legal Standard

19. Federal Rule 26(b)(1) allows parties to seek "discovery regarding any matter, not privileged, that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevance under [Federal] Rule 26 is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Dorn v. Berson*, 2010 WL 11672098, at *1 (E.D.N.Y. Dec. 8, 2010) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.,* 258 F.R.D. 149, 159 (S.D. Tex. 2009) (quoting *Merrill*

*v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) ("Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party.")

20. When a party refuses or fails to produce documents in response to a discovery request, Rule 37 authorizes a counterparty to move for an order compelling disclosure of discovery. Fed. R. Civ. P. 37(a)(1). The party moving to compel discovery "bears the initial burden of demonstrating relevance." *Cohen v. Cohen*, 2015 WL 4469704, at *3 (S.D.N.Y. June 29, 2015). "This bar is relatively low, requiring the requester to demonstrate only any possibility of relevance sufficient to warrant discovery." *Id.*

21. "Once the [moving] party makes such a showing, the burden shifts to the withholding party, who must clarify and explain precisely why [the] objections are proper . . . [and] must offer a specific justification for denying access to each document." *Id.*; *In re BLMIS*, 605 B.R. 617, 629 (Bankr. S.D.N.Y. 2019) (when the discovery sought appears relevant, "the party resisting discovery bears the burden of demonstrating that the requests are irrelevant, or are overly broad, burdensome, or oppressive"). "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428, 431 (S.D.N.Y. 2011) (internal citations and quotation marks omitted). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

22. As explained below, under the foregoing standard the materials sought by the Document Requests are plainly relevant to the Fee Request.

## II. The Document Requests Are Relevant to the Fee Request.

23. Request Nos. 4 and 5 seek documents regarding Branton's marketing and tours of the Property. These documents go to the crux of the relief sought in the Fee Request—specifically, whether Branton is entitled to a commission because the Sale is the result of Branton's extensive marketing efforts. *See* Fee Request ¶ 1. It cannot be disputed that documents relating to the marketing or tours of the Property are directly aimed at both verifying and uncovering the scope of these efforts.

24. Request No. 8 seeks documents relating to any contractual arrangement relating to the Property. The Fee Request details Branton's role in the negotiation process with potential buyers. *See* Fee Request ¶¶ 17, 26. Accordingly, these documents speak directly to the alleged discussions and agreements that took place during the sale process.

25. Request Nos. 9, 10, and 11 seek documents relating to the List. Branton itself alleges that one of the bids received by the Debtor came from the List. *See* Heller Declaration ¶ 35. Documents relating to the formation and evolution of the List (Request Nos. 9 and 10) are therefore central to verifying the extent of Branton's marketing efforts and the impact of Branton's marketing strategy in generating bids to purchase the Property. Branton's communications with parties on the List (Request No. 11**)** are relevant to assessing Branton's alleged interactions with prospective bidders.

26. Branton refuses to produce *any* materials relating to Request Nos. 4, 5, 8, 10, and 11, bewilderingly arguing that its entitlement to fees turns on the actions of all parties ***except Branton***. *See* R&Os at 3-6. That argument falls flat given that Branton (i) has set forth pages of allegations detailing its own role in the marketing of the Property (*see* Fee Request ¶¶ 12, 15;

Heller Declaration ¶¶ 19-51); (ii) detailed its own role in negotiations (*see* Fee Request ¶¶ 17, 26); and (iii) alleged that one of the bids came from a party on the List. *See* Heller Declaration ¶ 35.

27. With respect to Request No. 9, Branton unilaterally limits its production to versions of the List transmitted to the Debtor. *See* R&Os at 5. Given that the iterations of the List are relevant – and given the logical conclusion that the Debtor would already be in receipt of any such documents – such incomplete disclosure is inappropriate.

28. Simply put, without the requested documents and communications, the Debtor is unable to adequately assess Branton's entitlement to payment under the Listing Agreement. Accordingly, the Document Requests are plainly relevant under Federal Rule 26.

### III. The Debtor's Request for Relevant Documents Is Proportional to the Needs of the Case.

29. Branton's argument that the Document Requests are burdensome or disproportional to the needs of the case (*see* R&Os at 3-6)—a case in which Branton accuses the Debtor of undercutting ongoing negotiations and seeks relief totaling nearly $1 million—is frivolous. Obtaining full and complete discovery from Branton is necessary to ensure that a post-Effective Date debtor is not unfairly burdened with the obligation to cover the substantial commission Branton is seeking. Branton holds exclusive access to the vast majority of the requested documents, without which the Debtor is at a significant disadvantage. The Document Requests are also narrowly tailored to seek information directly related to the key issues in the case. Accordingly, Branton should be compelled to produce, in full, the relevant documents requested.

### CONCLUSION

WHEREFORE, for the foregoing reasons, the Debtor respectfully requests that the Court (i) order immediate production by Branton pursuant to the Document Requests and (ii) grant such further relief as the Court deems just and proper.

Dated: August 8, 2024
      New York, New York

By: /s/ *Andrew K. Glenn*
Andrew K. Glenn
Shai Schmidt
Richard C. Ramirez
Naznen Rahman
**GLENN AGRE BERGMAN & FUENTES LLP**
1185 Avenue of the Americas
22nd Floor
New York, New York 10036
Telephone: (212) 970-1600
E-mail: aglenn@glennagre.com
        sschmidt@glennagre.com
        rramirez@glennagre.com
        nrahman@glennagre.com

*Counsel to Post-Effective Date Debtor Ninety-Five Madison Company, L.P.*