**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>NINETY-FIVE MADISON COMPANY, L.P.,<br><br>Reorganized Debtor. | ) Chapter 11<br>)<br>) Case No. 21-10529 (DSJ)<br>)<br>)<br>)<br>) |

**DIRECT TESTIMONY OF MICHAEL SKLAR IN SUPPORT OF NINETY-FIVE MADISON COMPANY, L.P.'S OPPOSITION TO THE FINAL APPLICATION OF BRANTON REALTY SERVICES LLC FOR (I) PAYMENT OF REAL ESTATE BROKER AND SALES AGENT COMMISSIONS, (II) REIMBURSEMENT OF EXPENSES AND (III) RELATED RELIEF**

I, Michael Sklar, hereby declare under penalty of perjury the following:

1. I submit this declaration (this "Declaration") as direct testimony in support of Ninety-Five Madison Company, L.P.'s ("NFMC" or the "Reorganized Debtor") Opposition [Dkt. No. 392] to the *Final Application of Branton Realty Services LLC for (I) Payment of Real Estate Broker and Sales Agent Commissions, (II) Reimbursement of Expenses and (III) Related Relief* [Dkt. No. 362] (the "Fee Application").

2. Unless otherwise stated, I have personal knowledge of the facts hereinafter set forth, and all matters set forth herein are based on my personal knowledge, my review of relevant documents, information supplied to me, or my views. If I were called to testify, I would testify competently to the facts set forth herein.

**The Property**

3. The Reorganized Debtor is a New York limited partnership that was formed on June 1, 1982 pursuant to a limited partnership agreement (the "Partnership Agreement").

4. The Reorganized Debtor's current general partners (the "General Partners") are: (i) RAS Property Management, LLC ("RAS"), an entity owned by Rita Sklar and various trusts

1

formed by her; (ii) Sharan Sklar Management LLC, an entity managed by Sharan Sklar; and (iii) Michael Sklar Management LLC, an entity managed by me.

5. The Reorganized Debtor was the fee simple and title owner of (i) the land and commercial building (the "Building") known as 89-95 Madison Avenue, New York New, York 10016 (the "Premises") and (ii) the personal property located at the Premises (together with the Building and the Premises, the "Property"). The Reorganized Debtor previously provided full service commercial leases.

6. From 1982 to 2021, Rita Sklar, through RAS, managed the Property and the day-to-day affairs of the Debtor.

7. In June 2021, the Partnership Agreement was amended to add Sharan Sklar Management LLC and Michael Sklar Management LLC as General Partners. Sharan Sklar and I subsequently replaced Rita Sklar in managing the day-to-day affairs of NFMC and the Property.

**The Chapter 11 Case**

8. On March 22, 2021 (the "Petition Date"), NFMC commenced the Chapter 11 Case because it was facing liquidity challenges, legal judgments, and litigation expenses caused by years of mismanagement and prepetition litigation with a former tenant, Vitra, Inc. ("Vitra").

9. During the Chapter 11 Case, the Property was encumbered by a DIP financing, which was subsequently converted to a mortgage provided in connection with an exit financing term loan facility (the "Exit Facility") extended pursuant to that certain *Secured, Super-Priority Debtor-in-Possession Loan and Security Agreement*, dated November 4, 2023, by and among the Debtor, as borrower, and Madison Avenue Servicing LLC, as DIP lender (the "DIP Lender").

10. Two Bins Capital LLC ("Two Bins") and its owner, Mr. Emanuel Westfried, served as broker for the Exit Facility.

11.     During the Chapter 11 Case, and due to challenges posed by the ongoing COVID-19 pandemic and the sustained downturn in the commercial leasing market, NFMC decided to pursue a sale or other disposition of the Property to an outside buyer.

12.     Between the Petition Date and the date of the Sale (as defined below), NFMC suffered significant operating losses that far exceed its limited revenues.

**The Marketing Process and the Proposed Sale**

13.     To effectuate a sale, NFMC retained Branton Realty Services LLC ("Branton"), a firm founded by Warren "Woody" Heller. A certain *Listing Agreement for Sale,* dated August 18, 2022 (the "Listing Agreement"), memorialized the terms and conditions of Branton's retention.

14.     I understand from NFMC's legal counsel that this Court approved Branton's retention by NFMC, pursuant to 11 U.S.C. §§ 327(a) and 328(a), on August 31, 2022, *nunc pro tunc* to August 18, 2022. Pursuant to the Listing Agreement, Branton's engagement term (the "Term") ended on December 31, 2023.

15.     Throughout the Term, I referred inquiries to Branton as required by the Listing Agreement. I did this by referring Branton to interested parties, and by referring interested parties to Branton.

16.     On September 12, 2022, Two Bins was first referred to Branton by me when I sent Woody Heller a spreadsheet titled "Sale 95 Madison.xlsx" that listed Two Bins (among others) and included Two Bins's contact information. On this spreadsheet, I referred Mr. Westfried (along with his contact information) as a broker in connection with an inquiry from Shel Capital and Bluestone Investment, but also in a more general capacity as a broker that had "expressed interest" in the Property.

17.     Two Bins and Mr. Westfried were again referred by me to Branton the following year on June 26, 2023 and June 27, 2023, when I again asked Branton through Mr. Heller to contact

3

Mr. Westfried as someone who had expressed interest in the Property. I understand that Mr. Heller never contacted Mr. Westfried despite these referrals from me.

18. Throughout the Term, NFMC received multiple non-binding bids for the Property. However, while NFMC engaged in several negotiations with various parties, all failed to yield an actionable proposal.

19. Branton's unsuccessful sale efforts caused great distress to me personally, especially in the second half of 2023 and during the Term. At that time, NFMC was facing mounting costs and immense pressure from its DIP Lender (including the prospect of defaulting on the Exit Facility) and its creditors such as Vitra regarding the payout and satisfaction of their claims. As I testified during my deposition, NFMC was in "panic mode" in the final months of the Term, and I spent many sleepless nights worrying over how these matters could be resolved without my family losing the value of this asset. Then, I believed that if a sale of the Property failed and no buyer was ever procured, my family would lose everything of monetary value.

20. Nearly 15 months transpired after Branton's retention with no actionable offer for the Property. When the Term expired, NFMC chose not to renew Branton as NFMC's exclusive broker.

21. I personally always hoped Branton would succeed in procuring a buyer during the Term.

22. In June 2024, the Property was sold (the "Sale") to Madison 29 Holding LLC (the "Buyer"). The Buyer is controlled by Mr. Linzhong Zhuo and his partners; I understand that Mr. Zhuo concurrently works at Sunlight Development Group ("Sunlight"), a real estate developer.

23. Two Bins – not Branton – served as broker to the Buyer for the Sale.

**This Dispute**

24. In this dispute, Branton has put at issue the phone calls and text messages that I had with Mr. Westfried and Sharan Sklar in the latter half of 2023 just before Branton's Term expired.

25. I consider Mr. Westfried an informal advisor to the Sklar family and I am friendly with Mr. Westfried. I have sought his advice on a range of topics relevant to his experience and expertise, such as financing and refinancing sources, market trends, and the real estate marketplace generally. I also consulted Mr. Westfried frequently in 2023 in regards to the rapidly diminishing Exit Facility, relations with the DIP Lender, and the possibility of developing the Property ourselves, as well other matters relating to a personal estate issue.

26. Sharan Sklar is my sister and only sibling. Sharan and I often speak by telephone about business and personal matters, including family issues.

27. During my interactions with Mr. Westfried in 2023, there were times that the Property and its ongoing sale process was discussed. During those discussions, I always made clear to Mr. Westfried that Branton was the exclusive broker and that any sale efforts by Two Bins of the Property during Branton's Term had to be through Branton.

28. I did not learn of Mr. Zhou or Sunlight until January 2024, after the Term expired. I first learned these parties' names in January 2024 while preparing a non-disclosure agreement.

**The CNY Proposal**

29. Branton alleges that I colluded with Mr. Westfried to deprive Branton of its fee. But the reality is that NFMC agreed to give Branton's proposed buyer, CNY, an exclusive right to negotiate a transaction for the property on January 9, 2024. We extended this exclusivity again on January 23, 2024. If the CNY transaction closed, Branton would have had the right to a

commission for this transaction.  However, the CNY transaction did not progress because CNY did not have the financing, and the parties could not agree on the terms of a binding proposal.

30. NFMC then pursued the Sunlight transaction.  I believe that even at the last minute before the hearing to approve the sale, CNY could have sent a contract with a deposit.

*＊＊*

*I declare under penalty of perjury that the foregoing is true and correct.*

Dated: January 15, 2025                                */s/ Michael Sklar*
                                                                       Michael Sklar