**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>NINETY-FIVE MADISON COMPANY, L.P.,<br><br>Reorganized Debtor. | ) Chapter 11<br>)<br>) Case No. 21-10529 (DSJ)<br>)<br>)<br>)<br>) |

**DIRECT TESTIMONY OF EMANUEL WESTFRIED IN SUPPORT OF NINETY-FIVE MADISON COMPANY, L.P.'S OPPOSITION TO THE FINAL APPLICATION OF BRANTON REALTY SERVICES LLC FOR (I) PAYMENT OF REAL ESTATE BROKER AND SALES AGENT COMMISSIONS, (II) REIMBURSEMENT OF EXPENSES AND (III) RELATED RELIEF**

I, Emanuel Westfried, hereby declare under penalty of perjury the following:

1. I am the owner of Two Bins Capital LLC ("Two Bins").

2. I submit this declaration (this "Declaration") as direct testimony in support of Ninety-Five Madison Company, L.P.'s ("NFMC" or the "Reorganized Debtor") Opposition [Dkt. No. 392] to the *Final Application of Branton Realty Services LLC for (I) Payment of Real Estate Broker and Sales Agent Commissions, (II) Reimbursement of Expenses and (III) Related Relief* [Dkt. No. 362].

3. Unless otherwise stated, I have personal knowledge of the facts hereinafter set forth, and all matters set forth herein are based on my personal knowledge, my review of relevant documents, information supplied to me, or my views. If I were called to testify, I would testify competently to the facts set forth herein.

4. I founded Two Bins in 2016. Two Bins provides a variety of brokerage services to its clients, including (i) mortgage brokerage services, including sourcing and structuring senior, junior, mezzanine, and other hybrid debt and equity financing for the acquisition, renovation and/or

construction of residential and commercial real estate; and (ii) sales brokerage services for the sale or acquisition of residential and commercial real estate.

5. Two Bins previously served as the financing broker for NFMC's debtor-in-possession financing (the "DIP Financing"), which was ultimately approved by this Court on December 14, 2022.

6. From my work on the DIP Financing, I was aware of NFMC's desire to lease or sell the commercial building located at 95 Madison Avenue, New York New, York 10016 (the "Property"), which at that time was wholly-owned by NFMC.

7. I have also remained friendly with Michael and Sharan Sklar, two of the general partners of NFMC, and have informally advised them on an array of financing and real estate issues.

8. In April 2022, I served as broker to Shel Capital ("Shel") in connection with an offer (the "Shel Proposal") by Shel and another real estate investment firm to acquire the Property from NFMC. I provided a copy of the Shel Proposal to Michael and Sharan Sklar.

9. In late October 2023, I reached out to Michael Sklar, after hearing from a mutual acquaintance that there were no active bidders for the Property. We discussed the status of the sale efforts, and I reassured Michael that he would ultimately be able to find a buyer for the Property.

10. Michael asked me whether I had any ideas of who might be interested in the Property. Then, I got the impression that Michael was incredibly anxious over the lack of sale progress. Michael seemed extremely concerned for the financial plight of NFMC and, most especially, his family.

11. I told Michael that I did have ideas for potential purchasers, but did not provide him with the names of any parties nor any concrete details. At the time, I did not actually have any

specific potential purchasers on hand. In fact, my statements to Michael were more an effort to calm Michael's noticeable distress at that moment.

12. Michael subsequently informed me that Warren Heller, of Branton Realty Services, LLC ("Branton") had an exclusive right to market the Property and told me to reach out to Branton. I informed Michael that I was not interested in working with Branton, and that I would reach out to Michael in January 2024, after Branton's exclusive period had expired.

13. In November 2023, I had another conversation with both Michael and Sharan Sklar about a range of topics. During that conversation, Michael and Sharan seemed very concerned that there were no bidders for the Property, and again asked if I would be interested in working with Branton. I again stated that I had no interest in doing so.

14. As I explained to the Sklars during our discussions, I did not want to work with Branton for several reasons. First, my style of marketing a property for sale is very different from Branton's. I prefer to privately market properties to a handful of potential buyers, rather than publicly advertise a property. I believe my success as a broker can be attributed to my ability to market opportunities as exclusive, special, and unique. Second, I felt that it would be difficult to persuade any prospective buyer to agree to work with both Branton and myself at the same time.

15. In June 2024, I served as broker to Madison 29 Holding LLC ("Madison 29" or the "Buyer") in the purchase of the Property from NFMC. I understand that Madison 29 is controlled Linzhong Zhuo ("Mr. Zhou"), of Sunlight Development Group ("Sunlight"), and his partners. Mr. Zhou is a client that I met approximately one year prior to the sale of the Property, and who I had worked with on a number of other complex projects and transactions.

16. I worked with Mr. Zhou and his team at Sunlight to submit a term sheet (the "Sunlight Term Sheet") to purchase the Property from NFMC in early January 2024. I did not

have substantive discussions with NFMC or otherwise receive any feedback on the Sunlight Term Sheet from NFMC until the end of January 2024.

17. I was never contacted by Branton in connection with any sale of the Property. The only time I ever spoke to Branton through Mr. Heller was in June 2024, after the sale of the Property had closed, when Mr. Heller and his attorney contacted me out of the blue and in connection with this dispute.

*  *  *

*I declare under penalty of perjury that the foregoing is true and correct.*

Dated: January 15, 2025                      */s/ Emanuel Westfried*
                                                             Emanuel Westfried