# EXHIBIT
# D

## NINETY-FIVE MADISON COMPANY
## LIMITED PARTNERSHIP AGREEMENT

AGREEMENT OF LIMITED PARTNERSHIP dated as of June 1, 1982, between Rita A. Sklar as general partner and Rita A. Sklar and Lawrence Weinstein, trustees of a trust U/W of Irving Weinstein for the benefit of Lois Michelle Weinstein as the limited partner.

WHEREAS, the Partners desire to form Ninety-Five Madison Company as a New York limited partnership to own the stock of Ninety-Five Madison Corp., a New York corporation that owns the office building located at 95 Madison Avenue, New York, New York; and

WHEREAS, the Partners desire to set forth the respective rights, obligations and interests of the parties hereto to each other and to the Partnership;

NOW, THEREFORE, in consideration of the covenants and agreements hereafter set forth, the parties hereto hereby agree as follows:

### ARTICLE I
### DEFINITIONS

Whenever used in this Agreement, the following terms shall have the meanings respectively assigned to them in this Article I.

"Affiliate" means any person controlling, controlled by or under common control with another person.

"Accountant" means the public accountant regularly servicing the Partnership.

"Agreement" means this Agreement of Limited Partnership, as it may be amended from time to time.

"Assign" or "Assignment" means a valid sale, exchange, transfer or other disposition of all or any portion of an Interest. "Assignor" means a Partner who makes an Assignment and "Assignee" means a person who receives an Assignment.

"Bankruptcy" means with respect to any Partner (in the capacity in which such person is a partner), such Partner making an assignment for the benefit of creditors, becoming a party to any liquidation or dissolution action or proceeding with respect to such Partner or any bankruptcy, reorganization, insolvency or other proceeding for the relief of financially distressed debtors with respect to such Partner, or a receiver, liquidator, custodian or trustee being appointed for such Partner or a substantial part of such Partner's assets and, if any of the same occur involuntarily, the same is not dismissed, stayed or discharged within 60 days; or the entry of an order for relief against such Partner under Title 11 of the United States Code.

"Capital Account" means, as to each Partner, the amount of his Capital Contribution, plus the share of profits allocated to him pursuant to Article VII hereof, less the sum of (a) the share of losses allocated to him pursuant to Article VII hereof and (b) cash distributions made to him pursuant to Articles VII and IX hereof.

"Capital Contribution" means the property contributed to the Partnership by each Partner pursuant to Section 3.1 hereof. Any reference in this Agreement to the Capital Contribution of a Partner shall include the contributions to the capital of the Partnership made by any predecessor in interest of such Partner in respect of such Interest.

"Capital Proceeds" means any net cash proceeds arising out of the sale or disposition of the Property or the Partnership's other real property assets and/or the financing or refinancing of the Property or the Partnership's other real property assets after the establishment of such reserves as the General Partner may in good faith deem advisable.

"Certificate" means the Certificate of Limited Partnership to be executed by the General Partner and the Limited Partner and to be filed with the Clerk of New York County, New York, as it may be amended from time to time.

"Code" means the Internal Revenue Code of 1954, as amended from time to time, or any successor statute.

-3-

"Corporation" means Ninety-Five Madison Corp., a New York corporation having its principal place of business at 95 Madison Avenue, New York, New York 10016.

"Entity" means any general partnership, limited partnership, corporation, joint venture, estate, trust, business trust, cooperative or association.

"General Partner" means Sklar, or any person who becomes a Substitute Partner in respect of any portion of the General Partner Interest of the General Partner as provided in Article VIII hereof.

"Interest" means the interest in the Partnership of a Partner.

"Limited Partner" means the Trustees, and any person who becomes a Substitute Partner in respect of any portion of the Limited Partner Interest of the Limited Partner as provided in Article VIII hereof.

"Option Notice" means the notice specified in Section 8.7.A hereof.

"Partner" or "Partners" means either or both of the General Partner and the Limited Partner.

"Partnership" means the limited partnership governed by this Agreement, as such limited partnership may from time to time be reconstituted.

"Percentage Interest" means the percentage interest from time to time of any Partner in profits and losses and cash distributions by the Partnership.

"Person" means any individual or entity, and the heirs, executors, administrators, legal representatives, successors and assigns of such person as the context may require.

"Prime Rate" means the rate of interest announced from time to time by Citibank, N.A. as its "prime rate" or its equivalent.

"Profits and Losses" means the annual net income or net loss of the Partnership for the fiscal year as determined by the General Partner with the advice of the Accountant in determining income, gains, expenses, deductions or losses, as the case may be, reported by the Partnership for Federal income tax purposes.

"Property" means the land located at 95 Madison Avenue, New York, New York, and the improvements constructed thereon.

"Sklar" means Rita A. Sklar.

"State" means the State of New York.

"Stock" means the common stock of the Corporation.

"Substitute Partner" means any person who is admitted to the Partnership as a Substitute Partner under the provisions of Section 8.3 hereof.

"Trustees" means Rita A. Sklar and Lawrence Weinstein, as trustees of a trust U/W of Irving Weinstein for the benefit of Lois Michelle Weinstein.

"Uniform Act" means the New York Uniform Limited Partnership Act as adopted and amended from time to time by the State, or any successor statute governing the operation of limited partnerships.

Each definition herein shall be deemed to refer to the singular, plural, masculine, feminine or neuter as the context requires.

ARTICLE II

GENERAL

2.1    Formation of the Partnership.

A.    The parties hereto hereby form the Partnership as a limited partnership under the laws of the State. This Agreement shall become effective when the Certificate has been filed as required by the Uniform Act and the legal notice specified in Section 2.1.C hereof has been published at least once.

B.    The business of the Partnership shall be conducted under the name of NINETY-FIVE MADISON COMPANY.

C.   As soon after the execution of this Agreement as is practicable, the General Partner shall file the Certificate, and shall have a legal notice published which reflects the provisions of the Certificate, all in accordance with the Uniform Act.  The General Partner shall from time to time take all such other actions as may be deemed by the General Partner to be necessary or appropriate to (i) effectuate and permit the continuation of the Partnership as a limited partnership under the laws of the State and (ii) enable the Partnership to do business in the State, including the preparation and filing of such amendments to the Certificate and any other certificate, document or instrument as may be required under the laws of the State.  The Limited Partner shall execute such certificates, documents and instruments and take such other action as may be necessary to enable the General Partner to fulfill her responsibilities under this Section 2.1.C.

2.2   <u>Principal Office</u>.  The principal office of the Partnership shall be located at 95 Madison Avenue, New York, New York 10016.  The principal office of the Partnership may be changed by the General Partner, in which event written notice thereof shall be given by the General Partner to the Limited Partner.

2.3    Term. The Partnership shall continue in full force and effect until the dissolution and termination of the Partnership pursuant to Article IX hereof.

2.4    Purpose. The specific business and purpose of the Partnership is investment in real property either through direct ownership or through the acquisition of the Stock.  In connection therewith, the Partnership shall have the power to (A) make and perform contracts and other undertakings and engage in any and all activities and transactions as may be necessary, incidental or advisable in furtherance of such business and purpose, including, but not limited to, the pur- chase, sale, transfer, other disposition, mortgage, pledge and exercise of all rights, powers, privileges and other incidence of ownership with respect to the Stock or the Property, (B) liquidate or dissolve the Corporation, (C) borrow or raise money and issue evidences of indebtedness without limitation as to amount or manner and (D) carry on any and all activities related to any of the foregoing.

### ARTICLE III

#### CAPITAL CONTRIBUTIONS

3.1    Capital Contributions.

A.    The General Partner shall contribute 8.69568 shares of the Stock to the capital of the Partnership.

B.   The Limited Partner shall contribute 5 shares of the Stock to the capital of the Partnership.

The foregoing shares represent all of the issued and outstanding shares of Stock of the Corporation.

C.   The Capital Contributions of the Partner specified in Section 3.1.A and 3.1.B hereof shall be made when this Agreement becomes effective as provided in Section 2.1.A hereof.

3.2   <u>Representations and Warranties</u>.   The General Partner hereby represents and warrants to the other Partner and the Partnership that she owns her shares of the Stock free and clear of all liens, charges and encumbrances.   Each Partner hereby represents and warrants the following to the other Partner and the Partnership:   that he has the full power and authority to assign, transfer and set over all his right, title and interest in and to his shares of the Stock to the Partnership, and either no approval or consent of any court or other governmental authority or agency is required to accomplish the purposes of this Agreement or such approval or consent has been obtained; and

He will execute and deliver such further instruments and do such further acts and things as may be required from him to carry out the purposes of Section 3.1 hereof.

-9-

3.3     Treatment of Other Advances.    If any Partner shall advance funds to the Partnership other than the amount of his Capital Contribution, the amount of such advance shall not be considered a contribution to the capital of the Partnership, but shall be deemed a loan to the Partnership repayable upon such commercially reasonable terms as may be agreed upon by the General Partner and the Partner making such advance. Notice of any such loan and the terms thereof shall be given to all Partners.

3.4     Capital Accounts; No Interest; Withdrawal.

A.     The capital of the Partnership shall be the aggregate amount of cash or property contributed by the General Partner and the Limited Partner as set forth in Section 3.1 hereof.  No interest shall be paid on any Capital Contribution.

B.     No Partner shall have the right to demand a return of his Capital Contribution, except as otherwise provided in this Agreement.  Moreover, the General Partner shall not be personally liable for the return of the Capital Contribution of any Partner, or any portion thereof, it being expressly understood that any such return shall be made solely from assets of the Partnership.  Further, the Limited Partner shall not be required to pay to the Partnership any deficit in

-10-

its Capital Account upon dissolution or otherwise, except as provided by law, with respect to third-party creditors of the Partnership. No Partner shall have the right to demand or receive property other than cash for his Interest. Subject to the fulfillment of the rights and obligations of the parties under Articles VIII and XI hereof, each of the Partners does hereby agree to, and does hereby, waive any right such Partner may otherwise have to cause any asset of the Partnership to be partitioned or to file a complaint or institute any proceeding at law or in equity seeking to have any such asset partitioned.

3.5  **Liability of Limited Partner**.  Except as provided in Section 5.3.C hereof, the Limited Partner shall not be liable for any debts, liabilities, contracts or obligations of the Partnership, except as provided by law. The Limited Partner shall be liable only to make payments of its Capital Contribution when due under this Agreement.

ARTICLE IV

MANAGEMENT

4.1  **Meetings**.  Meetings of the Partners may be called at any time by any Partner upon reasonable notice, in writing or in person. Upon the request of any Partner, written minutes of the business transacted at Partnership meetings shall be made and retained at the principal office of the

Partnership and such record shall be available for inspection and copying by any Partner or his duly authorized agent during the regular hours of business.

4.2    **Exercise of Management.**    The overall management and control of the business and affairs of the Partnership shall be vested in the General Partner and, the General Partner, in extension of and not in limitation of the powers given her by law, shall have full, exclusive and complete charge of the management of the business of the Partnership in accordance with its purpose stated in Section 2.4 hereof. The Limited Partner shall take no part in the management or control of the business of the Partnership and shall have no authority to bind the Partnership.

4.3.    **Efforts and Reimbursement.**

A.    The General Partner shall devote so much of her time and efforts as shall be necessary or desirable to carry out the duties of the general partner of the Partnership.

B.    The General Partner may receive reasonable salary or other compensation for her time and efforts (other than those performed under Section 4.3.C hereof) expended in carrying out the duties of the general partner and supervising the business of the Partnership.

C.    (i) The Partnership shall pay the General Partner, or any Affiliate designated by her, a fee for

-12-

her services in carrying out the duties of Managing Agent with respect to the real property owned by the Partnership. Such fee shall be in an amount which is the customary fee for a management agent of real property in Manhattan similar to the Property. The fee shall include the customary real estate brokerage fee in Manhattan for leasing office space similar to office space in the Property.

(ii) Each Partner shall be entitled to reimbursement for his actual, reasonable and necessary direct out-of-pocket expenses incurred in the course of the Partnership business if authorized in accordance with the provisions of this Article IV. Such expenses shall be repaid to him on the presentation of supporting vouchers.

(iii) In the event that any Affiliate shall be receiving a fee pursuant to this Section 4.3.C. at the date of death of the General Partner, the terms under which such Affiliate is being so compensated shall not be changed for a period of two (2) years. Furthermore, in the event that Lois Michelle Weinstein shall be employed by the Partnership at the date of the General Partner's death, the terms of such employment shall not be changed adversely to her for a period of two (2) years.

4.4    Dealing with Affiliated Persons.    Subject to the restrictions contained in this Agreement, the General Partner may, for, in the name and on behalf of, the Partner-

ship, enter into agreements or contracts for performance of services for the Partnership as an independent contractor with a Partner or an Affiliate and the General Partner may obligate the Partnership to pay compensation for and on account of any such services; provided, however, that such compensation and services shall be on terms not less favorable to the Partnership than if such compensation and services were paid to and/or performed by a person who was not a Partner or an Affiliate.

## ARTICLE V

## OTHER ACTIVITIES AND INDEMNITIES

5.1 Activities of Partners. Any Partner may engage in and have an interest in other business ventures of every nature and description, independently or with others, including, but not limited to, the ownership, financing, leasing, operating, construction, rehabilitation, renovation, improvement, management and development of real property whether or not such real property is directly or indirectly in competition with the Property. Neither the Partnership nor the other Partner shall have any rights by virture of this Agreement in and to such independent ventures or the income or profits derived therefrom, regardless of the location of such real property and whether or not such venture was presented to such Partner as a direct or indirect result of his connection with the Partnership or the Property.

5.2     Indemnification of the General Partner.  The Partnership will indemnify, defend and hold harmless the General Partner and her successors and assigns from any claim, loss, expense, liability, suit, action or damage resulting from any act or omission performed or omitted by her pursuant to this Agreement, including, without limitation, reasonable costs and expenses of litigation and appeal (and the reasonable costs and expenses of attorneys engaged by the General Partner in defense of such act or omission), but the General Partner shall not be entitled to be indemnified or held harmless for any act or omission arising from her unauthorized act, fraud, bad faith, gross negligence, willful violation of her fiduciary duties to the Limited Partner, failure to comply with any condition or agreement contained in this Agreement or the breach of a representation or warranty made by her.  Any indemnity under this Section 5.2 shall be provided out of and to the extent of Partnership assets only, and no Partner shall have any personal liability on account thereof.

5.3     Liability of the Partners.

. A.     The General Partner shall have no liability or obligation to the Limited Partner or the Partnership for any decision made or action taken in connection with the discharge of her duties hereunder, if such decision or action is made or taken in good faith.  Notwithstanding the foregoing, the General Partner shall indemnify and save harmless the

Partnership and the Limited Partner from and against any claim, loss, expense, liability, suit, action or damage, including, without limitation, reasonable costs and expenses of litigation and appeal (and the reasonable costs and expenses of counsel) arising out of her unauthorized act, fraud, bad faith, gross negligence, willful violation of fiduciary duties to the Limited Partner or failure to comply with any condition or agreement contained in this Agreement.

B. Except as specified in Sections 5.3.A and 5.3.C hereof, the Limited Partner shall not have any right by virtue of this Agreement to require the General Partner to make any loan, advance or payment for or on behalf of the Partnership.

C. All representations and warranties herein shall survive the execution of this Agreement, and each Partner agrees to indemnify the other Partner and the Partnership for any damages caused as a consequence of the breach of any representation or warranty made by him herein.

ARTICLE VI

ACCOUNTING, REPORTS, BOOKS,
BANK ACCOUNTS AND FISCAL YEAR

6.1 <u>Bank Accounts</u>. The bank accounts of the Partnership shall be maintained in such banking institutions authorized to do business in the State or such other states as

the General Partner shall determine, and withdrawals shall be made on the signature of the General Partner or of a person designated by the General Partner. The Partnership's funds shall not be commingled with the funds of any other person and shall not be used except for the business of the Partnership. All deposits, including funds not needed in the operation of the Partnership's business, shall be deposited in interest-bearing accounts with, or certificates of deposit issued by, any bank or trust company incorporated under the laws of the United States or of any state thereof and having a combined capital and surplus in excess of $50,000,000 or invested in other comparable high grade obligations.

      6.2    <u>Books of Account; Fiscal Year</u>.  Complete and accurate books of account, in which shall be entered, fully and accurately, each and every transaction of the Partnership, shall be kept or caused to be kept by the General Partner. The books shall be kept on an accrual basis of accounting, and the fiscal year of the Partnership shall be the calendar year. All the Partnership's books of account, together with an executed copy of this Agreement and copies of such other instruments as the General Partner may execute hereunder, including amendments thereto, shall at all times be kept at the principal office of the Partnership and shall be available during normal business hours for inspection by any Partner or his duly authorized representative or, at the expense of any Partner, for audit by him or his duly authorized representative.

6.3    <u>Financial Reports</u>.  The General Partner shall cause the books of the Partnership to be examined and reviewed annually as of the end of each fiscal year by the Accountants. The General Partner shall cause a balance sheet and a report of the receipts, disbursements, net profits and losses and cash available for distribution, and the share of the net profits and losses and cash available for distribution of each of the Partners, to be determined and prepared for each fiscal year, and shall cause copies thereof to be transmitted to each of the Partners for each fiscal year.

6.4    <u>Tax Returns and Tax Treatment</u>.  The General Partner shall, with the advice of the Accountant or other qualified professional, for each fiscal year, file on behalf of the Partnership a United States Partnership Return of Income within the time prescribed by law for such filing including any extension of such time.  The General Partner shall also file on behalf of the Partnership such other tax returns and other documents from time to time as may be required by the State, any other state or any subdivision thereof.  The General Partner shall send a copy of each such tax return and a copy of Schedule K-1 or any successor or replacement form thereof to each Partner prior to filing the United States Partnership Return of Income for each fiscal year.  The good faith determination by the General Partner with respect to the treatment of any item or its allocation for Federal, state or local tax purposes shall be binding for such purposes.

## ARTICLE VII

### PROFITS AND LOSSES; DISTRIBUTIONS

### 7.1   Allocations of Profits and Losses.

A.   Profits and losses shall be allocated to each Partner based on his Percentage Interest.

B.   Where a distribution of an asset is made in the manner described in Section 734(a) of the Code, or where a transfer of an Interest permitted by this Agreement is made in the manner described in Section 743(a) of the Code, the General Partner in her discretion may file on behalf of the Partnership, upon the request of any Partner affected thereby, an election under Section 754 of the Code in accordance with the procedures set forth in the applicable Income Tax Regulations.

C.   Except as provided in Section 7.1.D hereof, whenever the profits and losses of the Partnership allocable under this Section 7.1 consist of items of different character for tax purposes (e.g., ordinary income, long-term capital gain, interest expense, etc.), the profits and losses of the Partnership allocable to each Partner shall be deemed to include his pro rata share of each such item, in accordance with his share of the profits and losses from the transaction in which such profits and losses were realized.

-19-

D. Notwithstanding Section 7.1.C hereof, if the Partnership realizes depreciation recapture taxable as ordinary income under Section 1245 or 1250 (or other comparable sections) of the Code, the income allocable under Section 7.1.A hereof to any Partner shall be deemed to include that portion of such depreciation recapture as the total amount of deductions for depreciation or amortization of the Partnership's assets previously allocated to such Partner reduced by any depreciation recapture previously allocated to such Partner (or to any predecessor in interest of such Partner) with respect to such assets bears to the total amount of deductions for depreciation or amortization of such assets previously allocated to both Partners similarly reduced by all depreciation recapture previously allocated to both Partners with respect to such assets, and the balance of any profits and losses realized by that Partner shall be deemed to consist of a pro-rata share of each of the other income items realized by the Partnership as provided in Section 7.1.C hereof.

### 7.2 Distribution and Application of Cash.

A. Except as otherwise provided by this Agreement or required by law, cash distributions (other than Capital Proceeds) shall be made pro rata to the Partners on the following bases at such time and in such amounts as the General Partner in her sole discretion shall determine after giving effect to the following considerations:

( i) the cash requirements of the business of the Partnership including the reinvestment of the assets of the Partnership;

( ii) the Federal, state and local income tax liability of each of the Partners which tax liability is attributable to each Partner's Interest in the Partnership; and

(iii) the general income needs of each of the Partners.

B. Cash distributions (other than Capital Proceeds) shall be applied in the following order of priority:

(i) To repay any loan payable to either Partner in proportion to the respective amounts of any such loans; and

(ii) The balance, if any, to each Partner based on his Percentage Interest.

C. Except as otherwise agreed upon by the Partners, Capital Proceeds shall be distributed pro rata to the Partners and applied in the following order of priority:

(i) To repay any loan payable to either Partner in proportion to the respective amounts of any such loans;

(ii) To each Partner in an amount not to exceed such Partner's initial Capital Account;

(iii) The balance, if any, to each Partner based on his Percentage Interest.

D. Upon the death of the General Partner, the Limited Partner shall be entitled to receive a distribution equal to her Percentage Interest in the cash, liquid assets and marketable securities of the Partnership, provided, however, that the amount of such distribution shall not exceed the amount of the Limited Partner's Capital Account on the date of the General Partner's death.

7.3   Certain Additional Allocations.

A. Upon liquidation of the Partnership pursuant to Article IX hereof, profits and losses realized upon such liquidation shall be allocated pursuant to Section 7.1.A hereof and any asset shall be distributed in cash or in kind in accordance with the provisions of Section 9.4 hereof. With respect to assets distributed in kind to the Partners, (i) any unrealized appreciation or unrealized depreciation in the values of such assets shall be deemed to be profits and losses realized by the Partnership immediately prior to the liquidation (for the purposes of this Section 7.3.A, "unrealized appreciation" or "unrealized depreciation" shall mean the difference between the appraised fair market value of such assets [as determined pursuant to Section 9.4 hereof] and the Partnership's basis for such assets), (ii) such profits and losses shall be allocated to the Partner or Partners who

received such assets in the same proportions as their interests in such assets after such distribution and (iii) any property so distributed shall be treated as a distribution to the Partners pursuant to Section 7.2.C hereof to the extent of the aforesaid appraised fair market value less the amount of any liability related thereto. Nothing contained in this Section 7.3.A or elsewhere in this Agreement is intended to treat or cause such distributions to be treated as sales for value.

B. For income tax purposes, if the Partnership in any year realizes income or is allowed a deduction (including additional depreciation or amortization as a result of adding an item to its basis) as a result of the transfer of an interest in property to or from a Partner, the difference between the amount taken into account for tax purposes and the amount otherwise taken into account under this Agreement shall be allocated solely to such Partner.

C. The Percentage Interest of each Partner shall be as follows:

| Partner | Percentage Interest |
|---------|---------------------|
| Sklar | 63.4921% |
| Trustees | 36.5079% |
| | 100.0000% |

D. All profits and losses allocated to the Partners and all cash distributions made to the Partners shall be credited or charged, as the case may be, to their Capital Accounts.

-23-

## ARTICLE VIII

### TRANSFER OF INTERESTS; WITHDRAWAL

8.1  Prohibition Without Consent.  Except as provided in Section 8.3 hereof, a Partner may not withdraw voluntarily from the Partnership or Assign, pledge or encumber all or any part of his Interest, without the written consent of the other Partner, provided, however, that the Limited Partner may Assign all or a part of its Interest to Lois Michelle Weinstein who shall, subject only to Sections 8.3.B. and C. hereof, automatically become a Substitute Partner.

8.2  Death or Disability of the Limited Partner.

A.  The death, insanity, incompetency or Bankruptcy of the Limited Partner shall not terminate or dissolve the Partnership.

B.  Upon the occurrence of such event with respect to any Partner, the executor, administrator, guardian, committee, trustee or other legal representative or successor in interest of such Partner shall have the rights of such Partner subject to the provisions of this Agreement.  Such successor in interest shall not become a Substitute Partner except upon compliance with the provisions of Sections 8.3 and 8.4 hereof.

8.3  Substitute Partner; Admission.  No Partner shall have any right to substitute an Assignee as a Partner in

-24-

his place without the prior written permission of the other Partner. Any purported substitution of an Assignee as a Partner without such consent shall be void ab initio and shall not bind the Partnership. The consent of the Partners to an Assignment under Section 8.1 hereof shall not, in and of itself, constitute permission under this Section 8.3. Any Assignee shall not be admitted as a Substitute Partner unless (A) the Assignor shall have indicated such intention of substitution in the instrument effecting the Assignment and the Assignee expressly agrees to be bound, to the same extent as the other Partners, by the provisons of this Agreement and any other documents required in connection therewith and to assume the obligations of the Assignor hereunder, (B) the Assignor and the Assignee shall have executed or delivered such other instruments as the General Partner may deem necessary or desirable to effectuate such admission and (C) the Assignee shall have agreed to pay, as the General Partner shall determine, all reasonable expenses and legal fees relating to the Assignment and his admission as a Substitute Partner, including, but not limited to, the cost of any amendment to the Certificate necessary to effect such admission.

### 8.4 Assignees.

A. Any person who acquires in any manner whatsoever any Interest, irrespective of whether such person has accepted and adopted in writing the terms and provisions of

-25-

this Agreement, shall be deemed by the acceptance of the benefit of the acquisition thereof to have agreed to be subject to and bound by all the obligations of this Agreement that any predecessor in interest of such person was subject to or bound by. A person acquiring an Interest, including the personal representatives and heirs of a deceased Partner, shall have only such rights, and shall be subject to all the obligations, as are set forth in this Agreement; and, without limiting the generality of the foregoing, such person shall not have any right to have the value of his Interest ascertained or receive the value of such Interest or, in lieu thereof, profits attributable to any right in the Partnership, except as herein set forth.

B.   Any Assignee of an Interest pursuant to an Assignment satisfying the conditions of this Article VIII who does not become a Substitute Partner in accordance with Section 8.3 hereof shall have the right to receive the same share of the profits and losses and distributions of the Partnership to which his Assignor would have been entitled. If such Assignee desires to make an Assignment of his Interest, he shall be subject to all the provisions of this Article VIII to the same extent and in the same manner as any Partner desiring to make an Assignment.

C.   Any Partner who shall Assign all of his Interest shall cease to be a Partner and shall no longer have

any rights or privileges of a Partner except that, unless and until his Assignee is admitted to the Partnership as a Substitute Partner in accordance with Section 8.3 hereof, such Assignor shall retain all rights and be subject to all obligations under the Uniform Act.

D.    In the event that an Assignment shall be made, there shall be filed with the Partnership a duly executed and acknowledged counterpart of the instrument making such Assignment.  Such instrument must evidence the written acceptance of the Assignee to all the terms and provisons of this Agreement.  Except as provided in Section 8.4B, if such an instrument is not so filed, the Partnership need not recognize any such purported Assignment for any purpose.

8.5    Effect of Withdrawal; Election to Continue Business.  Upon the withdrawal or Bankruptcy of the General Partner, the General Partner or her legal representative shall promptly notify the Limited Partner of such event and the Partnership shall be dissolved and terminated unless the Limited Partner elects to continue the business of the Partnership, in which case the Partnership shall not dissolve or terminate.  If the Limited Partner elects to continue the business of the partnership, either a new general partner shall be admitted to the Partnership or the Partnership shall be reconstituted as a general partnership.  After such event shall occur, the General

Partner or her legal representative shall take no part in the management of the Partnership, but shall retain her Percentage Interest in the profits and losses and cash distributions. The withdrawal of the General Partner shall not be deemed to be effective until the expiration of 90 days from the day on which such notice has been mailed to the Limited Partner. The General Partner shall remain liable for obligations incurred by her under this Agreement through the effective date of her withdrawal, whether such withdrawal shall be voluntary or involuntary or whether in compliance with or in violation of this Agreement.

8.6 Effect of Death or Incompetency of General Partner. Upon the occurrence of the death or incompetency of the General Partner, the legal representative of the General Partner shall promptly notify the Limited Partner of such event. The Partnership shall not be dissolved or terminated and the Limited Partner hereby consents to continuation of the business of the Partnership as follows:

(i) The legal representative of the General Partner on behalf of the General Partner's estate, shall succeed to all of the rights, power and authority of the General Partner and shall manage the Partnership upon the same terms and conditions as would have prevailed if the General Partner had not died or become incompetent.

-28-

(ii)  The Estate of the General Partner shall succeed to the General Partner's Interest in the Partnership and shall execute and deliver such instruments, certificates and other documents as may be necessary or desirable to effectuate the admission of the Estate as the General Partner.

(iii)  The Limited Partner agrees to execute and deliver all documents which may be necessary or desirable to provide for the continuation of the business of the Partnership on the terms provided in this Section 8.6.

8.7  <u>Options</u>.

A.  After one (1) year from the date of this Agreement, the General Partner shall at anytime have the right to purchase, and the Limited Partner shall at anytime have the right to cause the General Partner to purchase the Interest of the Limited Partner, <u>provided</u>, <u>however</u>, that for a period of two (2) years from the date of death of the General Partner, the Limited Partner shall not be permitted to require the General Partner to purchase, and the General Partner shall not have the right to purchase, the Interest of the Limited Partner.  If at the time of the death of the General Partner an Option Notice has been given by the Limited Partner to the General Partner or by the General Partner to the Limited Partner but the purchase price has not been determined in accordance with Section 8.7.B. hereof, such Option Notice shall

become null and void and no further Option Notice shall be given by either the General Partner or Limited Partner until the expiration of two (2) years from the date of death of the General Partner. Notice of the exercise of the foregoing rights shall be given by a notice from the Limited Partner to the General Partner, or vice versa, as the case may be. The purchase price for the Limited Partner Interest shall be as specified in Section 8.7.B hereof and the purchase of the Limited Partner Interest shall take place at the offices of the Partnership (the "Closing") within 60 days after the purchase price thereof is determined in accordance with Section 8.7.B hereof.

The purchase price shall be paid as follows: an amount thereof equal to the Limited Partner's Percentage Interest in the cash, liquid assets and marketable securities of the Partnership on the date the purchase price is determined ("Cash Assets") plus 10% of an amount determined by deducting from the purchase price the amount of the Cash Assets, in cash or certified check at the Closing; the balance, by the execu-tion and delivery of a promissory note (the "Note") payable to the order of the Limited Partner at a New York bank, dated as of the Closing, payable in annual installments of principal, each in the amount of one-ninth of the initial principal amount of the Note with interest payable quarterly on the unpaid balance at the Prime Rate on the first day of each quarter

commencing with the date of Closing. The Note shall also provide for mandatory prepayment of an amount not to exceed 36.5079% of any Capital Proceeds received by the Partnership. Any prepayments under the Note shall be applied on account of the last installment becoming due. In the event of default as to the timely payment of interest and principal on the Note or in the event of the Bankruptcy of the Partnership or the General Partner, the Note shall, upon the election of the Limited Partner, become immediately due and payable upon fifteen (15) days' notice. As collateral security for the Note, the Partnership shall provide for a mortgage covering the Property and any other real property of the Partnership, subordinated to any existing mortgage covering such property and providing for subordination for any future mortgage thereon so long as the proceeds thereof shall be used to prepay the Note in accordance with this Section.

At the Closing, the General Partner shall deliver to the Limited Partner an agreement of indemnification to save the Limited Partner harmless from and against any cost, loss, damage or expense (including reasonable professional fees) arising by reason of any debts, liabilities or obligations of the Partnership owing as of the date of the Closing, and by reason of any transaction by, for or on behalf of the Partnership occurring prior to such date, and by reason of any matter or thing done, suffered or transacted under the Partnership name subsequent to such date.

B.    The purchase price for the Limited Part-
ner Interest shall be the Capital Account of the Limited Part-
ner determined as of the close of business on the date that the
Option Notice is given, subject to the following provisions:

The Limited Partners Capital Account shall be com-
puted by the Accountant, in accordance with accounting prin-
ciples regularly followed by the Partnership, and in cases
not covered by such practices, in accordance with generally
accepted accounting principles and shall include and reflect
the Limited Partners Capital Account as of the end of the last
fiscal year as shown on the books and records of the Partner-
ship, increased or decreased by the Limited Partners Interest
in profits or losses for the period from the beginning of the
fiscal year in which the Option Notice is given until the date
that the Option Notice is given, and increased by contributions
and decreased by withdrawals.    For purposes of this Section
8.7.B., any unrealized appreciation or unrealized depreciation
in the value of the assets of the Partnership shall be deemed
to be profits and losses realized by the Partnership immediate-
ly prior to the date of the Option Notice.    The terms "unreal-
ized appreciation" or "unrealized depreciation" shall mean the
difference between the fair market value of such assets and the
Partnership basis for such assets.    In determining the fair

-32-

market value of the Partnership's assets, other than real property or interests in real property, the Accountant shall use the principles set forth in Treasury Regulation §20.2031 with no value for goodwill. In determining the fair market value of the real property or interests in real property owned by the Partnership, the Accountant shall rely upon any written evaluation agreed upon and subscribed by all of the Partners or shall use the written appraisal of an appraiser chosen by the mutual agreement of all of the Partners, provided, however, that if the Partners cannot mutually agree upon an appraiser within 15 days after the Option Notice is given, the General Partner shall (by vote of a majority in interest of the General Partners), and the Limited Partners shall (by vote of a majority in interest of the Limited Partners) appoint an appraiser and the two appraisers so chosen shall select a third appraiser and such value shall be determined by averaging the two (2) closest appraisals. The expenses of any appraiser shall be borne by the Partnership. The General Partner shall make available to the appraisers all relevant financial and other information concerning the business and assets of the Partnership including the terms and conditions of any bona fide offer received by the Partnership from third parties for the purchase of the Property or the Partnership's other real property assets.

A statement showing the Capital Account of the Limited Partner as so adjusted and the supporting items (including, without limitation, a copy of the appraisal(s) relied on) shall be completed by the Accountant and copies delivered to the Partners no later than 90 days after the date the Option Notice is given which date shall be deemed to be the date on which the purchase price is determined. The amount of the Limited Partner's Capital Account as adjusted to reflect the fair market value of the Partnership assets, as set out in the Accountant's statement, shall constitute and be deemed to be the purchase price for the Limited Partnership Interest, binding upon all parties hereto.

If during the period of one (1) year subsequent to a Closing pursuant to an Option Notice delivered by the General Partner to the Limited Partner the Property or any other real property asset of the Partnership is sold at a price which exceeds the agreed or appraised value of such property under Section 8.7.B. hereof so that the purchase price of the Limited Partner's Interest would be increased had the actual sales price been used in Section 8.7.B. in lieu of the value actually used, then the amount of such increase shall be deemed to be additional purchase price under Section 8.7.B. hereof and the full amount of such increase shall be added to the then amount of the Note theretofore issued pursuant to

Section 8.7.A. Any such increase shall not limit or restrict the Partnership's obligations to make mandatory prepayments of the Note in accordance with Section 8.7.A. hereof.

C. During the period between the giving of the Option Notice and the date of the Closing (or the nullification of the Option Notice pursuant to Section 8.7.A. hereof), the Limited Partner shall continue to be entitled to the allocation of profits and losses provided in Section 7.1 and the distributions and application of cash provided in Section 7.2, and, if Lois Michelle Weinstein is employed by the Partnership at the date of the Option Notice, the terms of such employment shall not be changed adversely to her. Any changes in the Limited Partner's Capital Account arising from the allocation of profits or losses shall be reflected in the purchase price payable at the Closing. If any arms-length transaction giving rise to Capital Proceeds occurs between the Option Notice and the date of the Closing, the valuation of the property involved in such transaction shall, for purposes of determining the purchase price pursuant to Section 8.7.B. hereof, be adjusted to reflect such transaction, and any Capital Proceeds arising from such transaction which are distributed to the Limited Partner prior to the Closing shall be considered to be prepayment of the amount otherwise payable at the Closing.

8.8    Additional Partners.    Subject to the provisions of Sections 8.1 and 8.3 hereof, no additional Partners shall be admitted without the consent of both Partners.

8.9    Amendment of Certificate.    Upon the admission of a Substitute Partner or an additional partner or the withdrawal of a Partner, an amendment to the Certificate reflecting such admission or withdrawal shall be filed as required by the Uniform Act.

8.10    Survival of Liabilities.    It is expressly understood that no Assignment, pledge or encumbrance of a Partner's Interest, even if it results in the substitution of the Assignee as a Partner, shall release the Partner from any liability to the Partnership which shall survive such Assignment, pledge or encumbrance, including those set forth in the Uniform Act.

## ARTICLE IX

### DISSOLUTION AND TERMINATION OF THE PARTNERSHIP

9.1    Events Which Cause a Dissolution.    The Partnership shall continue in full force and effect until December 31, 2050, except that the Partnership shall be dissolved prior thereto upon the happening of any of the following events:

A.    An election to dissolve the Partnership made in writing by the Partners;

-36-

B.    The withdrawal or Bankruptcy of a General Partner if the Partnership is not continued in accordance with Section 8.5 hereof;

C.    Any event which shall make it unlawful for the existence of the Partnership to be continued; or

D.    The sale or other disposition of the Property or of all or substantially all of the real property assets of the Partnership.

9.2    Actions of Liquidating Agent Upon Dissolution. Upon the dissolution of the Partnership, the Partnership shall be liquidated in accordance with this Article IX and the Uniform Act. The liquidation shall be conducted and supervised by the General Partner or, if there be no General Partner, by a person who shall be designated for such purpose by the owners of at least 51% of the Interests (the General Partner or such person so designated being hereinafter referred to as the "Liquidating Agent"). The Liquidating Agent shall have all of the rights in connection with the liquidation and termination of the Partnership that a general partner would have with respect to the assets and liabilities of the Partnership during the term of the Partnership, and the Liquidating Agent is hereby expressly authorized and empowered to effectuate the liquidation and termination of the Partnership and the transfer

of any assets and liabilities of the Partnership. The Liqui-
dating Agent shall have the right from time to time, by revo-
cable powers of attorney, to delegate to one or more persons
any or all of such rights and powers and the authority and
power to execute documents in connection therewith, and to fix
the reasonable compensation of each such person, which compen-
sation shall be charged as an expense of liquidation. The
Liquidating Agent is also expressly authorized to distribute
the Partnership's property to the Partners subject to liens.

9.3    <u>Statements on Termination</u>.    Each Partner
shall be furnished with a statement prepared by the Liquidating
Agent which shall set forth the assets and liabilities of the
Partnership as at the date of complete liquidation, and each
Partner's share thereof. Upon compliance with the distribution
plan set forth in Section 9.4 hereof, the Partners shall cease
to be such, and the Liquidating Agent shall execute, acknowl-
edge and cause to be filed a certificate of termination of the
Partnership.

9.4    <u>Priority on Liquidation; Distribution of Non-
Liquid Assetss</u>.

A.    The Liquidating Agent shall, to the
extent feasible, liquidate the assets of the Partnership as
promptly as shall be practicable. To the extent the proceeds
are sufficient therefor, as the Liquidating Agent shall deem

appropriate, the proceeds of such liquidation shall be applied to pay any debts or liabilities of the Partnership other than to Partners and then in accordance with the provisions of Section 7.2.C hereof.

B. If, in the sole discretion of the Liquidating Agent, he shall determine that it is not feasible to liquidate all or part of the assets of the Partnership or that an immediate sale of all or part of such assets would cause an undue loss to the Partners, the Liquidating Agent shall cause the fair market value of the assets not so liquidated to be determined by independent appraisal. Such assets, as so appraised, shall be retained or distributed by the Liquidating Agent as follows:

(i) The Liquidating Agent shall retain assets having a value (which value shall be equal to the fair market value of such assets less the amount of any liability related thereto) equal to the amount by which the net proceeds of the liquidated assets are insufficient to satisfy the requirements of subparagraph (i) of Section 7.2.C hereof; and

(ii) The remaining assets shall be distributed to the Partners pursuant to subparagraphs (ii) and (iii) of Section 7.2.C hereof.

Any distribution of assets in kind shall be distributed on the basis of the fair market value thereof and any Partner entitled to any interest in such assets shall receive such interest therein as a tenant-in-common with all other Partners so entitled. If the Liquidating Agent, in his sole discretion, deems it not feasible to distribute to each Partner an aliquot share of each asset, the Liquidating Agent may allocate and distribute specific assets to one or more Partners as tenants-in-common as the Liquidating Agent shall determine to be fair and equitable.

9.5    Orderly Liquidation. A reasonable time shall be allowed for the orderly liquidation of the assets of the Partnership and the discharge of liabilities so as to minimize the losses normally attendant upon a liquidation.

9.6    No Goodwill Value. At no time during con-tinuation of the Partnership shall any value ever be placed on the Partnership name, or the right to its use, or to the goodwill appertaining to the Partnership or its business, either as among the Partners or for the purpose of determining the value of any Interest nor shall the legal representatives of any Partner have any right to claim any such value. In the event of a termination and dissolution of the Partnership as provided in this Agreement, neither the Partnership name, nor the right to its use, nor the same goodwill, if any, shall be

-40-

considered as an asset of the Partnership, and no valuation shall be put thereon for the purpose of liquidation or distribution, or for any other purpose whatsoever; nor shall any value ever be placed thereon as between the remaining or surviving Partners and the legal representatives of the estate of any deceased, insane, incompetent or bankrupt Partner.

## ARTICLE X

### MISCELLANEOUS

10.1 <u>Law Governing</u>. This Agreement shall be governed by and construed in accordance with the laws of the State.

10.2 <u>Counterparts</u>. This Agreement may be signed in any number of counterparts, each of which shall be an original for all purposes, but all of which taken together shall constitute only one agreement so long as each counterpart is signed by one or more Partners. The production of any executed counterpart of this Agreement shall be sufficient for all purposes without producing or accounting for any other counterpart thereof.

10.3. <u>Separability of Provisions</u>. Each provision of this Agreement shall be considered separable and if for any reason any provison or provisions herein (A) are determined to be invalid or contrary to any existing or future law, such

invalidity shall not impair the operation of or affect those portions of this Agreement which are valid or (B) would cause the Limited Partner to be bound by the obligations of the Partnership under the laws of the State as the same may now or hereafter exist, such provision or provisions shall be deemed void and of no effect.

10.4    Address and Notice.  All notices, demands, solicitations of consent or approval, and other communications hereunder required or permitted shall be in writing and shall be deemed to have been given when personally delivered or when deposited in the United States mail and sent postage prepaid by registered or certified mail, return receipt requested, addressed as follows:  if intended for (A) the Partnership, to its principal office or (B) the Partners, to their respective addresses set forth below, or to such other address which any Partner shall have given to the Partnership for such purpose by notice hereunder.

| Partner | Address |
|---------|---------|
| Sklar | 8 East 83rd Street<br>New York, NY 10028 |
| Trustees | 95 Madison Avenue<br>Suite 1109<br>New York, NY 10016 |

10.5    Titles and Captions.  All article and section titles or captions contained in this Agreement are for convenience only and shall not be deemed part of the text of this Agreement.

-42-

10.6   Pronouns and Plurals.   All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the context may require.

10.7   Entire Agreement.   This Agreement contains the entire understanding between and among the parties and supersedes any prior understandings and agreements between and among them respecting the subject matter of this Agreement.

10.8   Agreement Binding.   This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, legal representatives and permitted successors and assigns of the parties hereto.

10.9   Parties in Interest.   Nothing herein shall be construed to be to the benefit of or enforceable by any third party including, but not limited to, any creditor of the Partnership.

10.10  Amendment.   This Agreement may not be modified or amended except with the written consent of both Partners.

10.11  Survival of Agreements.   All agreements shall survive until the dissolution and termination of the Partner-

ship, except to the extent that an agreement expressly provides otherwise.

 10.12 __Further Assurances.__ The Partners will execute and deliver such further instruments and do such further acts and things as may be required to carry out the intent and purposes of this Agreement.

 IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the day and year first above written.

GENERAL PARTNER

_Rita A. Sklar_
Rita A. Sklar

LIMITED PARTNER

Rita A. Sklar and Lawrence
Weinstein, trustees of a trust
U/W of Irving Weinstein for
the benefit of Lois Michelle
Weinstein

_Rita A. Sklar_
Rita A. Sklar

_Lawrence Weinstein_
Lawrence Weinstein

-44-