
Andrew K. Glenn
aglenn@glennagre.com
1185 Avenue of the Americas, 22nd Floor
New York, NY 10036
212.358.5600

April 22, 2025

**Via ECF**

The Honorable David S. Jones
United States Bankruptcy Judge
One Bowling Green
New York, NY 10004

      Re:    <u>In re Ninety-Five Madison Company, L.P., Case No. 21-10529-DSJ; April 22, 2025 Status Conference</u>

Dear Judge Jones:

We represent Ninety-Five Madison Company, L.P. ("<u>NFMC</u>" or "<u>Reorganized Debtor</u>") in the above-referenced Chapter 11 case. We write concerning the status conference scheduled for April 22, 2025 at 10:00 A.M. (ET).

As a threshold matter, the Reorganized Debtor is prepared to renew its motion to enforce its Chapter 11 plan injunction, and we understood that today's conference is primarily about scheduling. Nonetheless, given the letter sent to the Court by Jeffrey Barr on behalf of the Estate of Lois Weinstein, we write to provide the Court with additional background information.

**<u>The Instant Dispute</u>**

As the Court is aware, on February 12, 2025, the Court entered an order [Dkt. No. 414] (the "<u>Temporary Injunction Order</u>" and the granted relief, the "<u>Temporary Injunction</u>"), which granted the *Reorganized Debtor Ninety-Five Madison Company, L.P.'s Motion to Enforce the Plan Injunction and Confirmation Order* [Dkt. No. 404] (the "<u>First Injunction Motion</u>"). In sum, the Temporary Injunction Order enjoined the Estate of Lois Weinstein (the "<u>Weinstein Estate</u>")—who was pursuing claims in state court to, *inter alia*, dissolve the Reorganized Debtor—from temporarily prosecuting its claims.[1]

As the First Injunction Motion explained, in the New York Action, the Weinstein Estate obtained a temporary restraining order (the "<u>TRO</u>") preventing the Reorganized Debtor from making any payments, including paying administrative claims, professional fees and other expenses that the Reorganized Debtor incurs in the ordinary course. NFMC warned that the TRO was causing it significant harm as a result of these impediments.

---

[1]     The state court case is captioned *Ninety-Five Madison Company, LP v. Kinder Realty Associates et al.*, Case No. 653034/2024 (the "<u>New York Action</u>" and the associated court, the "<u>State Court</u>").

Prior to the expiration of the Temporary Injunction, the Reorganized Debtor thought it had reached an agreement with the Weinstein Estate to vacate the TRO and shift to this Court all consideration of its disputed dissolution claims. Thus, on March 31, 2025 (or the day that the Temporary Injunction expired), the Reorganized Debtor and the Weinstein Estate jointly filed a letter with the State Court requesting that

> [C]onsistent with the February 11, 2025 ruling of U.S. Bankruptcy Judge David S. Jones, ***no action should be taken . . . [on] the [Dissolution] Counterclaims (and related injunctive relief) pending further order of the Bankruptcy Court***, *which **still retains jurisdiction*** over NFMC's confirmed Chapter 11 plan of reorganization, including that plan's claim allowance and asset distribution provisions.

*See* Exhibit A (joint letter from NFMC and the Weinstein Estate to State Court).

But since informing the State Court of the foregoing (and despite the Reorganized Debtor's efforts at negotiation), the Weinstein Estate has refused to take action to dissolve the TRO in the State Court and/or adjudicate its dissolution claims in this Court. The harm caused by the TRO has been compounded because the partners of NFMC could not timely pay their income taxes on the proceeds of the sale of 95 Madison Avenue because of the TRO. Thus, the partners of 95 Madison are now incurring substantial penalties and interest as a result.

The motion for which NFMC has requested that the Court schedule an emergency hearing will seek two forms of relief. First, the motion seeks to dissolve the TRO so that the Reorganized Debtor will continue with the governance contemplated by the Reorganized Debtor's Chapter 11 plan, and to permit the Reorganized Debtor to again make distributions to claim holders, pay taxes and all other obligations as a going concern, including the taxes calculated by NFMC's accountants..

Second, the motion seeks to permanently enjoin the Weinstein Estate from pursuing causes of action related to the dissolution of the Reorganized Debtor in the State Court. Instead, and to the extent the Weinstein Estate still seeks to pursue such claims, it should be required to do so in this Court and by formal pleading. This is consistent with the Weinstein Estate's statements to the State Court, as quoted above; it also conforms with this Court's finding in the Temporary Injunction Order that the Court retains jurisdiction "to ensure adherence to the court-ordered confirmation of Reorganized Debtor's Plan['s] specific provision that *the 'Debtor shall continue in existence post-confirmation' and 'the General Partners will continue to control the Reorganized Debtor pursuant to the terms of the Partnership Agreement'*[.]"[2]

**Response to the Weinstein Estate Letter Dated April 21, 2025**

The letter filed by the Weinstein Estate [Dkt. No. 425] contains several inaccuracies and mischaracterizations that warrant correction.

---

[2] Temporary Injunction Order 1-2 (emphasis added) (quoting confirmed Chapter 11 plan [Dkt. Nos. 294, 300] "Plan")).

In the first instance, the Weinstein Estate does not explain how or why the TRO that it was able to obtain in State Court late last year complies with the Bankruptcy Code's priority scheme, nor conforms with the asset distribution structure of NFMC's confirmed Plan. The simple answer: it does not. Based on the current arrangement that the Weinstein Estate champions, the Reorganized Debtor (as it has had to do since the TRO was issued) will need to first stipulate—in both form of relief and form of proposed order—with the Weinstein Estate as well as with Rita Sklar to pay all final administrative claims remaining in its bankruptcy case. This includes the claims of Branton Realty Services LLC, per this Court's recent decision and order [Dkt. No. 420]; the various owed indemnity obligations as ordered by this Court [Dkt. No. 403]; and expenses related to the Court-approved mediator [Dkt. No. 379]. To put things simply, this procedure of first stipulating with other litigation parties and then seeking state court approval of said stipulation to pay operating expenses and bankruptcy claims is not how a Chapter 11 reorganized debtor is supposed to operate. This is more oversight than that in a Chapter 11 case.

Moreover, the Weinstein Estate is wrong that NFMC has not been candid about its financial affairs. In February 2025, and per a so-ordered stipulation approved by the State Court, NFMC provided the Weinstein Estate with a full accounting of NFMC's financial affairs, including copies of all bank statements (along with those of its qualified intermediary) evidencing all expenditures and disbursements by the Reorganized Debtor since June 5, 2024 along with complete copies of all closing statements since NFMC's asset sale. Furthermore, earlier this month, NFMC's accountants provided detailed financial data and ledgers for the Weinstein Estate and Rita A. Sklar dating back to January 1, 2024, per an unrelated precondition that those parties made to pay certain outstanding taxes.[3]

Finally, we will not dignify Mr. Barr's attacks on our law firm with a response other than to say that there is nothing inappropriate – just the opposite – about insuring that NFMC can satisfy its payment obligations, including federal and state taxes.

*****

We look forward to discussing these issues at today's status conference.

Respectfully submitted,

*/s/ Andrew K. Glenn*
Andrew K. Glenn

---

[3] In an effort to not overburden the Court, NFMC has refrained from enclosing correspondence between NFMC and the Sklar Parties evidencing the disputes and issues raised in this letter. NFMC is more than willing to provide the Court with such correspondence if the Court so desires.