HEARING DATE: May 7, 2025
OBJECTIONS: May 5, 2025
HEARING TIME: 10:00 am

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------x

In re

**NINETY-FIVE MADISON COMPANY, L.P.,**

Debtor.

----------------------------------------x

Chapter 11

Case No. 21-10529 (DSJ)

### DECLARATION OF JEFFREY A. BARR COUNSEL TO THE ESTATE OF LOIS WEINSTEIN IN OPPOSITION TO THE RENEWED MOTION OF NINETY--FIVE MADISON COMPANY'S MOTION TO ENJOIN THE NEW YORK SUPREME COURT ACTION IT ITSELF COMMENCED AGAINST ITS OWN EQUITY HOLDERS STYLED AS A MOTION TO ENFORCE THE PLAN INJUNCTION AND CONFIRMATION ORDER

JEFFREY A. BARR, hereby certifies under the penalties of perjury of the United States as follows:

1. I am counsel to Carol E. Keller and Gail Shields, executors of the Estate of Lois Weinstein (the "Weinstein Estate"). Weinstein Estate is an equity holder in the Debtor possessing an 18.36 percent interest in reorganized debtor Ninety-Five Madison Company, LP ("NFMC"), and until June 5, 2024, 18.36% of the fee estate to the building and land, located at 89-95 Madison Avenue, New York, NY 10016 (the "Building"); I am fully familiar with the matters asserted herein and I make this declaration in opposition to NFMC's renewed motion to stay the proceedings in state court in an action NFMC itself commenced and to vacate a Temporary Restraining Order ("TRO") issued in that action.

1

2. I have previously submitted opposition to the initial motion. My February 3, 2025 Declaration is filed on the electronic docket as Docket No. 409.

3. On February 11, 2025, NFMC had only four matters left that purportedly required this Bankruptcy Court's attention: (1) NFMC's $54 million "Kinder Loan" claim against the Estate, "Rita" A. Sklar, "Kinder" Realty Associates, "RAS" Property Management, LLC, and the Estate, which NFMC asserted in NFMC v. Kinder Realty Associates et al., No. 653034/2024 (N.Y. Comm. Div.) (Patel, J) (the "Commercial Division Case"); (2) NFMC's $7 million breach of fiduciary claim against RAS and Rita, which NFMC filed in the Commercial Division Case; (3) the Branton Commission case, defined infra, and (4) Rita's $367,000 claim against NFMC to recover her out-of-pocket costs and expenses incurred in keeping NFMC running (including by initiating this Chapter 11 petition), which she initially filed as a claim in this bankruptcy, and which, Rita Sklar has now added as a counterclaim in the Commercial Division Case.

4. Since the February 11, 2025 hearing before this Court on the prior motion, in the Commercial Division Case, the New York Supreme Court on February 13, 2025 held argument on the motion to dismiss NFMC's action against Rita Sklar for $54,000,000 and its $7,000,000 claim against Rita Sklar and the Estate of Lois Weinstein. On February 13, 2025, the Supreme Court per Hon. Anar R. Patel, A.J.S.C., dismissed NFMC's claims with prejudice. A true and correct copy of the Order and Decision of Justice Patel is annexed hereto as Exhibit A.

5. Thus, the Commercial Division's February 13, 2025 decision resolved two of the four matters that NFMC's counsel asserted in its motion that required the continued action of this Court.

6. On March 27, 2025, this Court in a 42 page decision, determined that the claim of Branton Realty Services, LLC, for real estate commissions due on the sale of 95 Madison was valid, and after trial, the Court awarded Branton its claim (the "Branton Commission Case"). Thus, merely

2

pending is a determination of the legal fees that Branton is entitled to receive as the prevailing party. The third matter identified by NFMC's counsel as a matter requiring the continued exercise of jurisdiction here has been eliminated.

7. This bankruptcy action's sole remaining issue is Rita Sklar's entitlement to $367,000 in advances and loans she made to NFMC. This is already the subject of a counterclaim asserted in the Commercial Division Case that NFMC commenced improvidently in N.Y. Supreme Court. A true and correct copy of the amended counterclaim asserted by Rita Sklar and RAS Property Management LLC, which also alleges that Michael, Sharan, and their respective LLCs have breached their fiduciary duties to NFMC and its limited partners (including the Estate and Rita personally), is annexed hereto as Exhibit B.

8. NFMC seeks to have this Court retain jurisdiction for the sole purpose of having Michael and Sharan Sklar enthroned permanently in control of an entity in dissolution, of which they own only 2% at best, so they can pay themselves exorbitant salaries and keep their counsel Glenn Agre perpetually retained in dubious litigations against their mother Rita Sklar.

9. There is another proceeding, likely paid for by NFMC, commenced by Michael Sklar, under powers of attorney drafted by counsel retained by NFMC in Commercial Division action to remove Rita as family trustee of the trusts she and Lois Weinstein settled for Michael's children, and appoint Michael as family trustee, instead. See RUBY HILENE SKLAR, by Michael L. Sklar as Trustee for the Rita A. Sklar MLS 2012 Irrevocable Trust and Lois M. Weinstein MLS 2012 Irrevocable Trust et al vs. RITA A. SKLAR, individually and as Trustee for the Rita A. Sklar MLS 2012 Irrevocable Trust and Lois M. Weinstein MLS 2012 Irrevocable Trust, N.Y. Supreme Court, N.Y. County, Index No. 653516/2024. I am advised that the majority of the misconduct that Michael has alleged in that case is identical to the allegations that Justice Patel has dismissed in NFMC's

3

Commercial Division Case.

10. Counsel asserts that the effectuation of the Plan demands that Michael and Sharan Sklar retain control over an entity that no longer conducts any business other than collecting income from four triple net leased properties. The income from these properties, by law, must be distributed to the equity holders. It would be improper to permit Michael and Sharan Sklar to retain these funds in NFMC and continue their wasteful and profligate habit of using company money to fund their frivolous, baseless and extremely costly legal maneuvers.

11. Meanwhile the equity holders are in dire need of a distribution of the cash assets, which Michael and Sharan Sklar, through their five separate sets of counsel (all paid for by NFMC) refuse to discuss or consider.

12. Instead, Michael and Sharan Sklar wish to retain control of the funds and use them to pay themselves, their lawyers and to use the company funds to pay only the tax obligations of those of the equity holders they choose to pay. This is the reason why NFMC seeks the vacatur of the T.R.O. While the T.R.O. is in place, spending is under the control of the courts which is requiring the agreement of all interested parties to disbursements. In three past instances, the T.R.O. was modified to have tax payments released.

13. NFMC's arguments presented here for the continuation of proceedings in this court are specious.

14. The plain fact is that NFMC, by virtue of the sale of its sole asset on June 5, 2024, as a matter of law, set in motion the dissolution of NFMC. Michael and Sharan Sklar's August 20, 2024 post-dissolution attempt to amend the partnership agreement to change a provision intended by the creators of the partnership (Glenn Declaration Ex 3) is a nullity because it was not signed by all general partners. It was only signed by two, in direct contravention of Article 10 of the Partnership

4

Agreement which requires unanimity to amend (which itself cannot be amended without unanimous consent of all partners -- limited and general, which did not occur.) See Glenn Declaration Exhibits 1 and 2.

15. As a direct result of the sale of the building on June 5, 2024, each of the partners of NFMC has incurred a significant tax burden and they are now in need of the excess cash from the sale to pay their own taxes. Contrary to the statements of Andrew Glenn, the partners' individual tax liabilities are not the obligation nor the business of NFMC to pay, but rather the obligations of the individual partners. Were the T.R.O. vacated, as counsel requests, the taxes of the partners still could not be paid because NFMC is without authority to pay its partners' taxes. It could only distribute its cash to the partners so that they can pay their taxes. What NFMC seeks with this motion is to take control over the remaining cash and the income received from the four 1031 properties and not distribute it to the owners of the company.

16. There is no need for this Court to be involved in the matter of distribution by virtue of the jurisdiction exercised by the New York State Supreme Court over all necessary parties.

17. Two of the partners Rita Sklar and the Estate of Lois Weinstein are now in need of an immediate distribution of the remaining cash from the sale to avoid a tax foreclosure sale on two properties, 2202 Albemarle Road, Brooklyn, NY and 4849 Broadway, New York, NY. Michael and Sharan Sklar are proposing using NFMC funds to pay these obligations instead of ceding control of the partners' share of the net proceeds of the sale of 95 Madison and distributing that cash. True and correct copies of the tax foreclosure notices are annexed hereto as Exhibit C.

18. Upon information and belief, the reason why Michael and Sharan are willing to release NFMC funds to pay those properties' tax obligations is that they are the Estate's only residual beneficiaries and they wish to prevent the two properties from tax lien sales. While the Estate of

Weinstein agrees that these taxes need to be paid immediately, the proper method is for the cash assets of NFMC to be distributed. Rita Sklar has indicated that she will pay off the liens out of her cash distribution, but Michael and Sharan Sklar through their set of five separate law firms have steadfastly refused even to discuss a distribution plan. All of these issues are already before the Supreme Court which issued the T.R.O. based on an exhaustive evaluation of the facts.

19. This Court should not allow Michael and Sharan to continue to abuse their authority as NFMC's purported general partners by disbursing NFMC's assets to benefit themselves over NFMC's other, 98% equity holders.

20. NFMC does not need any of that cash for its own purposes except as is necessary to pay the Branton legal fees and a $50,000 judgment entered in favor the purchaser of 95 Madison. $950,000 of the 95 Madison Avenue sale proceeds has already been escrowed with Glenn Agre for payment to Branton.

21. Andrew Glenn finally admitted at this Court's April 22, 2025 conference that his firm has already been paid what it is owed in fees since June 2024. Although there has been no disclosure of the actual amounts, it is believed that the sum is in excess of $600,000.

22. While the ultimate distribution of the four properties exchanged pursuant to IRC Section 1031 must wait out the two year holding period under the IRC and remain titled in the name of NFMC for two years during the dissolution process, the income generated from those properties should be distributed to the partners in some agreed upon fashion now. There is absolutely no reason why the ultimate allocation of those properties among the equity holders cannot be determined now. It only requires the simplest of agreements. Annexed hereto as Exhibit D is a proposed distribution and allocation drafted by Rita Sklar.

6

23. As earlier stated, this income will be taxable to the partners not to NFMC. This income should not be wasted on unearned salaries for Michael and Sharan Sklar nor squandered on needless inflated legal work.

24. Despite its length, the instant motion is misguided and the facts and the law are misstated.

25. Implementation of the Plan requires consideration of two important objectives. First, the Plan allowed NFMC to continue to operate with two opposing outcomes: (1) the leasing of the sole asset 95 Madison Avenue, or (2) its sale. The second objective was the preservation of the rights and obligations of the limited partners. (see Amended Plan, Docket no. 294, Section (2)(A) p.16). Preservation of those rights and obligations <u>a fortiori</u> is the recognition and enforcement of the operating documents under which the entity was formed and were intended to govern its future post-bankruptcy. Article IV, Section E of the Amended Plan at page 27 expressly states: "Debtor shall continue in existence post-confirmation. After Confirmation of the Plan, the General Partners will continue to control the Reorganized Debtor ***pursuant to the terms of the Partnership Agreement.***"

26. The June 2021 Amended and Restated Partnership Agreement (Glenn Declaration Exhibit 1) required that decisions on day-to-day matters be unanimous.

27. In June 2022, a "First Amendment" was created eliminating the requirement of unanimity and making decision making by majority vote only. The sole purpose was to defuse the threat posed by creditor Vitra Inc.'s motion to convert the case to a chapter 7.

28. The June 2021 Amended and Restated Partnership Agreement provides for dissolution upon the sale of 95 Madison Avenue, which is a provision that has always existed in the partnership agreement going back to 1982. (See Section 9.2).

29. Michael and Sharan Sklar were acutely aware of this provision and were advised on May 23, 2024 by counsel that NFMC would dissolve at the end of June, 2024 unless the partnership

7

agreement was amended. Matthew Blum of Rosenberg & Estes, PC expressly advised them of this fact. They chose to not amend prior to June 30, 2024 knowing that the sale would trigger dissolution. Attached as Exhibit E is a true and correct copy of the minutes of a May 22, 2024 meeting among Michael and Sharan Sklar and three of their lawyers in which this was specifically addressed. (see item 8).

30. Under the terms of the Partnership Agreement (all versions) upon the act of dissolution, the General Partners became liquidating agents and ceased to be general partners. Therefore, the purported August 20, 2024 amendment which attempted to eliminate the automatic dissolution on sale 95 Madison provision was not made by general partners because after June 30, 2024 there were no remaining general partners.

31. The second and more significant fatal flaw in NFMC's argument is that the August 20, 2024 writing is a nullity because, it was only signed by two of the former general partners. The June 21, 2022 First Amendment which changed "decision" making from unanimous to majority, did not change the terms of the amendment provision of the partnership agreement, Article 10, which still required the "consent" of <u>all</u> general partners to make amendments as was pointed out to Michael and Sharan Sklar by counsel on May 23, 2024.

32. Further, Article 10, which is the amendment provision, by its own specific terms states that Article 10 itself cannot be amended without <u>all partners</u>, limited and general consenting to the amendment of Article Ten. Article 10.10 of the 1982 partnership agreement and Article 10.1(b) provide that any provision of the agreement other than Article 10 can be amended by the written consent of all general partners (not a mere majority as counsel mistakenly asserts). However, in order to have Article 10 amended to eliminate this unanimity among the general partners requirement for amendments, **all partners** -- general and limited, would have had to have consented in writing to

8

such an amendment of Article 10. The June 21, 2022 amendment which addresses day to day decision making, does not even mention Article Ten and was not consented to by all the partners. Therefore Article 10 requiring unanimous consent of all general partners to an amendment remained the rule. Therefore, counsel's argument fails also because only Michael and Sharan Sklar signed the August 20, 2024 purported amendment.

33. Distribution of the assets of NFMC being essential to the well-being of the partners, and retention of the four 1031 real estate assets of NFMC for two years in name only, it is respectfully submitted that the focus in this Court should be closing the Bankruptcy case and directing the transferring the assets in an orderly process to the partners. All other issues should be relegated to the N.Y. State court where cases are already being litigated on the issue of distribution.

34. Particularly because NFMC's partnership agreement explicitly spells out its dissolution, distribution, and termination mandates, continuing to impose contentious and protracted proceedings on this Bankruptcy Court is only wasting scarce judicial resources with no one benefiting except for NFMC's highly-compensated bankruptcy counsel.

35. It was always the intention of the parties who created the partnership that it would be dissolved on the sale of 95 Madison. Now that has happened the Plan, by its own provisions, calls for the distribution of the assets of the partnership.

36. There is no business for NFMC to continue. The four properties purchased as part of the 1031 exchange to shelter capital gains, should be earmarked for distribution to the partners and those partners should immediately start receiving the income they generate according to such allocations, since they will be paying the taxes on the income.

37. This Court has successfully overseen a four year proceeding where all the creditors were paid in full, the asset of the Debtor was preserved, and the partnership was allowed to reach the end

of its existence as set forth in the partnership agreements and as provided for in the Plan. There is nothing left for this Court to administer.

38. Corporate, partnership and limited partnership existence are usually issues of state law not federal law. Under the Abstention Doctrine, this Court can and should permit the state court to make the determination regarding NFMC future existence.

> In the dissolution context, the Second Circuit has held that, "given the comprehensive regulation of corporate governance and existence by New York" and "New York['s] strong interest in the creation and dissolution of its corporations[,]" a federal district court may exercise its discretion to abstain from a suit seeking to dissolve a corporate entity. Friedman v. Revenue Mgmt. of N.Y., Inc., 38 F.3d 668, 671 (2d Cir. 1994). Accordingly, federal district courts in the Second Circuit "have routinely, and almost uniformly, elected to exercise Burford abstention over claims for the dissolution of a corporation formed under state law." Busher v. Barry, 14-cv-4322 (NSR), 2019 U.S. Dist. LEXIS 220082, 2019 WL 6895281, at *20 (S.D.N.Y. Dec. 18, 2019). Gallaway v. Ahamed, 2022 U.S. Dist. LEXIS 138629 *; 2022 WL 3107330 (Dist. Conn. (August 22, 2022). Burford v. Sun Oil Corp., 319 U.S. 315 (1943).

39. 11 U.S.C. § 1141 should not apply, NFMC's continued existence is no longer a matter for this Court to be concerned with.

40. Denying the instant motion is entirely equitable and necessary to the actual purposes of the Plan. It should be clear from the nature and the tenor of the litigations that have exploded in the State Courts, that the Sklar family cannot and should not be operating or owning any business entity or entities jointly. Nor is it particularly fair, equitable or practical for Michael and Sharan Sklar with only 2% of the ownership to dictate to the other 98% of ownership what forms of investment their equity is going to take, especially in light of the partners' immediate need for a distribution of the cash held by the 1031 intermediary. The dissolution and liquidation and distribution of the assets in cash and in kind to the limited partner is in all parties' best interests and is in fact required by the Plan itself.

41. The state court T.R.O. should remain in effect because it has and continues to serve the parties by preventing improvident and *ultra vires* use of the cash. This Court should not vacate the

T.R.O. but should relegate the parties to the NY Supreme Court to determine distribution.

42. Michael and Sharan Sklar and their five different law firms, are intent on wasting the company's assets to fund their frivolous and costly litigations. To date they have lost every single litigation they have commenced in the name of NFMC, including most recently the improvident and misguided defense against Branton Realty Services, LLC. They have spent over $3,000,000 in litigation expenses. This was not their money to spend. They are at best irresponsible and irrational "managers". Their reign of terror should be ended as soon as possible.

43. There are safeguards incorporated into the T.R.O. to assure that there will be sufficient funds to meet the Debtor's final Chapter 11 obligations. Counsel's sole complaint is that the T.R.O. prevents NFMC from paying necessary administration expenses, but this has shown to be false.

44. The T.R.O. continues to hold in abeyance Michael and Sharan Sklar's use of the sale proceeds to pay themselves unauthorized salaries in derogation of the rights of the equity holders. These funds are safely still held by the 1031 Exchange company where they should remain unless all parties agree to their disbursement or are released by the order of the N.Y. Supreme Court. The level of consideration and care that the Supreme Court has given to this matter is evident from the augments presented and addressed at the most recent hearing. See Transcript of the March 28, 2025 hearing annexed hereto as Exhibit F.

45. There is now a crisis that Rita Sklar and the Estate of Weinstein are facing with respect to unpaid real estate taxes on two properties that are outside this case. This crisis can only be solved by a distribution of the cash remaining with the Legal 1031 to the partners in their proportionate share.

46. In counsel's reply, counsel should set forth a reasonable estimate of the funds that will be necessary to cover the remaining administration costs of this bankruptcy case. This is what Judge Jones directed in the April 22, 2025 conference. See Transcript pages 18-20 annexed hereto as

Exhibit G.

47. Counsel should also, in their reply, provide a current balance in counsel's escrow account of NFMC funds and the current balance in NFMC's bank and/or brokerage accounts.

48. It is respectfully submitted that because all the necessary parties to the matter of the distribution of assets are before the New York Supreme Court, that court should determine such issue. The T.R.O. is essential to both Courts' ability to direct the distributions and to prevent Michael and Sharan Sklar from further dissipation of the assets NFMC.

WHEREFORE, equity holder Estate of Lois Weinstein respectfully requests that the Court deny NFMC's motion and grant such other and further relief as seems just and proper.

Dated: May 5, 2025
New York, New York

Respectfully submitted,
By:___/s/__ *Jeffrey A Barr*_____
Jeffrey A. Barr
Estate of Lois Weinstein
211 Duke Ellington Blvd, Suite 7A
New York, NY 10025
(212) 227-1834
JeffreyABarr@gmail.com